# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

JASON WILLIAMS,

     Plaintiff,

vs.

AT&T MOBILITY LLC,

     Defendant.

Case No. 5:19-cv-00475-BO

**DEFENDANT AT&T MOBILITY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), 12(b)(1) AND 9(b)**

Defendant AT&T Mobility LLC respectfully submits this memorandum of law in support of its motion to dismiss, showing that Plaintiff Jason Williams' complaint (Dkt. 2) fails to state a claim upon which relief can be granted, fails to establish Article III standing, and fails to satisfy the particularity requirement for fraud-based claims. For these reasons, Mr. Williams' complaint should be dismissed under Rules 12(b)(6), 12(b)(1), and 9(b), respectively.

## I. INTRODUCTION

Mr. Williams' complaint fails to allege facts showing that AT&T's acts or omissions proximately caused Mr. Williams' losses. Mr. Williams' losses are more appropriately attributed to the criminal conduct of third parties, to the inadequate security measures that Mr. Williams himself used, and to the inadequate security measures used by the third-party email providers, banks, cryptocurrency wallets, cloud storage providers, and social media entities that Mr. Williams relied upon to secure his assets and personal information. Because Mr. Williams has failed to allege facts that establish proximate causation, his complaint should be dismissed in its entirety under Rule 12(b)(6).

1

Mr. Williams' complaint is also deficient in many other respects:

- Mr. Williams appears to seek recovery for the losses of an unidentified business entity—a claim for which Mr. Williams lacks standing;

- Mr. Williams is not entitled to presumed damages for emotional or mental distress, or to injunctive relief, based on alleged violations of the Federal Communications Act (Count I);

- Mr. Williams' claim under the North Carolina Unfair & Deceptive Trade Practices Act ("NCUDTPA") (Count II) lacks the specificity required under Rule 9(b), regarding AT&T's alleged misrepresentations or omissions—and Mr. Williams fails to allege facts establishing the reliance necessary for this claim;

- Mr. Williams' tort-based claims for negligence and negligent supervision (Counts III and IV) are barred by the economic loss rule. Mr. Williams admits that his relationship with AT&T is based on contract, and as a matter of law no special relationship exists that would entitle him to tort damages;

- Mr. Williams' claim under the North Carolina Anti-Hacking Statute, (Count V) should be dismissed because the statute does not apply to telecommunications devices or contracts relating to telecommunications devices;

- Mr. Williams' claim under the Computer Fraud and Abuse Act ("CFAA") (Count VI) should be dismissed because the CFAA simply does not apply to AT&T's actions, as alleged in the complaint; and

- Mr. Williams' prayer for punitive damages should be stricken because Mr. Williams asserts no claim that permits the recovery of punitive damages, and

2

alleges no facts amounting to fraudulent, malicious, or willful or wanton conduct by an AT&T officer, principal, or managing agent.

For each of these additional reasons, Mr. Williams' complaint should be dismissed.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

According to the allegations in his complaint,[1] Mr. Williams first entered into a wireless agreement with AT&T in 2000. Compl. ¶10. Between November 5, 2018, and February 8, 2019, Mr. Williams was the target of seven separate, unauthorized SIM swaps perpetrated by unknown third-party hackers. Compl. ¶ 36. During each SIM swap, Mr. Williams' wireless device was unable to make or receive calls or text messages, and the hackers obtained control of Mr. Williams' cell phone number. *See e.g.,* Compl. ¶ 39, 61, 69, 73.  Mr. Williams claims the hackers used that control to gain access to, or to attempt to gain access to, his online personal and financial accounts, including accounts related to his cryptocurrency mining operations. Compl. ¶¶ 26, 36.

The first SIM swap occurred on November 5, 2018, after which the hackers accessed Mr. Williams' cryptocurrency accounts and made changes to those accounts that Mr. Williams claims eventually resulted in damage to his cryptocurrency mining business. Compl. ¶¶ 37, 41-43. The hackers also accessed personal information contained in Mr. Williams' email account, which Mr. Williams claims the hackers later used to subject him to various extortion tactics. Compl. ¶¶ 39, 44-45. Mr. Williams claims that after this initial SIM swap, he was informed by AT&T that additional security measures would be placed on his account to reduce the risk of additional SIM swaps from occurring. Compl. ¶ 47.

A second SIM swap occurred on November 30, 2018. Compl. ¶ 50. Here, the hackers attempted—but failed—to access Mr. Williams' Gemini cryptocurrency account. Compl. ¶ 52.

---

[1] For the purposes of this motion only, AT&T assumes the truth of the allegations in Mr. Williams' corrected complaint.

3

And a third and fourth SIM swap occurred on December 1, 2018, but neither resulted in any money losses to Mr. Williams, due to the hackers' failure to access his Gemini account. Compl. ¶¶ 53-60.

During the fourth SIM swap, the hackers were able to access Mr. Williams' Twitter account. And according to Mr. Williams, the hackers used his Twitter account to impersonate him and to solicit cryptocurrency from his friends and business associates. Compl. ¶ 61. Mr. Williams claims he suffered unspecified "professional and reputational damage" as a result of this Twitter hack. *Id*.

A fifth SIM swap occurred on February 4, 2019, which enabled the hackers to "access Mr. Williams' accounts on various cryptocurrency exchange platforms" and to again solicit cryptocurrency from unspecified "friends and business associates" through Twitter. Compl. ¶¶ 66, 69-70. And a sixth SIM swap occurred on February 6, 2019, which allegedly enabled the hackers to "delete[] [Mr. Williams'] Slush Pool account" and to "attempt[]" (but apparently fail) to steal Bitcoin from Mr. Williams' Gemini account. Compl. ¶¶ 72-73. Following this SIM swap, Mr. Williams decided to "shut down" his cryptocurrency mining business. Compl. ¶ 76. And after a seventh SIM swap occurred on February 8, 2019, Mr. Williams decided to terminate his service with AT&T and switch to an alternate carrier. Compl. ¶¶ 78-80.

On October 24, 2019, Mr. Williams filed a complaint against AT&T (Dkt. 1). His "Corrected Complaint" (Dkt. 2), filed on October 25, 2019, is the subject of this motion to dismiss.

### III. STANDARD OF DECISION

A motion to dismiss under Rule 12(b)(6) tests the legal and factual sufficiency of a complaint. *De Sole v. United States*, 947 F.2d 1169, 1178 (4th Cir. 1991). Motions to dismiss under Rule 12(b)(6)are governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which "require that complaints in civil actions be alleged with

greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). Under *Twombly* and *Iqbal*, a complaint should be dismissed when it fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. And to be plausible on its face, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 664 (W.D.N.C. 2012).

While the Court must accept all well pleaded factual allegations as true, and must construe the facts and reasonable inferences in the light most favorable to the plaintiff, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Jefferson v. Sch. Bd. of City of Norfolk*, 452 F. App'x 356, 357 (4th Cir. 2011) (citing *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). To state a plausible claim for relief, the allegations must be sufficient "to raise a right to relief above the speculative level." *Walters*, 684 F.3d at 439 (quoting *Twombly*, 550 U.S. at 555).

## IV. ARGUMENT

### A. Mr. Williams has failed to adequately allege proximate causation.

Under North Carolina law, a defendant may be held liable in tort only "if [its] negligence [was] a proximate cause of the plaintiff's injuries." *Moore v. Archie*, 31 N.C. App. 209, 212, 228 S.E.2d 778, 780 (1976). Proximate cause is defined as "a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and

without which the injuries would not have occurred." *Hairston v. Alexander Tank & Equipment Co.,* 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984). Thus, before a court may hold a defendant liable for an injury to a plaintiff, it must be shown that the defendant's actions were "'a substantial factor ... of the *particular* injuries for which [the] plaintiff seeks recovery.'" *Brown v. Neal,* 283 N.C. 604, 611, 197 S.E.2d 505, 509 (1973) (quoting *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E.2d 753 (1965)). Importantly, a defendant's liability does not extend to damages suffered as a proximate result of the unforeseeable, independent, intervening acts of others. *Tabor v. Kaufman*, 196 N.C. App. 745, 748, 675 S.E.2d 701, 703 (2009).

Here, Mr. Williams has not adequately pleaded proximate causation for any of his claims because any alleged sequence of events leading to Mr. Williams' alleged injuries necessarily involves the independent, intervening criminal acts of others—as well as perhaps Mr. Williams' own actions and inactions.

### 1. Mr. Williams does not allege facts to show accessing his phone number caused the loss of $2 million.

Throughout his complaint, Mr. Williams alleges that AT&T's inadequate security measures led to his losses, but he fails to allege  the sequence of events plausibly connecting AT&T's acts or omissions to the losses he allegedly incurred.  For example, Mr. Williams alleges that a SIM swap occurred on February 8, 2019, and "[a]fter this SIM swap,…hackers transferred money totaling $6,500 from his First Citizens bank account…" Compl. ¶ 79. But Mr. Williams does not allege facts to show how AT&T's acts or omissions led to and caused the transfer of money from his bank account. Instead, it was the independent and intervening acts of third-party criminals that caused the transfer.

Similarly, Mr. Williams alleges that "another effect of AT&T actions was that Mr. Williams lost the ability to mine bitcoin after February 2019." Compl. ¶ 77. But Mr. Williams fails

to allege how AT&T's acts or omissions related to his cell phone service caused or required him to shut down his business, or why AT&T should be legally responsible for Mr. Williams' business decisions. Indeed, Mr. Williams admits that his damages were caused by the criminal conduct of the third-party hackers—not by AT&T. *See* Compl. ¶¶82-90.

There are no allegations explaining how control of Mr. Williams' wireless telephone number, alone, directly enabled the hackers to access Mr. Williams' bank, cloud storage, cryptocurrency, email, and social media accounts. The complaint suggests that the hackers were unable to obtain Mr. Williams' cryptocurrency without first obtaining access to his email account and changing passwords, but Mr. Williams fails to detail that step. Mr. Williams alleges only that the hackers "utilized their control over the [cell phone] number to log into his personal email account, [and] change his account password…" Compl. ¶ 39. The complaint is rife with conclusory statements like this, and no factual allegations to connect AT&T's acts or omissions directly to Mr. Williams' alleged losses, which Mr. Williams acknowledges resulted from the independent acts of hackers.

Furthermore, in North Carolina a plaintiff's right to recover in a negligence action is barred when there is contributory negligence. *Coba v. Raba*, 347 N.C. 541, 545, 495 S.E.2d 362 (1998). "It is not necessary that a plaintiff be actually aware of the unreasonable danger of injury to which his conduct exposes him. Plaintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." *Id*. at 545-46, 495 S.E.2d 362 (quoting *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673, 268 S.E.2d 504, 507 (1980)). Here, Mr. Williams' allegations indicate his own negligence in failing to better protect his own private information—from keeping such private information in his email accounts to failing to mitigate the risk of suffering further damages

7

by failing to use application-based (rather than text-message-based) two-factor authentication, hard keys, cold storage, or various other commonly used security measures—all of which are significantly more secure than text-message-based two-factor authentication, and would have helped to thwart the hackers' efforts to steal cryptocurrency or to obtain control of Mr. Williams' online bank, social media, or cloud storage accounts.

Because Mr. Williams fails to allege facts to show AT&T's acts or omissions proximately caused his damages, Mr. Williams' complaint should be dismissed in its entirety.

### 2.	Mr. Williams' claims fail because they are based on unforeseeable, independent criminal acts.

Even if Mr. Williams is given leave to amend his complaint to provide more factual specificity, the harms he has allegedly suffered at the hands of unknown criminal third parties were not foreseeable and avoidable by AT&T. Accordingly, Mr. Williams cannot establish proximate causation as a matter of law.

North Carolina generally provides that "[n]o legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care." *Stein v. Asheville City Bd. Of Educ*, 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006). And the criminal acts of a third party are generally considered "unforeseeable and independent, intervening cause[s] absolving the [defendant] of liability." *Id*. at 329, 626 S.E.2d at 268. For this reason, the law generally does not impose a duty to prevent the criminal acts of a third party. *Id*. at 328, 626 S.E.2d at 268.

A defendant can be held liable for the criminal acts of a third party where there are "special relationships"—for example, "when the defendant's relationship with the plaintiff or the third person justifies making the defendant answerable civilly for the harm to the plaintiff." *Id*. at 329. Such "special relationships" include parent to child, innkeeper to guests, and situations where someone has voluntarily accepted custody of another. *See Bridges v. Parrish*, 366 N.C. 539, 541-

8

42, 742 S.E.2d 794, 797 (2013) ("In these cases special relationships creating liability have arisen through circumstances such as voluntary assumption of another's care and well-being or the ability to control the third person at the time of the criminal acts."). But there are no North Carolina cases extending this "special relationship" exception to a telecommunications provider and its customers. So no "special relationship" exists between AT&T and Mr. Williams, as a matter of existing North Carolina law.

Mr. Williams alleges that he has a "special relationship" with AT&T because of AT&T's "status as his telecommunications carrier," and because AT&T has the "unique ability to protect its systems." Compl. ¶ 198. This allegation is unsupported by North Carolina law. But even if a special relationship exists between AT&T and Mr. Williams, AT&T has no responsibility under North Carolina law to protect Mr. Williams from the losses he has alleged. In *Davenport v. D.M. Rental Properties, Inc.*, 217 N.C. App. 133, 718 S.E.2d 188 (2011), there was a "special relationship" between a landlord and tenant, creating a duty to prevent injury caused by the criminal conduct of third parties—yet the court held the landlord's breach of that duty was not a proximate cause of the plaintiff's injuries. *Id*. at 135, 718 S.E.2d at 190. ("[A]ssuming arguendo the evidence presented by Davenport was sufficient to raise a triable issue of fact as to whether an assault on a tenant was foreseeable such that Defendants had a duty to exercise reasonable care to prevent that assault, we cannot conclude that Defendants' breach of that duty proximately caused Davenport's injuries.") The court held that, though the landlord breached its duty by failing to take "preventative measures" to "deter criminal activity," the landlord's failures did not proximately cause the plaintiff's injury because the third-party criminal "**would not have been deterred by any reasonable safety measures** [undertaken by the landlord]." *Id*. at 134-136, 718 S.E.2d at 189 (emphasis added). In reaching its decision, the court relied on *Liller v. Quick Stop Food Mart, Inc.*,

9

131 N.C. App. 619, 625–26, 507 S.E.2d 607 (1998), which held that, where an assailant would not have been reasonably deterred by security precautions, failure to take those precautions cannot constitute the proximate cause of the assault on the plaintiff.

The same is true here. Even if AT&T had a "special relationship" with Mr. Williams, and a duty to protect him from hackers, AT&T is not Mr. Williams' insurer—and particularly not of Mr. Williams' cryptocurrency, bank deposits, personal or business information, or personal safety. Mr. Williams' losses, including his "sophisticated and expensive" investments in "technologically complex" cryptocurrency mining operations, are completely outside his contractual relationship with AT&T. Compl ¶¶10, 30. And Mr. Williams' own allegations indicate that these third-party hackers **would not have been deterred** by anything AT&T might've done differently. Accordingly, Mr. Williams' complaint cannot establish proximate causation as a matter of law, and should be dismissed under Rule 12(b)(6).

**B.    Mr. Williams lacks standing to recover damages for losses incurred by business entities, family, friends, or business associates.**

The majority of Mr. Williams' money damages are attributed to the closure of his cryptocurrency mining business. Compl. ¶ 9. And a careful reading of the complaint suggests that Mr. Williams may be seeking recovery of business losses for an unidentified separate legal entity that is not a party to this action. Compl. ¶1 ("This action arises out of AT&T's repeated failure to protect its wireless cell service subscriber—Jason Williams—from the negligence and/or purposeful actions of its own employees, resulting in … the collapse of **a business** in which Mr. Williams had invested over $2 million." (emphasis added)). There is no description of this business in the complaint, other than a rounded valuation of $2,000,000 and the allegation that the business performed cryptocurrency mining operations. The complaint does not state whether this cryptocurrency mining business was operated as a partnership, as a corporation, or as another

10

business entity that is legally distinct from Mr. Williams. And Mr. Williams fails to adequately plead that he has Article III standing, as an individual, to bring a suit for damages on behalf of this unidentified business entity. Moreover, it is axiomatic that Mr. Williams cannot recover for the injuries he describes in his complaint, suffered by his family, friends, and business associates. Compl. ¶6.

The party invoking federal jurisdiction—here, Mr. Williams—has the burden to establish Article III standing. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). If Mr. Williams lacks standing, then the Court lacks subject-matter jurisdiction to hear his case. *Martineau v. Wier*, 934 F.3d 385, 390 n.2 (4th Cir. 2019). And if the Court lacks subject-matter jurisdiction, then Mr. Williams' complaint must be dismissed. Fed. R. Civ. P. 12(b)(1).

Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). To establish an injury in fact, a plaintiff must show that they have suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). And for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560, n.1.

Shareholders lack standing to bring claims alleging injury to the corporation. *Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994); *see also Fulton v. Talbert*, 255 N.C. 183, 185, 120 S.E.2d 410, 412 (1961) ("[S]hareholders have no right to bring actions 'in their [individual] names to enforce causes of action accruing to the corporation.'), Rather, such claims must be brought derivatively on behalf of the corporation.

11

*Rivers v. Wachovia Corp.*, 665 F.3d 610, 614 (4th Cir. 2011); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d 248, 253 (2000).

Here, if Mr. Williams is a shareholder in a corporate entity or some other form of business that mined cryptocurrency, Mr. Williams has no standing to bring suit on behalf of that business in his individual capacity. Mr. Williams has standing only to assert claims for himself. His recoverable losses are limited to those he personally suffered as an individual. *Lujan*, 504 U.S. at 560. Moreover, as Mr. Williams states in his complaint, he obtained the cell phone for his personal use. Compl. ¶ 9. He does not allege that anyone else was an authorized user of his account.

Because Mr. Williams lacks standing to seek damages on behalf of a separate legal entity, or on behalf of any other individual, Mr. Williams' complaint should be dismissed under Rule 12(b)(1).[2]

**C.     Mr. Williams is not entitled to presumed damages or to injunctive relief for alleged violations of the Federal Communications Act.**

Mr. Williams alleges that AT&T's access to or disclosure of his CPNI[3] violated the Federal Communications Act ("FCA"), 47 U.S.C. §§ 222(a) & (c). In connection with this claim, Mr. Williams seeks "the full amount of damages," attorney's fees, and injunctive relief. Compl. ¶ 179. And Mr. Williams seeks damages for injuries to "his person, property, health and/or reputation" as well as damages for "personal humiliation, mental anguish, and suffering." *Id*. at ¶ 178. But Mr. Williams cannot obtain injunctive relief or recover presumed damages, or damages for emotional distress or mental anguish under the FCA.

---

[2] Notably, Mr. Williams' personal damages appear to be limited to $8,000 (Compl. ¶15), which does not meet the $75,000 threshold for diversity jurisdiction. .

[3] Mr. Williams cites to the FCA's definition of CPNI as "information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and . . . information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier." Compl. ¶96 (citing 47 U.S.C. 222 (h)(1)).

12

It is well settled that a private party seeking relief against a common carrier under the FCA must allege and prove specific damages flowing from the alleged violations and cannot recover presumed damages or damages for emotional distress or mental anguish. 47 U.S.C.A. §§ 206, 207; *see Conboy v. AT&T*, 241 F.3d 242, 249-250 (2d Cir. 2001); *see also International Telecomms. Exch. Corp. v. MCI Telecomms. Corp.,* 892 F. Supp. 1520, 1545 (N.D. Ga. 1995) ("[d]amages are not presumed under the private right of action provided for in Section 206" of the FCA); *In re Communications Satellite Corp.,* 97 F.C.C.2d 82, 90 (1984) ("it is beyond doubt that under both Title II of the Communications Act and its predecessor, the [ICA], damages are not presumed to flow from violations of the Act[s]").

It is also well settled that a private party lacks standing to request injunctive relief under the FCA. *Conboy*, 241 F.3d at 255 ("[T]he absence of any provision mentioning a general right to seek private injunctive relief for violations of the [FCA], clearly indicates that Congress did not intend to permit private parties to seek such relief for a violation of Section 222.")

For these reasons, Count I should be dismissed, to the extent that it seeks presumed damages or injunctive relief.

**D.     Mr. Williams' claim under the NCUDTPA (Count II) should be dismissed because Mr. Williams fails to allege reliance and fails to satisfy Rule 9(b)'s specificity requirement.**

A claim under the NCUDTPA requires a plaintiff to allege: "(1) an unfair and deceptive act or practice; (2) in or affecting commerce; and (3) which proximately causes actual injury." *Poor v. Hill*, 138 N.C. App. 19, 27, 530 S.E.2d 838, 844 (2000). When, as here, the allegation of unfair and deceptive trade practices is based on alleged misrepresentation, the plaintiff must show actual reliance on the alleged misrepresentation. *Id*., 530 S.E.2d at 844; *see also Bumpers v. Community Bank of Northern Virginia*, 747 S.E.2d 220, 226 (2013) ("[A] claim under section 75–

1.1 stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause.").

Here, Mr. Williams fails to identify the alleged misrepresentations with any detail and fails to allege facts showing actual reliance on those misrepresentations. Instead, Mr. Williams' NCUDTPA claim is based on a series of vague, conclusory allegations: *e.g.*, "AT&T made material misrepresentations and omissions, concerning its sale of access to and safeguarding of Mr. Williams' CPNI"; "AT&T had a duty to disclose the nature of its inadequate security practices and failures in hiring, training and supervising staff"; AT&T made "misrepresentations regarding making changes to [Williams'] account"; and "AT&T intentionally misled its customers regarding its data protection practices in order to attract customers and evade prosecution for its unlawful acts." Compl. ¶¶183-186. In each instance, Mr. Williams fails to say what the misrepresentations were. Moreover, Mr. Williams never alleges that AT&T made these alleged misrepresentations *to him*, either at the time he entered into a contract for wireless telephone service in 2000, or, in most instances, at all. Compl. ¶10. In short, Mr. Williams fails to state specifically what misrepresentations or omissions were made, concerning the access to and safeguarding of his CPNI—or how Mr. Williams relied on those alleged misrepresentations or omissions.

The complaint also quotes AT&T's 2019 Privacy Policy and cites to various unspecified online videos attributed to AT&T. Compl. ¶¶ 130-135, 152-155. But Mr. Williams never alleges that he had read the Privacy Policy or watched the AT&T videos, either before he contracted for service with AT&T in 2000 or at any time prior to the SIM swaps in November 2018 through February 2019. Thus, there are no allegations that Mr. Williams actually relied on any statements made in the Privacy Policy or the videos.

14

Without more, Mr. Williams' one allegation that unidentified AT&T employees stated that "his account would be safe from future breaches" cannot save his NCUDPTA claim. Compl. ¶¶170, 186. That lone allegation fails for lack of particularity under Rule 9(b). The complaint must state the "who, what, when, where, and how" of any fraudulent statements allegedly made by AT&T. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted); *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727, 729 (M.D.N.C. 2015) (applying Rule 9(b) standard to Chapter 75 Claim); *Regency Centers Acquisition, LLC v. Crescent Acquisitions, LLC*, No. 17 CVS 11354, 2018 NCBC 7, 2018 WL 562749, at *9 (N.C. Super. Jan. 24, 2018) (N.C. Business Court) ("When a section 75–1.1 claim is based on allegations of deceptive conduct, such allegations must be pleaded with particularity"), *appeal dismissed sub nom. Regency Centers Acquisition, LLC v. Crescent Acquistions, LLC*, 829 S.E.2d 909 (N.C. 2019). Thus, Mr. Williams "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* But here, Mr. Williams doesn't identify when these statements were made, who made them, or what specifically was said. Under Rule 9(b), AT&T is entitled to sufficient notice of the nature of Mr. Williams' claim. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 & n.5 (4th Cir. 1999) (citation omitted). And Mr. Williams' complaint fails to provide such notice.

For these reasons, Count II of the complaint should be dismissed under Rules 12(b)(6) and 9(b).

**E. The economic loss rule bars Mr. Williams' negligence and negligent supervision claims (Count III and Count IV).**

Mr. Williams asserts two causes of action for negligence, each of which is barred by the economic loss rule. Count III asserts a claim for negligence and Count IV a claim for negligent supervision. But under the economic loss rule, a plaintiff cannot bring a tort action seeking to recover purely economic losses that arise out of an alleged breach of a duty created by a contractual relationship. *Kelly v. Ga.–Pac. LLC*, 671 F.Supp.2d 785, 791 (E.D.N.C. 2009) ("The economic loss rule bars recovery "for purely economic loss in tort when a contract, warranty, or the UCC operates to allocate risk."); *see also AT&T Corp. v. Medical Review of North Carolina, Inc.*, 876 F.Supp. 91 (E.D.N.C. 1995).

Here, Mr. Williams' Wireless Agreement with AT&T operates to allocate risk as to both the negligent and negligent supervision claims, and Mr. Williams' dispute with AT&T arises entirely out of his contractual relationship with AT&T. Mr. Williams readily concedes that his relationship with AT&T derives from his contract for cell phone service, and he alleges AT&T breached duties that are undisputedly contractual in nature. Compl. ¶¶ 10, 16, 199, 219. Indeed, in the section of his complaint devoted to his negligent supervision claim, Mr. Williams states that his "injuries arose out of his contract with AT&T as his carrier." Compl. ¶ 219. Moreover, Mr. Williams seeks to recover purely economic losses, insofar as he alleges, he suffered "privacy breaches and thefts" and accordingly seeks to recover the monetary damages he allegedly suffered as a result of the SIM swaps. Compl. ¶ 218.

Mr. Williams alleges that AT&T owed a duty "to protect his sensitive [AT&T] account data," and other related employer supervision "duties," all of which clearly arise from Mr. Williams' contract with AT&T for the provision of cell phone services. Compl. ¶¶ 195-197, 215. Without this contractual relationship, AT&T would owe Mr. Williams no duty whatsoever.

16

Consequently, Williams' tort claims for negligence and negligent supervision are barred as a matter of law by the economic loss rule, and should therefore be dismissed.

**F.      Mr. Williams' claim under the North Carolina Anti-Hacking Statute (Count V) should be dismissed because the statute does not apply to telecommunications operations.**

Count V alleges a violation of N.C. Gen. Stat. § 1-539.2A, which Mr. Williams labels the "North Carolina Anti-Hacking Statute." But the statute Mr. Williams cites is an auxiliary statute that creates a civil right of action under North Carolina's criminal "computer trespass" statute. *See* N.C. Gen. Stat. § 1-539.2A; N.C. Gen. Stat. § 14-458 ("Computer Trespass Statute"). And the Computer Trespass Statute is subject to an express exception for AT&T's operation of its telecommunications network. N.C. Gen. Stat. § 14-453.1 ("Telecommunications Exceptions Statute"). Consequently, Mr. Williams cannot assert a claim against AT&T based on alleged violations of the Computer Trespass Statute.

The Computer Trespass Statute broadly prohibits the unauthorized removal or disabling of computer data, programs, or computer software from a computer or computer network. N.C. Gen. Stat. § 14-458. Mr. Williams alleges that AT&T violated the statute when its employees disabled data flowing to Mr. Williams' mobile device and caused "copies of Mr. Williams' confidential data" to be created in connection with each SIM swap. Compl. ¶¶ 224-225.

But even taking Mr. Williams' allegations as true, none of AT&T's alleged actions violated this statute. The statute states plainly that it "does not apply to or prohibit (1) **Any terms or conditions in a contract or license related to** a computer, computer network, software, computer system, database, **or telecommunication device**; or (2) **Any software or hardware designed to allow a** computer, computer network, software, computer system, database, information, or **telecommunication service to operate** in the ordinary course of a lawful business or that is

17

designed to allow an owner or authorized holder of information to protect data, information, or rights in it." N.C. Gen. Stat. § 14-453.1 (emphasis added). This telecommunications exception defeats Plaintiff's claims.

Mr. Williams' allegation that AT&T employees made "copies of Mr. Williams' confidential data" does not save this claim. Compl. ¶ 225. This conclusory allegation is not grounded in reality, or even in the factual allegations of the Complaint, because a SIM swap, by its nature, does not "copy" data; it merely transfers access to a telephone *number* from one cell phone to another. None of the data stored on a phone is copied or transferred to the new device. Mr. Williams describes the SIM swap process in his complaint and makes no mention of any "transfer" or "copying" of data as part of this process. Compl. § IV A. ("SIM swapping is a Type of Identity Theft Involving the Transfer of a Mobile Phone Number"); *see also* Compl. ¶¶ 22-26.

Thus, Mr. Williams' claim under N.C. Gen. Stat. § 1-539.2A is barred as a matter of law and should be dismissed.

**G.     Mr. Williams' claim under the Computer Fraud and Abuse Act (Count VI) should be dismissed because it is inadequately pleaded.**

Mr. Williams alleges a violation of the CFAA, 18 U.S.C. §1030. But Mr. Williams has no plausible claim under the plain text of the CFAA so Count VI should be dismissed.

The CFAA provides a private cause of action against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and ... obtains ... information from any protected computer if the conduct involved an interstate or foreign communication." 18 U.S.C. §§ 1030(a)(2)-(a)(2)(c)2007. A private action brought under section 1030(g) can be sustained only if "the conduct involves [one] of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)." 18 U.S.C. § 1030(g). And the only factor under subsection (a)(5)(B) that might be applicable in this case is satisfied only when the defendant causes "loss to 1 or more persons during

any 1–year period ... aggregating [in] at least $5,000 in value." 18 U.S.C. § 1030(a)(5)(B)(i). And loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service...." 18 U.S.C. § 1030(e)(11).

Mr. Williams fails to identify which subsection under 1030(g) that he is relying on, and similarly fails to allege facts relating to any particular subsection. Furthermore, Mr. Williams fails to plead a qualifying loss or harm. As courts have repeatedly observed, the type of losses contemplated by the CFAA are "the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable." *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, 2010 WL 4224473, at *6 (E.D. Pa. Oct. 22, 2010). Courts have explicitly held that costs unrelated to computer impairment or damages, such as withdrawals from bank accounts, do not qualify as CFAA losses. *See id.* at *5 ("Plaintiffs' only loss was [from defendant] stealing money via ACH transfers. This loss is not the type of 'loss' contemplated by the CFAA and is, therefore, not a loss for which the CFAA provides a civil remedy.").

Mr. Williams alleges only that he "spent in excess of $5,000 investigating who accessed his mobile device and damaged information on it." Compl. ¶¶ 232-233. Other cases uniformly reject this type of conclusory allegation. For example, in one case, the court dismissed a CFAA claim because the plaintiff alleged only that it "suffered impairment to the integrity or availability of its data, programs, systems, and information resulting in losses or damages in excess of $5000 during a one-year period." *Oce N. Am., Inc. v. MCS Servs., Inc.*, 748 F. Supp. 2d 481, 488 (D. Md. 2010). This allegation was "merely a conclusory statement and thus [did] not sufficiently plead the $5000 minimum damages requirement to bring suit under the CFAA." *Id.*; *see also*, *e.g.*,

*Fabreeka Int'l Holdings, Inc. v. Haley*, 2015 WL 7253019, at *5 (E.D. Mich. Nov. 17, 2015) (dismissing as conclusory the plaintiff's allegation that it suffered "theft of confidential information and other losses and damage in an amount to be proved at trial, but, in any event, in an amount well over $5000 aggregated").

Mr. Williams' failure to describe his own investigation—an action he would have unique knowledge about "even prior to commencement of discovery"—demonstrates that "no such damage existed and that [Mr. Williams] cannot meet [his] pleading burden." *Advantage Ambulance Grp., Inc. v. Lugo*, 2009 WL 839085, at *4 (E.D. Pa. Mar. 30, 2009) (dismissing a CFAA claim because the plaintiff did not plead "whether or not any measures had to be taken to remedy any damage done to their computer system or to protect themselves from having this alleged injury occur again in the future"). Mr. Williams' allegation of loss is nothing more than a "formulaic recitation" of one CFAA element—the exact type of pleading that *Twombly* and *Iqbal* directed courts to ignore and that courts construing CFAA have found insufficient.

For these reasons, Mr. Williams' CFAA claim should be dismissed under Rule 12(b)(6).

## H.    Mr. Williams' prayer for punitive damages should be stricken.

Mr. Williams' prayer for relief seeks punitive damages. Compl. ¶236. But Mr. Williams does not identify which Count entitles him to punitive damages, and Mr. Williams has failed to plead facts that would entitle him to punitive damages.

In North Carolina, a punitive damages claim requires direct action by the alleged wrongdoer. N.C. Gen.Stat. § 1D–15(c) ("Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damage"). If, as here, the defendant is a corporation, then the "direct action" requirement is satisfied only if "the officers, directors, or managers of the corporation participated in or

20

condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen.Stat. § 1D–15(c). Thus, to survive a motion to dismiss, Mr. Williams must plead sufficient facts to support a plausible claim that at least one of the officers, directors, or managers of AT&T acted with or condoned "willful and wanton" conduct related to Mr. Williams' claims. *Braswell v. Colonial Pipeline Co.*, 395 F. Supp. 3d 641, 656 (M.D.N.C. 2019) (dismissing punitive damages claim where plaintiffs not only failed to respond to defendant's arguments but alleged no facts supporting corporate liability in their complaint); *Phillips v. Restaurant Management of Carolina, L.P.*, 146 N.C. App. 203, 215–16, 552 S.E.2d 686, 694–95 (2001) (dismissing a punitive damages claim when no evidence supported the proposition that the restaurant condoned or participated in the waiter's actions).

Here, Mr. Williams fails to allege facts to support a claim for punitive damages.  He alleges no willful or wanton misconduct. And the complaint does not identify any officer, director, or manager of AT&T taking part in or condoning any willful or wanton misconduct. Consequently, Mr. Williams has failed to allege facts to support a claim for punitive damages and his prayer for punitive damages should be stricken.

## V.   CONCLUSION

For the foregoing reasons, Defendant AT&T Mobility LLC respectfully asks the Court to dismiss Plaintiff Jason Williams' complaint in its entirety. Alternatively, the Court should dismiss Counts I-VI and strike Mr. Williams' request for punitive damages for the reasons provided.

21

Respectfully submitted this the 20th day of December, 2019.

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Joseph S. Dowdy
Joseph S. Dowdy (N.C. State Bar No. 31941)
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1718
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

22

## CERTIFICATE OF SERVICE

I hereby certify that on date set out below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

SHUMAKER LOOP & KENDRICK LLP
Terence S. Reynolds
treynolds@shumaker.com
Lucas D. Garber
lgarber@shumaker.com
101 South Tyron Street
Suite 2200
Charlotte, North Carolina 28280
Local Civil Rule 83.1(d) Counsel for
Plaintiff Jason Williams

PIERCE BAINBRIDGE BECK PRICE
& HECHT LLP
Christopher LaVigne
clavigne@piercebainbridge.com
Dwayne Sam
dsam@piercebainbridge.com
Sarah Baugh
sbaugh@piercebainbridge.com
Thomas Popejoy
tlpopejoy@piercebainbridge.com
277 Park Avenue, 45th Floor
New York, NY 10172
 Counsel for Plaintiff Jason Williams

This the 20th day of December, 2019.

/s/ Joseph S. Dowdy.
Joseph S. Dowdy