IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| JASON WILLIAMS,<br><br>    Plaintiff,<br><br>vs.<br><br>AT&T MOBILITY LLC,<br><br>    Defendant. | Case No. 5:19-cv-00475-BO<br><br>**DEFENDANT AT&T MOBILITY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), 12(b)(1), AND 9(b)** |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Arguments and Authorities | 1 |
| | A. Mr. Williams has failed to adequately allege proximate causation. | 1 |
| | B. Mr. Williams lacks standing to recover damages for losses incurred by a business entity or other individuals. | 4 |
| | C. Mr. Williams is not entitled to presumed damages or to injunctive relief for alleged violations of the FCA. | 5 |
| | D. Mr. Williams' NCUDTPA claim (Count II) should be dismissed because Mr. Williams' fails to allege reliance and fails to satisfy Rule 9(b)'s specificity requirement. | 6 |
| | E. The economic loss rule bars Mr. Williams' tort claims (Counts III & IV). | 7 |
| | F. Mr. Williams' claim under the "Anti-Hacking Statute" (Count V) should be dismissed because the statute does not apply to telecommunications operations. | 8 |
| | G. Mr. Williams' CFAA claim (Count VI) should be dismissed because he fails to plead qualifying losses. | 9 |
| | H. Mr. Williams' prayer for punitive damages should be stricken. | 10 |
| III. | Conclusion | 10 |

# TABLE OF AUTHORITIES

**Cases**

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
  562 F.3d 630 (4th Cir. 2009) .................................................................................................. 9

*Advanced Fluid Sys., Inc. v. Huber*,
  28 F. Supp. 3d 306 (M.D. Pa. 2014) ........................................................................................ 9

*AtPac, Inc. v. Aptitude Sols., Inc.*,
  730 F. Supp. 2d 1174 (E.D. Cal. 2010) ................................................................................... 9

*Conboy v. AT&T*,
  241 F.3d 242 (2d Cir. 2001) ................................................................................................ 5, 6

*DocMagic, Inc. v. Ellie Mae, Inc.*,
  745 F. Supp. 2d 1119 (N.D. Cal. 2010) ................................................................................... 9

*Fabreeka Int'l Holdings, Inc. v. Haley*,
  No. 15-CV-12958, 2015 WL 7253019 (E.D. Mich. Nov. 17, 2015).......................................... 9

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
  964 F. Supp. 956 (M.D.N.C. 1997) ..................................................................................... 2, 3

*Hatteras/Cabo Yachts, LLC v. M/Y EPIC*,
  No. 4:17-CV-00025-BR, 2019 WL 5792863 (E.D.N.C. Nov. 6, 2019)................................. 7, 8

*Holt v. N.C. Dep't of Transp.*,
  245 N.C. App. 167, 781 S.E.2d 697 (2016)......................................................................... 2, 3

*Johnson v. Dep't of Treasury*,
  700 F.2d 971 (5th Cir. 1983) ................................................................................................... 6

*Legacy Data Access, Inc. v. Cadrillion, LLC*,
  889 F.3d 158 (4th Cir. 2018) ................................................................................................... 7

*N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co.*,
  294 N.C. 73, 240 S.E.2d 345 (1978)....................................................................................... 7

*Nat'l Fin. Partners Corp. v. Ray*,
  No. 13 CVS 3319, 2014 WL 5148197 (Sup. Ct. Union Cnty. Oct. 13, 2014) ......................... 5

*Presnell v. Payne*,
  272 N.C. 11, 157 S.E.2d 601 (1967)....................................................................................... 2

*Ratliff v. Duke Power Co.*,
  268 N.C. 605, 151 S.E.2d 641 (1966)..................................................................................... 2

*Sageworks, Inc. v. Creatore*,
   No. 5:16-CV-367-BO, 2017 WL 633359 (E.D.N.C. Feb. 15, 2017) .......................................... 9

*SKF USA, Inc. v. Bjerkness*,
   636 F. Supp. 2d 696 (N.D. Ill. 2009) ................................................................................. 9

T*ech Sys., Inc. v. Pyles*,
   630 F. App'x 184 (4th Cir. 2015) ...................................................................................... 9

*Tech. Partners, Inc. v. Papaioannou*,
   No. 3:15CV63, 2015 WL 9304562 (W.D.N.C. Dec. 21, 2015) ................................................. 9

*Terpin v. AT&T Mobility, LLC*,
   399 F. Supp. 3d 1035 (C.D. Cal. 2019) ................................................................................ 2

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) ............................................................................................. 6

*WEC Carolina Energy Sols. LLC v. Miller*,
   687 F.3d 199 (4th Cir. 2012) ............................................................................................. 9

*Westfarm Assocs. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n*,
   66 F.3d 669 (4th Cir. 1995) ............................................................................................... 2

*Williams v. Mickens*,
   247 N.C. 262, 100 S.E.2d 511 (1957) ................................................................................. 4

*Wyatt v. Gilmore*,
   57 N.C. App. 57, 290 S.E.2d 790 (1982) ............................................................................ 3

**Statutes**

18 U.S.C. § 1030 (e)(11) ........................................................................................................ 9

N.C. Gen. Stat. 1D-15(c) ..................................................................................................... 10

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 4

Fed. R. Civ. P. 9(b) ................................................................................................................ 6

# I. Introduction

Mr. Williams' opposition continues his attempt to blame AT&T for conduct that it did not control and for harm that arises from the intervening, criminal misconduct of third-party hackers. Unable to allege that SIM swaps caused his alleged harm, Mr. Williams asserts instead that SIM swaps are capable of leading to theft. His opposition fails to address the flaws in his claims. Instead, Mr. Williams repeatedly asks the Court to accept labels and conclusions in place of plausible factual allegations, to impose liability under statutes that do not cover his assertions, and to expand exceptions to the economic loss rule, which bars liability here. AT&T asks the Court to reject these arguments and to dismiss the Corrected Complaint in its entirety.

# II. Arguments and Authorities

## A. Mr. Williams has failed to adequately allege proximate causation.

Mr. Williams' opposition continues to rely on vague, conclusory assertions. Mr. Williams has not pleaded the actual facts of what happened after third-party hackers wrongfully obtained access to his phone number—he does not explain what the third-party hackers actually did or how they actually used his phone number to obtain access to his money and information. Instead, Mr. Williams merely insists that, by conducting the SIM swaps, AT&T "allowed" or "enabled" these third-party hackers to steal his money and information. *See* Plf.'s Oppo. To Def.'s Mot. to Dismiss ("Oppo.") (Dkt. 18) 4, 9; *e.g.*, Compl. ¶ 20, 36, 225. But this is not enough.

Mr. Williams must plausibly allege that AT&T's actions **caused** his alleged injuries, not merely that a SIM swap makes it possible for an injury to occur.[1] Taking Mr. Williams' allegations as true, we know only (1) that hackers obtained control of his phone number and (2) that hackers also obtained access to his email and financial accounts and took his money. Compl. ¶¶ 36, 39. But Mr. Williams does not tell us how #1 caused #2. He alleges #1 "allowed" or "enabled" #2, but this is vague and conclusory. Thus, Mr. Williams has failed to adequately allege that AT&T's

---

[1] Mr. Williams alleges how a SIM swap can make it possible for an injury to occur. Compl. ¶ 27. But he does not allege facts about what the third-party hackers actually did; he does not explain how the hackers used his phone number to gain access to his accounts and steal his money and information. *E.g.*, Compl. ¶ 36.

1

KILPATRICK TOWNSEND 730141377
Case 5:19-cv-00475-BO   Document 19   Filed 02/18/20   Page 5 of 15

actions proximately caused his alleged injuries. *Cf. Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1044 (C.D. Cal. 2019) (dismissing similar claims because "the Court is left to speculate how having access to [plaintiff's] phone number resulted in the theft of cryptocurrency").[2]

Alleging only that AT&T's actions "allowed" or "enabled" a third party's injurious actions is not enough to establish that AT&T's actions proximately caused Mr. Williams' injuries. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956, 960 (M.D.N.C. 1997) (quoting *Ratliff v. Duke Power Co.*, 268 N.C. 605, 151 S.E.2d 641, 648 (1966)) ("An event which is a 'but for' cause of another event—that is, a cause without which the second event would not have taken place—is not, necessarily, the proximate cause of the second event."). Proximate causation is narrower than but-for causation and is meant to limit the scope of a defendant's liability. *Id.* (stating proximate cause inquiry "necessarily" asks "whether the tortfeasor's liability should as a matter of public policy extend to those injuries"). "[I]f the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." *Id.* at 961 (quoting *Presnell v. Payne*, 272 N.C. 11, 157 S.E.2d 601, 602 (1967)). According to Mr. Williams' own allegations, these SIM swaps became injurious only because of the subsequent actions of third-party hackers. So Mr. Williams' alleged injuries must be imputed to the actions of third-party hackers—not to AT&T.

As AT&T has noted, absent a duty created by a "special relationship," a defendant cannot be liable in North Carolina for the intervening criminal acts of a third party. *See* Def.'s Memo. in Support of Mot. to Dismiss ("MTD Memo.") (Dkt. 15, 8–9 (citing cases)). To circumvent this rule, Mr. Williams cites two cases: *Westfarm Assocs. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n*, 66 F.3d 669 (4th Cir. 1995), and *Holt v. N.C. Dep't of Transp.*, 245 N.C. App. 167, 781 S.E.2d 697 (2016). Oppo. at 6. But *Westfarm* is inapplicable because it involves Maryland law. And *Holt* states plainly that an intervening cause will break the causal chain if it was "independent of" and

---

[2] The *Terpin* plaintiff filed an amended complaint, the sufficiency of which is before the court on a motion to dismiss.

"not produced by" the initial act, and was "adequate to bring about the injurious result"—*i.e.*, if it "prevents the natural and probable result of the original act…and produces a different result." 245 N.C. App. at 177, 781 S.E.2d at 704.

Here, the "natural and probable result" of a typical SIM swap is simply that a customer's phone number is transferred to another SIM card. Compl. ¶ 25. That is the typical result of cellphone service providers like AT&T performing SIM swaps for their customers, which they do daily. *Id*. Mr. Williams' case is unusual because third-party hackers acted independently to cause Mr. Williams' alleged injuries. Mr. Williams does not tell us what the hackers actually did, or how they actually used his phone number to access his accounts—but the only reasonable inference is that the hackers' actions were "independent of" and "not produced by" the SIM swap itself. The hackers' independent, intervening actions produced a result that was different from the "natural and probable result" of a typical SIM swap. Thus, under the standard articulated in *Holt*, AT&T cannot be liable for the alleged harm caused by the intervening criminal acts of third-party hackers.

Mr. Williams contends that the acts of the third-party hackers were "foreseeable" because AT&T "knew or should have known" what can happen if malicious third-party hackers get control of a customer's phone number. *See* Oppo. at 5–10. But even if Mr. Williams has alleged some modicum of foreseeability, he still has failed to adequately allege proximate cause because he has not pled a sequence of events by which AT&T's conduct caused his injury. Moreover, "foreseeability is only one element of proximate cause, which includes other equally important considerations." *Food Lion*, 964 F. Supp. at 961 (quoting *Wyatt v. Gilmore*, 57 N.C. App. 57, 290 S.E.2d 790, 791 (1982)). Other considerations include "whether the cause is, in the usual judgment of mankind, **likely** to produce the result." *Id.* (quoting *Wyatt*) (emphasis added). Courts must also consider "whether recovery would place an unreasonable burden upon those engaged in [similar] activities." *Id.* The proximate cause element limits the scope of a defendant's liability. *Id.* at 960 (stating inquiry into proximate cause "necessarily" asks "whether the tortfeasor's liability should as a matter of public policy extend to those injuries").

3

KILPATRICK TOWNSEND 730141437 7
Case 5:19-cv-00475-BO   Document 19   Filed 02/18/20   Page 7 of 15

Here, Mr. Williams argues "foreseeability" but ignores the fact that cellphone service providers conduct appropriate SIM swaps for their customers every day. Compl. ¶ 25. He also ignores the fact that AT&T itself was deceived by the third-party hackers who induced AT&T to make the SIM swap. What happened to Mr. Williams is not "likely" to happen after a typical SIM swap. And it would place an enormous, unreasonable burden on all cellphone service providers, if a SIM swap could be construed as a proximate cause for Mr. Williams' alleged injuries—when Mr. Williams' alleged injuries were caused by the independent, intervening, criminal acts of third-party hackers. *Cf. Williams v. Mickens*, 247 N.C. 262, 100 S.E.2d 511 (1957) (holding defendant's act of leaving keys in ignition was not proximate cause of injuries caused after car was stolen by third party, even though theft of car was foreseeable). The Court should dismiss all of Mr. Williams' claims under Rule 12(b)(6).

**B.     Mr. Williams lacks standing to recover damages for losses incurred by a business entity or other individuals.**

AT&T has asserted that Mr. Williams lacks standing to recover losses incurred by an unnamed business entity, or by other individuals. MTD Memo. at 10–12. Mr. Williams offers no direct response to this assertion. Instead, he merely insists that he has established standing to recover for his own losses. Oppo. at 10–11. But that is not the question.

To be clear: AT&T does not dispute Mr. Williams' standing to recover for his own alleged losses. *See* Oppo. at 10 n.5. AT&T maintains that Mr. Williams lacks standing to recover any alleged losses incurred by another legal entity. In his opposition, Mr. Williams continues to refer to "a business" that he allegedly "had to shut down" as a result of AT&T's actions—and he refers to "over $2 million" in alleged losses related to that business. Oppo. at 10. This amount in alleged losses is based on Mr. Williams' estimated value of "the business," which he apparently bases on the value of certain business assets and expenses, such as the value of "around 500 servers" and "the cost necessary to power them." Oppo. at 10 & n.6. Based on the complaint, these losses appear to belong to "the business." If "the business" is a separate legal entity, then Mr. Williams lacks Article III standing to recover losses it allegedly incurred. *See* MTD Memo. at 10–12.

4

KILPATRICK TOWNSEND 730141337 7
Case 5:19-cv-00475-BO     Document 19     Filed 02/18/20     Page 8 of 15

Mr. Williams tries to characterize these alleged losses as his own by referring to the value of the servers and "the cost necessary to power them" as money he "invested" in "the business" and by citing *Nat'l Fin. Partners Corp. v. Ray*, No. 13 CVS 3319, 2014 WL 5148197, at *5 (Sup. Ct. Union Cnty. Oct. 13, 2014), for the proposition that "loss of investment in a business is 'injury-in-fact' that confers standing." Oppo. at 10–11. But this is sleight-of-hand. In *Ray*, the "investment" loss that conferred standing resulted from an investment in a "fictitious entity"—an investment in a Ponzi scheme. *See Ray*, 2014 WL 5148197, at *1 (describing Blackburg as "fictitious entity" in Ponzi scheme) & *5 (noting out-of-pocket loss resulting from "investment" in Blackburg was injury that conferred standing). In other words, in *Ray*, the party's "investment" loss gave the party standing to sue defendants who had tricked them into investing in a fictitious entity. *See id.* Mr. Williams' claims are nothing like the claims at issue in *Ray*.

If Mr. Williams "invested" money in "a business" and "the business" used that money to buy "around 500 servers" and to "power them," then Mr. Williams' invested money became the business's money—and those assets and expenses were the business's assets and expenses. Any losses that were allegedly incurred, related to the value of the servers and "the cost necessary to power them," are the business's losses. And Mr. Williams lacks standing to recover for them.

Mr. Williams offers no response to this issue. So, to the extent Mr. Williams seeks to recover losses incurred by "a business," Mr. Williams' complaint should be dismissed under Rule 12(b)(1).

C.  **Mr. Williams is not entitled to presumed damages or to injunctive relief for alleged violations of the FCA.**

Mr. Williams cites no authority to directly support his pursuit of injunctive relief, presumed damages, or damages for mental or emotional distress, under the FCA. *See* Oppo. at 11–13. Mr. Williams dismisses the decisions issued by other courts as "non-binding" and asks this Court to split with those other courts and go a different way. *Id.* Then, after saying this Court "should not follow" other courts' "non-binding" decisions under the FCA (*e.g.*, *Conboy v. AT&T*, 241 F.3d 242 (2d Cir. 2001)), Mr. Williams urges the Court to follow other courts' nonbinding decisions

5

under the 1974 Privacy Act (*e.g.*, *Johnson v. Dep't of Treasury*, 700 F.2d 971 (5th Cir. 1983)). *See* Oppo. at 12. But if the Court must choose between following other courts' decisions interpreting the Privacy Act and following other courts' decisions interpreting the FCA, it should follow the decisions interpreting the FCA, when ruling on a claim brought under the FCA. For these reasons, the Court should follow *Conboy* and other cases interpreting the FCA.

**D.     Mr. Williams' NCUDTPA claim (Count II) should be dismissed because Mr. Williams' fails to allege reliance and fails to satisfy Rule 9(b)'s specificity requirement.**

Mr. Williams fails to adequately allege reliance on certain alleged misrepresentations and fails to adequately allege the "who, what, when, where, and how" of others. *See* MTD Memo. at 13–15; *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). His opposition demonstrates the complaint's inadequacy.

Mr. Williams alleges that, when he "decided not to close his AT&T wireless account," he relied on a representation that his SIM card would not be swapped unless "he entered into a designated store with two passports." Oppo. at 13–14 (citing Compl. ¶ 47). But Mr. Williams has failed to state "who" made this representation, "when" it was made, or "where" (*i.e.*, in a store or over the phone). *See* Compl. ¶ 47. Mr. Williams says that this representation was made "[i]n November 2018." Oppo. at 13. But this approximation of "when" does not appear in the complaint. *See* Compl. ¶ 47. And we still don't know "who" or "where." Mr. Williams also alleges that, when he bought a new phone, he relied on the representation that a new phone "would mitigate the risk of another SIM swap attack." Oppo. at 15 (citing Compl. ¶ 57). But again, Mr. Williams fails to adequately allege the "who," "when," and "where" of this representation. Compl. ¶ 57.

Mr. Williams insists that he alleged various other misrepresentations with sufficient particularity. *See* Oppo. at 14–17. But he fails to cite where in the complaint he alleged reliance on any of them—because he did not allege reliance on any of them. *See id.*

In short, even if Mr. Williams has alleged reliance with regard to some alleged misrepresentations, and even if Mr. Williams has alleged some misrepresentations with sufficient

6

particularity, he fails to put these two requirements (*i.e.*, reliance and particularity) together for any single alleged misrepresentation. His NCUDTPA claim should therefore be dismissed.

E. **The economic loss rule bars Mr. Williams' tort claims (Counts III & IV).**

Mr. Williams asserts that "exceptions" to the economic loss rule—injury outside the scope of contract and being charged with a duty of care to safeguard property—somehow preclude the operation of the rule as applied to his complaint. Oppo. at 17-20. But the case he cites clarifies that there is "no case in which [the North Carolina Supreme] Court has held a tort action lies against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill." *N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 83, 240 S.E.2d 345, 351 (1978). And the exceptions proffered by Mr. Williams do not apply.

First, Mr. Williams' complaint avers that his damages arose out of his wireless contract with AT&T, Compl. ¶ 219, but he now tries to focus on AT&T's Privacy Policy.[3] Even with this attempted misdirection, his claims still fail because his asserted injuries would not be outside the scope of the Privacy Policy. The Privacy Policy applies to "**all** products, services and websites offered by AT&T" and refers customers to an online version of the actual policy. Compl. Ex. A at 2 (emphasis added). While Mr. Williams is correct that the policy states that "Unique rules apply to CPNI," the Privacy Policy includes CPNI, incorporates these unique rules, and refers customers to an additional website for further information. *Id*. at 32-33. The Privacy Policy, therefore, applies to all circumstances related to the products, services, and websites offered by AT&T, including CPNI, and as a result, all of the alleged injuries are within the scope of the Privacy Policy.

Second, Mr. Williams cites distinguishable cases regarding the economic loss rule exception for one who is charged by law with a duty to use care in safeguarding property. These cases limit the exception to situations in which a common carrier also undertakes a bailment. *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 166 (4th Cir. 2018); *Hatteras/Cabo Yachts, LLC v. M/Y EPIC*, No. 4:17-CV-00025-BR, 2019 WL 5792863, at *3 (E.D.N.C. Nov. 6,

---

[3] Notably, Mr. Williams' Complaint does not allege a claim for breach of contract against AT&T.

2019). Mr. Williams seeks to apply the exception out of context and have it swallow the rule. And even if the exception could apply, Mr. Williams' arguments about the FCA do not support expanding the exception here because Mr. Williams has not alleged damages he could recover under the FCA. MTD Memo. at 12-13.

F.  **Mr. Williams' claim under the "Anti-Hacking Statute" (Count V) should be dismissed because the statute does not apply to telecommunications operations.**

A SIM card is a computer chip in a mobile device that provides the connection between the device and a subscriber's wireless phone service. SIM swaps occur for a variety of valid reasons, such as when a subscriber purchases a new mobile device or needs to replace a lost or damaged SIM card in an existing device. The ordinary course of AT&T's business, like other cellular providers, includes conducting SIM swaps for its customers in providing telecommunications services, using software and hardware that is designed to allow it to do so. Because the Computer Trespass Statute "does not apply" to "[a]ny software or hardware designed to allow a…telecommunications service to operate in the ordinary course of a lawful business," N.C. Gen. Stat. 14-453.1(2), it cannot apply to AT&T's use of software and hardware to conduct SIM swaps.

Mr. Williams says he "did not allege that terms or conditions in AT&T's contract or license violated the statute, nor did he allege that software or hardware that was designed to allow AT&T to operate in the ordinary course of business violated the statute. Instead, he alleged that AT&T's employees intended to disable and halt data to Mr. Williams' mobile device by conducting the unauthorized SIM swaps."[4] Oppo. at 22 (parentheticals omitted). But this boils down to alleging that AT&T violated the statute by conducting SIM swaps. This is wrong as a matter of law, because SIM swaps are conducted in the ordinary course of business, using software and hardware designed to allow AT&T to conduct SIM swaps, and the plain text of the statute says that it "does not apply" in such circumstances. N.C. Gen. Stat. 14-453.1(2).

---

[4] By referring to the SIM swaps on his device as "unauthorized" to distinguish from authorized SIM swaps and alleging he had arrangements that no SIM swaps were to be conducted unless he presented two passports, Williams implicitly admits SIM swaps are within AT&T's ordinary course of business. Compl. ¶¶24-26, 29, 47.

8

**G. Mr. Williams' CFAA claim (Count VI) should be dismissed because he fails to plead qualifying losses.**

Mr. Williams' opposition does not justify his failure to plead a qualifying loss under the CFAA. He merely alleged that he "spent in excess of $5,000 investigating who accessed his mobile device and damaged information on it." Compl. ¶¶ 232-33. Courts have repeatedly rejected such conclusory allegations. *See* MTD Memo. at 19-20; *e.g.*, *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 331 (M.D. Pa. 2014) ("[C]onclusory allegations, reflecting only a formulaic recitation of the statutory loss element, are insufficient to satisfy federal pleading requirements"); *Fabreeka Int'l Holdings, Inc. v. Haley*, No. 15-CV-12958, 2015 WL 7253019, at *6 (E.D. Mich. Nov. 17, 2015) *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1150 (N.D. Cal. 2010).

Mr. Williams' remaining alleged losses do not qualify under the CFAA because courts also have rejected losses unrelated to interruption of service. *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009) (noting a loss of revenue "might fit the usual understanding of the term 'loss,'" but the CFAA "provides a different definition that trumps the ordinary definition"); *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1185 (E.D. Cal. 2010).[5] The CFAA allows recovery only for losses incurred "because of interruption of service." 18 U.S.C. § 1030 (e)(11).[6] Mere loss of something valuable is not enough—the interruption must cause the loss. Mr. Williams' loss of money stolen from his bank account, stolen cryptocurrency, lost investment, and lost profits did not originate from any interruption of service. Rather, they stemmed from the illegal action of third parties who obtained his property through criminal means after they interrupted his service. Accordingly, Mr. Williams' CFAA claim should be dismissed.

---

[5] Mr. Williams advocates for an overly-expansive definition of losses, but his cases support AT&T's position that CFAA losses include only investigation- and response-related losses. *See A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009) (holding that the CFAA contemplates "costs incurred as part of the response to a CFAA violation, including the investigation of an offense"). And Mr. Williams cites to cases that do not address the question of qualified losses at all. T*ech Sys., Inc. v. Pyles*, 630 F. App'x 184, 186 (4th Cir. 2015); *Tech. Partners, Inc. v. Papaioannou*, No. 3:15CV63, 2015 WL 9304562, at *4 (W.D.N.C. Dec. 21, 2015).

[6] Mr. Williams cites authority that is unrelated to the question of whether his expansive interpretation of losses are recoverable under the CFAA. *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012) (dismissing CFAA claim on other grounds); *Sageworks, Inc. v. Creatore*, No. 5:16-CV-367-BO, 2017 WL 633359, at *2 (E.D.N.C. Feb. 15, 2017) (denying dismissal only on other grounds).

**H.     Mr. Williams' prayer for punitive damages should be stricken.**

As Mr. Williams acknowledges, punitive damages can be awarded against a corporation only if its officers, directors, or managers "participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." Oppo. at 26 (quoting N.C. Gen. Stat. 1D-15(c)). Mr. Williams claims—in his opposition—that there is a "connection between the wanton and willful conduct of [AT&T's] officers, directors, or managers" and Mr. Williams' alleged injuries. *Id.* at 27–28. But nowhere in his complaint does Mr. Williams allege that any officer, director, or manager "participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." The words "wanton" and "willful" do not appear in his complaint. Mr. Williams cites his allegation that AT&T's Vice President was aware of SIM swaps and that its employees could bypass protections to effect SIM swaps. Opp. at 27. But this allegation of mere awareness of a potential problem is not an allegation that AT&T's Vice President "participated in or condoned" conduct that constitutes an "aggravating factor giving rise to punitive damages." And Mr. Williams still fails to identify which cause of action provides a basis for punitive damages. For these reasons, the prayer for punitive damages should be stricken.

### III.     Conclusion

AT&T requests that the Court dismiss Mr. Williams' Corrected Complaint for lack of standing, lack of specificity, and failure to state a claim upon which relief can be granted.

Respectfully submitted this the 18th day of February, 2020.

           KILPATRICK TOWNSEND & STOCKTON LLP

           /s/ Jos. Dowdy
           Joseph S. Dowdy (N.C. State Bar No. 31941)
           4208 Six Forks Road, Suite 1400
           Raleigh, NC 27609
           Telephone: (919) 420-1718
           Facsimile: (919) 510-6120
           Email: jdowdy@kilpatricktownsend.com

           *Counsel for Defendant AT&T Mobility LLC*

10
KILPATRICK TOWNSEND 730141377
Case 5:19-cv-00475-BO   Document 19   Filed 02/18/20   Page 14 of 15

**CERTIFICATE OF SERVICE**

I hereby certify that on date set out below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Terence S. Reynolds<br>treynolds@shumaker.com<br>Lucas D. Garber<br>lgarber@shumaker.com<br>SHUMAKER LOOP & KENDRICK LLP<br>101 South Tyron Street<br>Suite 2200<br>Charlotte, North Carolina 28280<br>Local Civil Rule 83.1(d) Counsel for<br>Plaintiff Jason Williams | Christopher LaVigne<br>clavigne@piercebainbridge.com<br>Dwayne Sam<br>dsam@piercebainbridge.com<br>Sarah Baugh<br>sbaugh@piercebainbridge.com<br>Thomas Popejoy<br>tlpopejoy@piercebainbridge.com<br>PIERCE BAINBRIDGE BECK PRICE<br>& HECHT LLP<br>277 Park Avenue, 45th Floor<br>New York, NY 10172<br>Counsel for Plaintiff Jason Williams |

This the 18th day of February, 2020.

/s/ Jos. Dowdy.
Joseph S. Dowdy