IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

---------------------------------------------------------X
: 
JASON WILLIAMS, :
: Case No. 5:19-cv-00475-BO
          Plaintiff, :
:
    vs. :
:
AT&T MOBILITY LLC, :
:
          Defendant. :
---------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF JASON WILLIAMS' MOTION TO COMPEL
# DEFENDANT AT&T MOBILITY LLC TO PRODUCE DOCUMENTS

**Withers Bergman LLP**
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*

# TABLE OF CONTENTS

                                                                                                                               **Page(s)**

INTRODUCTION .................................................................................................................1

Factual Background ..............................................................................................................2

I.     RELEVANT ALLEGATIONS IN THE FIRST AMENDED COMPLAINT, AND AT&T'S UNSUCCESSFUL MOTION TO DISMISS .......................................................2

II.    PLAINTIFF'S REPEATED AND UNSUCCESSFUL EFFORTS TO OBTAIN RELEVANT EMAILS FROM AT&T ...........................................................................2

        a.    Plaintiff's Requests and AT&T's Objections ..........................................................2

        b.    The Parties' Meet and Confer Efforts ....................................................................3

ARGUMENT .........................................................................................................................6

I.     AT&T'S FAILURE TO PRODUCE RESPONSIVE EMAILS IS IMPROPER AND PREJUDICIAL TO PLAINTIFF .............................................................................6

II.    AT&T SHOULD PAY PLAINTIFF'S REASONABLE EXPENSES INCURRED IN MAKING THIS MOTION .........................................................................................9

CONCLUSION ......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aramark Unif. & Career Apparel, LLC v. Hernandez*,
   No. 7:16-CV-336-BR, 2018 WL 651336 (E.D.N.C. Jan. 31, 2018)..........................................9

*Mainstreet Collection, Inc. v. Kirkland's, Inc.*,
   270 F.R.D. 238 (E.D.N.C. 2010) ................................................................................................7

*Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*,
   No. 1:15-CV-00129-MR, 2016 WL 4546446 (W.D.N.C. Aug. 31, 2016)..................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................................................................................................................2

Fed. R. Civ. P. 26.........................................................................................................................1, 7

Fed. R. Civ. P. 34............................................................................................................................1

Fed. R. Civ. P. 37(a)(3)(A) .............................................................................................................7

Fed. R. Civ. P. 37(a)(5)...................................................................................................................9

Local Rules of the Eastern District of North Carolina 26.1............................................................1

Local Rules of the Eastern District of North Carolina 34.1............................................................1

# INTRODUCTION

Plaintiff Jason Williams moves to compel Defendant AT&T Mobility LLC's production of documents in response to Plaintiff's First Set of Request for Production of Documents ("Requests"), dated June 5, 2020, pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the Eastern District of North Carolina 26.1 and 34.1.

As alleged in the First Amended Complaint ("FAC," Doc. 1), AT&T caused Plaintiff's AT&T cellular phone account to be "SIM swapped," resulting in significant harm and damages to Plaintiff. In causing his account to be SIM swapped, AT&T acted negligently and in violation of its statutory obligations to protect its customers' data and privacy. Plaintiff successfully opposed AT&T's motion to dismiss the FAC, and served discovery requests on AT&T on June 5, 2020. Among other documents, Plaintiff requested that AT&T search for and produce communications, including emails, related to AT&T's failure to protect its customers, including Plaintiff, from being SIM swapped.

Plaintiff served its Requests on AT&T over eight months ago. Yet, to date, AT&T has *not produced a single email* to Plaintiff. Instead of working with Plaintiff in good faith to collect and produce responsive communications, AT&T has strung Plaintiff along, attempted to skirt its discovery obligations by rearguing its failed motion to dismiss arguments, and unilaterally decided search terms it would run. Plaintiff has been accommodating, but AT&T's continued, unjustified, and unexplained delay is frustrating Plaintiff's ability to prosecute his claims, and necessitates the Court's intervention.

Accordingly, Plaintiff submits this motion to compel AT&T to promptly produce emails responsive to Plaintiff's Requests.

# FACTUAL BACKGROUND

## I. Relevant Allegations In The First Amended Complaint, And AT&T's Unsuccessful Motion To Dismiss

Plaintiff's AT&T cellular phone account was "SIM swapped" on seven occasions in 2018 and 2019 (the "SIM Swaps"), causing him significant harm.[1] (FAC ¶22; 82-90.) AT&T's repeated failures to protect Plaintiff from the SIM Swaps are violations of AT&T's statutory obligations and stated policies regarding the protection of customer accounts and data. (FAC ¶¶91-151.)

On December 20, 2019, AT&T moved to dismiss the FAC under Fed. R. Civ. P. 12(b)(6). The Court denied AT&T's motion to dismiss in its entirety, and held that AT&T could be held accountable for the SIM Swaps and Plaintiff's foreseeable injuries. (Doc. 20 at 7 ("Defendant's contentions that plaintiff does not connect AT&T's acts or omissions to his injuries and that he was contributorily negligent require little discussion. . . The connection is clearly stated and is not conclusory.").)

## II. Plaintiff's Repeated And Unsuccessful Efforts To Obtain Relevant Emails From AT&T

### a. Plaintiff's Requests and AT&T's Objections

Almost a year after its motion to dismiss was denied, AT&T has failed to turn over any emails responsive to Plaintiff's Requests, *or any emails at all*.

---

[1] "'SIM swap' refers to an unauthorized and illegitimate SIM card change. It is a hacking technique whereby the hacker induces the phone carrier to change the phone associated with the SIM card, rerouting the victim's phone activity (e.g., phone calls, texts) to a third-party phone. The victim loses his or her phone connection while the hacker receives all of the text messages and phone calls intended for the victim. Once the hacker establishes control over the victim's phone number, he can utilize that number to access the victim's other online accounts, which often utilize phone-based, two-factor authentication for access and password change requests." (Doc. 20 at 1-2.)

On June 5, 2020, Plaintiff served his Requests and his First Set of Interrogatories to AT&T ("Interrogatories"). (*See* February 12, 2021 Declaration of Christopher LaVigne ("LaVigne Decl."), Exs. A and B.) The Requests include requests for documents and communications, including emails, regarding SIM swaps suffered by Plaintiff and the ongoing problem of SIM swapping against AT&T's customers. (*See* LaVigne Decl., Ex. A at 9-10, Request Nos. 1, 2, 3, 7, and 8.) Plaintiff also served AT&T with an interrogatory ("Interrogatory No. 15") that attempts to identify individuals associated with AT&T with information relevant to this dispute. (*See* LaVigne Decl., Ex. B at 13.)[2]

b. The Parties' Meet and Confer Efforts

Since July 20, 2020, the parties' counsel have engaged in lengthy meet and confer efforts regarding AT&T's production of responsive emails. After repeated prompting from Plaintiff regarding Interrogatory No. 15[3], and over *four months* after receiving Plaintiff's Requests and Interrogatories, AT&T served supplemental Rule 26 disclosures on October 21, 2020, identifying four AT&T employees who may have relevant knowledge (the "Four Custodians"). (*See* LaVigne Decl., Ex. H at 2.)

When Plaintiff sought responsive documents and communications from the Four Custodians, AT&T's counsel stated on November 5 that AT&T had not searched for and would not search for or produce responsive emails from the Four Custodians until the parties agreed to

---

[2] AT&T's Answers and Responses to Plaintiff's Requests and Interrogatories are attached to LaVigne Declaration as Exhibits C and D, respectively.

[3] *See* LaVigne Decl., Ex. E at 3-4; Ex. F at 3; and Ex. G at 1-5. During this time period, the parties' counsel were also engaged in meet and confer efforts regarding other discovery topics, including the production of documents not at issue in this motion. Plaintiff produced documents to AT&T on August 18, 2020 and September 30, 2020, including responsive emails, and has provided additional discovery information in response to follow-up requests from AT&T. AT&T produced documents to Plaintiff on July 27, 2020, October 8, 2020, and October 23, 2020, and December 17, 2020. None contained responsive emails.

3

search terms. (*See* LaVigne Decl., Ex. I at 25-27.) Plaintiff responded that AT&T's failure to produce any responsive emails without search terms was unreasonable, as was AT&T's decision to raise this search term requirement five months after the Requests were issued. (*See* LaVigne Decl., Ex. I at 24.) Despite this, Plaintiff provided search terms for the Four Custodians to AT&T on November 11, and sought production of responsive documents by November 24. (*See* LaVigne Decl., Ex. I at 21-23.)

On November 12, AT&T's counsel objected to Plaintiff's list of terms as generally overbroad and said it would not produce responsive documents by November 24. Instead of negotiating revisions to AT&T's requested search terms, AT&T unilaterally stated it would only search for responsive documents using its own, unjustifiably narrow, list of search terms.[4] (*See* LaVigne Decl., Ex. I at 19-21.) Plaintiff objected to AT&T's self-serving approach because those narrow terms would omit responsive documents. (*See* LaVigne Decl., Ex. I at 16-19.)

At this point, it became clear the parties could not complete discovery within the original discovery schedule set by the Court, in large part because AT&T had not yet produced responsive emails.[5] Accordingly, the parties agreed to seek a joint extension of the discovery schedule, which was granted by the Court on November 30 (the "Extended Discovery Schedule"). (Doc. No. 54.) Plaintiff only agreed to seek the joint discovery extension based upon AT&T's counsel's representation that "[AT&T] will continue in a good faith effort to reach

---

[4] AT&T's proposed search terms were "("SIM SWAP*" or "SIM HIJACK*" or ("SIM CHANGE*" w/2 (UNAUTHORIZ* or FRAUD*))) OR ("Jason Williams" or "534115196684" or "919-889-7464")."

[5] *See* LaVigne Decl., Ex. I at 16 ("We acknowledge that you disagree with our position that AT&T's improper delay in providing discovery responses is the reason the parties are in the positon of having to ask the Court for the proposed extension. Your incomplete description of the parties' meet and confer efforts aside, we think the fact that AT&T has not searched for, let alone produced, any emails or non-account note communications in response to Mr. Williams' discovery requests speaks for itself.").

4

agreement with you on a reasonable scope that comports with Rule 26." (*See* LaVigne Decl., Ex. I at 15.)

Unfortunately, since agreeing to the extension, AT&T has failed to work in good faith towards its production of responsive emails. Through December 2020 and January 2021, AT&T's counsel continued to object to Plaintiff's search terms as too broad, but failed to provide any suitable alternatives beyond the overly narrow terms it unilaterally imposed, or to provide any search totals or metrics that would allow the parties to have a productive discussion regarding which, if any, of Plaintiff's proposed search terms would create an undue burden on AT&T (e.g., because those terms were capturing large amounts of nonresponsive documents).[6]

On January 13, 2021, after additional calls and emails regarding AT&T's production of responsive emails, AT&T's counsel reiterated its position that AT&T's narrow terms were sufficient, stating:

> [W]hen discussing SIM swaps, [AT&T custodians] use the terms "SIM swap" or "SIM hijack," and . . . searching for the terms you proposed in Tranche 1 will not return pertinent results beyond what we've already culled.

(*See* LaVigne Decl., Ex. I at 6.)

Within days of this assertion, Plaintiff discovered through its own efforts a highly relevant email that would not be captured by AT&T's narrow terms. In response to a subpoena, Plaintiff received documents from Prime Communications, L.P. ("Prime"), an AT&T agent included in AT&T's Rule 26 disclosures (*see* LaVigne Decl., Ex. K at 3). Prime produced a single email exchange between Prime employees and one of AT&T's Four Custodians regarding an investigation into the exact activity that goes to the heart of Plaintiff's claims: "unauthorized

---

[6] Instead of discussing Plaintiff's proposed specific terms, AT&T instead divided Plaintiff's proposed terms into "tranches" and opined, on January 7, 2021, that the terms in those tranches were overbroad in the abstract. (*See* LaVigne Decl., Ex. I at 11-12; Ex. J.)

5

sim card changes" made by a Prime employee, Stephen Defiore[7]. (This email is referred to herein as PRIME000001; *see* LaVigne Decl., Ex. L.)

On January 22, Plaintiff told AT&T that it had received PRIME000001, which made clear that AT&T's unilateral search terms were insufficient, and made a final attempt to compromise by offering a significantly pared-down list of search terms and demanding that AT&T's produce responsive emails by February 5. Plaintiff's revised search terms only included terms concerning SIM swapping, Plaintiff's AT&T account, and individuals identified in AT&T's Rule 26 disclosures. (*See* LaVigne Decl., Ex. I at 3-5.)

Despite acknowledging that PRIME000001 would not have been captured by AT&T's unilateral narrow search terms, AT&T still only agreed to use thirteen of Plaintiff's proposed terms (in addition to the insufficient terms AT&T had already committed to using). AT&T's position ignores many of the potential terms that the Four Custodians might use to discuss SIM swapping. More alarmingly, AT&T refused to produce responsive emails by February 5 or a different date. (*See* LaVigne Decl., Ex. I at 1.)

## ARGUMENT

### I. AT&T's Failure to Produce Responsive Emails is Improper and Prejudicial to Plaintiff

Plaintiff makes this motion as a last resort. Plaintiff issued the Requests and Interrogatories in June 2020. After repeated prompting by Plaintiff, AT&T disclosed its own hand-picked Four Custodians in October 2020. Because AT&T revealed in November 2020 that it had not searched for and would not search for emails without agreed-upon search terms, Plaintiff provided a list of search terms to AT&T. AT&T disregarded those terms and improperly

---

[7] Defiore was identified by AT&T in its initial disclosures (*see* LaVigne Decl., Ex. K at 2), and other, non-email documents produced in this lawsuit confirm that Defiore accessed Plaintiff's AT&T account during the period that Plaintiff was subjected to the SIM Swaps.

6

declared it would run its own search terms. Yet, in February 2021, AT&T has still not produced any emails from the Four Custodians, and has not said when it will do so. Enough is enough.

Plaintiff has attempted to work with AT&T in good faith for months regarding the production of responsive emails. AT&T's response has been to indefinitely delay production of any emails, and rebuff repeated efforts by Plaintiff's counsel to discuss which of Plaintiff's proposed terms will be unduly burdensome. At this late date, over eight months after Plaintiff served its Requests and Interrogatories, AT&T has still not produced any responsive emails from the Four Custodians (or from any other AT&T employees or agents). AT&T's stall tactics have necessitated this motion to compel. *See* Fed. R. Civ. P. 37(a)(3)(A).

AT&T fundamentally misunderstands, or, worse, deliberately disregards, its discovery obligations. Plaintiff's claims concern the SIM Swaps perpetrated against his AT&T phone and AT&T's, among other things, negligent failure to protect his account. These claims are based not only on AT&T's failure to adhere to the specific security protocols it claimed it put in place after Plaintiff was first SIM swapped (FAC ¶¶37-81), but also on AT&T's knowledge that its customers, including Plaintiff, were at risk of SIM swapping and its failure to properly address this risk. (FAC ¶¶122-45.) AT&T's discussions of the risks, policies, and procedures regarding SIM swapping are fundamental to Plaintiff's claims. Accordingly, Plaintiff's Requests and Interrogatories seek emails to, from, and amongst AT&T employees regarding these issues. Despite AT&T's attempt to produce only communications related specifically to Plaintiff, Plaintiff is entitled seek discovery of this relevant information. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…"); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly

construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case") (quotation and citations omitted).

Plaintiff has made numerous concessions to AT&T in an attempt to address AT&T's concerns about being subjected to an undue discovery burden in its search for responsive emails. Plaintiff has agreed that, at least in the first instance, AT&T may only produce emails from its chosen Four Custodians. Plaintiff has also agreed that, at least in the first instance, AT&T may only produce emails from the time period January 1, 2018 through December 31, 2019, even though the Requests and the allegations in the FAC cover a longer time period. (*See* LaVigne Decl. ¶ 14.) At AT&T's request, Plaintiff provided search terms to facilitate AT&T's search for responsive documents. Plaintiff recently offered another concession by limiting its original list of search terms.

However, Plaintiff cannot agree to allow AT&T to only use admittedly narrow, facially insufficient search terms. As the revelation of PRIME000001 makes clear, neither Plaintiff nor AT&T, let alone their counsel, knows exactly how the Four Custodians and the people they communicate with have phrased responsive emails. By failing to agree to search terms sufficient to capture the potential ways in which responsive topics might be discussed, AT&T has failed to comply with its obligation to conduct a reasonable search for responsive documents, including emails. *See Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*, No. 1:15-CV-00129-MR, 2016 WL 4546446, at *3 (W.D.N.C. Aug. 31, 2016) ("The Federal Rules of Civil Procedure impose a duty upon companies responding to discovery to conduct a reasonable investigation, make reasonable inquiries of its employees, and fully respond to interrogatories and document requests.") (quotations and citations omitted).

8

AT&T's ongoing refusal to produce responsive emails is causing significant prejudice to Plaintiff's ability to prosecute his claims. The Extended Discovery Schedule requires the parties to complete discovery by June 18, 2021. This date is fast approaching. Without AT&T's responsive emails, Plaintiff is unable to properly notice and prepare for depositions, retain experts, or prepare for dispositive motion practice and/or trial. Importantly, without responsive emails, Plaintiff is unable to determine if additional documents or information from additional AT&T custodians should be requested. Given AT&T's delays thus far, any additional requests and AT&T's attendant responses, collection, and production will severely encroach on the June discovery deadline. Plaintiff's ability to meet the interim deadlines in the Extended Discovery Schedule is similarly imperiled without any of AT&T's emails. For example, Plaintiff's deadline to amend its pleadings or join additional parties is March 15, 2021. Plaintiff needs AT&T's responsive emails, including AT&T's emails to and from third parties, to determine if he should amend his claims or join additional parties.

Unfortunately, the meet and confer record demonstrates that AT&T is unwilling to timely produce responsive emails without prompting from the Court. Accordingly, we respectfully request that the Court grant Plaintiff's motion to compel, so that the parties can move past this issue and get discovery in this case back on track.

## II.      **AT&T Should Pay Plaintiff's Reasonable Expenses Incurred in Making this Motion**

AT&T's failure to produce responsive emails in response to Plaintiff's requests has necessitated this motion to compel. AT&T's nondisclosure of this responsive information is not substantially justified. Accordingly, pursuant to Fed. R. Civ. P. 37(a)(5), Plaintiff requests that AT&T pay Plaintiff's reasonable expenses incurred in making this motion, including attorney's fees, in the amount of $25,086.00. *Aramark Unif. & Career Apparel, LLC v. Hernandez*, No.

7:16-CV-336-BR, 2018 WL 651336, at *3 (E.D.N.C. Jan. 31, 2018) (finding defendant's failure to respond to discovery requests, in light of plaintiff's good faith effort to resolve the matter before filing a motion to compel, entitled plaintiff to costs of filing the motion).

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests this Court to enter an order requiring Defendant to produce the documents requested in Plaintiff's First Set of Requests for Production of Documents, including specifically any emails and documents belonging to the Four Custodians that are responsive to Plaintiff's Requests 1, 2, 3, 7, and 8.

Dated: February 12, 2021
      New York, New York

WITHERS BERGMAN LLP

By: _____
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*