# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

------------------------------------------------------- X
JASON WILLIAMS,

           Plaintiff,

vs.

AT&T MOBILITY LLC,

           Defendant.
------------------------------------------------------- X

Case No. 5:19-cv-00475-BO

**PLAINTIFF JASON WILLIAMS'
FIRST SET OF INTERROGATORIES TO
DEFENDANT AT&T MOBILITY LLC**

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the Eastern District of North Carolina 26.1 and 34.1, Plaintiff Jason Williams ("Plaintiff" or "Williams") requests that Defendant AT&T Mobility LLC ("Defendant" or "AT&T") answer the following Interrogatories on or before July 6, 2020. Documents are to be produced for discovery and inspection at the offices of Withers Bergman LLP, 430 Park Avenue, New York, New York 10022.

## INSTRUCTIONS

1. Each interrogatory must be answered separately and the answer must immediately follow a quote of the text of the specific interrogatory to which it responds.

2. These interrogatories are to be answered by You to the extent of all information which is or may be available to You, or any person, employee, agent, expert, accountant or attorney who has acted or is now acting on Your behalf.

3. If, after reasonable and thorough investigation, using due diligence, You are unable to answer any interrogatory, or any part thereof, on the grounds of lack of information available to You, specify in full and complete detail why the information is not available to You and what has been done to locate such information. In addition, specify what knowledge or

belief You do have concerning the unanswered portion of any interrogatory and set forth the facts upon which such knowledge or belief is based.

4. Where an interrogatory does not specifically request a particular fact, but where such fact or facts are necessary to make the answer to said interrogatory either comprehensible, complete or not misleading, You should include such fact or facts as part of said answer and said interrogatory shall be deemed specifically to request such fact or facts.

5. If You claim any form of privilege with regard to any oral Communication, Document or tangible thing, whether based on a statute or otherwise as a ground for not answering an interrogatory or any portion thereof, or for not voluntarily producing any tangible thing or Document, set forth in Your answers, with respect to each such oral Communication, Document or tangible thing for which You claim such a privilege, the following: (a) the date of any oral Communication or the date of preparation of any document; (b) the name, address, title and occupation of each of the participants in any such oral conversation or each of the authors and addresses of any such document; (c) the name, title and address of the present custodian of any such document or tangible thing; (d) a description of each such oral conversation, Document or tangible thing (by subject matter or title) which is sufficient to identify the particular conversation or tangible thing without revealing the information for which the privilege is claimed; and (e) each and every fact or basis on which You claim any such privilege.

6. When statements of factual information are requested, such requested information includes the production of all formal and informal Documents which explain, clarify, describe or in any way relate to the requested statement of factual information.

2

7. The Documents requested in the foregoing paragraph and described above includes all Documents that were at any time in Your possession, without regard to whether such Documents were originally prepared by You.

8. Along with the answer to each numbered interrogatory, identify each person who participated in or supplied information with respect to the preparation of the response to such interrogatory, specifying whether each such person supplied relevant information, participated in the preparation of the response, or both. If the response to any interrogatory contains information supplied by more than one person, specify the particular information supplied by each such person. In addition, specify whether the information supplied by each such person is based on first-hand knowledge as to the matters contained in such answers and, if not, the manner in which he acquired such information.

9. These interrogatories are continuing in nature and responses which You later learn are inaccurate or incomplete are to be reasonably and promptly supplemented.

10. With regard to any Document that is supplied in answer to any interrogatory, indicate the interrogatory or interrogatories to which said Document is responsive.

11. If You contend that it would be unreasonably burdensome to obtain and provide a response to any of these interrogatories, then in response to such interrogatory: (a) set forth the response and all such information as is available to You without undertaking what You contend to be an unreasonable burden; (b) describe with particularity the efforts made by You or on Your behalf to secure the remaining information, identifying all persons consulted, describing all files, records, and Documents reviewed, and identifying each person who assisted in seeking to determine the response, and describe the nature of work done by each such person; and (c) state

3

with particularity the grounds on which You contend that additional efforts to obtain the requested information would be unreasonably burdensome.

12. Each interrogatory herein should be construed independently and not with reference to any other interrogatory for the purposes of limitation.

## DEFINITIONS AND RULES OF CONSTRUCTION

The following definitions shall apply:

1. "Defendant" or "You" or "Your" means Defendant AT&T, and each of its parents, subsidiaries, affiliates, franchisees, Authorized Retailer, and each of its present and former agents, employees, contractors, attorneys, attorneys-in-fact, accountants, representatives, successors or assigns, and every other person or entity acting on its behalf.

2. "Authorized Retailer" means AT&T Authorized Retailers as described on the website att.com, including https://www.att.com/att/newdealer/index.html.

3. "Williams Account(s)" means any AT&T telephone and/or data account purchased by, created by, created for, provide to, or otherwise associated with Plaintiff.

4. "SIM Card" means a small removable chip that allows a cell phone to communicate with the wireless carrier and the carrier to know what subscriber account is associated with that phone, as described in the Complaint (Dkt. No. 2).

5. "SIM Swap" and/or "SIM Swapping" means unauthorized and illegitimate SIM Card changes, as described in the Complaint, and includes attempted, alleged, or potentially unauthorized and illegitimate SIM Card changes.

6. "Data" means any information, including but not limited to financial, identifying, personal, or sensitive information.

4

7. "Customer Proprietary Network Information" has the same meaning attributed to it in the Complaint.

8. "Prime Communications, L.P." or "Prime" means the entity identified in Your Initial Disclosures.

9. "Alorica, Inc." or "Alorica" means the entity identified in Your Initial Disclosures.

10. "Convergys Customer Management Group Inc. n/k/a Concentrix Corporation" or "Concentrix" means the entity identified in Your Initial Disclosures.

11. "TPUSA, Inc." or "Teleperformance" means the entity identified in Your Initial Disclosures.

12. AT&T "Leadership" means any individuals currently or formerly listed as part of AT&T's Leadership on AT&T's website, including, but not limited to, Randall L. Stephenson, Ed Gillespie, David S. Huntley, Lori Lee, David R. McAtee II, Angela Santone, John Stankey, and John J. Stephens.

13. "Communication(s)" means ANY oral or written expression, or nonverbal conduct intended as the substitute for oral or written expression, including but not limited to email, text messages, social media communications including information posted on or transmitted through social networking platforms (e.g., Myspace and Facebook), digital file-sharing services (e.g., Flickr, Dropbox), online storage or in the cloud (e.g., Dropbox or iCloud), blogs and microblogs (e.g., Twitter), instant messages (e.g. What'sApp), SMS messages, MMS messages, voicemail, voice recordings, memoranda, notes, diaries, and calendar entries.

14. "Document(s)" include, but are not limited to the following items: agreements or contracts, Communications (including but not limited to intracompany Communications),

correspondence, e-mails, text messages, telegrams, cables, memoranda, records, books, summaries of records or personal conversations or interviews, diaries, desk calendars, appointment books, journals, and message pads, forecasts, statistical statements, accountants' work papers, graphs, charts, diagrams, certificates and certifications, tables, indexes, pictures, recordings, tapes, microfilm, charges, accounts, analytical records, minutes or records of meetings, conferences or conversations, reports or summaries of interviews, reports or summaries of investigations, texts or surveys, opinions or reports of consultants, appraisals, records, reports or summaries of negotiations, advertisements, brochures, pamphlets, circulars, trade letters, press releases, stenographic or hand-written or other notes, projections, working papers, checks front and back, check stubs or receipts, envelopes, invoice vouchers, data processing cards, tapes or disks or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, electronically stored information (including data stored on personal electronic devices such as personal computers, laptops, a blackberry, smartphone, iPhone, iPad, notebook, or tablet, as well as external storage such as hard drives, CD-ROMs, DVDs, or thumb drives), social media communications, including information posted on or transmitted through social networking platforms (e.g., MySpace, Instagram, TikTok, Snapchat and Facebook), digital file-sharing services (e.g., Flickr, DropBox), online storage or in the cloud (e.g., DropBox or iCloud), blogs and microblogs (e.g., Twitter); instant messages; text messages, SMS messages, MMS messages; voicemail; and all drafts, alterations, and/or amendments of, or to, any of the foregoing, however produced or reproduced, and every copy thereof that is not identical to the original or that contains any commentary or notation whatsoever that does not appear on the original, and any other Document or writing of whatever description, including but not limited to

any information contained in any computer, computer peripheral equipment, computer library, or website, although not yet printed out.

15. The terms "all," "any," and "each" shall be construed as all, any, and each, as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

16. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17. "Concerning" means directly or indirectly constituting, describing, mentioning, pertaining to, reflecting, referring to, regarding, supporting, substantiating, relating to, evidencing, or refuting. Each of these terms or phrases used to define "Concerning" shall have the same meaning and are used interchangeably.

18. The use of the singular form of any word includes the plural and vice versa. The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the request all responses which might otherwise be construed to be outside its scope.

19. Unless otherwise specified in a particular request, these document requests concern the time period from January 1, 2018, until the date of this request.

# INTERROGATORIES

Please respond to the following interrogatories in accordance with the Definitions and Rules of Construction and the Instructions located at the back of this document:

1. Identify any of AT&T's present and former agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that worked on, dealt with, discussed, or otherwise were involved with the Williams Account(s), and provide the full names, telephone numbers, email addresses, and employee ID numbers of any such persons or entities.

**ANSWER:**


2. Identify any of AT&T's present and former agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that communicated with Plaintiff, or any person purporting to be or to act on behalf of Plaintiff, or any person purporting to have authority to access or modify any information concerning the Williams Account(s), and provide the full names, telephone numbers, email addresses, and employee ID numbers of any such persons or entities.

**ANSWER:**


3. Identify any numbers, names, or other identifiers either temporarily or permanently associated with the Williams Account(s), including any technical support and/customer service ticket numbers.

**ANSWER:**

4. Identify and describe each instance in which Plaintiff, or any person purporting to be or to act on behalf of Plaintiff, or any person purporting to have authority to access or modify any information concerning the Williams Account(s), contacted AT&T to request a SIM Swap.

**ANSWER:**

5. Identify each email address, telephone number, or other identifying information used by Plaintiff, or any person purporting to be or to act on behalf of Plaintiff, or any person purporting to have authority to access or modify any information concerning the Williams Account(s), when contacting AT&T.

**ANSWER:**

6. Provide the full names, telephone numbers, email addresses, and employee ID numbers of the following individuals:

  (a)  Jessica, as described in Complaint Paragraph 74;

  (b)  Hassan, as described in Complaint Paragraph 74;

  (c)  Rex Mostoles, believed to have an employee ID number of RX8927, as described in Complaint Paragraph 75, and partially identified in Your Initial Disclosures;

  (d)  Stephen Defiore, as partially identified in Your Initial Disclosures;

  (e)  Marcus Vasquez, as partially identified in Your Initial Disclosures;

  (f)  Sydney Hancock, as partially identified in Your Initial Disclosures;

  (g)  Gabriel Jimenez, as partially identified in Your Initial Disclosures;

  (h)  Vanessa Libanan, as partially identified in Your Initial Disclosures.

**ANSWER:**


7. Identify any of AT&T's present and former agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that changed, modified, or altered the Williams Account(s), or attempted to so, including the actual or attempted changing of any passcode, PIN, passwords, or other login or security information associated with the Williams Account(s), and provide the full names, telephone numbers, email addresses, and employee ID numbers of any such persons or entities.

**ANSWER:**

8. Identify and describe each instance when any of AT&T's present and former agents, employees, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees changed, modified, or altered the Williams Account(s), or attempted to so, including the actual or attempted changing of any passcode, PIN, passwords, or other login or security information associated with the Williams Account(s).

**ANSWER:**

9. From January 1, 2007 to the date of this request, describe any training that AT&T provides or provided, arranges or arranged, organizes or organized, or otherwise makes or made available to its agents, employees, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees concerning SIM Swapping, including:

    (a)    whether such training is or was mandatory;

    (b)    how AT&T provides or provided such training and ensures that it is or was taken;

    (c)    the date such training is or was implemented (and discontinued if applicable); and

    (d)    how AT&T creates or created and updates or updated such training.

**ANSWER:**

10. From January 1, 2007 to the date of this request, identify and describe any AT&T policies, procedures, internal controls, training, or other information concerning:

    (a) The protection of Customer Proprietary Network Information (or CPNI) and other sensitive customer data; and

    (b) SIM Swapping.

**ANSWER:**


11. If any of the individuals You identify in response to Interrogatories 1, 2, 6, or 7 have been terminated, provide the date of and reason for each individual's termination.

**ANSWER:**


12. Describe AT&T's past and current business relationships with the following entities:

    (a) Prime;

    (b) Alorica;

    (c) Teleperformance; and

    (d) Concentrix.

**ANSWER:**


13. From January 1, 2007 to the date of this request, identify and describe any instances where an AT&T customer alleged to AT&T that they were subject to a SIM Swap.

**ANSWER:**

14. From January 1, 2007 to the date of this request, identify and describe any all claims, lawsuits, and administrative or regulatory actions Concerning SIM Swapping.

**ANSWER:**


15. From January 1, 2007 to the date of this request, identify any of AT&T's present and former agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that are and/or were responsible for the protection and security of AT&T customers' Data and privacy, including protection from SIM Swaps and provide the full names, telephone numbers, email addresses, and employee ID numbers of any such persons or entities, as well as the date ranges when those persons had such responsibilities. This requests includes the identity and contact information of any managers or executives who lead groups, departments, or divisions responsible for the protection and security of AT&T customers' Data and privacy, including members of AT&T's Leadership.

**ANSWER:**

Dated: June 5, 2020
New York, New York

WITHERS BERGMAN LLP

By: _____
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com


Terence S. Reynolds
Lucas D. Garber
Shumaker, Loop & Kendrick, LLP
101 South Tryon Street, Suite 2200
Charlotte, NC 28280
(704) 375-0057
treynolds@shumaker.com
lgarber@shumaker.com

*Attorneys for Plaintiff Jason Williams*

14

Case 5:19-cv-00475-BO   Document 58-2   Filed 02/12/21   Page 15 of 16

## CERTIFICATE OF SERVICE

      I hereby certify that on date set out below, I served a true copy of the foregoing **PLAINTIFF JASON WILLIAMS' FIRST SET OF INTERROGATORIES TO DEFENDANT AT&T MOBILITY LLC** by electronic mail, pursuant to the agreement of counsel for all parties, to all counsel of record and additional persons on the service lists provided by counsel for each party.

This the 5th day of June, 2020.

                                                  WITHERS BERGMAN LLP

                                                  _____
                                                  Joseph Gallo
                                                  430 Park Avenue
                                                  New York, New York 10022
                                                  (212) 848-9800
                                                  Joseph.Gallo@withersworldwide.com

                                                  *Attorney for Plaintiff Jason Williams*