# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

|  |  |
|---|---|
| JASON WILLIAMS, | Case No. 5:19-cv-00475-BO |
| Plaintiff, | |
| vs. | **DEFENDANT AT&T MOBILITY LLC'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |
| AT&T MOBILITY LLC, | |
| Defendant. | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 26.1 and 33.1 of the Local Rules for the Eastern District of North Carolina, Defendant AT&T Mobility LLC ("AT&T"), acting by and through its undersigned counsel, hereby serves its Objections and Answers to Plaintiff Jason Williams' First Set of Interrogatories to Defendant.

All responses are based on the information and documents presently available and known to AT&T, based on a reasonable search of the locations that responsive information is most likely to be found. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts, and AT&T reserves the right to amend or supplement its responses in accordance with the Rules of Civil Procedure. Further, in providing these responses, AT&T makes no admission as to the relevance or admissibility of any information set forth and expressly reserves all objections regarding relevancy, admissibility or otherwise.

1

## OBJECTIONS APPLICABLE TO ALL INTERROGATORIES

1.      AT&T objects to each interrogatory that seeks information or material that is subject to any applicable privilege, including attorney-client and/or attorney work product privileges.

2.      AT&T objects to each interrogatory that seeks the production of information or material that is protected by the right to privacy.

3.      AT&T objects to each interrogatory that seeks the production of information or material that constitutes confidential, proprietary and/or trade secret information.

4.      AT&T objects to each interrogatory, instruction, and definition that seeks to alter the permissible scope of discovery under, or impose obligations upon AT&T that are inconsistent with, the Federal Rules of Civil Procedure.

5.      AT&T objects to each interrogatory seeking the disclosure or identification of "any" or "all" items within a category of information, when all relevant facts can be obtained from the disclosure or identification of fewer than "any" and "all" of such items, or when AT&T could not identify "any" and "all" such items pursuant to a reasonable search.

6.      AT&T objects to the definition of "you," "your," and "Defendant" as vague and overbroad. AT&T will only respond on behalf of AT&T Mobility LLC, and will provide only information that is within AT&T Mobility LLC's possession, custody, or control, and is reasonably available to AT&T Mobility LLC.

2

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.     Identify any of AT&T's present and former agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that worked on, dealt with, discussed, or otherwise were involved with the Williams Account(s), and provide the full names, telephone numbers, email addresses, and employee ID numbers of any such persons or entities.

**ANSWER:** AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects that the interrogatory is overly broad and seeks information not relevant to the incidents at issue, insofar as it requests information about every interaction any individual had with Mr. Williams's account since its inception (which Mr. Williams contends was twenty years ago "in the year 2000," *see* Plaintiff's First Requests for Production, Request No. 2), the majority of which have no probative value with respect to the claims or defenses in this matter. AT&T further objects that AT&T cannot reasonably be expected to know or have a record of every instance that an individual "discussed" Mr. Williams's account, and that the interrogatory is impermissibly vague and ambiguous with respect to the phrases "worked on," "dealt with," "or otherwise were involved with" Mr. Williams's account. AT&T further objects to the interrogatory as seeking information not in AT&T's possession, custody, or control, insofar as it seeks the contact and personal information of individuals who are not AT&T employees.

3

Subject to and without waiving its objections, AT&T states that the account notes for Mr. Williams's account indicate the following persons performed the SIM changes that the complaint alleges were unauthorized:

- Stephen Defiore (sd732f), an employee or contractor of Prime Communications, L.P. or its predecessor at the time of the SIM change;

- Marcus Vasquez (mv177q), an employee or contractor of Alorica, Inc. at the time of the SIM change;

- Sydney Hancock (sh487q), at the time of the SIM change, a retail store employee at the AT&T retail store located at 502 Shawnee Mall Dr., Shawnee, Oklahoma 74804 – AT&T does not possess current contact information for Sydney Hancock;

- Gabriel Jimenez (gj639s), an employee or contractor of Alorica, Inc. at the time of the SIM change;

- Rex Mostoles (rx8926), an employee or contractor of TPUSA, Inc. at the time of the SIM change;

- Vanessa Libanan (vl828b), an employee or contractor of Convergys Customer Management Group Inc. n/k/a Concentrix Corporation at the time of the SIM change.

Subject to and without waiving its objections, and pursuant to Fed. R. Civ. P. 33(d), AT&T further states that additional information regarding interactions with Mr. Williams or his AT&T account is located in the account notes for Mr. Williams's account which AT&T will be producing in response to Mr. Williams's First Requests for Production, and that the burden of identifying such information will be substantially the same for Mr. Williams as for AT&T.

4

2.    Identify any of AT&T's present and former agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that communicated with Plaintiff, or any person purporting to be or to act on behalf of Plaintiff, or any person purporting to have authority to access or modify any information concerning the Williams Account(s), and provide the full names, telephone numbers, email addresses, and employee ID numbers of any such persons or entities.

**ANSWER:**    AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects that the interrogatory is overly broad and seeks information not relevant to the incidents at issue, insofar as it requests information about every communication any individual had with Mr. Williams, the majority of which have no probative value with respect to the claims or defenses in this matter. AT&T further objects that AT&T cannot reasonably be expected to know or have a record of every instance that an individual communicated with Mr. Williams. AT&T further objects to the interrogatory as seeking information not in AT&T's possession, custody, or control, insofar as it seeks the contact and personal information of individuals who are not AT&T employees.

Subject to and without waiving its objections, and pursuant to Fed. R. Civ. P. 33(d), AT&T states that information regarding interactions with Mr. Williams is located in the account notes for Mr. Williams's account which AT&T will be producing in response to Mr. Williams's First Requests for Production, and that the burden of

5

identifying such information will be substantially the same for Mr. Williams as for AT&T.

3.    Identify any numbers, names, or other identifiers either temporarily or permanently associated with the Williams Account(s), including any technical support and/customer service ticket numbers.

**ANSWER:**    AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects that the interrogatory is vague and ambiguous with respect to its request for "numbers, names, or other identifiers either temporarily or permanently associated with" Mr. Williams's account.

Subject to and without waiving its objections, AT&T states that the Billing Account Number ("BAN") for Mr. Williams's account is 534115196684. AT&T further states, pursuant to Fed. R. Civ. P. 33(d), that additional information regarding customer service ticket numbers or identifiers on Mr. Williams may be located in the account notes for Mr. Williams's account which AT&T will be producing in response to Mr. Williams's First Requests for Production and that the burden of identifying such information will be substantially the same for Mr. Williams as for AT&T.

4.     Identify and describe each instance in which Plaintiff, or any person purporting to be or to act on behalf of Plaintiff, or any person purporting to have authority to access or modify any information concerning the Williams Account(s), contacted AT&T to request a SIM Swap.

**ANSWER:**  Pursuant to Fed. R. Civ. P. 33(d), AT&T states that responsive information is located in the account notes for Mr. Williams's account, which AT&T will be producing in response to Mr. Williams's First Requests for Production, and that the burden of locating the entries in the account notes referencing requests for SIM changes will be substantially the same for Mr. Williams as for AT&T.

5.     Identify each email address, telephone number, or other identifying information used by Plaintiff, or any person purporting to be or to act on behalf of Plaintiff, or any person purporting to have authority to access or modify any information concerning the Williams Account(s), when contacting AT&T.

**ANSWER:**  AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects that AT&T cannot reasonably be expected to know or have a record of every type of identifying information proffered by Williams or any person purporting to be Mr. Williams during every encounter with a store representative, call center agent, or representative of AT&T.

Subject to and without waiving its objections, AT&T states that the account notes for Mr. Williams's account indicate the following email addresses were used or

7

attempted to be used in connection with Mr. Williams's account: j.williams@fastmed.com, jasonwilliamseow@gmail.com, jasonwilliams@yahoo.com.

Subject to and without waiving its objections, and pursuant to Fed. R. Civ. P. 33(d), AT&T further states that to the extent additional responsive information exists, it can be found in the account notes for Mr. Williams's account, which AT&T will be producing in response to Mr. Williams's First Requests for Production. The burden of locating the entries in the account notes referencing the requested information will be substantially the same for Mr. Williams as for AT&T.


6.    Provide the full names, telephone numbers, email addresses, and employee ID numbers of the following individuals:

    (a)    Jessica, as described in Complaint Paragraph 74;

    (b)    Hassan, as described in Complaint Paragraph 74;

    (c)    Rex Mostoles, believed to have an employee ID number of RX8927, as described in Complaint Paragraph 75, and partially identified in Your Initial Disclosures;

    (d)    Stephen Defiore, as partially identified in Your Initial Disclosures;

    (e)    Marcus Vasquez, as partially identified in Your Initial Disclosures;

    (f)    Sydney Hancock, as partially identified in Your Initial Disclosures;

    (g)    Gabriel Jimenez, as partially identified in Your Initial Disclosures;

    (h)    Vanessa Libanan, as partially identified in Your Initial Disclosures.

**<u>ANSWER:</u>**  AT&T objects to this interrogatory as seeking information not in AT&T's possession insofar as it seeks the personal or private telephone numbers, email addresses or other contact information of the referenced individuals, of which AT&T does not maintain any records. AT&T further objects to subparts (c), (d), (e),

8

(g) and (h) of this interrogatory as seeking information not within AT&T's possession, custody or control, as the referenced individuals are not employed by AT&T.

Subject to and without waiving its objections, AT&T states:

(a) Jessica Drewry (jd428v). Ms. Drewry is a former employee of AT&T Mobility Services LLC. AT&T does not possess current contact information for Ms. Drewry.

(b) Hassan Rmeiti (hr504c). Mr. Rmeiti is a former employee of AT&T Mobility Services LLC. AT&T does not possess current contact information for Mr. Rmeiti.

(c) Rex Mostoles (rx8926). Upon information and belief, any available contact information may be obtained from TPUSA, INC.

(d) Stephen Defiore (sd732f). Upon information and belief, any available contact information may be obtained from Prime Communications, L.P.

(e) Marcus Vasquez (mv177g). Upon information and belief, any available contact information may be obtained from Alorica Inc.

(f) Sydney Hancock (sh487g). Ms. Hancock is a former employee of AT&T Mobility Services LLC. AT&T does not possess current contact information for Ms. Hancock.

(g) Gabriel Jimenez (gj639s). Upon information and belief, any available contact information may be obtained from Alorica Inc.

(h) Vanessa Libanan (vl828b). Upon information and belief, any available contact information may be obtained from Convergys Customer Management Group Inc. n/k/a Concentrix Corporation.

7. Identify any of AT&T's present and former agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that changed, modified, or altered the Williams Account(s), or attempted to so, including the actual or attempted changing of any passcode, PIN, passwords, or other login or security information associated with the Williams Account(s), and provide the full names, telephone numbers, email addresses, and employee ID numbers of any such persons or entities.

**ANSWER:** AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects to the interrogatory as vague and ambiguous with respect to the phrase "changed, modified, or altered the Williams Account(s)," and will interpret that phrase to mean changes to the passcodes, login information, or email addresses, or SIM changes, on Mr. Williams's account. AT&T further objects to this interrogatory as overly broad and seeking information not relevant to the claims or defenses in this matter insofar as it seeks information about activity on Mr. Williams's account that has no connection to any of the incidents alleged in the complaint. AT&T further objects that AT&T has no reasonable way to know or keep a record of each instance that an individual may have "attempted" to, but did not, make a change to Mr. Williams's account. AT&T further objects to the interrogatory as seeking information not in AT&T's possession, insofar as it requests information about individuals who are not AT&T employees.

Subject to and without waiving its objections, AT&T incorporates and restates its responses to Interrogatories Nos. 1 and 6.  Pursuant to Fed. R. Civ. P. 33(d), AT&T

10

further states that additional responsive information is located in the account notes for Mr. Williams's account, which AT&T will be producing in response to Mr. Williams's First Requests for Production, and that the burden of locating such information will be substantially the same for Mr. Williams as for AT&T.

8.    Identify and describe each instance when any of AT&T's present and former agents, employees, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees changed, modified, or altered the Williams Account(s), or attempted to so, including the actual or attempted changing of any passcode, PIN, passwords, or other login or security information associated with the Williams Account(s).

**ANSWER:**    AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects to the interrogatory as vague and ambiguous with respect to the phrase "changed, modified, or altered the Williams Account(s)," and will interpret that phrase to mean changes to the passcodes, login information, or email addresses, or SIM changes, on Mr. Williams's account. AT&T further objects to this interrogatory as overly broad and seeking information not relevant to the claims or defenses in this matter insofar as it seeks information about activity on Mr. Williams's account that has no connection to any of the incidents alleged in the complaint. AT&T further objects that AT&T has no reasonable way to know or keep a record of each instance that an individual may have "attempted" to, but did not, make a change to Mr. Williams's account.

Subject to and without waiving its objections, AT&T incorporates and restates its responses to Interrogatories Nos. 1 and 6. Pursuant to Fed. R. Civ. P. 33(d), AT&T further states that additional responsive information is located in the account notes for Mr. Williams's account, which AT&T will be producing in response to Mr. Williams's First Requests for Production, and that the burden of locating such information will be substantially the same for Mr. Williams as for AT&T.

9.     From January 1, 2007 to the date of this request, describe any training that AT&T provides or provided, arranges or arranged, organizes or organized, or otherwise makes or made available to its agents, employees, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees concerning SIM Swapping, including:

(a)     whether such training is or was mandatory;

(b)     how AT&T provides or provided such training and ensures that it is or was taken;

(c)     the date such training is or was implemented (and discontinued if applicable); and

(d)     how AT&T creates or created and updates or updated such training.

**ANSWER:**   AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects that the interrogatory is overly broad, and vague and ambiguous with respect to the term "concerning SIM Swapping." AT&T further objects to this request on the basis that it seeks information protected by the attorney-client and/or attorney work product privileges. AT&T further objects to this

12

interrogatory on the basis that it seeks proprietary, confidential and/or trade secret information.

Subject to and without waiving its objections, AT&T states that it maintains and regularly updates a comprehensive series of mandatory training programs designed to, among other things, protect the security of customer accounts and prevent unauthorized account activity, including SIM swapping, both internally and externally with employees, third-party authorized retailers, call center operators, and other vendors.

AT&T also facilitates training on a variety of subjects, many of which also cover SIM changes. AT&T's internal and external educational and training initiatives include mandatory employee and third-party vendor training programs that use varying instructional methods to inform, teach and review employees' knowledge. They also provide employees and third-party vendors with a platform to practice their knowledge and skills to help protect customers.

These training programs include instruction on fraud prevention, authentication, social engineering, protection of Customer Proprietary Network Information ("CPNI"), and account verification. Example compliance courses for Authorized Retail representatives include "AT&T Voicemail Security," "CPNI," "Preventing Fraud," and "Social Engineering Awareness."

Similarly, the mandatory training courses that AT&T customer-facing employees must complete include, but are not limited to, the following:

- AT&T Code of Business Conduct (annual)

13

- CPNI Best Practices, updated (annual)

- Fraud Awareness and Prevention (annual)

- Protecting and Understanding CPNI (annual)

- Social Engineering – Security Awareness (annual)

Additionally, representatives who have access to customer accounts are required to be adequately trained on AT&T's authentication processes to validate an existing customer's identity prior to making any changes, updates, or providing any information in relation to an account.

All new AT&T employees are required to complete New Hire Training tailored to their future roles in the Company within their first weeks and months on the job. This training consists of general corporate compliance training on topics such as AT&T's Code of Business Conduct and AT&T's Privacy and Information Security course that all employees must complete, as well as specific training relevant to the individual's job functions. For example, newly hired call center representatives must complete training on critical topics, including how to protect CPNI, within 30 days of hire and before handling customer calls. Employees undergoing training on fraud awareness and prevention learn how preventing fraud will provide benefits to the customer: "Deliver the best customer service experience," "Make it seamless by transferring customers to the appropriate department," and "Resolve fraud issues."

In addition to training, AT&T runs awareness campaigns to remind employees of key issues between training courses. AT&T training provides in-depth instruction about specific topics, while awareness campaigns are intended to reinforce that

14

training and keep it top-of-mind for employees. Awareness campaigns may focus on general issues to keep awareness of certain risks on a regular basis, such as social engineering.

AT&T's Chief Security Office teams also flag areas of vulnerability based on AT&T's experience with fraudulent activity or information gathered from third-party sources. Teams within AT&T's Chief Security Office then develop awareness campaigns targeted to the areas of security concerns, including educating customer representatives on the risk of social engineering and how to avoid falling victim to social engineering attacks.

Regarding the administration of training programs, AT&T administers its training program through a comprehensive course curriculum, and it raises awareness on these key issues throughout the Company on an ongoing basis. AT&T primarily administers its multilayered training program through its flagship development and training program, AT&T University (sometimes "TU" or "TUniversity"), which is managed by Human Resources ("HR"). AT&T University provides interactive training courses that include self-paced online training courses and instructor-led sessions and simulations.

AT&T University's courses contain multiple lessons on a particular topic, and include "Check Your Knowledge" assessments at the end of each lesson. Some training courses require employees to complete an assessment at course completion and score an 80% or higher. Many of the instructor-led classes are highly interactive,

and some include simulations, emulators, or skills practice that allow employees to practice what they have learned.

Employees are required to retake training courses when AT&T University's Curriculum Design team makes a material change/update in the policies and procedures covered by that training. AT&T's teams and departments submit the material changes/updates to the Curriculum Design team via a feedback form that is regularly distributed by the team. A course is updated if its content is outdated or incorrect. If the changes to the courses include material changes of approximately 20% or more, measured qualitatively and quantitatively, that course is removed from the system and a new course is launched. Moreover, sales representatives and other customer-facing employees are required to complete the "Fraud Awareness and Prevention" and "Social Engineering Awareness" courses annually. AT&T mandates an overall minimum 95% completion rate for the relevant employees, and no employee can miss training two years in a row.

AT&T tracks its employee training completion using a tool called Corporate Compliance Reporting, which maintains reports on which employees have completed trainings. The compliance department within HR tracks completion and sends a report to the leader of the employees' respective team or department. The leader of the team or department is responsible for pursuing employees to ensure that they complete the training. AT&T's vendors are responsible for tracking the training completion of the vendor's employees, and for providing written confirmation to AT&T that all training has been completed.

16

10. From January 1, 2007 to the date of this request, identify and describe any AT&T policies, procedures, internal controls, training, or other information concerning:

    (a)    The protection of Customer Proprietary Network Information (or CPNI) and other sensitive customer data; and

    (b)    SIM Swapping.

**ANSWER:** AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects to this interrogatory's request for information concerning CPNI as overly broad and seeking information not relevant to the merits of any claim or defense in this matter. Mr. Williams has not plausibly alleged any fact or circumstance, and AT&T is aware of no fact or circumstance, indicating that Mr. Williams's CPNI was disclosed to any individual who impersonated Mr. Williams or breached any of Mr. Williams's non-AT&T accounts, or that any of Mr. Williams's CPNI facilitated, enabled, or proximately caused any of the events giving rise to the damages Mr. Williams asserts in this action. AT&T further objects to this request on the basis that it seeks information protected by the attorney-client and/or attorney work product privileges. AT&T further objects to this interrogatory on the basis that it seeks proprietary, confidential and/or trade secret information. AT&T further objects to this interrogatory's request for information on training as duplicative of Interrogatory No. 9. AT&T further objects to this interrogatory as vague and

17

ambiguous with respect to the phrases "other information" and "other sensitive customer data."

Subject to and without waiving its objections, and pursuant to Fed. R. Civ. P. 33(d), AT&T states that responsive information is located in AT&T's policy documents concerning SIM changes, customer verification and account change procedures, which AT&T will be producing in response to Mr. Williams's First Requests for Production, and that the burden of identifying the responsive information in those materials will be substantially the same for Mr. Williams as for AT&T. In addition, AT&T will produce a copy of its privacy policy(ies) and policies designed to protect subscriber confidential information and CPNI in effect during the period of unauthorized SIM changes Mr. Williams alleges in the complaint.

11.     If any of the individuals You identify in response to Interrogatories 1, 2, 6, or 7 have been terminated, provide the date of and reason for each individual's termination.

**ANSWER:** AT&T objects to this interrogatory as seeking information not in AT&T's possession, custody, or control, insofar as the interrogatory seeks information regarding the rationale and actions of third-party entities with respect to the termination of their own employees. AT&T further objects to this interrogatory as overly broad and seeking irrelevant information insofar as it seeks information regarding the termination of any individual who Mr. Williams does not allege engaged in any improper conduct regarding Mr. Williams's AT&T account. Similarly, this request is overly broad insofar as it seeks information regarding the termination

18

of any employee who has ever interacted with Mr. Williams's account or communicated with Mr. Williams, without any indication that such interaction or communication was in any way improper.

Subject to and without waiving its objections, AT&T states that employee Sidney Hancock was terminated on December 11, 2018 for attendance issues. AT&T lacks sufficient knowledge or information regarding whether the individuals not employed by AT&T and identified in response to Interrogatories 1, 2, 6, or 7 have been terminated by their employers identified in those responses, and AT&T states that their employers may have such information.

12.    Describe AT&T's past and current business relationships with the following entities:

  (a) Prime;
  (b) Alorica;
  (c) Teleperformance; and
  (d) Concentrix.

**ANSWER:**  AT&T objects to this interrogatory as vague and ambiguous with respect to "describe" AT&T's "business relationship" with the identified entities. AT&T will interpret the interrogatory as seeking the identification of the general role of the entities with respect to AT&T's operations and the general services the entities provide.

Subject to and without waiving AT&T's objections, AT&T states that Prime is an authorized retailer of AT&T services, and that Alorica, Teleperformance and Concentrix are vendors that provide call center support services.

19

13.    From January 1, 2007 to the date of this request, identify and describe any instances where an AT&T customer alleged to AT&T that they were subject to a SIM Swap.

**ANSWER:**    AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects that the interrogatory seeks confidential information regarding AT&T's communications and interactions with, and services provided to, other AT&T subscribers. AT&T further objects that the interrogatory is overly broad and seeks irrelevant information regarding allegations raised by other AT&T subscribers who are non-parties to this action and whose allegations are immaterial to the merits of Mr. Williams's claims regarding his own interactions with AT&T.  Because Mr. Williams has alleged that AT&T violated its duties to him and his claims will therefore rise or fall based on the evidence concerning his own interactions with AT&T, the burden of identifying, collecting, and reproducing information regarding other customers' experiences is not proportional to the needs of the case and would far outweigh any likely benefit of the disclosure of such information in this matter. AT&T further objects because the requested information is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy

Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects to this request on the basis that it seeks information protected by the privacy right of third parties.

14. From January 1, 2007 to the date of this request, identify and describe any all claims, lawsuits, and administrative or regulatory actions Concerning SIM Swapping.

**ANSWER:** AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects that the interrogatory is overly broad and seeks irrelevant information regarding claims raised by individuals who are non-parties to this action and whose allegations are immaterial to the merits of Mr. Williams's claims regarding his own interactions with AT&T. Because Mr. Williams has alleged that AT&T violated its duties to him and his claims will therefore rise or fall based on the evidence concerning his own interactions with AT&T, the burden of identifying, collecting, and reproducing information regarding other customers' experiences is not proportional to the needs of the case and would far outweigh any likely benefit of the disclosure of such information in this matter. AT&T further objects because the requested information is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects

21

to this interrogatory as overly broad because, as worded, it seeks information regarding legal proceedings that do not involve AT&T.

Subject to and without waiving its objections, AT&T states that it is currently aware of the following lawsuits of public record regarding SIM changes and to which AT&T is a named party:

- *Drzal v. Spring Communications Holding, LLC et al.*, No. D-1-GN-19-007003 (Travis Co. Ct., Texas); Filed 3/13/2020

- *Ross v. AT&T Mobility LLC*, No. 3:19-cv-6669 (N.D. Cal.); Filed 10/17/2019

- *Sutton v. AT&T Corporation,* No. 2020-CV-46788 (Coffee Co. Ct., Tennessee); Filed May 18, 2020

- *Shapiro v. AT&T Mobility LLC*, No. 2:19-cv-8972 (C.D. Cal.); Filed 10/17/2019

- *Terpin v. AT&T Mobility LLC*, No. 2:18-cv-6975 (C.D. Cal.); Filed 8/15/2018

- *Williams v. AT&T Mobility LLC*, No. 5:19-cv-0475 (E.D.N.C.); Filed 10/24/2019

15.    From January 1, 2007 to the date of this request, identify any of AT&T's present and former agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that are and/or were responsible for the protection and security of AT&T customers' Data and privacy, including protection from SIM Swaps and provide the full names, telephone numbers, email addresses, and employee ID numbers of any such persons or entities, as well as the date ranges when those persons had such responsibilities. This requests includes the identity and contact information of any managers or executives who lead groups, departments, or divisions responsible for the protection and security of AT&T customers' Data and privacy, including members of AT&T's Leadership.

**ANSWER:**    AT&T objects to this interrogatory as lacking a reasonable temporal limitation. The complaint alleges the incidents underlying the claims in this

matter occurred "between November 2018 and February 2019" [Dkt. 2 ¶ 20], and AT&T's response will therefore be limited to information relevant to that time period. AT&T further objects that the interrogatory is vague and ambiguous with respect to the phrase "responsible for the protection and security of AT&T customers' Data and privacy." All AT&T employees have obligations regarding data security and privacy issues, and all AT&T employees therefore have some level of responsibility concerning those matters. Moreover, responsibility for data security issues may be distinct from responsibility for issues concerning subscriber privacy, and AT&T is therefore unable to determine from the interrogatory, as worded, which of its personnel would be responsive. For the same reasons, AT&T also objects to the interrogatory as overly broad and unreasonably burdensome in that it appears to seek the identity of countless AT&T present and former employees over more than the past decade.

AT&T will not respond to the interrogatory as worded, but welcomes the opportunity to meet and confer with Mr. Williams's counsel to agree upon an appropriate scope for the information Mr. Williams seeks.

KILPATRICK TOWNSEND & STOCKTON LLP

_(signature)_
_____
Joseph S. Dowdy (N.C. State Bar No. 31941)
Phillip A. Harris, Jr. (N.C. State Bar No. 39740)
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com
        pharris@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
Email: mbreslin@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

24

## **VERIFICATION**

I, Paula M. Phillips, am over the age of 18 and of sound mind. I am the Legal Administrator of AT&T Services, Inc. I hereby verify the interrogatory responses contained in AT&T Mobility LLC's Objections and Answers to Plaintiff Jason Williams' First Set of Interrogatories to Defendant and am duly authorized to do so. I further state that, to the extent any matters stated therein are not within my personal knowledge, the facts stated therein have been assembled by authorized persons, I have been informed that those facts are true.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: July 20, 2020

Paula M. Phillips
Legal Administrator, AT&T Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on date set out below, I served a true copy of the foregoing **DEFENDANT AT&T MOBILITY LLC'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** by electronic mail, pursuant to the agreement of counsel for all parties, to all counsel of record and additional persons listed below:

Terence S. Reynolds
treynolds@shumaker.com
Lucas D. Garber
lgarber@shumaker.com
SHUMAKER LOOP & KENDRICK LLP
101 South Tyron Street
Suite 2200
Charlotte, North Carolina 28280

*Local Civil Rule 83.1(d) Counsel for Plaintiff Jason Williams*

Christopher LaVigne
Christopher.LaVigne@withersworldwide.com
Joe Gallo
Joseph.Gallo@withersworldwide.com
WITHERS BERGMAN LLP
430 Park Avenue, 10th Floor
New York, NY 10022

*Counsel for Plaintiff Jason Williams*

And to:

Lalindar.Sanichar@witherworldwide.com
Laura.Gosheff@withersworldwide.com

This the 20th day of July, 2020.

_____
Joseph S. Dowdy