# EXHIBIT E



430 Park Avenue, 10th Floor, New York, New York 10022-3505
t: +1 212 848 9800
f: +1 212 848 9888
www.withersworldwide.com

September 1, 2020

**By Email**
**(**JDowdy@kilpatricktownsend.com**)**

Joseph S. Dowdy
Kilpatrick Townsend
Suite 1400, 4208 Six Forks Road
Raleigh, NC 27609

> Re: Williams V. AT&T Mobility, LLC; Case Number: 5:19-CV-00475-BO
> Defendant's Discovery Deficiencies

Dear Mr. Dowdy:

Pursuant to Local Rule 7.1(c)(2), we write this letter to advise you that we have reviewed Defendant's responses to Plaintiff's discovery requests, as well as Defendant's production of documents Bates stamped ATT-WIL-00001-01600, and we have identified several instances in which Defendant's responses are deficient. Capitalized terms not defined herein as used in the same manner as they are used in the Complaint and/or in Plaintiff's discovery requests. Defendant's deficient responses include:

**"Temporal Limitation" Objection: Document Request Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17; Interrogatory Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 13, 14, 15**

In Defendant's responses to the above discovery requests, Defendant objects to each as "lacking a reasonable temporal limitation." To the contrary, both Plaintiff's Document Requests and Interrogatories specify that "[u]nless otherwise specified in a particular request, these [document requests or interrogatories] concern the time period from January 1, 2018, until the date of this request." Additionally, certain Document Requests and Interrogatories have specific differing time periods, including Interrogatories 9, 10, 13, 14, and 15; and Document Requests 2, 7, 8, 9, 10, 12, and 17. The time periods for each request are based on the allegations in the Complaint, including allegations of Defendant's pattern of treatment of customer privacy and security in the time period leading up to the SIM Swaps that targeted Plaintiff.

Defendant's decision to arbitrarily limit their responses to the above requests to the time period "between November 2018 and February 2019" is baseless, notwithstanding Defendant's mischaracterization of the Complaint in its responses. Discovery responsive to the above requests from the time period before and after Defendant's artificially limited period is highly relevant to Plaintiff's claims and Defendant's defenses. For example, Defendant's practices and public statements regarding SIM Swaps from the time

direct: +1 212 848 9882
fax: +1 212 824 4282
e-mail: christopher.lavigne@withersworldwide.com
admitted in New York
NY28603/0001-US-8474674/3

Withersworldwide
London Cambridge Geneva Milan Padua Sydney
Hong Kong Singapore Tokyo British Virgin Islands
New York Greenwich New Haven San Francisco
Los Angeles Rancho Santa Fe San Diego

period before November 2018, including information regarding the security and protection of Plaintiff's account, are relevant to Plaintiff's claims regarding Defendant's failure to adequately secure his account from the SIM Swaps alleged in the Complaint, including claims regarding the veracity of Defendant's public statements regarding the security of customer information and its knowledge of the prevalence of and risks associated with SIM swapping.  Likewise, Defendant's communications, both internal and external, from the time period after February 2019 regarding the SIM Swaps that affected Plaintiff's account are relevant to Plaintiff's claims about Defendant's failure to adequately secure his account, including the adequacy or inadequacy of Defendant's response to the rash of unauthorized SIM swaps impacting Defendant's users, including Plaintiff.  Put frankly, if Defendant's executives were unaware of this pattern of unauthorized SIM swaps during these time periods, it is hugely problematic, and if they were aware of it Plaintiff is entitled to discovery regarding what was discussed and what actions were taken.

For these reasons, Defendant's limiting of its responses to the time period "between November 2018 and February 2019" fails to comply with Defendant's discovery obligations.  Although the original time periods for Plaintiff's requests are reasonable in light of his allegations about Defendant's patterns and practices regarding customer security and protection from SIM Swaps, in the interest of meeting and conferring in good faith, Plaintiff proposes the following compromise.  For the above discovery requests with time periods beginning earlier than January 1, 2018, please produce supplemental responses and documents for the time period between April 8, 2015 and the date of Plaintiff's request (*i.e.*, the time period since the announcement of the 2015 FCC Consent Decree described in the Complaint (Dkt. 2 ¶ 140)).  For the remaining above document requests, please produce supplemental responses and documents for the time period between January 1, 2018 and the date of Plaintiff's request.

**"Account Notes": Document Request Nos. 1, 2, 3, 4, 5; Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 8**

Defendant's responses to the above document requests make reference to Defendant's "account notes for Mr. Williams's account."  Defendant's response to Document Request No. 5 also refers to a "Device Life Cycle."  As stated above, we are in receipt of Defendant's production of documents Bates stamped ATT-WIL-00001-01600.  Please confirm that this production includes all of the documents you have located from the sources you describe as "account notes for Mr. Williams's account" and the "Device Life Cycle."  If you intend to produce additional documents from those sources, please tell us when you intend to do so.

Notwithstanding Defendant's responses to the above document requests, these document requests seek the production of relevant documents that are not necessarily located in or connected to what Defendant has described as "account notes for Mr. Williams's account" and the "Device Life Cycle."  For example, Document Request No. 3 seeks the production of all documents and communications concerning, among other things, the "seven SIM Swaps described in the Complaint."  To the extent there are documents and communications responsive to this request but are not contained in the two sources referenced in Defendant's response to the request, those documents and communications must be produced.  For example, in the only production we have received from Defendant to date, there do not appear to be any emails, messages, or other communications between or among Defendant's employees regarding the subjects of Plaintiff's discovery requests. Any such communications are plainly relevant to the claims and defenses in this lawsuit and must be produced.  As described above, if no such communications exist, that fact is also relevant to Plaintiff's claims regarding Defendant's actions (or lack thereof) regarding the unauthorized SIM Swaps that have harmed (and continue to harm) its customers, including Plaintiff.  Accordingly, please produce all documents and communications responsive to the above document requests, regardless of how

they are stored or categorized by Defendant. If no such documents exist beyond what you have already produced, please confirm as much in response to this letter.

Defendant also makes reference to "account notes for Mr. Williams's account" in its responses to the above interrogatories. Defendant refuses to provide substantive responses to these interrogatories because it claims that the burden of searching the account notes for responsive information "will be substantially the same for Mr. Williams as for AT&T." Defendant's responses are noncompliant with applicable discovery rules; it is improper for Defendant to refer entirely to its document production in lieu of a written response to a targeted interrogatory. That said, in the interest of efficiency and with full reservation of rights, we will await Defendant's production of all documents and communications responsive to Plaintiff's document requests before determining if it is necessary to demand supplemental written responses to the above requests.

**Document Request No. 12**

Notwithstanding Defendant's written response to this document request, this request is not limited to "public statements made by AT&T in articles or blog posts regarding the proliferation of efforts by unauthorized persons to effect SIM changes without the subscriber's permission." This request plainly seeks the production of a broader category of relevant documents and communications regarding "AT&T's public statements Concerning SIM Swapping…," including, for example, public statements about AT&T's efforts to secure its customers' SIM Cards and protect against SIM Swapping. Please produce documents responsive this request in its entirety, and not just documents that fall into the narrow category described in Defendant's written response.

**Document Request No. 17**

Defendant stated that it has "no documents responsive to this request." In light of the "temporal limitation" issue discussed above, which is applicable to this request, we request that Defendant search for documents responsive to this request for the time period between April 8, 2015 and the date of Plaintiff's request.

In addition, given the notoriety and importance of SIM Swapping issues in the telecommunications industry in the responsive time period of this request, and Defendant's statement that it found no documents responsive to this request in its previous search, we request the opportunity to meet and confer with you further regarding the search for documents responsive to this request. We would like to discuss the custodians and/or document sources that will be searched, any search terms that will be used, and the other criteria for Defendant's search for documents responsive to this request.

**Interrogatory No. 15**

Per Defendant's response, we agree that it would be useful for the parties to meet and confer regarding AT&T's response to this request. In the first instance, we request that AT&T identify agents, employees, managers, executives, contractors, franchisees, Authorized Retailers, and/or Authorized Retailer employees, managers, executives, or contractors that:

- Are and/or were directly responsible for the security of Plaintiff's account;

- Do and/or did have supervisory and/or managerial responsibility for those individuals that are and/or were directly responsible for the security of Plaintiff's account;

Joseph S. Dowdy
September 1, 2020

- Head, run, or lead any department, regional division, or other corporate division that is responsible for the security of Plaintiff's account;

- Head, run, or lead of any department, regional division, or other corporate division that is responsible for the protection of customer accounts against SIM Swapping; and/or

- Are members of AT&T's Board of Directors, Board of Director committees, or AT&T's Leadership and have responsibility for the protection of customer accounts against SIM Swapping.

We are available to continue to meet and confer with you to discuss the issues set forth herein, including agreeing to a reasonable date for Defendant's supplemental responses and document production in accordance with the above. This letter is not intended to contain a complete description of Defendant's discovery efficiencies. We and our client reserve all rights.

Very truly yours,

Christopher N. LaVigne

cc: Terence S. Reynolds (treynolds@shumaker.com)
   Lucas D. Garber (lgarber@shumaker.com)

NY28603/0001-US-8474674/3                                               4.

Case 5:19-cv-00475-BO   Document 58-5   Filed 02/12/21   Page 5 of 5