# EXHIBIT F



KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

Suite 1400, 4208 Six Forks Road
Raleigh, NC 27609
t 919 420 1700 f 919 420 1800

Joseph S. Dowdy, Partner
direct dial 919 420 1718
direct fax 919 510 6120
JDowdy@kilpatricktownsend.com

September 18, 2020

Terence S. Reynolds          treynolds@shumaker.com
Lucas D. Garber              lgarber@shumaker.com
Shumaker Loop & Kendrick LLP
101 South Tyron Street, Suite 2200
Charlotte, NC 28280

Christopher LaVigne          christopher.lavigne@withersworldwide.com
Joe Gallo                    joseph.gallo@withersworldwide.com
Withers Bergman LLP
430 Park Ave., 10th Floor
New York, NY 10022

Re: *Williams v. AT&T Mobility, LLC*; Case Number: 5:19-cv-00475-BO

Dear Counsel:

We are in receipt of your letter dated September 1, 2020 regarding AT&T's responses to Plaintiff's First Interrogatories and Document Requests and the deficiencies you believe exist in AT&T's responses. We respond to each point in your letter as set forth below.

**"Temporal Limitation" Objection: Document Request Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17; Interrogatory Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 13, 14, 15**

AT&T's "temporal limitation" of November 2018 through February 2019 tracks the exact timeline of the SIM swaps alleged in the Complaint. Any versions of documents existing prior to or following the dates of the alleged SIM swaps would be irrelevant as they were not effective during the relevant time period. However, in the interest of conferring in good faith, AT&T will supplement its production to include documents and information pertaining to the time period between January 1, 2018 and November 2018 that are relevant to the above referenced discovery requests and were previously excluded due to the "temporal limitation" you referenced. Any actions AT&T took after Plaintiff's alleged February 2019 SIM swap are not relevant to his claims against AT&T, but we will also produce certain documents concerning steps AT&T has taken to prevent SIM swap damages that occurred after February 2019.

You also note in your letter that "Defendant's practices and public statements… [before Nov. 2018] are relevant to Plaintiff's claims…" and should therefore be produced. If "practices and public statements" are specifically what Plaintiff's seeks to obtain by way of these requests and
ANCHORAGE ATLANTA AUGUSTA BEIJING CHARLOTTE DALLAS DENVER HOUSTON LOS ANGELES NEW YORK RALEIGH SAN DIEGO
SAN FRANCISCO SEATTLE SHANGHAI SILICON VALLEY STOCKHOLM TOKYO WALNUT CREEK WASHINGTON WINSTON-SALEM

Case 5:19-cv-00475-BO Document 58-6 Filed 02/12/21 Page 2 of 4

interrogatories, then that information is in large part equally accessible to Plaintiff and should not form the basis for a discovery dispute. Further, regarding AT&T's internal policies or practices relevant to the SIM swap incidents alleged in the Complaint, we have agreed above to provide those in effect as of January 2018 and through the duration of those incidents.

Regarding your reference to the 2015 Consent Decree: the consent decree concerned allegations of disclosure of customers' sensitive personal information, such as names and portions of social security numbers, as well as alleged but not verified disclosure of customer proprietary network information (CPNI). *See* 30 FCC Rcd. 2808 at *2808, ¶¶ 5, 11, 19. SIM swaps, in stark contrast, are carried out for the purpose of gaining the use of a customer's phone number, not for the purpose of stealing any of the customer's sensitive personal information or CPNI in the carrier's possession.[1] Indeed, the process of performing a SIM change typically entails only changing in AT&T's system the mobile device to which the subscriber's telephone number is assigned, and not the disclosure of any personal information or CPNI to the person requesting the SIM change. In fact, it is the person requesting the SIM change that must provide information about the account holder in order for a SIM change to be processed, not vice versa. Consistently, AT&T's investigation of this matter – and as indicated in Plaintiff's account notes which AT&T has produced in discovery – indicate the SIM swaps on Plaintiff's account involved only changing the mobile device to which Plaintiff's wireless phone number was associated, and not the disclosure of any of Plaintiff's sensitive personal information or CPNI. Accordingly, the harm underpinning the 2015 Consent Decree is unrelated to the SIM swap incidents Plaintiff alleges here and the consent decree therefore has no bearing on the appropriate temporal scope of discovery.

**"Account Notes": Document Request Nos. 1, 2, 3, 4, 5; Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 8**

Your letter requests confirmation that AT&T has produced all account notes from Plaintiff's account with AT&T. We can confirm that AT&T has produced all account notes pertaining to Plaintiff's account with AT&T for the period between December 17, 2017 and February 7, 2020. *See* ATT-WIL-00624.

Regarding your reference to Document Request No. 3, which seeks production of all documents and communications concerning the alleged SIM swaps, we have produced all responsive non-privileged documents concerning the alleged SIM swaps. AT&T is not in possession of any additional non-privileged internal communications as you suggest in your letter. Plaintiff reported and discussed the SIM swaps by telephone or in person with AT&T retail and/or customer service agents. These interactions are recorded in the account notes, and the account notes are the extent of AT&T's records of those interactions with Plaintiff. Prior to serving his legal demand on AT&T, Plaintiff did not directly interact with or request assistance from anyone within AT&T's corporate offices, and limited his interactions to his communications with AT&T retail and/or customer service agents, the records of which AT&T has produced. Any other internal communications relating to the SIM swaps took place after Plaintiff served notice of his claims on AT&T, at which point AT&T's legal department became engaged. Any such subsequent internal communications are therefore protected by the attorney-client privilege.

---

[1] *See also* 47 U.S.C. § 222(h) (excluding "subscribers' telephone numbers" from the definition of CPNI).

**Document Request No. 12**

As you note, this document request seeks AT&T's "public statements Concerning SIM swapping." AT&T has produced its public statements concerning SIM swaps, which consisted of statements made in articles and blog posts. This is the extent of AT&T's public statements "concerning SIM swapping" that are currently in its possession or control. To the extent you believe additional documents exist, or seek documents and information not in AT&T's possession or control, we note that any such publicly available information is equally available to Plaintiff.

**Document Request No. 17**

AT&T previously searched for documents that could be responsive to this request, and this search included periods outside of the "temporal limitation" you identify in your letter. We can confirm that no such documents exist for any period of time remotely related to Plaintiff's alleged SIM swaps and therefore AT&T has no further documents to produce.

**Interrogatory No. 15**

We appreciate your effort to meet and confer to allow AT&T to provide a response that satisfactorily answers this interrogatory. However, as noted in AT&T's response to this interrogatory, all persons "responsible for the protection and security of AT&T customers' Data and privacy" could conceivably include every employee who has ever worked for AT&T. Plaintiff's effort to limit the request to the identification of only AT&T parties directly responsible for Williams' account security is a step in the right direction, but still fails to limit the interrogatory to a scope that AT&T can reasonably answer.

If you wish to rephrase the interrogatory, or to seek more information about a particular AT&T employee or third party agent who you believe was directly and personally responsible for the security of Plaintiff's AT&T account, please identify them. If you are requesting identification of a "person most knowledgeable" within AT&T as to these topics, please do so, and we would be happy to discuss further.

Should you have any questions about any of the above, please do not hesitate to contact us. This letter should not be interpreted as a waiver or limitation of any of AT&T's objections or defenses, and AT&T reserves all rights and objections.

           Warm regards,

           *Joseph S. Dowdy*
           Joseph S. Dowdy

cc: Michael Breslin, Esq.
   Adam Wiley, Esq.