EXHIBIT I

| | |
|---|---|
| **From:** | Breslin, Mike <mbreslin@kilpatricktownsend.com> |
| **Sent:** | Tuesday, January 26, 2021 5:39 PM |
| **To:** | Gallo, Joseph |
| **Cc:** | Dowdy, Joe; LaVigne, Christopher; Wiley, Adam |
| **Subject:** | RE: Williams v AT&T meet and confer |

Joe –

You're correct. Our search terms captured all the emails you sent, except one, because it referenced an "unauthorized SIM *card* change" rather than an "unauthorized SIM change." To address that, we will run an additional search using the "(SIM or subscriber identity module or subscriber identification module) w/10 Unauthoriz!" term you proposed. Also, in good faith, we agree to run the following additional searches you proposed:

- (SIM or subscriber identity module or subscriber identification module) w/10 Fraud!
- (SIM or subscriber identity module or subscriber identification module) & Defiore
- Defiore & Prime
- (SIM or subscriber identity module or subscriber identification module) & Vasquez
- Vasquez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Jimenez
- Jimenez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Mostoles
- Mostoles & (TPUSA or Teleperformance)
- (SIM or subscriber identity module or subscriber identification module) & Libanan
- Libanan & (Concentrix or Convergence)
- (SIM or subscriber identity module or subscriber identification module) & Hancock

The remaining terms you sent are inappropriate for the reasons I outlined in my December 11, 2020 email, as well as other reasons we discussed, and I have not received any substantive response to the rationale we laid out in early December. We are reviewing the emails that our prior searches retrieved and hope to have those to you soon. Your demand for a February 5 production based on search terms you first proposed on January 22 is unreasonable. We will include the results from these new terms in our ongoing review and supplement our production as we are able.

As for Slush Pool, we initiated this process, sought your cooperation in subpoenaing the records, and now seek your cooperation in obtaining the records via a direct channel we have set up with the founder. I can't think of any reason you would refuse to cooperate unless AT&T turns the process over to you and relinquishes all insight into what records Slush Pool can produce, other than to prevent AT&T from knowing what potentially relevant materials it should demand. Unless you can articulate a good reason why AT&T should not be included on the communications with Slush Pool and should not know what documents Slush Pool can provide about the account, I suggest we ask the court to intervene and determine what would be fair in this process.

Let me know your preference.

Best,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA 30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph
**Sent:** Monday, January 25, 2021 12:35 PM
**To:** Breslin, Mike
**Cc:** Dowdy, Joe ; LaVigne, Christopher ; Wiley, Adam
**Subject:** RE: Williams v AT&T meet and confer


Mike:

Please see page 1 of the attached PDF ("PRIME000001") for the email we are referring to. We received these documents late Tuesday night. The first email, from Dan Haley to Ray Hill, would not have been captured by your proposed terms. We have not yet received any other substantive communications involving AT&T from the third parties we have subpoenaed thus far, but we will prepare a share file with the remaining productions we have received, and plan to get that to you later this week.

Please give us the contact information for Slush Pool's founder, and we will reach out to him to request Mr. Williams' information. You insinuation that we intend to withhold relevant documents from AT&T is ridiculous and unfounded. Your "compromise" is nonsensical. AT&T cannot "authorize" Slush Pool to release any of Mr. Williams records; only Mr. Williams can do that. We will review what we receive from Slush Pool and provide any responsive documents to AT&T, in accordance with our discovery responsibilities.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Friday, January 22, 2021 12:35 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

Send us the email you are referencing from your third party efforts so we can assess what you're claiming.  In
the same vein, please fulfill your obligation to send us complete sets of any documents you have received from
your third party discovery efforts, as I don't believe we have received any of those from you yet. We will
review that and get back to you on your request.

Regarding Slush Pool, I have a dialogue with Slush Pool's founder about this and we should use that channel
for this request as it will expedite the process.  Your concern about the release of "wholesale information" is
unfounded, and ignores the scope of Mr. Williams' allegations and the specific information Slush Pool said it
could provide that I outlined below. Mr. Williams alleges AT&T caused the entire loss of his mining operation,
and his complaint puts all of his mining reward transaction history (Paras. 32-34), the records of security and
account setting changes (Paras. 42, 73), and any communications he had with Slush Pool (which would be
limited to discussing the incidents alleged in the complaint) directly at issue in this case.  Given that, there is no
reason to object to Slush Pool releasing the specific information they identified – his mining transaction
histories, account activity and security settings changes, and his communications with Slush Pool – outside of a
desire to prevent AT&T from obtaining relevant information.  As a compromise, I will agree that we can jointly
contact Slush Pool and authorize them to release all available information to you, as counsel for Mr. Williams,
provided that we receive an itemized list of all materials Slush Pool provides that we can use to assess the
sufficiency of what you ultimately produce to us.

Let me know if that is acceptable.

Thanks,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Friday, January 22, 2021 11:10 AM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer


We are responding to the two issues you raised in your January 13 email.

1) Notwithstanding your discussions with the custodians AT&T has identified, AT&T's proposed search terms are still plainly insufficient. In fact, our third party discovery efforts have revealed an email communication between one of your identified AT&T custodians and a third party that is plainly responsive and relevant, <u>but would not have been captured by AT&T's narrow terms</u>. As we have explained to you many times, AT&T's proposed search terms are simply too restrictive to effectively capture responsive documents, and fall well short of AT&T's discovery obligations.

This back and forth has gone on long enough. It is nearly the end of January, and AT&T is seemingly no closer to producing responsive documents from even the four custodians that AT&T has itself identified. In a final effort to meet and confer with you in good faith, we are proposing the below list of search terms. This list dramatically narrows the scope of our original list. To be clear, this list is our attempt to reach a compromise regarding initial searches for documents from the four custodians AT&T has identified to date. If the discovery process reveals the need for additional searches and/or custodians, we reserve the right to seek any such additional discovery from AT&T. If AT&T does not search for and produce responsive documents from the four identified custodians using the below search terms (as well as producing any other responsive documents that AT&T locates) <u>on or before February 5, 2021</u>, we will move to compel AT&T's discovery compliance.

- (SIM or subscriber identity module or subscriber identification module) w/10 Swap!
- (SIM or subscriber identity module or subscriber identification module) w/10 Hack!
- (SIM or subscriber identity module or subscriber identification module) w/10 Intercept!
- (SIM or subscriber identity module or subscriber identification module) w/10 Hijack
- (SIM or subscriber identity module or subscriber identification module) w/10 Chang!
- (SIM or subscriber identity module or subscriber identification module) w/10 Fraud!
- (SIM or subscriber identity module or subscriber identification module) w/10 Defraud!
- (SIM or subscriber identity module or subscriber identification module) w/10 Impersonat!
- (SIM or subscriber identity module or subscriber identification module) w/10 Scam!
- (SIM or subscriber identity module or subscriber identification module) w/10 Verif!
- (SIM or subscriber identity module or subscriber identification module) w/10 Imposter
- (SIM or subscriber identity module or subscriber identification module) w/10 Pretend!
- (SIM or subscriber identity module or subscriber identification module) w/10 Fake!
- (SIM or subscriber identity module or subscriber identification module) w/10 Faking
- (SIM or subscriber identity module or subscriber identification module) w/10 Compromise!
- (SIM or subscriber identity module or subscriber identification module) w/10 Pose!
- (SIM or subscriber identity module or subscriber identification module) w/10 Posing
- (SIM or subscriber identity module or subscriber identification module) w/10 Compromise!
- (SIM or subscriber identity module or subscriber identification module) w/10 Breach!
- (SIM or subscriber identity module or subscriber identification module) w/10 Unauthoriz!
- (SIM or subscriber identity module or subscriber identification module) w/10 Authoriz!
- (SIM or subscriber identity module or subscriber identification module) w/10 Polic!
- (SIM or subscriber identity module or subscriber identification module) w/10 Train!
- (SIM or subscriber identity module or subscriber identification module) w/10 Investigat!
- (SIM or subscriber identity module or subscriber identification module) w/10 Compliance
- (SIM or subscriber identity module or subscriber identification module) w/10 Risk
- (SIM or subscriber identity module or subscriber identification module) w/10 Secur!
- (SIM or subscriber identity module or subscriber identification module) w/10 Access!
- (SIM or subscriber identity module or subscriber identification module) w/10 (CPNI or Customer Proprietary Network Information)
- (SIM or subscriber identity module or subscriber identification module) w/10 (Consent Decree)

- (SIM or subscriber identity module or subscriber identification module) w/10 (Ident! w/3 (Theft or False))
- (SIM or subscriber identity module or subscriber identification module) w/10 (ID w/3 (Theft or False))
- (SIM or subscriber identity module or subscriber identification module) w/10 Privacy
- (SIM or subscriber identity module or subscriber identification module) w/10 (Information w/3 (Confi! or Private or Personal or Sensitive))
- (SIM or subscriber identity module or subscriber identification module) w/10 (Data w/3 (Confi! or Private or Personal or Sensitive))
- (SIM or subscriber identity module or subscriber identification module) w/10 (Customer w/3 (Confi! or Private or Personal or Sensitive))
- (SIM or subscriber identity module or subscriber identification module) & Prime
- (SIM or subscriber identity module or subscriber identification module) & Alorica
- (SIM or subscriber identity module or subscriber identification module) & (Concentrix or Convergence)
- (SIM or subscriber identity module or subscriber identification module) & (TPUSA or Teleperformance)
- (SIM or subscriber identity module or subscriber identification module) & Defiore
- Defiore & Prime
- (SIM or subscriber identity module or subscriber identification module) & Vasquez
- Vasquez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Jimenez
- Jimenez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Mostoles
- Mostoles & (TPUSA or Teleperformance)
- (SIM or subscriber identity module or subscriber identification module) & Libanan
- Libanan & (Concentrix or Convergence)
- (SIM or subscriber identity module or subscriber identification module) & Hancock
- ("Jason Williams" or "534115196684" or "919-889-7464")
- (SIM or subscriber identity module or subscriber identification module) & Williams

2) As we mentioned before, Mr. Williams has justified concerns about AT&T obtaining wholesale information regarding his private financial accounts, and will not give his permission for Slush Pool to release such information to AT&T. If Slush Pool is willing to release information to AT&T with Mr. Williams' permission, it is simpler and more secure for us to make a request for that information to Slush Pool directly, and then produce any responsive documents to you. We intend to make such a request to Slush Pool shortly.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Wednesday, January 13, 2021 5:24 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

I'm providing an update as discussed on our call last week.

(1) We've surveyed the AT&T custodians and they confirmed that, when discussing SIM swaps, they use the
terms "SIM swap" or "SIM hijack," and that searching for the terms you proposed in Tranche 1 will not return
pertinent results beyond what we've already culled.

(2) We've spoken with Slush Pool and, given their operations are in the Czech Republic, a subpoena from our
court does not seem viable. They have, however, agreed to release to us the following information (to the extent
they can find it) if Mr. Williams will provide them his permission:  transaction histories, account activity
histories (including login IP addresses, and changes to account and security settings), and communications with
Mr. Williams. This is relevant information that was requested in our discovery, and that Mr. Williams claims he
is unable to access on his own.  Please let us know if he will authorize Slush Pool to release the information
and, if so, we can discuss the procedure for getting it.

Thanks,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Monday, January 4, 2021 1:02 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Mike:

As we have stated, we disagree with AT&T's approach regarding the search terms. At this point, we think a call to discuss the search terms would be useful. What is your availability on Wednesday, Thursday, or Friday of this week? Please let us know, thanks.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



---

**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Wednesday, December 30, 2020 3:20 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

Thanks for sending these responses and the updates. On your proposed search terms, we won't agree to run searches that we believe are aimed at categories of irrelevant materials and, even as to those categories, still appear too broad. I am not foreclosing further discussion on this, but we took the time to lay out our rationale as to the irrelevance of those tranches of terms, and it would be helpful to a continuation of our good faith efforts here to get some sort of substantive response to the specific issues we set out. A statement that you believe the terms are proper and will retrieve relevant materials doesn't give us any factual basis to reconsider our position.

On the subpoenas, we are happy for you to take the lead on Gmail / Google Drive, so as to avoid any issues with the Stored Communications Act – thank you for offering to do that. I'm not sure I understand what

materials will be returned by a subpoena requesting "full access" to those accounts, but we have no objection to how you choose to word it so long as (a) whatever you request encompasses the document requests we previously circulated, and (b) we receive a log (date, sender, recipient, subject line) of the records responsive to our request so we can assess the sufficiency of the ultimate production. In all events, we would like to see a draft of the subpoena before it goes out.

As to the other subpoenas we proposed (Slush Pool, Coinbase, etc.), we will issue those. Having taken a closer look at the SCA, we don't believe the docs we're going to request will trigger any of the SCA's prohibitions. This obviously wouldn't foreclose Mr. Williams issuing his own subpoenas to those entities if he likes, but if there are additional materials he wants beyond the document requests we previously circulated, let us know since it would probably make sense to coordinate a single subpoena to each entity.

A few follow up items on the updates you sent below:

- The account notes we produced indicate JASONWILLIAMS@YAHOO.COM was used as the registered email address for Mr. Williams' AT&T account right around or after the time he alleges the SIM swaps happened. Am I understanding you correctly that Mr. Williams says he has never used that address (and therefore didn't register it on his AT&T account)?

- The account notes also indicate J.WILLIAMS@FASTMED.COM was associated with Mr. Williams' AT&T account during the time of the SIM changes he alleges and that he received relevant communications to that address from AT&T relating to the changes on his account during Nov. 2018-Feb. 2019. Have you searched that email for communications responsive to our document requests?

- Any updates on Mr. Williams' review of the PRTITECH.COM and MORGANCREEKCAP.COM email accounts?

Thanks and Happy New Year to you and Chris.
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA 30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Friday, December 18, 2020 9:25 AM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


Mike:

We are responding to your December 11 email regarding discovery issues.

<u>AT&T's Discovery Responses</u>

- We appreciate your efforts to meet and confer regarding search terms, and we have reviewed your proposed "tranches" of search terms, but your proposed approach is insufficient. As you know, we believe our list is entirely proper and will capture relevant documents and communications for the four custodians you have identified. That said, and as we have stated previously, while we are amenable in theory to amending or removing certain terms in our proposed list, it does not make sense to do so until we know if any of those terms are potentially unduly burdensome.

  Why can AT&T not simply run our proposed search terms using the date range in Plaintiff's requests for each of the four custodians you have identified, and then use those results metrics as the basis for a discussion (as we proposed in our November 17 email)? You identified the four initial custodians on October 21. Surely you (or AT&T) have segregated the four custodians' documents for the requested date ranges by now. We sent our list of terms to you on November 11. It would take only a couple of hours, at most, to run our search terms and record the results. If you think reviewing and producing documents in response to any of our search terms will create an undue burden on AT&T, this is how we can meaningfully discuss that issue.

  To that point, AT&T's delays in producing responsive documents and communications are getting increasingly unreasonable. You received Plaintiff's first document requests and interrogatories on June 5, but based upon your meet and confer communications, it appears that you and AT&T have still not even begun reviewing any AT&T emails that are potentially responsive to this request. The fact that AT&T has not yet produced results metrics for even the handful of (overly narrow) search terms that AT&T itself proposed is only AT&T's latest discovery delay, and does not bode well for AT&T's ability to timely review and produce AT&T's responsive documents and communications. Even with the extended discovery schedule, we will need sufficient time to review the documents that AT&T produces ahead of depositions and expert discovery. The parties agreed to an extension of the discovery deadlines in this case based on mutual representations that the parties would continue to work in good faith to search for and produce responsive documents. If AT&T cannot demonstrate at least some good faith by providing us with results metrics for our full list of search terms by January 8, 2021, we will be forced to seek appropriate relief from the Court.

- Regarding the subpoenas, thank you for providing the scope of AT&T's proposed requests to each subpoena recipient. However, there is no need for you to issue these subpoenas or for our client to consent to them. Given the breadth of AT&T's requests, and because these documents are our client's documents that we, too, wish to review to the extent they are available and accessible, we will issue subpoenas to Google, Slush Pool, Coinbase & Dropbox. We will then review and produce documents to you in response to AT&T's discovery requests (subject to Plaintiff's objections and any future meet and confer efforts). Plaintiff's subpoenas will request full access to the information in those accounts, so they will necessarily encompass the entire scope of AT&T's proposed subpoena requests. This approach eliminates the need for AT&T to obtain Plaintiff's consent and thereby simplifies the process for getting this information, and would also address Plaintiff's understandable privacy concerns regarding authorizing AT&T to have such broad access to his personal and financial accounts (including his personal email).

<u>Mr. Williams's Discovery Responses</u>

We have some updates regarding the topics you raised in your email:

- Mr. Williams is currently unable to download or otherwise access any iCloud or other cloud storage containing relevant emails, text, other messages or information.

- The screenshots of partial conversations that you refer to are screenshots of mobile devices that are no longer operable. Mr. Williams is currently unable to access the information in those devices.

- Please see attached for a version of the previously produced document JW_0007 with wallet address / transaction hash information unredacted. The document has an alternative Bates number that corresponds to the originally produced document. The other redactions in the production contain confidential personal information unrelated to the claims and defenses in this lawsuit.

- To his knowledge, Mr. Williams has never had a Yahoo email account. Mr. Williams has used a fastmed.com email account for limited professional purposes in the past, but has not done so recently, and that account does not contain responsive documents. Mr. Williams has been searching his prtitech.com email for responsive documents, and has already produced documents from that account. Mr. Williams has also identified a morgancreekcap.com email account that he may have used during the responsive time period, and is in the process of searching that account for responsive documents.

- Beyond what he has produced to date, Mr. Williams has not located any additional responsive, non-privileged documents regarding his mining losses.

- Beyond what he has produced to date, Mr. Williams has not located any copies of statements made to third parties regarding the SIM swap incidents (including statements related to the podcast and interview you refer to in your email).

We do not believe it is necessary to have a call at this point to discuss any of the above issues, but we are certainly willing to reconsider having a call based on your response to the issues raised in this email. In any event, please respond to our request above regarding AT&T's discovery responses. Thank you.

Regards,
Joe


**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Friday, December 11, 2020 2:39 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** Re: Williams v AT&T meet and confer

Joe –

Thanks for your patience on this. I am responding to a few of the outstanding items and looking for your feedback so we can reach agreement on these or set up a call to have further discussions.

1) Regarding the search terms you proposed, we continue to believe they are too broad and exceed the scope of the incidents and issues in this case. See our attached comments to your list and let us know your thoughts and whether we should set up a call to talk through them (or feel free to send responses to our comments if that would help frame our discussion). On a related note, we are hopeful that we will soon have the results metrics on the terms we proposed, which were designed to capture emails and documents that concern either unauthorized SIM changes (in any context) or Mr. Williams or his AT&T account. Our intent has been to discuss those with you and talk through any modifications that you believe are necessary (including with reference to the terms you proposed) to capture any additional categories of relevant documents that we have not already produced or would not be returned by our search terms. We will let you know when we have that information.

2) Your concerns regarding Mr. Williams consenting to the third party subpoenas we are proposing, without first knowing what documents we would request, are fair. We've prepared the attached summary of the four subpoenas we are envisioning (based on our understanding that these represent the four accounts Mr. Williams says he still cannot access – Gmail/Google, Slush Pool, Coinbase & Dropbox – if that is wrong, let us know). Let us know if Mr. Williams will consent to the production of these documents. If you have concerns about any of the requests, please provide comments or proposed redlines so we can work through those.

3) Please let us know if you have an update on Mr. Williams' efforts to supplement his document production. On our last call, we noted the following issues that you were going to look into:

      - Whether he can download an iCloud backup of his prior phone memory to obtain relevant emails / texts / chat messages, including iMessage, WhatsApp, Facebook messenger, etc.

      - Whether he can produce complete email / text threads of relevant conversations where we received only a screenshot of a portion of the conversation.

      - Whether Mr. Williams would produce the wallet addresses / transaction hash information it appears he redacted from his document production. *See*, for example, JW_0007.

- Searching the other email addresses our records show he used during the relevant period - j.williams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com -- for additional responsive documents (*i.e.*, communications with law enforcement, or concerning the hacks of his third party accounts, *e.g.*, Gmail, Dropbox, Instagram, Twitter, LinkedIn, etc.).

- Whether Mr. Williams has additional documents substantiating his claimed mining losses, such as records of the $650,000 of expenses he claims he incurred, or documents showing why he couldn't continue mining after the February 2019 incidents, the market value of his rigs when he shut down the operation, etc.

- Whether Mr. Williams has copies of his statements to third parties regarding the SIM swap incidents (on our call we referenced a podcast and a separate interview we found that he's done about them).

4) Last, one item that we need and we think Mr. Williams should be able to produce fairly easily is the payout wallet address(es) he used for his Slush Pool operation. Those addresses would be included in the materials we requested in RFP 17. Can you please check if he has those addresses and will provide them?

Thanks,
-Mike



**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard
**Click Here to Access Our COVID-19 Resources**

---

**From:** Breslin, Mike
**Sent:** Wednesday, December 9, 2020 8:42:55 PM
**To:** Gallo, Joseph; Wiley, Adam
**Cc:** Dowdy, Joe; LaVigne, Christopher
**Subject:** Re: Williams v AT&T meet and confer

Joe -

Sorry for the delay in responding. We've had a network outage at the firm and are just now getting emails from earlier this week. We will respond to your email shortly.

Thanks,
-Mike



**Michael Breslin**

**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard
**Click Here to Access Our COVID-19 Resources**

---

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Tuesday, December 8, 2020 10:29:48 AM
**To:** Wiley, Adam; Breslin, Mike
**Cc:** Dowdy, Joe; LaVigne, Christopher
**Subject:** RE: Williams v AT&T meet and confer


Adam, I am following up on my query regarding search terms.  Please respond, thanks.

Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



---

**From:** Gallo, Joseph
**Sent:** Tuesday, November 24, 2020 6:52 PM
**To:** 'Wiley, Adam' <AWiley@kilpatricktownsend.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<christopher.lavigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


Adam:

Thank you for drafting the motion papers. Please see attached for a version of the joint motion with a revised signature block for Plaintiff. Other than the signature block, we have no revisions to the papers, so please go ahead and file them.

Regarding AT&T's proposed subpoenas, we understand your request, but Mr. Williams cannot provide his consent to hypothetical subpoenas at this time. We do not know what information AT&T intends to request from the contemplated service providers, or how those service providers will respond to any such requests. Without more information, Mr. Williams cannot provide his blanket, preemptive consent. We are, however, willing to discuss this issue with you further.

Regarding the scope of AT&T's searches, we appreciate Mike's expression of your and AT&T's intent to cooperate on discovery issues. However, neither you nor Mike responded to the inquires in my November 17, 2020 email regarding AT&T's search terms. When will you provide us with the requested hit counts for our proposed search terms, so that we can continue to meaningfully meet and confer regarding those terms? Again, while we are happy to join you in making this motion for an extension of the discovery schedule, we think it is better to know now if we are at an impasse regarding AT&T's discovery obligations, so we can seek Court assistance sooner rather than later. Please let us know, thanks.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Wiley, Adam [mailto:AWiley@kilpatricktownsend.com]
**Sent:** Monday, November 23, 2020 12:37 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>; Gallo, Joseph
<Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher

<Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe,

We prepared the attached joint motion and proposed order requesting the scheduling order modifications we discussed. Let us know if you have any revisions in redline.

Also following up on Mike's request below for confirmation that Mr. Williams will cooperate with the anticipated third party subpoenas to avoid any SCA related issues.

Thanks,

**Adam Wiley**
**Kilpatrick Townsend & Stockton LLP**
1801 Century Park East | Suite 2300 | Los Angeles, CA 90067
office 310 777 3733 | fax 310 388 5804
awiley@kilpatricktownsend.com | My Profile | vCard

**From:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Sent:** Tuesday, November 17, 2020 12:08 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe,

Thank you for the response. We are happy to hear you are amenable to the schedule extension we proposed, and we will get started on a joint motion for you to review. With respect to the remainder of the email, we note two items.

First, as you likely anticipated, we disagree with your characterizations, including your contention that AT&T is permitting discovery on only some of Mr. Williams' claims. Though we view Plaintiff's requests as exceeding what the Federal Rules authorize, we will continue in a good faith effort to reach agreement with you on a reasonable scope that comports with Rule 26. We look forward to continuing our cooperation with you to work through the issues on both sides.

Second, regarding third party subpoenas to service providers such as Gmail where Mr. Williams maintains an account containing relevant materials, certain laws, including the Stored Communications Act, would render the subpoenas ineffective absent Mr. Williams' consent to the production of responsive materials. Because Mr. Williams claims he is unable to access those relevant materials on his own, we are requesting his cooperation in obtaining them through a subpoena, including by providing written consent if necessary to the service providers to comply with the subpoenas. Please let us know if Mr. Williams will cooperate in that regard.

Best,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA 30309-4528

office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard
**Click Here to Access Our COVID-19 Resources**

---

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Tuesday, November 17, 2020 1:00 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


Adam:

I am responding to your November 12, 2020 email regarding the discovery status in this case. We agree that a joint motion to the Court seeking a continuance of the scheduling order is in the parties' interest at this time. Unfortunately, it appears that is about the extent of our agreement. The rest of your email is disingenuous and counterproductive, and purports to "avoid any further finger pointing" while making a number of erroneous claims and accusations about discovery in this case. We are consequently compelled to correct the record regarding the numerous mischaracterizations in your email.

We acknowledge that you disagree with our position that AT&T's improper delay in providing discovery responses is the reason the parties are in the positon of having to ask the Court for the proposed extension. Your incomplete description of the parties' meet and confer efforts aside, we think the fact that AT&T has not searched for, let alone produced, any emails or non-account note communications in response to Mr. Williams' discovery requests speaks for itself.

AT&T's discovery recalcitrance seems to be based on its continued insistence that its discovery obligations are somehow limited to only certain of Mr. Williams' claims. As Mr. Williams clearly alleged in the complaint and as we have repeatedly explained to you during our meet and confer efforts, Mr. Williams' claims concern, in part, AT&T's negligence in failing to adequately protect its customers' private information from SIM swaps. Accordingly, discovery in this case must necessarily encompass AT&T's policies, procedures, training documents, and communications regarding AT&T's SIM swap prevention and response efforts, including but not limited to those SIM swaps that Mr. Williams was subjected to. Mr. Williams' discovery requests, which were served on AT&T five months ago, plainly and clearly request documents and information regarding SIM swapping beyond the specific SIM swaps that affected Mr. Williams. AT&T tried to limit Mr. Williams' claims regarding AT&T's failure to protect its customers from SIM swaps at the motion to dismiss stage, and the Court comprehensively rejected that attempt. AT&T's attempt to re-litigate its failed motion to dismiss arguments by unilaterally imposing arbitrary and unreasonable limits on Mr. Williams' discovery requests is an abuse of the discovery process.

In keeping with AT&T's continued efforts to avoid its discovery obligations in this lawsuit, your position regarding Mr. Williams' proposed search terms is nonsensical. AT&T, not Mr. Williams, asked that Mr. Williams propose search terms for four (4) custodians that AT&T, not Mr. Williams, identified. We agree to provide AT&T with proposed terms in an effort to facilitate the discovery process. In the parties' meet and confer conversations and in AT&T's supplemental initial disclosures identifying those custodians, you and AT&T explicitly represented that those four custodians had knowledge of topics that did not include information regarding Mr. Williams specifically, and that AT&T does not have any non-privileged documents regarding Mr. Williams other than what you have already produced to us. Accordingly, in our November 11, 2020 email to you, we explicitly stated:

Our understanding, based on your representations, is that the custodians you have identified thus far do not have any documents in their possession related to Mr. Williams's account specifically. Accordingly, the search terms below are focused on SIM swapping issues more generally. If you determine that the custodians you have identified thus far, or other custodians you identify in the future, do have documents related to Mr. Williams account specifically, please let us know promptly, we can discuss additional terms accordingly.

In light of this context, for you to now claim that the lack of Mr. Williams' name in our list of proposed search terms is indicative of an "improper fishing expedition" is bizarre, and smacks of bad faith. Again, AT&T is required to provide discovery regarding all of Mr. Williams' claims, not just the ones it wants to.

If you identify proposed edits to our list of search terms, we are willing to discuss those edits with you. Indeed, facilitating such a discussion was the entire point of sending you the list of terms; during the parties' November 4 meet and confer discussion, you stated specifically that you were requesting proposed search terms because it is your and your client's position that the parties should agree on those search terms before AT&T began searching for responsive communications. However, instead of engaging in a good faith discussion regarding our search terms, you have simply asserted that AT&T will begin searching for documents using an unreasonable narrow set of terms that will likely omit large amounts of relevant and responsive documents. While we welcome the fact that AT&T is finally searching for responsive communications and other documents in the possession of AT&T custodians, and we acknowledge that AT&T is certainly free to conduct any searches it would like in addition to the search terms we have thus far proposed (and AT&T should do so if it believes those additional searches will help it locate responsive documents that might otherwise be missed), we do not agree that the terms in your November 20 email are "broad enough to capture the documents" Mr. Williams has requested in connection with his claims against AT&T. To the contrary, your limited list of search terms makes clear that AT&T is still not taking its discovery obligations in this lawsuit seriously, and is continuing its attempts to pick and choose which of Mr. Williams' allegations are acceptable topics for discovery, which is of course improper.

Additionally, it is unclear to us why it would take AT&T nearly two weeks to run a handful of search terms for four custodians, as you state in your email. To your point about the potential for mishits and irrelevant documents if AT&T used our proposed search terms, it would incredibly helpful for the discovery process if you could tell us which of our specific proposed search terms are producing large numbers of hits for each custodian, and then we could discuss whether limiting or modifying those terms makes sense to streamline discovery and weed out irrelevant documents. However, if AT&T is unable to run such a small number of terms on a limited set of custodians in a timely manner, it will be impossible for the parties to efficiently meet and confer regarding search terms. Therefore, in order to make meaningful progress towards a workable list that encompasses all of Mr. Williams' claims and discovery requests, AT&T should run our full list of proposed search terms immediately, and then we can discuss the results.

Regarding the claims in your November 20 email concerning Mr. Williams' discovery responses: Mr. Williams has met and will continue to meet his discovery obligations in this case, and we do not agree that any deficiencies that you allege exist in Mr. Williams' responses to date would require any continuance or extension to remedy. Your email attempts to create a false equivalency between AT&T's and Mr. Williams' discovery conduct that does not exist. AT&T's discovery obligations exist separate and apart from Mr. Williams' obligations, and AT&T must meet those obligations regardless of its claims about Mr. Williams' responses.

The purported issues regarding Mr. Williams' discovery responses you raise in your email are either not legitimate issues, or in the process of being resolved. For example, you raise the issue of Mr. Williams searching for and producing documents in response to your request (as opposed to us doing it for him), as if that were somehow improper. It is, of course, entirely proper for an individual plaintiff to search his own records for responsive documents. As we told you in our November 4 meet and confer phone conference, we have

worked with our client to respond to AT&T's discovery requests in good faith, and will continue to do so in our ongoing search for additional responsive information. We also note that throughout our meet and confer discussions, you have repeatedly represented that you have been relying on your client to identify responsive documents, information, and custodians. "Goose and gander" idioms aside, there is nothing unreasonable about Mr. Williams' discovery efforts and responses to date. Mr. Williams, as an individual, will necessarily have fewer relevant documents than AT&T (particularly when he has suffered multiple SIM hacks and when we have provided evidence that certain of his accounts are inaccessible), and any of the alleged deficiencies you have raised regarding his responses can be resolved within the current discovery schedule.

Regarding Mr. Williams' response to AT&T's Interrogatory No. 11, you are correct that the parties dispute the sufficiency of Mr. Williams' responses to date. As we stated in the November 4 meet and confer phone conference, Mr. Williams has not learned any information since filing his amended complaint that would materially change his fraud allegations and, as a result, any response to this interrogatory would necessarily simply repeat those fraud allegations. We also stated that we remain unconvinced that there is any legal authority that requires Mr. Williams to duplicate his fraud allegations in a discovery response, when those fraud allegations are already clearly and sufficiently pleaded in the complaint. In that same conference, you stated that Mr. Williams re-stating his fraud allegations in response to this interrogatory might address your current issues with his response. We said that we would consider that option, and we are still doing so in consultation with our client. If you wish to make a motion to compel while we are considering supplementing our response, you are of course free to do so. In any event, this is not an issue that would require an extension of time for the parties to resolve.

Your proposal to "take a limited deposition of Mr. Williams regarding his efforts to identify responsive materials since you have relied on him to self-produce documents" is ridiculous. As we have stated, we are continuing to work with Mr. Williams to identify any responsive documents that may still be in his possession. Any questions you have for Mr. Williams regarding the documents he has produced (or hypothetical documents that he has not) can be addressed at his full deposition. What is more, as discussed above, you have told us that you are also relying on your client to identify and collect information responsive to Mr. Williams' requests. So, by your logic, we should be deposing all AT&T employees who provided, or that you have spoken with about providing, you with responsive documents, provided you with potential custodians, and are conducting the proposed searches of those custodians. If you insist on seeking a limited deposition of Mr. Williams on the basis that he is responsible for providing documents to us in response to AT&T's discovery requests, we will seek an appropriate protective order.

Regarding your proposed third-party subpoenas: AT&T may, of course, send subpoenas to whomever it likes, and does not require Mr. Williams' consent to do so.

Having addressed the claims in your November 12 email for the record, as we mentioned above, we will agree to a joint motion for a continuance of the scheduling order in this lawsuit. We do not want, nor do we believe it is necessary, to delay the Court's suggested trial date of October 18, 2021. Because your proposed extended schedule does not necessitate a change to the suggested trial date, we are fine with that proposed schedule. Please prepare and circulate a joint motion along the lines you propose, and we will review it.

However, before we agree to submit any joint motion seeking a continuance of the scheduling order, we believe it is crucial that the parties reach an understanding regarding the scope of AT&T's search for documents responsive to Mr. Williams' SIM swapping discovery requests. If the parties are not able to reach an understanding regarding AT&T's discovery obligations on this point, we should seek Court assistance promptly, as opposed to waiting for five more months when we have another time crunch. Accordingly, concurrent with your preparation of the joint motion, please confer with your client and advise us when you are able to have a meet and confer call this week to discuss AT&T's proposed searches for responsive documents.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



---

**From:** Wiley, Adam [mailto:AWiley@kilpatricktownsend.com]
**Sent:** Thursday, November 12, 2020 4:11 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe,

I am responding to your November 11, 2020 email below regarding proposed AT&T custodian search terms, as well as the attached November 6, 2020 email where you provided clarifying points to our meet and confer conference summary and proposed new expert discovery deadlines.

First, we object to your general characterization that AT&T is unfairly delaying the discovery process. Mr. Williams has produced a total of 65 pages of documents thus far in the case and you revealed that you have been relying on Mr. Williams to gather and self-produce documents of his choosing rather than having him turn over his files to you for review and production. We also did not resolve our dispute over the selection of AT&T PMKs until our October 5 meet and confer call, before which you had requested the names of every person over the past 13 years who has had any responsibility or direct responsibility for protecting customer data and privacy. Similarly, as you noted in your meet and confer clarification email, we are still in the middle of a dispute over AT&T's Interrogatory No. 11, and while not clearly stated, it appears that you are refusing to supplement Plaintiff's response to this interrogatory on the basis that AT&T must produce documents before Mr. Williams can determine what alleged misrepresentations were made to him by AT&T. "Cart before the

horse" idioms aside, it's worth noting that there are outstanding discovery issues on both sides of this dispute that have led to where we are now.

Accordingly, we believe it would be prudent for both sides to recognize that the delay in this case is not one-sided, avoid any further finger pointing, and move forward with a joint motion requesting a continuance of the scheduling order. While we appreciate your effort to propose revised expert discovery deadlines that could fit within the current scheduling order's dates, we expect that this process will take longer than the current scheduling order will allow, which necessitates its revision. We propose asking the court to push all dates back by four months as outlined at the bottom of this email.

Second, your proposed search terms are broader than necessary to produce responsive documents to your client's discovery requests and would return such a voluminous set of documents that your proposed deadline of November 24, 2020 would be impossible to meet. The search terms you have proposed are not tailored to the issues in the case and are so broad that they would return hundreds of thousands (if not millions) of documents, more than 99% of which would have no relevance to any issue in the case. For example, the term "SIM" alone would pull a massive amount of irrelevant documents given that AT&T is in the business of operating a global cell phone network that is reliant on the use of SIM cards. We also note that your proposed search terms don't even include the name "Williams," which signals these terms are geared more towards an improper fishing expedition than identification of records actually relevant to our clients' dispute.

We have already begun the process of testing search terms on the previously identified AT&T custodians using a set of search terms that we believe are fairly tailored to the issues yet broad enough to capture the documents we believe you are seeking. The proposed search terms we sent to AT&T are as follows: ("SIM SWAP*" or "SIM HIJACK*" or ("SIM CHANGE*" w/2 (UNAUTHORIZ* or FRAUD*))) OR ("Jason Williams" or "53411596684" or "919-889-7464"). However, even using these more targeted search terms, our client informed us yesterday that it will be at least two weeks (Nov. 25, the day before Thanksgiving) before we get the result metrics, after which we will need to review those metrics to determine whether the search terms should be modified further and, in all events, once we agree on appropriate search terms, we must review the returned documents for responsiveness/privilege. Given this timeline, we will not be able to produce additional AT&T custodian documents by your proposed response deadline under any circumstance, which is another reason we believe the parties should seek an extension of the scheduling order.

Finally, in the interest of moving forward discovery on our end, we would like to: (a) take a limited deposition of Mr. Williams regarding his efforts to identify responsive materials since you have relied on him to self-produce documents; and (b) obtain Mr. Williams' consent to subpoenas to third parties such as Gmail, Slushpool, and Coinbase, where Mr. Williams maintains accounts containing key relevant materials but, as you have informed us, Mr. Williams claims he is unable to access. Please let us know if you will agree to these.

Here are our proposed revisions to the scheduling order:

**Current Scheduling Order/Stipulated Dates**

- Nov. 15, 2020 – P's expert disclosures (as agreed by parties)
- Nov. 30, 2020 – P's deadline to amend pleadings or join add'l parties
- Dec. 15, 2020 – D's expert disclosures (as agreed by parties)
- Dec. 30, 2020 – D's deadline to amend pleadings or join add'l parties
- Jan. 15, 2020 – rebuttal expert disclosures (as agreed by parties)
- Feb. 19, 2021 –
  o all discovery completed (must serve in time to be completed by this date)
  o deadline to mediate before Rene Stemple Trehy (Beason & Trehy Conflict Resolution)
- Apr. 16, 2021 – dispositive motions due

- Trial date – not set yet, but could be set as early as May 16, 2021

**Proposed changes to Scheduling Order**

- Mar. 15, 2021 – P's deadline to amend pleadings or join add'l parties
- Mar. 30, 2021 – P's expert disclosures
- Apr. 15, 2021 – D's deadline to amend pleadings or join add'l parties
- Apr. 30, 2021 – D's expert disclosures
- May 17, 2021 – rebuttal expert disclosures
- Jun. 18, 2021 –
o all discovery completed (must serve in time to be completed by this date)
o deadline to mediate before Rene Stemple Trehy (Beason & Trehy Conflict Resolution)
- Aug. 16, 2021 – dispositive motions due
- Trial date – not set yet, but could be set as early as September 16, 2021

This extension would allow us sufficient time to work through our numerous discovery issues, avoid a multitude of key deadline during the holidays, and is long enough that we should not need to seek a further extension from the Court. Let us know your thoughts on the above and, if you are agreeable, we are happy to get started on a draft joint motion for you to review.

Thank you,

**Adam Wiley**
**Kilpatrick Townsend & Stockton LLP**
1801 Century Park East | Suite 2300 | Los Angeles, CA 90067
office 310 777 3733 | fax 310 388 5804
awiley@kilpatricktownsend.com | My Profile | vCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Wednesday, November 11, 2020 7:07 AM
**To:** Wiley, Adam <AWiley@kilpatricktownsend.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


Adam:

Per our meet and confer discussions, please see below for a list of search terms for AT&T's custodians. As we have stated in our meet and confer discussions, our position is that Mr. Williams' discovery requests to AT&T, as originally propounded five months ago, are sufficiently clear to allow AT&T to search for and produce responsive documents. We also reiterate our opposition to your request for these terms more than halfway through the discovery period despite your pervious representations that your client has been searching for and collecting documents responsive to our discovery requests. Furthermore, it borders on absurd that it took your client five months to come up with the names of the four custodians that we are now providing search terms for. Accordingly, these search terms are not offered to limit or waive Mr. Williams' discovery requests in any way, but are instead offered to facilitate the discovery process. We reserve the right to supplement this list as the discovery process continues.

Our understanding, based on your representations, is that the custodians you have identified thus far do not have any documents in their possession related to Mr. Williams's account specifically. Accordingly, the search terms

below are focused on SIM swapping issues more generally. If you determine that the custodians you have identified thus far, or other custodians you identify in the future, do have documents related to Mr. Williams account specifically, please let us know promptly, we can discuss additional terms accordingly.

Please contact us with any questions. Please also produce documents from the custodians you have identified thus far no later than Tuesday, November 24, 2020. As discussed, any further delays in AT&T production of responsive documents would be unreasonable, and would make the Court's discovery schedule untenable.

Search terms:

- SIM
- Subscriber identity module
- Subscriber identification module
- Hack!
- Swap!
- Intercept!
- Compromise!
- Scam!
- Verif!
- Impersonat!
- Imposter
- Pretend!
- Fake!
- Faking
- Pose!
- Posing
- Breach!
- Defraud!
- Authoriz!
- Unauthoriz!
- Customer w/10 secur!
- Customer w/10 fraud!
- Customer w/10 access!
- Customer w/10 id
- Customer w/10 ident!
- Customer w/10 priv!
- Account w/10 secur!
- Account w/10 fraud!
- Account w/10 access!
- Account w/10 id
- Account w/10 ident!
- Account w/10 priv!
- Data w/10 secur!
- Data w/10 fraud!
- Data w/10 access!
- Data w/10 id
- Data w/10 ident!
- Data w/10 priv!
- Information w/10 secur!
- Information w/10 fraud!

- Information w/10 access!
- Information w/10 id
- Information w/10 ident!
- Information w/10 priv!
- Information w/10 personal
- Prime
- Alorica
- TPUSA
- Teleperformance
- Concentrix
- Convergys
- CPNI
- Customer Proprietary Network Information
- Consent w/10 decree
- Consent w/10 order
- Comply w/10 decree
- Comply w/10 order
- Compliance w/10 decree
- Compliance w/10 order
- Compliance w/10 report
- Compliance w/10 office!
- Compliance w/10 plan!
- FCC
- Federal Communications Commission
- Information Security Program
- Risk Assessment

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Gallo, Joseph
**Sent:** Friday, November 6, 2020 2:28 PM
**To:** 'Wiley, Adam' <AWiley@kilpatricktownsend.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<christopher.lavigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Adam:

Thank you for your email.  We have a few points of clarification:

- Regarding AT&T's Interrogatory No. 11, we would add that even if there was a legal basis for AT&T to request supplemental responses along the lines set forth in your recent letter, we maintain that Mr. Williams doing so at this time would be premature in light of the discovery that AT&T has yet to produce, and that his providing responses now would result in unnecessary costs and duplication of effort.  In addition, to the extent you took the position yesterday that Mr. Williams' response to Interrogatory No. 11 has somehow resulted in a delay in AT&T's production of communications and other outstanding internal documents in response to Mr. Williams' discovery requests, we believe that this position is meritless for obvious reasons (as we stated on our call).

- Regarding AT&T's review and production of potentially responsive of communications and other outstanding internal documents, we would add that although we intend to provide you with proposed search terms in order to avoid further discovery delays, we maintain that in light of the allegations in the complaint and Mr. Williams' original discovery requests, there is no justifiable reason why we have not received any responsive communications to date (outside of Mr. Williams' account notes).  We understand that you disagree with that position.

Regarding, expert discovery deadlines, we suggest the following revised dates:

- Plaintiff's expert disclosure = December 16
- Defendant's expert disclosure = January 18
- Rebuttal disclosures = February 18

These new dates will only work if AT&T makes a prompt production of responsive communications and other outstanding internal documents.  Otherwise, we will likely have to ask the Court for a formal extension of the dates in the discovery schedule, and explain why an extension is necessary.

Regards,
Joe

**Joseph Gallo**
Senior Associate

Litigation
t +1 212 848 9856
[withersworldwide.com](http://withersworldwide.com) | [my profile](#)

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Wiley, Adam [[mailto:AWiley@kilpatricktownsend.com](mailto:AWiley@kilpatricktownsend.com)]
**Sent:** Thursday, November 5, 2020 4:44 PM
**To:** Gallo, Joseph <[Joseph.Gallo@withersworldwide.com](mailto:Joseph.Gallo@withersworldwide.com)>; Breslin, Mike
<[mbreslin@kilpatricktownsend.com](mailto:mbreslin@kilpatricktownsend.com)>
**Cc:** Dowdy, Joe <[JDowdy@kilpatricktownsend.com](mailto:JDowdy@kilpatricktownsend.com)>; LaVigne, Christopher
<[Christopher.LaVigne@withersworldwide.com](mailto:Christopher.LaVigne@withersworldwide.com)>
**Subject:** RE: Williams v AT&T meet and confer

Joe,

The following is our summary of the meet and confer call held yesterday afternoon. Let me know if you have any revisions or disagree with any of the below:

**<u>AT&T's Discovery Requests</u>**
1. You disagree with our analysis that Mr. Williams cannot reference a range of paragraphs in the Complaint as his response to AT&T's Interrogatory No. 11. We maintained our position that Mr. Williams should amend the response to list the specific misrepresentations or fraudulent omissions by AT&T that he is asserting as a basis for his claims. You agreed to discuss offline and get back to us on how Mr. Williams will address this issue.
2. Generally speaking, Mr. Williams is working with you to determine whether he may have additional documents, emails, and other written communications that are responsive to all of AT&T's document requests addressed in our October 27, 2020 meet and confer letter, although Mr. Williams contends he is still unable to access his Gmail, Coinbase, and Slushpool accounts or the materials in those accounts that may be relevant to this matter.
3. You advised us that you have not conducted any independent search of Mr. Williams's ESI or documents, and thus far have relied on Mr. Williams to provide you with documents responsive to our requests.

4. Mike noted that Mr. Williams may be able to access old text message and chat messages in Facebook, WhatsApp, etc. by attempting to restore an old iCloud backup of Mr. Williams' iPhone and/or review his chat history, and you agreed to check with your client on this possibility.

5. We requested that Mr. Williams supplement his production with complete email chains and text message threads of responsive communications, as opposed to the screen shots we have received of only a portion of those communications. You stated you are uncertain whether Mr. Williams has access to complete versions of those communications and that you would discuss with him and get back to us.

6. We then discussed each of the specific document requests where AT&T believes Mr. Williams may have additional documents. I summarized our conversations about some of the following specific requests:

a. **RFP 8**: We clarified that this request seeks initial warnings about account security that are provided when an account is opened, not (for example) the warnings that are provided after an account has been accessed using an unrecognized device or login location. You agreed to check with your client on whether he has any additional documents with that clarification in mind.

b. **RFP 9**: We noted that Mr. Williams appears to have redacted wallet addresses or transaction hashes from his document production that would otherwise tend to establish his ownership of the allegedly stolen cryptocurrency. See, for example, JW_0007. You agreed to check with your client on whether he would be willing to produce this redacted information and see if he has any other documents verifying his ownership of the cryptocurrency.

c. **RFP 12**: You agreed to check with your client to see if he received any other documents from the FBI or other law enforcement other than the communications that have already been produced.

d. **RFP 21 (and 24, 25)**: We noted that these requests track interrogatory No. 11, addressed above, regarding AT&T's alleged misrepresentations. You agreed to check with your client to determine if he has responsive documents.

e. **RFP 16 (and 22)**: You agreed to check with Mr. Williams about documents pertaining to his Twitter, Instagram, Dropbox, and Linkedin accounts.

f. **RFP 23 (and 26, 27, 31)**: We noted that Mr. Williams would need to provide evidence of the market value of his mining rigs, cryptocurrency lost, the $650,000 spent on his business, his inability to mine bitcoin after February 2019, and other claimed losses to establish his claimed damages. You agreed to check with Mr. Williams to determine whether he has any additional documents supporting his alleged losses.

g. **RFP 30**: We noted that Mr. Williams has publicly discussed his case with third parties, including at least one instance on a podcast. We requested production of any communications with third parties about the case, and you agreed to check with Mr. Williams to determine whether he has any responsive documents.

**Mr. Williams' Discovery Requests**

1. You expressed concern with the timing of AT&T's review of internal documents relating to SIM swapping generally. We responded that the process has been ongoing and that we disclosed the custodians most likely to have the information you are seeking about SIM swaps after receiving clarification from you on our last meet and confer discussion.

2. We explained that AT&T has taken steps to sequester potentially responsive documents from the identified custodians, and we expressed our desire to reach agreement with you on appropriate ESI search terms and parameters for searching those documents. You stated that it was your understanding those searches were already underway, and Mike responded that he believes the better practice is for the parties to reach agreement on the search parameters before undertaking those efforts.

3. We ended the discussion by agreeing to move forward with the process of (a) selecting search terms together; (b) using those search terms to conduct a search of AT&T's records to determine the number of documents that are potentially responsive to the request; and (c) providing an estimated timeline of production of responsive documents to Mr. Williams after initial steps (a) and (b) above have been completed.

4.  We also agreed to cooperate with you regarding any necessary extensions to the current case deadlines.

Thanks,

**Adam Wiley**
**Kilpatrick Townsend & Stockton LLP**
1801 Century Park East | Suite 2300 | Los Angeles, CA 90067
office 310 777 3733 | fax 310 388 5804
awiley@kilpatricktownsend.com | My Profile | vCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Thursday, October 29, 2020 10:55 AM
**To:** Wiley, Adam <AWiley@kilpatricktownsend.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


3:30pm works, thanks.

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Wiley, Adam [mailto:AWiley@kilpatricktownsend.com]
**Sent:** Thursday, October 29, 2020 1:45 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>; Breslin, Mike
<mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Hi Joe,

We're available after 3pm ET on November 4th. How about 3:30 pm to give you some extra time in case your other commitment runs over? If so I'll circulate conference line information.

Thanks,

**Adam Wiley**
**Kilpatrick Townsend & Stockton LLP**
1801 Century Park East | Suite 2300 | Los Angeles, CA 90067
office 310 777 3733 | fax 310 388 5804
awiley@kilpatricktownsend.com | My Profile | vCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Thursday, October 29, 2020 8:19 AM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>;
LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** Williams v AT&T meet and confer


Mike:

We are in receipt of your meet and confer letters dated October 26. We are available to meet and confer with you regarding the issues in your letters, as well as AT&T's ongoing discovery deficiencies, on November 4. We are free at all other times besides 10-11am and 2-3am ET. Please let us know your availability on November 4, thanks.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**Withers Bergman LLP** - 430 Park Avenue, 10th Floor, New York, NY 10022-3505 T: +1 212 848 9800 F: +1 212 848 9888

Withersworldwide
New York, Greenwich, New Haven, Los Angeles, Rancho Santa Fe, San Diego, San Francisco, London, Cambridge, Geneva, Milan,
Padua, Dubai, Hong Kong, Singapore, Tokyo, British Virgin Islands, Sydney

This email (and any attachments) is confidential and may also be legally privileged. If you are not the intended recipient please immediately notify the sender then delete it from your system. You should not copy it or use it for any purpose nor disclose its contents to any other person.

---

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

---

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.