IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

JASON WILLIAMS,

    Plaintiff,

vs.

AT&T MOBILITY LLC,

    Defendant.

Case No. 5:19-cv-00475-BO

**AT&T MOBILITY LLC'S
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

# TABLE OF CONTENTS

                                                                     **Page**

Background ............................................................................................................................. 2

Argument ................................................................................................................................ 6

       1.       The Challenged Requests exceed Rule 26's relevance and proportionality limitations, requiring denial of the motion. ................................... 6

       2.       AT&T has acted reasonably and diligently to produce truly responsive, proportional documents and ESI. ............................................................ 6

       3.       AT&T is not subject to sanctions for the delay caused by Mr. Williams' overreaching approach to discovery and refusal to agree on reasonable discovery parameters. ...................................................................... 7

       4.       Mr. Williams' request for fees is frivolous. ............................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cybernet, LLC v. David*,
   No. 7:16-CV-16-RJ, 2018 WL 810142 (E.D.N.C. Feb. 9, 2018) ............................... 6

*Hairston v. Alexander Tank & Equip. Co.*,
   310 N.C. 227 (1984) .................................................................................................. 6

*Hyles v. City of New York*,
   10 Civ. 3119 (AT)(AJP), 2016 WL 4077114 (S.D.N.Y. Aug. 1, 2016) .................... 8

*Lawson v. Spirit Aerosystems, Inc.*,
   No. 18-1100-EFM-ADM, 2020 WL 3288058 (D. Kan. June 18, 2020) ................ 8, 9

*Mainstreet Collection, Inc. v. Kirkland's, Inc.*,
   270 F.R.D. 238 (E.D.N.C. 2010) .............................................................................. 9

*Treppel v. Biovail Corp.*,
   233 F.R.D. 363 (S.D.N.Y. 2006) .............................................................................. 8

**Rules & Regulations**

Fed. R. Civ. P. 26 ............................................................................................................ 4, 6

Fed. R. Civ. P. 26(b)(1) .................................................................................................. 1, 6

Fed. R. Civ. P. 37(a)(5)(A)(ii) ............................................................................................ 9

Fed. R. Civ. P. 37(a)(5)(A)(iii) ........................................................................................... 9

**Other Authorities**

*Best Practices Commentary*,
   8 Sedona Conf. J. 189 (2007) .................................................................................... 7

*The Sedona Principles*,
   19 Sedona Conf. J. 1 (2007) ...................................................................................... 9

AT&T Mobility LLC opposes Plaintiff Jason Williams' Motion to Compel [Doc. 56]. The motion should be denied for multiple reasons.

***First***, each of the referenced five requests (Nos. 1-3 & 7-8) exceeds the discovery authorized by Rule 26(b)(1) because it fails to include a proper temporal limitation. Mr. Williams' claims arise from activity on his AT&T account during November 2018 to February 2019, and the complaint alleges no similar activity prior to that time. Yet the requests demand all documents concerning Mr. Williams or his account security since the year 2000 or 2007. AT&T objected to the requests, but invited Mr. Williams to explain why records predating the incidents by more than a decade are relevant or proportional to the needs of this case. He refused to do so then, and his motion likewise makes no attempt to defend the scope of these requests.

***Second***, AT&T produced documents responsive to these requests on July 27, 2020, *seven days* after serving its responses, then made three supplemental productions in October and December. AT&T notified Mr. Williams in September that, subject to its objections, it had produced all non-privileged materials responsive to Nos. 1-3, and by December had done so for all non-emails responsive to Nos. 7-8. Excepting emails for which Mr. Williams refused to agree on reasonable search parameters (discussed below), AT&T produced all documents responsive to these requests months before Mr. Williams filed his motion.

***Third***, for emails responsive to Nos. 7-8, Mr. Williams improperly attempts to use his own delay and refusal to agree upon reasonable search parameters as a basis to seek sanctions against AT&T. Mr. Williams refused – until January 22, 2021 – to agree to a reasonable set of terms and custodians. Shortly thereafter, AT&T made its first email production on February 12, 2021, the same day Mr. Williams filed the instant motion.

1

**Background**

Mr. Williams alleges unauthorized SIM swaps happened on his AT&T account "between November 2018 and February 2019." Doc. 2 ("Compl.") ¶ 20. On June 5, 2020, Mr. Williams served requests Nos. 1-3 & 7-8 (the "Challenged Requests") demanding:

(1-3) "All" communications with Mr. Williams or anyone claiming to be him or act on his behalf, and "all" documents and communications concerning his AT&T account, since the year 2000 [Doc. 58-1 at 10-11];[1] and

(7-8) "All" documents and communications since January 1, 2007 concerning SIM swapping or any AT&T policy, procedure, internal control, training, or "other information" related to any activity concerning SIM swapping. *Id.* at 11.

Mr. Williams' Interrogatory No. 15 (the "Custodian Interrogatory") sought to identify custodians of these materials, demanding the contact information of every present and former AT&T employee, agent, contractor, manager, executive, and member of "AT&T's Leadership" who at any time since January 1, 2007 was "responsible for the protection and security of AT&T customers' Data and privacy." Doc. 58-2 at 14.

AT&T objected, noting there is nothing to suggest documents predating the incidents by more than a decade are relevant to this dispute. Doc. 58-3 at 7-8. AT&T also objected to the 13-year duration and scope of the Custodian Interrogatory, which required AT&T to identify hundreds, if not thousands, of potential document custodians. *See* Doc. 58-4 at 23-24 (explaining that "[a]ll AT&T employees have obligations regarding [customers'] data security and privacy" and "therefore have some level of responsibility concerning those matters," but expressly inviting Mr. Williams to confer on an appropriate scope).

---

[1] Request No. 2 asserts his account with AT&T began "in the year 2000."

Seven days later, on July 27, 2020, AT&T produced 1,600 pages of materials responsive to all of the Challenged Requests, including all non-privileged documents and communications records responsive to Nos. 1-3.[2] In a September 18, 2020 letter to Mr. Williams' counsel, AT&T confirmed it had produced all materials responsive to Nos. 1-3. Doc. 58-6 at 3. Thereafter, AT&T made three supplemental productions in October and December 2020, comprising another 1,333 pages of requested materials and including the remaining non-email documents responsive to Nos. 7 & 8. Breslin Decl. ¶ 3.

Regarding email searches, Mr. Williams responded to AT&T's July invitation to confer by sending a letter on September 1 offering to narrow the Custodian Interrogatory to all people who had any "direct" responsibility for "the security of [customer] account[s]." Doc. 58-5 at 4-5. AT&T replied on September 18, explaining that would still require identification of potentially hundreds of custodians who at any point over the prior 13 years had some direct responsibility for such issues. Doc. 58-6 at 4. Seeking prompt resolution, AT&T's letter asked if Mr. Williams would instead prefer that AT&T identify its current personnel most knowledgeable ("PMKs") about those issues. *Id.*

On October 5, 2020, Mr. Williams accepted AT&T's PMK offer. Doc. 58-7 at 5. On October 21, AT&T served supplemental initial disclosures identifying the PMKs and describing their relevant knowledge. Doc. 58-8 at 3. AT&T had already begun collecting documents from the PMKs in anticipation of its discovery obligations, but the compromise on the excessive duration of Mr. Williams' requests required AT&T to re-collect their files going back to January 1, 2018. Breslin Decl. ¶ 4; *see* Doc. 58 ¶ 14 (Mr. Williams "continues to reserve" the right to demand AT&T collect and search even older emails).

---

[2] *See* Feb. 26, 2021 Declaration of Michael J. Breslin ("Breslin Decl.") ¶ 2.

3

On November 5, 2020, the parties held a meet and confer conference to discuss, *inter alia*, email searches. AT&T's counsel explained that AT&T had begun copying files from the devices of the recently-agreed upon PMKs and sought agreement with Mr. Williams on the search terms AT&T would use. Doc. 58-9 at 27.

On November 11, 2020, Mr. Williams sent AT&T a list of 66 remarkably overbroad search terms, including over thirty searches for standalone, generic words like "SIM" "Authoriz!" "Verif!" and "FCC," without any modifiers to link them to the circumstances of this case, or even SIM swapping in general.[3] *Id.* at 23-24. His list also contained over twenty proximity searches for common words like "account w/10 access!" "customer w/10 ident!" and "information w/10 secur!," which have countless applications unrelated to this case. *Id.* These searches would return every reference to a security, authorization, or account issue regardless of any connection to this case – the hallmark of an improper fishing expedition.

AT&T responded the next day, stating those 66 terms were too broad and not tailored to the circumstances of this case. Doc. 58-9 at 21. AT&T further explained that, to move the process forward, it started searching the emails for any references to (i) SIM swapping or any commonly-used variant of that term, or (ii) Mr. Williams or his account. *Id.*[4] Finally, AT&T proposed a joint request for extension of the discovery period to facilitate amiable resolution of these issues and numerous deficiencies in Mr. Williams' discovery responses. *Id.* at 21-22.

---

[3] Searching for such terms within AT&T – a global telecommunications provider – would be akin to searching Delta Airlines for every instance of "plane," "ticket," "upgrade," and "FAA."

[4] AT&T did not, as Mr. Williams (at 7) incorrectly asserts, state that it would not agree to additional search terms. The email Mr. Williams cites does not say that [Doc. 58-9 at 20-21] and AT&T emailed Mr. Williams' counsel confirming AT&T would "continue in a good faith effort to reach agreement with you on a reasonable scope that comports with Rule 26." Doc. 58-9 at 16.

4

Thereafter, Mr. Williams continued to insist AT&T run his 66 searches, and asked on November 24 if "we are at an impasse." Doc. 58-9 at 15. On December 11, AT&T sent Mr. Williams a detailed analysis of his 66 terms, organized by subject matter category and further explaining why each was inappropriate, but emphasizing AT&T's openness to using certain of his terms if he would agree to reasonable modifications.[5] Breslin Decl. ¶ 5, Ex. E. Mr. Williams refused, insisting on December 18, 2020 that his list of search terms "is entirely proper." Doc. 58-9 at 10.

On January 13, 2021, AT&T advised Mr. Williams that it surveyed the PMKs about how they reference SIM swaps in emails and the PMKs uniformly stated Mr. Williams' search terms were far too broad. Doc. 58-9 at 7. AT&T confirmed their reactions by later testing Mr. Williams' searches – they retrieved on average 2,513% more files per custodian than AT&T's more-tailored searches that still had a high irrelevance rate. Breslin Decl. ¶ 6.

On January 22, 2021, Mr. Williams finally sent a revised list of 55 search terms. Doc. 58-9 at 4-6. On January 26, AT&T agreed to run several of those terms, including a term that would capture an email Mr. Williams identified from a third party that was not retrieved by AT&T's searches. *Id.* at 2.[6] AT&T produced a first set of emails seventeen days later, on February 12, the same day Mr. Williams filed the instant motion.

---

[5] AT&T did not offer these explanation to argue there was no basis for running additional searches, as Mr. Williams (at 8) again falsely claims, but merely to demonstrate that *Mr. Williams' proposed terms* were far broader than appropriate. AT&T's comments (*see* Breslin Decl. Ex. E) speak for themselves and again demonstrate Mr. Williams' attempt to support his motion by mischaracterizing AT&T's positions.

[6] While AT&T's searches returned, *inter alia*, every instance of "unauthorized SIM change," this particular email used the unorthodox phrase "unauthorized SIM *card* change," [Doc. 58-9 at 2] a deviation of one word that hardly validates Mr. Williams' demand that AT&T review every email containing "SIM" or "unauthorized" in isolation.

**Argument**

1. The Challenged Requests exceed Rule 26's relevance and proportionality limitations, requiring denial of the motion.

Mr. Williams seeks to compel documents since 2000 or 2007, which are neither "relevant to [his] claim[s]" nor "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). His complaint alleges no improper account activity before November 2018, and quotes only AT&T's 2019 Privacy Policy in alleging AT&T told him lies. Compl. ¶¶ 153-174 & n.72; Doc. 2-1 at 2; *see Cybernet, LLC v. David*, No. 7:16-CV-16-RJ, 2018 WL 810142 at *5 (E.D.N.C. Feb. 9, 2018) (complaint allegations informed limits of discovery that could be compelled). His motion, moreover, nowhere attempts to defend the scope of the Challenged Requests. *See generally* Doc. 57. While he asserts (at 10) AT&T's knowledge of SIM swapping is "fundamental" to his negligence claims, he cannot seriously contend the risk of SIM swapping was more foreseeable in 2007 than 2018,[7] or that records from 2007 will show whether AT&T's 2019 conduct complied with its 2019 Privacy Policy or federal law. *See* Compl. ¶ 194 (alleging AT&T's duties stem from its privacy policy and federal law). His motion to compel production of "all documents . . responsive" [Doc. 56 at 1] to the Challenged Requests should be denied. *Cybernet*, 2018 WL 810142 at *5 (denying motion to compel where information was "irrelevant or not proportional to the needs of the case").

2. AT&T has acted reasonably and diligently to produce truly responsive, proportional documents and ESI.

By July 27, 2020, AT&T had produced nearly all documents responsive to the Challenged Requests, including *all records of communications* with Mr. Williams. Breslin Decl. ¶ 2, Ex. A. AT&T then completed those productions during October-December while

---

[7] *See Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233 (1984) (foreseeability is "a requisite" of actionable negligence).

commencing its own searches of the PMKs' emails – and before receiving Mr. Williams' proposed search terms. Mr. Williams' claim (at 10) that AT&T's searches were designed "to produce only communications related specifically to [him]" is unequivocally false. *See* Doc. 58-9 at 21 (terms would capture any commonly-used variation of SIM swap "OR" any reference to Mr. Williams or his account). And given AT&T's prompt agreement to run more searches when Mr. Williams finally proposed – on January 22, 2021 – more reasonable terms, so too is his invective that AT&T has strung him along or deliberately disregarded its obligations.[8]

3. <u>AT&T is not subject to sanctions for the delay caused by Mr. Williams' overreaching approach to discovery and refusal to agree on reasonable discovery parameters.</u>

Beginning with its July 20, 2020 response to the Custodian Interrogatory [*see* Doc. 58-4 at 23 (invitation to confer)], AT&T sought to avoid wasteful duplication of efforts by seeking agreement with Mr. Williams on whose emails it would collect. *See Best Practices Commentary*, 8 Sedona Conf. J. 189, 200-01 (2007) (given the costs and burdens of E-discovery, producing parties should "negotiate with requesting parties in advance to define the parameters," such as by "agree[ing] on conducting a search of only files maintained by relevant or key witnesses"). Until October 5, however, Mr. Williams insisted that AT&T identify hundreds of potential document custodians, and it was only AT&T's offer to identify the PMKs that broke that stalemate. Those

---

[8] AT&T recognizes its discovery compliance is adjudged on the sufficiency of its own responses. But the lack of proportionality is illuminating. Mr. Williams seeks millions in damages from AT&T, but has produced 65 pages – consisting largely of partial email chains and pictures of his phone – and claims he cannot access documents responsive to nearly all of AT&T's requests. More troubling, Mr. Williams' counsel has conducted no searches of Mr. Williams' files, has relied on him to select what documents might be produced, and denied as "ridiculous" AT&T's request for a limited deposition to ascertain his efforts to locate responsive materials. Doc. 58-9 at 19-20.

7

78 days were lost due to Mr. Williams' persistent overreaching in his "attempt[] to identify" sources of relevant information. Doc. 57 at 6.

After the parties agreed on searching the PMKs, AT&T had to re-collect their files to reach a compromise on Mr. Williams' requests first for thirteen, then (months later) five, years' worth of emails. While AT&T also sought an agreement on search terms, AT&T provisionally began searching for what it believes are the most likely responsive materials: documents referencing (1) SIM swapping or (2) Mr. Williams or his account – which together are, literally, what the Challenged Requests seek. Doc. 58-1 at 10-11; *cf. Hyles v. City of New York*, 10 Civ. 3119 (AT)(AJP), 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) ("the responding party is best situated to decide how to search for and produce [responsive] ESI").

Mr. Williams (at 7) now criticizes AT&T for "unilaterally" deciding to run searches, but that is precisely what courts admonish producing parties for *not doing* when there has been no agreement on terms. *See, e.g.*, *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("Absent agreement with [plaintiff] about a search strategy, [defendant] should have proceeded unilaterally [with its searches]"). His other argument (at 11) – that no one "knows exactly" how an employee might reference a SIM swap in a particular email and AT&T must therefore adopt his strategy of searching for every potential word in isolation – fares no better. "[T]he standard is not perfection, or using the 'best' tool, but whether the search results are reasonable and proportional." *Hyles*, 2016 WL 4077114, at *3; *see also Treppel*, 233 F.R.D. at 374 ("there is no obligation on the part of a responding party to examine every scrap of paper;" rather, a party might discharge its obligations by "identifying key employees and reviewing any of their files *that are likely to be relevant*") (emphasis supplied); *Lawson v. Spirit Aerosystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3288058, at *12, 17 (D. Kan. June 18, 2020) (generic, single-word

search terms "without any limiting modifiers" "made no attempt to target the specific [issues]" and "were not tailored to discover relevant information;" noting "[t]he fact that a plaintiff seeks millions in relief does not give him or her license to conduct fishing expeditions that run up the cost of discovery").

Beyond identifying a single email that AT&T's searches missed (which AT&T promptly agreed to run a broader search to address), Mr. Williams has not made any showing that AT&T's searches are not reasonable or proportional to the needs of the case. Thus, to the extent Mr. Williams' motion seeks to force AT&T to adopt any more of the excessive terms he first proposed on January 22, 2021, it should be denied.[9]

### 4. Mr. Williams' request for fees is frivolous.

This motion does not involve a refusal to provide discovery, nor can Mr. Williams show that AT&T's objections to his 13-20 year long discovery requests were not substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). Rather, Mr. Williams' motion concerns a dispute over the scope and timing of an email production AT&T has already begun to make, and the record establishes Mr. Williams bears the responsibility for any delay. *See Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 247 (E.D.N.C. 2010) ("Given the varying levels of merit to Plaintiff's and Defendants' claims, the undersigned will neither award attorneys' fees nor impose sanctions").

---

[9] Alternatively, if Mr. Williams insists on more broad, unreasonable searches, he should bear their costs. *See Lawson*, 2020 WL 3288058, at *22 (awarding costs against requesting party demanding disproportionately broad ESI searches); *The Sedona Principles*, 19 Sedona Conf. J. 1, 188 (2007) (listing, as an ESI cost allocation factor, "the extent to which the request is specifically tailored to discover relevant information").

9

Respectfully submitted this the 26th day of February, 2021.

                                     KILPATRICK TOWNSEND & STOCKTON LLP

                                     /s/ Joseph S. Dowdy.
                                     Joseph S. Dowdy (N.C. State Bar No. 31941)
                                     4208 Six Forks Road, Suite 1400
                                     Raleigh, NC 27609
                                     Telephone: (919) 420-1718
                                     Facsimile: (919) 510-6120
                                     Email: jdowdy@kilpatricktownsend.com

                                     *Counsel for Defendant AT&T Mobility, LLC*

# **CERTIFICATE OF SERVICE**

I hereby certify that on date set out below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| SHUMAKER LOOP & KENDRICK LLP<br>Terence S. Reynolds<br>treynolds@shumaker.com<br>Lucas D. Garber<br>lgarber@shumaker.com<br>101 South Tyron Street<br>Suite 2200<br>Charlotte, North Carolina 28280<br>Local Civil Rule 83.1(d) Counsel for<br>Plaintiff Jason Williams | PIERCE BAINBRIDGE BECK PRICE<br>& HECHT LLP<br>Christopher LaVigne<br>clavigne@piercebainbridge.com<br>Dwayne Sam<br>dsam@piercebainbridge.com<br>Sarah Baugh<br>sbaugh@piercebainbridge.com<br>Thomas Popejoy<br>tlpopejoy@piercebainbridge.com<br>277 Park Avenue, 45th Floor<br>New York, NY 10172<br>Counsel for Plaintiff Jason Williams |

This the 26th day of February, 2021.

/s/ Joseph S. Dowdy
Joseph S. Dowdy