IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

JASON WILLIAMS,

    Plaintiff,

vs.

AT&T MOBILITY LLC,

    Defendant.

Case No. 5:19-cv-00475-BO

**DECLARATION OF MICHAEL J. BRESLIN IN SUPPORT OF AT&T MOBILITY LLC'S OPPOSITION TO PLAINTIFF JASON WILLIAMS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

The undersigned, Michael J. Breslin, hereby declares as follows:

1. I am over the age of 18 and under no legal disability that prevents me from providing this affidavit. Along with Messrs Dowdy and Harris, I am counsel for Defendant AT&T Mobility LLC ("AT&T") in the above-referenced action, and I have entered a special appearance in this matter (Doc. 38.) I am admitted to practice law in the State of Georgia and a partner at the law firm of Kilpatrick Townsend & Stockton LLP. I have personal knowledge of the facts set forth herein.

2. Attached as **Exhibit A** hereto is a true and correct copy of AT&T's July 27, 2020 letter to Mr. Williams' counsel transmitting ATT-WIL-00001-ATT-WIL-01600. Those documents included, *inter alia*, (i) records of activity on Mr. Williams' AT&T account since December 2017, (ii) records of communications with Mr. Williams or anyone contacting AT&T to access his account since December 2017, (iii) AT&T's confidential internal policies applicable before, during, and after the period of the alleged SIM swap incidents, concerning customer authentication measures, ID requirements, account access restrictions, account change

policies, SIM changes, fraud prevention, customer data security, protection of customer privacy and CPNI, and social engineering and fraud awareness, and (iv) AT&T's confidential employee training programs and curricula on many of the same subjects.

3. Attached as **Exhibits B-D** are true and correct copies of AT&T's October 8, 2020 letter to Mr. Williams' counsel transmitting ATT-WIL-01601-ATT-WIL-2112 (Ex. B), AT&T's October 20, 2020 letter to Mr. Williams' counsel transmitting ATT-WIL-02113-ATT-WIL-02321 (Ex. C), and AT&T's December 17, 2020 letter to Mr. Williams' counsel transmitting ATT-WIL-02322-ATT-WIL-2933 (Ex. D). These productions included, *inter alia*, additional AT&T internal policies concerning SIM cards, retail account access, fraud and social engineering, protecting privacy, access restrictions, account maintenance, wireless account changes, and customer PIN validation.

4. Before the parties exchanged their September 2020 letters regarding the scope of Mr. Williams' requests [Docs. 58-5, 58-6], AT&T had previously sequestered and copied the PMKs' emails since June 2018 into its searching software. But in order to compromise on Mr. Williams' September 2020 proposal that AT&T search emails going back to April 8, 2015 [Doc. 58-5 at 3], AT&T agreed to search emails since January 1, 2018 and thereafter had to re-collect the PMKs' files going back to that time.

5. Attached as **Exhibit E** is a true and correct copy of the document I emailed to Mr. Williams' counsel on December 11, 2020 [*see* Doc. 58-9 at 12], which provided further explanations of AT&T's positions regarding Mr. Williams' search terms. In my December 30, 2020 email to Mr. Gallo, I inquired why Mr. Williams had not provided any "substantive response" to those explanations. Doc. 58-9 at 8. During a January 7, 2021 meet and confer conference, Mr. Gallo advised me that the comments in Exhibit E did not appear in the document

he received. I believed I had made an error and resent Exhibit E that day. I later reviewed the as-sent version of my December 11 email and the comments do appear in the attachment that was sent. I do not provide this explanation to imply any untruthfulness on opposing counsel's part, but to note that a technical error in the transmission of that email may have further delayed a resolution regarding Mr. Williams' search terms.

6. On February 20, 2021, AT&T tested Mr. Williams' search terms on the PMKs' emails and compared the results to the more tailored searches AT&T had run. The results of only two of his several searches designed to find references to SIM swapping – "SIM" and "swap!" – returned on average 2,513% more files per custodian that AT&T's more tailored search for such references and that already returned a high percentage of documents that are not responsive or concern other customers' accounts, which AT&T has objected to producing.

7. Counsel for AT&T in this matter have at all times complied with our discovery obligations to the best of our ability and have endeavored to resolve Plaintiff's unusually broad requests without the need for motions practice in the Court.

Pursuant to 28 U.S.C. § 1476, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 26, 2021
Atlanta, Georgia

By: _____
Michael J. Breslin