# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

|  |  |
|---|---|
| JASON WILLIAMS,<br><br>    Plaintiff,<br><br>vs.<br><br>AT&T MOBILITY LLC,<br><br>    Defendant. | Case No. 5:19-cv-00475-BO |

**DECLARATION OF MICHAEL J. BRESLIN IN SUPPORT OF AT&T MOBILITY LLC'S MOTION TO COMPEL PLAINTIFF JASON WILLIAMS TO RESPOND TO INTERROGATORIES AND PRODUCE DOCUMENTS**

The undersigned, Michael J. Breslin, hereby declares as follows:

1.      I am over the age of 18 and under no legal disability that prevents me from providing this affidavit. Along with Messrs Dowdy and Harris, I am counsel for Defendant AT&T  Mobility LLC ("AT&T") in the above-referenced action, and I have entered a special appearance in this matter [Doc. 38]. I am admitted to practice law in the State of Georgia and a partner at the law firm of Kilpatrick Townsend & Stockton LLP. I have personal knowledge of the facts set forth herein.

2.      I submit this Declaration in support of AT&T's Motion to Compel Plaintiff Jason Williams to Respond to Interrogatories and Produce Documents ("Motion").

3.      Attached hereto as **Exhibit A** is a true and correct copy of AT&T's First Set of Document Requests to Plaintiff Jason Williams, dated May 22, 2020.

4.      Attached hereto as **Exhibit B** is a true and correct copy of AT&T's First Set of Interrogatories to Plaintiff Jason Williams, dated, dated May 22, 2020.

1

5.      Attached hereto as **Exhibit C** is a true and correct copy of Plaintiff Jason Williams' Responses and Objections to AT&T's First Set of Document Requests, dated July 6, 2020.

6.      Attached hereto as **Exhibit D** is a true and correct copy of Plaintiff Jason Williams' Responses and Objections to AT&T's First Set of Interrogatories, dated July 6, 2020.

7.      Attached hereto as **Exhibit E** is a true and correct copy of AT&T's August 4, 2020 letter to Mr. Williams' counsel attempting to meet and confer regarding certain deficiencies in Mr. Williams' responses to AT&T's First Set of Interrogatories and First Set of Document Requests.

8.      On or about August 14, 2020, Plaintiff made his first document production in response to AT&T's First Set of Document Requests. This set of documents totaled 39 pages.

9.      Attached hereto as **Exhibit F** is a true and correct copy of Mr. Williams' counsel's August 21, 2020 response to AT&T's August 4, 2020 meet and confer letter.

10.      Attached hereto as **Exhibit G** is a true and correct copy of an email exchange with Mr. Williams' counsel summarizing the results of the meet and confer call held on August 31, 2020.

11.      On or about September 24, 2020, Plaintiff made his second document production in response to AT&T's First Set of Document Requests. This set of documents totaled 26 pages. To the best of my knowledge and understanding, the combined 65 pages Mr. Williams has produced in response to AT&T's First Requests contain materials only partially responsive to Nos. 1, 3, 5, 6, 7, 12, 13, 16, 17, 19, 22, 26, 30 and 31, and no materials responsive Nos. 2, 4, 8, 9, 10, 14, 15, 20, 21, 23, 27, or 29.

12.     Attached hereto as **Exhibit H** is a true and correct copy of Plaintiff Jason Williams' First Supplemental Responses and Objections to AT&T's First Set of Interrogatories, dated September 28, 2020.

13.     Attached hereto as **Exhibit I** is a true and correct copy of AT&T's October 26, 2020 letter to Mr. Williams' counsel attempting to meet and confer regarding deficiencies in Mr. Williams' document production and responses to AT&T's First Set of Document Requests.

14.     Attached hereto as **Exhibit J** is a true and correct copy of AT&T's October 26, 2020 letter to Mr. Williams' counsel attempting to meet and confer regarding deficiencies in Mr. Williams' responses to AT&T's First Set of Interrogatories.

15.     On November 4, 2020, AT&T and Mr. Williams' counsel held a meet and confer call to discuss various discovery issues related to both AT&T's and Mr. Williams' discovery responses, including Mr. Williams' position regarding AT&T's Interrogatory No. 11.

16.     During the November 4, 2020 meet and confer call, Mr. Williams' counsel told me and my colleague Adam Wiley that Mr. Williams' counsel had not conducted an independent search of Mr. Williams's ESI or other records, and thus far had solely relied on Mr. Williams to provide documents that Mr. Williams believed were responsive to AT&T's document requests.

17.     Attached hereto as **Exhibit K** is a true and correct copy of AT&T's Second Set of Document Requests to Plaintiff Jason Williams, dated January 8, 2021.

18.     Attached hereto as **Exhibit L** is a true and correct copy of Plaintiff Jason Williams' Responses and Objections to AT&T's Second Set of Document Requests, dated February 8, 2021.

3

19.     Attached hereto as **Exhibit M** is a true and correct copy of meet and confer emails exchanged between AT&T and Mr. Williams' counsel between February 12, 2021 and March 4, 2021 discussing, *inter alia*:

(a)     Mr. Williams' responses to AT&T's Second Set of Document Requests;

(b)     AT&T's requests for an update on Mr. Williams' efforts to regain access to his Google/Gmail account in order to produce documents responsive to AT&T's First and Second Sets of Document Requests. As of the date this Declaration is executed, Mr. Williams' counsel have not provided a response to my February 23 or March 4, 2021 requests for an update on the status of these efforts.

(c)     Mr. Williams' counsel's affirmation that as of February 24, 2021 they had still not conducted an independent search of Mr. Williams' ESI or other records for documents responsive to AT&T's First and Second Sets of Document Requests.

20.     On March 10, 2021, Plaintiff made his first document production in response to AT&T's Second Set of Document Requests. This set of documents totaled 10 pages. Those 10 pages included materials partially responsive to Request No. 3 of AT&T's Second Requests, but no information responsive to Request Nos. 4-5 or 8-11 of AT&T's Second Requests.

21.     Pursuant to Local Rule 7.1(c)(2), I certify that there has been a good faith effort to resolve this discovery dispute prior to filing this Motion.

Pursuant to 28 U.S.C. § 1476, I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   March 12, 2021
               Atlanta, Georgia

By:   _____
               Michael J. Breslin

4

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

JASON WILLIAMS,

      Plaintiff,

vs.

AT&T MOBILITY LLC,

      Defendant.

Case No. 5:19-cv-00475-BO

**DEFENDANT AT&T MOBILITY LLC'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF JASON WILLIAMS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 26.1 and 34.1 of the Local Rules for the Eastern District of North Carolina, Defendant AT&T Mobility LLC ("AT&T"), acting by and through its undersigned counsel, hereby requests that Plaintiff Jason Williams respond in writing and produce the documents requested below at the offices of Kilpatrick Townsend & Stockton LLP, 4208 Six Forks Road, Suite 1400, Raleigh, NC 27609.

## DEFINITIONS

1.  The term "You," "Your," or "Plaintiff" shall mean Plaintiff Jason Williams.

2.  The term "Complaint" shall mean and refer to the Complaint filed by Plaintiff in this action dated October 24, 2019, and any amendments and/or corrections thereto.

3.  The term "Action" shall mean and refer to the above-captioned proceeding.

1

4.     The term "Password" means any username, user ID, password, passcode, keys (public or private), personal identification numbers ("PINs"), backup code or recovery seed for App 2FA or TOTP, or other authentication mechanism or credential capable of being used to gain access to an Account or information.

5.     The term "Account" means any website, application, computer system or software you are able to access by virtue of providing Passwords or other authentication credentials, including but not limited to email, cloud storage, financial services, Password managers, cryptocurrency exchanges and cryptocurrency wallets.

6.     The term "Security Measure" refers to security features or steps utilized to prevent unauthorized access to or activity within Accounts, including but not limited to challenge questions, SMS two-factor authentication ("SMS 2FA"), email two-factor authentication either through a passcode or link sent to your registered email on the Account ("Email 2FA"), application-based two-factor authentication ("App 2FA") such as Google Authenticator or Authy (also referred to as time-expiring one time PINs, or "TOTP"), and wallet whitelisting.

7.     The term "Personal Information" means personal identifying information, including but not limited to names, addresses, phone numbers, Social Security numbers, or government identification numbers.

8.     The term "SIM Changes" shall mean and refer to the alleged SIM Changes described in and referred to in Paragraphs 37 through 81 of the Complaint, each a "SIM Change."

9. The term "Document" or "Documents" is used in its customary broad sense and shall include, by way of illustration only and not by way of limitation, all Communications (as defined below), all Electronic Communications (as defined below), all Electronically Stored Information (as defined below), all written and graphic matter of every kind and description, whether printed or reproduced by any process, electronically stored, or written and/or produced by hand, whether final draft, original, or reproduction, such as: correspondence, hand-written or typed notes, memoranda of telephone or personal conversations, notices, press releases, reports, rules, regulations, directives, minutes, records of meetings, inter-office communications, financial statements, ledgers, books, accounts, proposals, prospectuses, offers, orders, receipts, working papers, desk calendars, appointment books, routing slips, time sheets, logs, movies, tapes (or visual or audio reproduction), recordings, drawings, graphs, charts, photographs, purchase orders, electronic media information, data processing paper results, data printouts and computations (both in existence and stored in memory components), transcripts or oral statements or testimony, reports and/or summaries of interviews, reports and/or summaries of investigations, opinions or reports of consultants, and any and all other data compilations or information resources from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form or material similar to any "document" as used herein. As used herein, the term is to be given the broadest possible meaning that the Federal Rules of Civil Procedure and the Federal Rules of Evidence allow.

10.     The term "Electronically Stored Information" is defined to be synonymous in meaning and equal in scope to the usage of the term "electronically stored information" in the Federal Rules of Civil Procedure.  A draft or non-identical copy is a separate document within the meaning of this term.

11.     The term "Communication" shall mean the transmission or exchange of any information, whether written, oral, or by any other means, and includes, but is not limited to, any Electronic Communication (as defined below) and any Documents which abstract, digest, transcribe, or record any such Communication.

12.     The term "Electronic Communication" shall mean any Communication created, modified, stored, sent, or received electronically, digitally, via e-mail, computer, telephone, cellular phone, digital phone and/or personal digital assistant (PDA), and shall include, but not be limited to, e-mail, text messages, and messages known as MMS, SMS and 1MS, and shall include any of the above that have been deleted, but that are reasonably available in the ordinary course of business.

13.     The term "Person" means any natural person, group of persons, or any business, legal, or governmental entity or association.

14.     The terms "Concerning," "Regarding," "Referring to," "Relating to" or "Evidencing" are used in their broadest sense allowed under the Federal Rules of Civil Procedure and shall mean directly or indirectly referring to, alluding to, relating to, pertaining to, connecting with, commenting on, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing,

constituting, embodying and/or demonstrating a stated subject matter, including, but not limited to, the particular category of information or Document requested.

15.     All other undefined terms shall have the meaning found at http://www.merriam-webster.com, consistent with the context in which such terms are used.

## **INSTRUCTIONS**

1.     The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

2.     The singular shall be deemed to include the plural, and the plural shall be deemed to include the singular, as necessary to make the request inclusive rather than exclusive.

3.     Each of the words "each," "every," "any" and "all" shall be deemed to include each of the other words.

4.     Any request phrased in the present tense shall be read as if propounded in the past tense and vice versa as necessary to make each request inclusive rather than exclusive.

5.     Requests that cannot be responded to in full shall be answered as completely as possible, and incomplete responses shall be accompanied by an explanation of the reasons for the incompleteness of the response as well as by a statement of whatever knowledge, information, or belief You possess with respect to each incompletely answered request.  If You object to or otherwise decline to answer

5

any portion of any request, provide all information called for by that portion of the request to which You do not object or which You do not decline to answer.

6.      If You object to any request on the basis of attorney-client privilege, work-product doctrine, or confidentiality, then provide a general description of the type of information withheld sufficient to enable Plaintiff and the Court to assess the applicability of the asserted privilege or protection.  If You claim privilege or confidentiality as to any Document sought by or responsive to these requests, state the general subject matter of the Document, the date the information or Document was transmitted or prepared, each Person having knowledge of the Document (and, as applicable, its author, signer, and each Person to whom a copy was directed), and the nature of the privilege, confidentiality, or other legal basis for it being withheld from production.

7.      Unless otherwise addressed by the parties' electronic discovery protocol, each responsive Document is to be produced in its original form (or copy where original is not available), together with any copies thereof bearing notations, memoranda, or other written information not contained on the original, and each responsive document is to be produced in its original file, jacket, folder, cover or other container, if available.  For all non-electronically stored information, an accurate copy of any Document may be attached to the response of these requests in lieu of the production described in this paragraph.  In the event you attach a copy of a Document, identify to which request the Document is responsive.

8.     Unless otherwise addressed in these requests, the relevant time period for these Document Requests extends from the date Mr. Williams became an AT&T customer until the present.

9.     These Document Requests are continuing. Your responses to these requests shall be supplemented as required by Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

1.     Produce all documents identified or requested to be identified in response to, or containing information responsive to, any interrogatory served on you in this Action.

**RESPONSE:**


2.     Produce all documents that are referenced or quoted in the Complaint.

**RESPONSE:**


3.     Produce all documents identified in Plaintiff's Rule 26(a)(1) disclosures.

**RESPONSE:**


4.     Produce any statements which you or your attorneys have from any employee, agent, or representative of AT&T.

**RESPONSE:**

5.      Produce all documents relating to communications between Plaintiff and AT&T (including AT&T's employees, agents, and representatives) concerning the SIM Changes, or the security or protection of your AT&T Account, Personal Information, or CPNI.

**RESPONSE:**


6.      Produce all documents related to the SIM Changes, including documents evidencing any transfer of cryptocurrency or losses you allege in connection with the SIM Changes.

**RESPONSE:**


7.      For each Account that was accessed without authorization, attempted to be accessed without authorization, or had any settings changed without authorization following any SIM Change, produce all documents evidencing or relating to such unauthorized access, attempted access, or settings changes, including but not limited to any alerts or notifications, Account activity logs, and IP address access logs.

**RESPONSE:**

8

8.     For each cryptocurrency wallet or exchange Account you have created or maintained, produce a copy of all instructions and warnings related to Account security that you received, were referred to, or were made available to you during your creation or maintenance of same.

**RESPONSE:**

9.     Produce all documents evidencing your entitlement to or ownership of the cryptocurrency you alleged was stolen following any SIM Change, including but not limited to documents establishing your ownership of the wallet or exchange Account where the cryptocurrency was held, and establishing the dates of acquisition of each type of cryptocurrency at issue and the method of acquisition.

**RESPONSE**:

10.     For each Account that was compromised following any SIM Change, produce all documents stored in or accessible through that account that, at the time of any SIM Change, contained information related to any Password.

**RESPONSE**:

11.     For each Account that was compromised following any SIM Change, produce all documents stored in or accessible through that account that, at the time of any SIM Change, contained "sensitive [and/or] confidential personal, legal,

9

[and/or] business information," as referenced in Paragraph 83 and elsewhere in the Complaint.

**RESPONSE**:


12.     Produce all documents provided to or received from any law enforcement agency, including but not limited to, the FBI, state, or local law enforcement, regarding the SIM Changes.

**RESPONSE**:


13.     Produce all documents evidencing that you were the target or victim of identity theft, hacking, phishing attack, SIM change fraud, cryptocurrency theft, extortion, threats, or any other security breach or incident, other than the SIM Changes themselves.

**RESPONSE**:


14.     Produce all documents evidencing actions you have taken to maintain adequate cybersecurity, including but not limited to maintaining strong Passwords, changing Passwords, not reusing Passwords, using two-factor authentication, using a Password manager, use of encryption, proper Password storage, and use of antivirus or other security software for all of your Accounts referenced or related to allegations in the Complaint, including but not limited to your AT&T, Gmail,

Twitter, Instagram, DropBox, Google Drive, LinkedIn, HitBTC, Coinbase, Gemini, First Citizens Bank, and Slush Pool Accounts.

**RESPONSE**:


15.     Produce copies of all materials, instructions, and publications you reviewed prior to February 6, 2019 regarding how to properly secure Accounts, or properly safeguard cryptocurrency wallets or exchange Accounts.

**RESPONSE:**


16.     To the extent not produced in response to other requests, produce all documents containing or relating to Passwords or Security Measures associated with any Accounts that were accessed without authorization following any SIM Change, including but not limited to your AT&T, Gmail, Twitter, Instagram, DropBox, Google Drive, LinkedIn, HitBTC, Coinbase, Gemini, and Slush Pool Accounts, and any other wireless telephone Account held by you.

**RESPONSE**:

17.     Produce copies of all Account activity logs and transaction records for your Slush Pool, Gemini, HitBTC, and Coinbase Accounts since inception of the Account through the present, including but not limited to records of all deposits, transfers, trades, withdrawals, mining rewards, changes to any Account setting, wallet address changes, and logs of IP address access to the Account.

**RESPONSE**:


18.     Produce records evidencing your ownership and purchase of, and price paid for, the mining equipment and hardware in which you allege you invested in connection with your Slush Pool or cryptocurrency mining operations.

**RESPONSE:**


19.     Produce all documents evidencing or relating to actions you took following any SIM Change to alter the security of any of your Accounts (including, without limitation, by changing Passwords or Security Measures utilized, or changing the manner in which you stored records of Passwords).

**RESPONSE:**


20.     Produce all documents evidencing that any of your CPNI that you allege AT&T improperly disclosed was used to enable unauthorized access to any of your Accounts.

**RESPONSE:**

21.     For each false statement or misrepresentation you allege AT&T made to you, produce all documents referencing, containing, or evidencing the false statement or misrepresentation.

**RESPONSE:**


22.     For each of your Gmail, HitBTC, Coinbase, Gemini, Slush Pool, LinkedIn, Twitter, Instagram, and First Citizens Bank Accounts, produce all documents evidencing or otherwise relating to the manner, information, processes, and means utilized by any person to access the Account without authorization following any SIM Change, including but not limited to documents related to how the person obtained, satisfied, or bypassed any Password or Security Measure for the Account.

**RESPONSE:**


23.     Produce all documents relating to the market value, as of February 2019, of each item of equipment or hardware in which you had invested prior to February 2019 for the purpose of mining Bitcoin.

**RESPONSE:**


24.     To the extent not otherwise produced, produce all documents supporting or evidencing your allegations in the following paragraphs of the Complaint:  5, 8, 9, 20, 32, 33, 34, 39, 40-45, 48, 49, 52, 55, 60, 61, 65, 69, 70, 71, 73, 76, 77, 79, 82-90, 97,

103, 108, 110, 111, 113, 117, 122-138, 140, 147, 150, 155, 157, 160, 162, 163, 167, 170, 176, 177, 183, 186, 202, and 210.

**RESPONSE:**


25.    To the extent not otherwise produced, produce all documents concerning the issues raised by, or allegations stated in, the Complaint.

**RESPONSE:**


26.    To the extent not otherwise produced, produce all documents supporting or evidencing any injury, damage, or loss you assert in this Action, or that you rely upon in support of your calculation of alleged damages.

**RESPONSE:**


27.    To the extent not otherwise produced, produce all documents supporting or evidencing your inability to mine Bitcoin after February 2019.

**RESPONSE:**


28.    To the extent not otherwise produced, produce all documents that you intend to introduce at the trial of this Action.

**RESPONSE:**

29.     To the extent not otherwise produced, produce all communications between Plaintiff and AT&T, its employees, agents, or representatives, concerning any of your allegations in the Complaint.

**RESPONSE**:


30.     To the extent not otherwise produced, produce all documents relating to communications between you and any third party regarding your claims against AT&T in the Complaint.

**RESPONSE**:


31.     To the extent not otherwise produced, produce all documents that you maintain support any claim that you have suffered damages as a result of any actions or omissions by AT&T.

**RESPONSE:**

KILPATRICK TOWNSEND & STOCKTON LLP

Joseph S. Dowdy (N.C. State Bar No. 31941)
Phillip A. Harris, Jr. (N.C. State Bar No. 39740)
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com
        pharris@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
Email: mbreslin@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on date set out below, I served a true copy of the foregoing

**DEFENDANT AT&T MOBILITY LLC'S FIRST SET OF REQUESTS FOR**

**PRODUCTION OF DOCUMENTS** by electronic mail, pursuant to the agreement

of counsel for all parties, to all counsel of record and additional persons listed below:

| | |
|---|---|
| Terence S. Reynolds<br>treynolds@shumaker.com<br>Lucas D. Garber<br>lgarber@shumaker.com<br>SHUMAKER LOOP & KENDRICK<br>LLP<br>101 South Tyron Street<br>Suite 2200<br>Charlotte, North Carolina 28280<br><br>*Local Civil Rule 83.1(d) Counsel for*<br>*Plaintiff Jason Williams* | Christopher LaVigne<br>Christopher.LaVigne@withersworldwide.com<br>Joe Gallo<br>Joseph.Gallo@withersworldwide.com<br>WITHERS BERGMAN LLP<br>430 Park Avenue, 10th Floor<br>New York, NY 10022<br><br>*Counsel for Plaintiff Jason Williams*<br><br>And to:<br><br>Lalindar.Sanichar@witherworldwide.com<br>Laura.Gosheff@withersworldwide.com |

This the 22nd day of May, 2020.

Joseph S. Dowdy

Joseph S. Dowdy

17

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

JASON WILLIAMS,

      Plaintiff,

vs.

AT&T MOBILITY LLC,

      Defendant.

Case No. 5:19-cv-00475-BO

**DEFENDANT AT&T MOBILITY LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF JASON WILLIAMS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 26.1 and 33.1 of the Local Rules for the Eastern District of North Carolina, Defendant AT&T Mobility LLC ("AT&T"), acting by and through its undersigned counsel, hereby serves its First Set of Interrogatories upon Plaintiff Jason Williams ("Plaintiff"). Plaintiff is required to answer the following Interrogatories, in writing, within thirty (30) days of service of these Interrogatories and to serve answers on counsel for AT&T set out in the signature block below.

## DEFINITIONS

The following definitions shall apply to these Interrogatories, whether or not a term is emphasized or capitalized, unless the context of the Interrogatory clearly indicates otherwise:

1.    The term "You," "Your," or "Plaintiff" shall mean Plaintiff Jason Williams.

1

2.     The term "Complaint" shall mean and refer to the Complaint filed by Plaintiff in this action dated October 24, 2019, and any amendments and/or corrections thereto.

3.     The term "Action" shall mean and refer to the above-captioned proceeding.

4.     The term "SIM Changes" shall mean and refer to the alleged SIM Changes described in and referred to in Paragraphs 37 through 81 of the Complaint, each a "SIM Change."

5.     The term "Document" or "Documents" is used in its customary broad sense and shall include, by way of illustration only and not by way of limitation, all Communications (as defined below), all Electronic Communications (as defined below), all Electronically Stored Information (as defined below), all written and graphic matter of every kind and description, whether printed or reproduced by any process, electronically stored, or written and/or produced by hand, whether final draft, original, or reproduction, such as: correspondence, hand-written or typed notes, memoranda of telephone or personal conversations, notices, press releases, reports, rules, regulations, directives, minutes, records of meetings, inter-office communications, financial statements, ledgers, books, accounts, proposals, prospectuses, offers, orders, receipts, working papers, desk calendars, appointment books, routing slips, time sheets, logs, movies, tapes (or visual or audio reproduction), recordings, drawings, graphs, charts, photographs, purchase orders, electronic media information, data processing paper results, data printouts and

2

computations (both in existence and stored in memory components), transcripts or oral statements or testimony, reports and/or summaries of interviews, reports and/or summaries of investigations, opinions or reports of consultants, and any and all other data compilations or information resources from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form or material similar to any "document" as used herein. As used herein, the term is to be given the broadest possible meaning that the Federal Rules of Civil Procedure and the Federal Rules of Evidence allow.

6.     The term "Electronically Stored Information" is defined to be synonymous in meaning and equal in scope to the usage of the term "electronically stored information" in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

7.     The term "Communication" shall mean the transmission or exchange of any information, whether written, oral, or by any other means, and includes, but is not limited to, any Electronic Communication (as defined below) and any Documents which abstract, digest, transcribe, or record any such Communication.

8.     The term "Electronic Communication" shall mean any Communication created, modified, stored, sent, or received electronically, digitally, via e-mail, computer, telephone, cellular phone, digital phone and/or personal digital assistant (PDA), and shall include, but not be limited to, e-mail, text messages, and messages known as MMS, SMS and 1MS, and shall include any of the above that have been deleted, but that are reasonably available in the ordinary course of business.

3

9. The terms "Identify" or "Identity" shall mean:

   a. When used in reference to an individual, state his or her full name, maiden or former names, present or last known home and business addresses and telephone numbers, and present and last known occupation, employer, and job title or description;

   b. When used in reference to an organization, state its full name, its state of incorporation (if applicable), the address of its principle place of business, and its telephone number;

   c. When used in reference to an event or action, state the dates or approximate dates thereof, a description of what occurred, and all Persons involved; and

   d. When used in reference to a Document, state the type of Document, its date, the Identity of its author and its recipient, any title and/or serial number or file number appearing on the Document, the Identity of its present custodian, its present location, and a brief description of its subject matter. If any such Document was, but no longer is, in Your possession or control, or no longer exists, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred to others and if so, to whom and when, or (iv) how it has been otherwise disposed of.

4

10. "Describe in Detail" shall mean:

    a. Describe fully by reference to underlying facts rather than ultimate facts or conclusions of fact or law;

    b. Particularize as to: (i) time; (ii) place, (iii) manner, and (iv) Identity of Persons involved;

    c. Whenever it is required that You Describe in Detail the subject matter of a Document, You may Identify said Document by Bates-number or attach a copy of said Document to Your response in lieu of Describing in Detail the subject matter of such Document, provided you also Identify the Document's custodian.

11. The term "Person" means any natural person, group of persons, or any business, legal, or governmental entity or association.

12. The term "Password" means any username, user ID, password, passcode, keys (public or private), personal identification numbers ("PINs"), backup code or recovery seed for App 2FA or TOTP, or other authentication mechanism or credential capable of being used to gain access to an Account or information.

13. The term "Account" means any website, application, computer system or software you are able to access by virtue of providing Passwords or other authentication credentials, including but not limited to email, cloud storage, financial services, Password managers, cryptocurrency exchanges and cryptocurrency wallets.

5

14.     The term "Security Measure" refers to security features or steps utilized to prevent unauthorized access to or activity within Accounts, including but not limited to challenge questions, SMS two-factor authentication ("SMS 2FA"), email two-factor authentication either through a passcode or link sent to your registered email on the Account ("Email 2FA"), application-based two-factor authentication ("App 2FA") such as Google Authenticator or Authy (also referred to as time-expiring one time PINs, or "TOTP"), and wallet whitelisting.

15.     The terms "Concerning," "Regarding," "Referring to," "Relating to" or "Evidencing" are used in their broadest sense allowed under the Federal Rules of Civil Procedure and shall mean directly or indirectly referring to, alluding to, relating to, pertaining to, connecting with, commenting on, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, embodying and/or demonstrating a stated subject matter, including, but not limited to, the particular category of information or Document requested.

16.     All other undefined terms shall have the meaning found at http://www.merriam-webster.com, consistent with the context in which such terms are used.

## **INSTRUCTIONS**

1.     The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to make the Interrogatory inclusive rather than exclusive.

2.      The singular shall be deemed to include the plural, and the plural shall be deemed to include the singular, as necessary to make the Interrogatory inclusive rather than exclusive.

3.      Each of the words "each," "every," "any" and "all" shall be deemed to include each of the other words.

4.      Any interrogatory phrased in the present tense shall be read as if propounded in the past tense and vice versa as necessary to make each Interrogatory inclusive rather than exclusive.

5.      Interrogatories that cannot be responded to in full shall be answered as completely as possible, and incomplete responses shall be accompanied by an explanation of the reasons for the incompleteness of the response as well as by a statement of whatever knowledge, information, or belief You possess with respect to each incompletely answered Interrogatory.  If You object to or otherwise decline to answer any portion of any Interrogatory, provide all information called for by that portion of the Interrogatory to which You do not object or which You do not decline to answer.

6.      If You object to any Interrogatory on the basis of attorney-client privilege, work-product doctrine, or confidentiality, then provide a general description of the type of information withheld sufficient to enable Plaintiff and the Court to assess the applicability of the asserted privilege or protection.  If You claim privilege or confidentiality as to any Document sought by or responsive to these Interrogatories, state the general subject matter of the Document, the date the

7

information or Document was transmitted or prepared, each Person having knowledge of the Document (and, as applicable, its author, signer, and each Person to whom a copy was directed), and the nature of the privilege, confidentiality, or other legal basis for it being withheld from production.

7.     Unless otherwise addressed in these requests, the relevant time period for these Document Requests extends from the date Mr. Williams became an AT&T customer until the present.

8.     These Interrogatories are continuing.  Your responses to these Interrogatories shall be supplemented as required by Rule 26(e) of the Federal Rules of Civil Procedure.

## **INTERROGATORIES**

1.     Identify each person with knowledge or information concerning the facts alleged in the Complaint, along with the subjects of that knowledge or information you believe each person possesses.

**ANSWER:**


2.     For each Account that you contend was accessed without authorization following any SIM Change:

        a.  State the date(s) and time(s) of the unauthorized access;

        b.  Identify each type of Password required to access the Account and how and where you stored any record of the Password or any App 2FA backup code associated with the account; and

8

c. Identify each Security Measure implemented or activated to prevent unauthorized access to, or activity within, the Account.

**ANSWER:**


3. For each Account identified in your response to Interrogatory No. 2, describe in detail any changes you made to (i) the Passwords or Security Measures you utilized for the Account, and (ii) how or where you stored any record of any Password or App 2FA/TOTP backup code associated with the Account, following each of the SIM Changes alleged in the Complaint.

**ANSWER:**


4. For each cryptocurrency Account (including but not limited to exchanges and wallets) you have maintained or created since January 1, 2015, state the name of the Account (*e.g.,* Binance), the date you created the account, and the full transaction ID for any unauthorized transaction or alleged theft within the Account.

**ANSWER:**

9

5. For each category of stolen funds or cryptocurrency you assert as damages in this action, describe in detail any investigation by you or any third party relating to same, and all efforts you have attempted or made to recover any of same, including whether such efforts resulted in recovery.

**ANSWER:**

6. Identify each AT&T employee, representative or agent that you communicated with concerning the SIM Changes or the security of your AT&T account, state the date and time of the communication, and describe in detail the subject matter of the communication including any quotations or paraphrasing of aspects of the communication that you specifically recall.

**ANSWER:**

7. Identify each third party, including law enforcement personnel, you communicated with concerning the SIM Changes and identify any documents you exchanged with that third party, including any reports you filed, created or received in connection with same.

**ANSWER:**

8.      Identify each specific item of your CPNI (as defined in 47 U.S.C. § 222(h)(1)) that you allege AT&T improperly disclosed to a third party and, for each, describe in detail how the item of CPNI enabled any unauthorized person to access your Account(s), including the Accounts identified in your response to Interrogatory No. 2.

**<u>ANSWER:</u>**


9.      Describe each mining rig, server, and other piece of hardware you purchased and utilized in connection with your Slush Pool mining operations by providing the manufacturer and model number for each, when and from whom you purchased it, and its location and ownership as of the date of your response.

**<u>ANSWER:</u>**


10.     Describe in detail any training you received or efforts you undertook to educate yourself on how to securely hold, own, store, or trade cryptocurrency, providing, at a minimum the date and time, subject matter, training provider, publications, and materials or sources of information relative to such training or education.

**<u>ANSWER:</u>**


11

11.    Describe each allegedly false representation or omission by AT&T that you contend supports any of your claims in this Action, by setting forth the exact statement made or fact not disclosed by AT&T, the source(s) or maker(s) of such statement or nondisclosure, the date and time of such statement or non-disclosure, and, for any described non-disclosures, the factual basis for your contention that AT&T was under a duty to disclose the fact to you.

**ANSWER:**


12.    Describe, by identifying the insurer and stating the nature of the claim, each claim you have submitted or tendered to an insurance carrier related to any loss, injury, or damage arising from or related to the facts or circumstances alleged in the Complaint.

**ANSWER:**


13.    Identify all facts in support of your contention that SIM changes on Your AT&T Account were used to gain unauthorized access to your cryptocurrency and or social media Account(s), including a detailed description for each Account accessed without authorization (including those identified in your response to Interrogatory No. 2) of all facts establishing how an unauthorized person was able to obtain the required Passwords and satisfy any Security Measures implemented on the Account.

**ANSWER:**

12

14.     For each Account accessed without authorization, state which devices and/or computers you used to access that Account and whether you accessed the Account through an application, an internet browser, or other means on each such device.

**ANSWER:**


15.     Identify all the cell phone numbers you used or had since January 2015 to present, and the wireless carrier associated with each number.

**ANSWER:**

KILPATRICK TOWNSEND & STOCKTON LLP


_Joseph S. Dowdy_ (signature)

Joseph S. Dowdy (N.C. State Bar No. 31941)
Phillip A. Harris, Jr. (N.C. State Bar No. 39740)
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com
        pharris@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
Email: mbreslin@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

14

## CERTIFICATE OF SERVICE

I hereby certify that on date set out below, I served a true copy of the foregoing

**DEFENDANT AT&T MOBILITY LLC'S FIRST SET OF INTERROGATORIES**

by electronic mail, pursuant to the agreement of counsel for all parties, to all counsel

of record and additional persons listed below:

| | |
|---|---|
| Terence S. Reynolds | Christopher LaVigne |
| treynolds@shumaker.com | Christopher.LaVigne@withersworldwide.com |
| Lucas D. Garber | Joe Gallo |
| lgarber@shumaker.com | Joseph.Gallo@withersworldwide.com |
| SHUMAKER LOOP & KENDRICK LLP | WITHERS BERGMAN LLP |
| 101 South Tyron Street | 430 Park Avenue, 10th Floor |
| Suite 2200 | New York, NY 10022 |
| Charlotte, North Carolina 28280 | *Counsel for Plaintiff Jason Williams* |
| *Local Civil Rule 83.1(d) Counsel for Plaintiff Jason Williams* | And to: |
| | Lalindar.Sanichar@witherworldwide.com |
| | Laura.Gosheff@withersworldwide.com |

This the 22th day of May, 2020.

Joseph S. Dowdy

15

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

-------------------------------------------------------- X

JASON WILLIAMS,
                         Plaintiff,

                vs.

AT&T MOBILITY LLC,

                       Defendant.

-------------------------------------------------------- X

Case No. 5:19-cv-00475-BO

**PLAINTIFF JASON WILLIAMS'**
**RESPONSES AND OBJECTIONS**
**TO DEFENDANT'S FIRST SET**
**OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS**

         Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the

Eastern District of North Carolina 26.1 and 34.1, Plaintiff Jason Williams ("Plaintiff" or

"Williams"), by his attorneys, Withers Bergman LLP, for his responses and objections to

Defendant AT&T Mobility LLC's ("Defendant" or "AT&T") First Set of Requests for

Production of Documents (the "First Request" and each a "Request"), dated May 22, 2020, states

as follows:

<div align="center"><b><u>ENUMERATED OBJECTIONS</u></b></div>

         1.       Plaintiff objects to the Request on the grounds that it is overly broad, calls for

disclosure of information not relevant to the claims or defenses of any party, seeks documents

and information not relevant to the subject matter of this action, and in that it is not reasonably

calculated to lead to the discovery of admissible evidence.

         2.       Plaintiff objects to the Request on the ground that it is unduly burdensome.

         3.       Plaintiff objects to the Request on the grounds that it is redundant and duplicative

of other requests.

         4.       Plaintiff objects to the Request on the grounds that it is argumentative, factually

unfounded, and/or based on factual premises that are false, inaccurate, or not conceded, or based

on recitations of events that did not occur, or the occurrence of which is, or may be, disputed. Plaintiff has no obligation to the correct all the factual errors, inaccuracies, and false premises stated or embedded in the Request. In responding to the Request, Plaintiff does not concede the validity or accuracy of any factual assertion or premise stated, or embedded, in any instruction, definition, or individual Request.

5. Plaintiff objects to the Request on the grounds that it seeks information not in Plaintiff's possession, custody or control, or to the extent that it seeks to impose discovery obligations on non-parties.

6. Plaintiff objects to the Request on the grounds that it calls for the disclosure of information that represents or contains confidential, proprietary, and/or personal information.

7. Plaintiff objects to the Request on the grounds that it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Plaintiff hereby claims all such privileges, immunities, and protections to the extent implicated by each Request. Any disclosure of information subject to any claim of privilege, immunity, or protection is inadvertent, and without waiver of Plaintiff's rights to recall and retrieve such inadvertently disclosed information.

8. Plaintiff objects to the Request and the First Requests' Instructions and Definitions to the extent they purport to impose obligations contrary to, different from, or in addition to those set forth in the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Eastern District of North Carolina, or the Individual Practice Rules of Judge Terrence W. Boyle, and other applicable rules and laws.

# TERMS AND CONDITIONS

Subject to, limited by and without waiving the foregoing Enumerated Objections and the specific objections stated below, Williams agrees to make available copies of documents responsive to the First Request on the following terms and conditions:

1.      Inadvertent production of any information that is confidential, privileged, was prepared in anticipation of litigation or for trial or is otherwise protected from discovery, shall not constitute a waiver of any privilege or of any ground for objection to discovery with respect to such information, document or any other document or information, or the subject matter thereof or the information contained therein, or of the right of Plaintiff to object to the use of any such document or information.

2.      That Plaintiff has responded or objected to the First Requests, or to any part thereof, is not intended to be, nor should it be deemed, an admission that he accepts or admits the existence of any alleged fact or documents described or assumed, or any allegations or statements set forth, assumed or implied, by any individual Request, or that such response or objection constitutes admissible evidence.  In responding to the First Requests, Plaintiff neither waives nor intends to waive, but expressly reserves, every part of every objection to the First Requests and reserves any and all objections as to authenticity, relevance, competency, materiality and/or admissibility at trial or any hearing of any information produced, set forth, identified, or referred to herein.

3.      The following responses are made solely for the purpose of this action.  Each response is subject to all objections as to competence, relevance, privilege, materiality, admissibility, and any and all other objections and grounds that would require the exclusion of any statement or document made available herewith as if any request were asked of, or if any

statements contained herein were made by, or if any documents made available herewith were offered by, a witness present and testifying in court, all of which objections are reserved and may be interposed at the time of any hearing or trial in this action.

4.      The following responses and any documents made available pursuant thereto are based on facts known to Plaintiff at the time of responding to the First Requests and a review of files reasonably expected to contain responsive documents or information.  Plaintiff reserves the right to amend and/or supplement these responses and any documents made available in the event new or different information or documents are discovered.

5.      Unless otherwise defined herein, all capitalized terms in the specific responses below as defined in the same way as in Plaintiff's First Requests for Production to Defendant.

## SPECIFIC RESPONSES AND OBJECTIONS

The foregoing Enumerated Objections, and the foregoing Terms and Conditions, apply to all of the specific requests and are incorporated into each and every specific response and objection set forth below.  In response to certain requests, Williams may restate one or more of its objections for clarity or emphasis.  The lack of such specific references, and/or the provision of specific responses and objections stated below, however, are not intended as, and shall not be deemed to be, a waiver, either in whole or in part, of any of the foregoing Enumerated Objections or Terms and Conditions, and, subject to and without waiving them, Williams further responds and objects to each individual request as follows:

**Request No. 1:**
Produce all documents identified or requested to be identified in response to, or containing information responsive to, any interrogatory served on you in this Action.

**Response to Request No. 1:**

Plaintiff objects to Request No. 1 on the grounds set forth in Enumerated Objections 1, 2, 3, 5, 6, 7, and 8.  Subject to, limited by and without waiving his Enumerated Objections and the

4

Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 2:**
Produce all documents that are referenced or quoted in the Complaint.

**Response to Request No. 2:**

Plaintiff objects to Request No. 2 on the grounds set forth in Enumerated Objections 3 and 5. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 3:**
Produce all documents identified in Plaintiff's Rule 26(a)(1) disclosures.

**Response to Request No. 3:**

Plaintiff objects to Request No. 3 on the grounds set forth in Enumerated Objections 3, 5, 6, and 7. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 4:**
Produce any statements which you or your attorneys have from any employee, agent, or representative of AT&T.

**Response to Request No. 4:**

Plaintiff objects to Request No. 4 on the grounds set forth in Enumerated Objections 1, 3, 5, 7, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally. Subject to, limited by and without waiving his Enumerated

Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 5:**
Produce all documents relating to communications between Plaintiff and AT&T (including AT&T's employees, agents, and representatives) concerning the SIM Changes, or the security or protection of your AT&T Account, Personal Information, or CPNI.

**Response to Request No. 5:**

Plaintiff objects to Request No. 5 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally and in its use of the phrase "concerning the SIM Changes, or the security or protection of your AT&T Account, Personal Information, or CPNI." Plaintiff further objects to this Request on grounds that it seeks documents exclusively within AT&T's custody and control. Plaintiff further objects to the term "SIM Changes" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 6:**
Produce all documents related to the SIM Changes, including documents evidencing any transfer of cryptocurrency or losses you allege in connection with the SIM Changes.

**Response to Request No. 6:**

        Plaintiff objects to Request No. 6 on the grounds set forth in Enumerated Objections 3, 4, 5, 6, 7, and 8. Plaintiff further objects to the term "SIM Changes" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 7:**
For each Account that was accessed without authorization, attempted to be accessed without authorization, or had any settings changed without authorization following any SIM Change, produce all documents evidencing or relating to such unauthorized access, attempted access, or settings changes, including but not limited to any alerts or notifications, Account activity logs, and IP address access logs.

**Response to Request No. 7:**

        Plaintiff objects to Request No. 7 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to the term "SIM Change" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 8:**
For each cryptocurrency wallet or exchange Account you have created or maintained, produce a copy of all instructions and warnings related to Account security that you received, were referred to, or were made available to you during your creation or maintenance of same.

**Response to Request No. 8:**

Plaintiff objects to Request No. 8 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally and in its use of the phrase "all instructions and warnings related to Account security that you received, were referred to, or were made available to you." Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 9:**
Produce all documents evidencing your entitlement to or ownership of the cryptocurrency you alleged was stolen following any SIM Change, including but not limited to documents establishing your ownership of the wallet or exchange Account where the cryptocurrency was held, and establishing the dates of acquisition of each type of cryptocurrency at issue and the method of acquisition.

**Response to Request No. 9:**

Plaintiff objects to Request No. 9 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally and in its use of the phrase "documents evidencing your entitlement to or ownership of the cryptocurrency you alleged was stolen following any SIM Change." Plaintiff further objects to the term "SIM Change" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in

his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 10:**
For each Account that was compromised following any SIM Change, produce all documents stored in or accessible through that account that, at the time of any SIM Change, contained information related to any Password.

**Response to Request No. 10:**

Plaintiff objects to Request No. 10 on the grounds set forth in Enumerated Objections 3, 4, 5, 6, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally and in its use of the phrase "all documents stored in or accessible through that account that, at the time of any SIM Change, contained information related to any Password." Plaintiff further objects to the term "SIM Changes" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 11:**
For each Account that was compromised following any SIM Change, produce all documents stored in or accessible through that account that, at the time of any SIM Change, contained "sensitive [and/or] confidential personal, legal, [and/or] business information," as referenced in Paragraph 83 and elsewhere in the Complaint.

**Response to Request No. 11:**

Plaintiff objects to Request No. 11 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to the term "SIM Change" as defined in this

Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint.

**Request No. 12:**
Produce all documents provided to or received from any law enforcement agency, including but not limited to, the FBI, state, or local law enforcement, regarding the SIM Changes.

**Response to Request No. 12:**

Plaintiff objects to Request No. 12 on the grounds set forth in Enumerated Objections 3, 4, 5, 6, and 8. Plaintiff further objects to the term "SIM Changes" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 13:**
Produce all documents evidencing that you were the target or victim of identity theft, hacking, phishing attack, SIM change fraud, cryptocurrency theft, extortion, threats, or any other security breach or incident, other than the SIM Changes themselves.

**Response to Request No. 13:**

Plaintiff objects to Request No. 13 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally and in its use of the phrase "any other security breach or incident." Plaintiff further objects to the term "SIM Changes" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further

objections, Plaintiff will produce copies of non-privileged and non-work product documents in

his possession, custody, or control responsive to this Request to the extent such documents exist

and can be, and have been, identified and located.

**Request No. 14:**
Produce all documents evidencing actions you have taken to maintain adequate cybersecurity, including but not limited to maintaining strong Passwords, changing Passwords, not reusing Passwords, using two-factor authentication, using a Password manager, use of encryption, proper Password storage, and use of antivirus or other security software for all of your Accounts referenced or related to allegations in the Complaint, including but not limited to your AT&T, Gmail, Twitter, Instagram, DropBox, Google Drive, LinkedIn, HitBTC, Coinbase, Gemini, First Citizens Bank, and Slush Pool Accounts.

**Response to Request No. 14:**

Plaintiff objects to Request No. 14 on the grounds set forth in Enumerated Objections 1,

2, 3, 4, 6, and 8.  Plaintiff further objects to this Request on the grounds that it is overly broad,

vague, and ambiguous generally and in its use of the phrase "actions you have taken to maintain

adequate cybersecurity."  Subject to, limited by and without waiving his Enumerated Objections,

the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-

privileged and non-work product documents in his possession, custody, or control responsive to

this Request to the extent such documents exist and can be, and have been, identified and

located.

**Request No. 15:**
Produce copies of all materials, instructions, and publications you reviewed prior to February 6, 2019 regarding how to properly secure Accounts, or properly safeguard cryptocurrency wallets or exchange Accounts.

**Response to Request No. 15:**

Plaintiff objects to Request No. 15 on the grounds set forth in Enumerated Objections 1,

2, 3, 4, 6, and 8.  Plaintiff further objects to this Request on the grounds that it is overly broad,

vague, and ambiguous generally and in its use of the phrase "how to properly secure Accounts."

**Request No. 16:**
To the extent not produced in response to other requests, produce all documents containing or relating to Passwords or Security Measures associated with any Accounts that were accessed without authorization following any SIM Change, including but not limited to your AT&T, Gmail, Twitter, Instagram, DropBox, Google Drive, LinkedIn, HitBTC, Coinbase, Gemini, and Slush Pool Accounts, and any other wireless telephone Account held by you.

**Response to Request No. 16:**

Plaintiff objects to Request No. 16 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally and in its use of the phrase "any other security breach or incident." Plaintiff further objects to the term "SIM Change" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Plaintiff further objects to this Request to the extent its requests the production of documents "containing or relating to Passwords or Security Measures associated with… any other wireless telephone Account held by you" on the grounds that it is overly broad, is not reasonably calculated to lead to the discovery of admissible evidence, and seeks irrelevant information. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 17:**
Produce copies of all Account activity logs and transaction records for your Slush Pool, Gemini, HitBTC, and Coinbase Accounts since inception of the Account through the present, including but not limited to records of all deposits, transfers, trades, withdrawals, mining rewards, changes to any Account setting, wallet address changes, and logs of IP address access to the Account.

**Response to Request No. 17:**

Plaintiff objects to Request No. 17 on the grounds set forth in Enumerated Objections 1, 2, 3, 6, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally and in its use of the phrase "Account activity logs and transaction records." Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 18:**
Produce records evidencing your ownership and purchase of, and price paid for, the mining equipment and hardware in which you allege you invested in connection with your Slush Pool or cryptocurrency mining operations.

**Response to Request No. 18:**

Plaintiff objects to Request No. 18 on the grounds set forth in Enumerated Objections 1, 2, 3, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 19:**
Produce all documents evidencing or relating to actions you took following any SIM Change to alter the security of any of your Accounts (including, without limitation, by changing Passwords or Security Measures utilized, or changing the manner in which you stored records of Passwords).

**Response to Request No. 19:**

Plaintiff objects to Request No. 19 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 6, and 8. Plaintiff further objects to the term "SIM Changes" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events

as set forth in the Complaint; and is not a term defined in the Complaint.  Subject to, limited by

and without waiving his Enumerated Objections, the Terms and Conditions, and his further

objections, Plaintiff will produce copies of non-privileged and non-work product documents in

his possession, custody, or control responsive to this Request to the extent such documents exist

and can be, and have been, identified and located.

**Request No. 20:**
Produce all documents evidencing that any of your CPNI that you allege AT&T improperly
disclosed was used to enable unauthorized access to any of your Accounts.

**Response to Request No. 20:**

Plaintiff objects to Request No. 20 on the grounds set forth in Enumerated Objections 3,

4, 5, 6, and 8.  Subject to, limited by and without waiving his Enumerated Objections and the

Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product

documents in his possession, custody, or control responsive to this Request to the extent such

documents exist and can be, and have been, identified and located.

**Request No. 21:**
For each false statement or misrepresentation you allege AT&T made to you, produce all
documents referencing, containing, or evidencing the false statement or misrepresentation.

**Response to Request No. 21:**

Plaintiff objects to Request No. 21 on the grounds set forth in Enumerated Objections 3,

4, 5, 6, and 7.  Subject to, limited by and without waiving his Enumerated Objections and the

Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product

documents in his possession, custody, or control responsive to this Request to the extent such

documents exist and can be, and have been, identified and located.

**Request No. 22:**
For each of your Gmail, HitBTC, Coinbase, Gemini, Slush Pool, LinkedIn, Twitter, Instagram,
and First Citizens Bank Accounts, produce all documents evidencing or otherwise relating to the
manner, information, processes, and means utilized by any person to access the Account without

authorization following any SIM Change, including but not limited to documents related to how the person obtained, satisfied, or bypassed any Password or Security Measure for the Account.

**Response to Request No. 22**:

Plaintiff objects to Request No. 22 on the grounds set forth in Enumerated Objections 3, 4, 5, 6, and 8. Plaintiff further objects to the term "SIM Changes" as defined in this Request on grounds that it is overly broad, vague, and ambiguous generally; mischaracterizes the events as set forth in the Complaint; and is not a term defined in the Complaint. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 23**:
Produce all documents relating to the market value, as of February 2019, of each item of equipment or hardware in which you had invested prior to February 2019 for the purpose of mining Bitcoin.

**Response to Request No. 23**:

Plaintiff objects to Request No. 23 on the grounds set forth in Enumerated Objections 3, 4, 5, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 24**:
To the extent not otherwise produced, produce all documents supporting or evidencing your allegations in the following paragraphs of the Complaint: 5, 8, 9, 20, 32, 33, 34, 39, 40-45, 48, 49, 52, 55, 60, 61, 65, 69, 70, 71, 73, 76, 77, 79, 82-90, 97, 103, 108, 110, 111, 113, 117, 122-138, 140, 147, 150, 155, 157, 160, 162, 163, 167, 170, 176, 177, 183, 186, 202, and 210.

**Response to Request No. 24:**

Plaintiff objects to Request No. 24 on the grounds set forth in Enumerated Objections 3, 4, 5, 6, 7, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request.

**Request No. 25:**
To the extent not otherwise produced, produce all documents concerning the issues raised by, or allegations stated in, the Complaint.

**Response to Request No. 25:**

Plaintiff objects to Request No. 25 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to this Request on the grounds that it is overly broad, vague, and ambiguous generally and in its use of the phrase "all documents concerning the issues raised by…the Complaint." Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 26:**
To the extent not otherwise produced, produce all documents supporting or evidencing any injury, damage, or loss you assert in this Action, or that you rely upon in support of your calculation of alleged damages.

**Response to Request No. 26:**

Plaintiff objects to Request No. 26 on the grounds set forth in Enumerated Objections 3, 5, 6, and 7. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request.

16

**Request No. 27:**
To the extent not otherwise produced, produce all documents supporting or evidencing your inability to mine Bitcoin after February 2019.

**Response to Request No. 27:**

Plaintiff objects to Request No. 27 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request.

**Request No. 28:**
To the extent not otherwise produced, produce all documents that you intend to introduce at the trial of this Action.

**Response to Request No. 28:**

Plaintiff objects to Request No. 28 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to this Request on the grounds that it is premature.

**Request No. 29:**
To the extent not otherwise produced, produce all communications between Plaintiff and AT&T, its employees, agents, or representatives, concerning any of your allegations in the Complaint.

**Response to Request No. 29:**

Plaintiff objects to Request No. 29 on the grounds set forth in Enumerated Objections 2, 3, 5, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 30:**
To the extent not otherwise produced, produce all documents relating to communications between you and any third party regarding your claims against AT&T in the Complaint.

**Response to Request No. 30:**

Plaintiff objects to Request No. 30 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 31:**
To the extent not otherwise produced, produce all documents that you maintain support any claim that you have suffered damages as a result of any actions or omissions by AT&T.

**Response to Request No. 31:**

Plaintiff objects to Request No. 31 on the grounds set forth in Enumerated Objections 3, 5, 6, and 7. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request.

Dated: July 6, 2020
New York, New York

WITHERS BERGMAN LLP

By: _____
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

Terence S. Reynolds
Lucas D. Garber
Shumaker Loop & Kendrick LLP
101 South Tryon Street
Suite 2200
Charlotte, NC 28280
(704) 945-2909
treynolds@shumaker.com
lgarber@shumaker.com

*Attorneys for Plaintiff Jason Williams*

TO:    Joseph S. Dowdy (N.C. State Bar No. 31941)
Phillip A. Harris, Jr. (N.C. State Bar No. 39740)
Kilpatrick Townsend & Stockton LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
jdowdy@kilpatricktownsend.com
pharris@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
mbreslin@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

--------------------------------------------------------- X

JASON WILLIAMS,

               Plaintiff,

        vs.

AT&T MOBILITY LLC,

             Defendant.

--------------------------------------------------------- X

Case No. 5:19-cv-00475-BO

**PLAINTIFF JASON WILLIAMS'
RESPONSES AND OBJECTIONS
TO DEFENDANT'S FIRST SET
OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the Eastern District of North Carolina 26.1 and 33.1, Plaintiff Jason Williams ("Plaintiff" or "Williams"), by his attorneys, Withers Bergman LLP, for his responses and objections to Defendant AT&T Mobility LLC's ("Defendant" or "AT&T") First Set of Interrogatories (the "First Interrogatories" and each an "Interrogatory"), dated May 22, 2020, states as follows:

## ENUMERATED OBJECTIONS

Plaintiff objects to the individual interrogatories (each an "Interrogatory") as follows:

1.      Plaintiff objects to the Interrogatory on the grounds that it is overly broad, calls for disclosure of information not relevant to the claims or defenses of any party, seeks documents and information not relevant to the subject matter of this action, and in that it is not reasonably calculated to lead to the discovery of admissible evidence.

2.      Plaintiff objects to the Interrogatory on the ground that it is unduly burdensome.

3.      Plaintiff objects to the Interrogatory on the grounds that it is redundant and duplicative of other requests.

4.      Plaintiff objects to the Interrogatory on the grounds that it is argumentative, factually unfounded, and/or based on factual premises that are false, inaccurate, or not conceded,

or based on recitations of events that did not occur, or the occurrence of which is, or may be, disputed. Plaintiff has no obligation to correct all the factual errors, inaccuracies, and false premises stated or embedded in the Interrogatory. In responding to the Interrogatory, Plaintiff does not concede the validity or accuracy of any factual assertion or premise stated, or embedded, in any instruction, definition, or individual interrogatory.

5.     Plaintiff objects to the Interrogatory on the grounds that it seeks information not in Plaintiff's possession, custody or control, or to the extent that it seeks to impose discovery obligations on non-parties.

6.     Plaintiff objects to the Interrogatory on the grounds that it calls for the disclosure of information that represents or contains confidential, proprietary, and/or personal information.

7.     Plaintiff objects to the Interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Plaintiff hereby claims all such privileges, immunities, and protections to the extent implicated by each interrogatory. Any disclosure of information subject to any claim of privilege, immunity, or protection is inadvertent, and without waiver of Plaintiff's rights to recall and retrieve such inadvertently disclosed information.

8.     Plaintiff objects to the Interrogatory and the First Interrogatories' Instruction and Definitions to the extent they purport to impose obligations contrary to, different from, or in addition to those set forth in the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Eastern District of North Carolina, or the Individual Practice Rules of Judge Terrence W. Boyle, and other applicable rules and laws.

## TERMS AND CONDITIONS

Plaintiff provides responses to the First Interrogatories subject to the foregoing Enumerated Objections, the specific objections stated below, and the following terms and conditions:

1. Inadvertent production of any information that is confidential, privileged, was prepared in anticipation of litigation or for trial or is otherwise protected from discovery, shall not constitute a waiver of any privilege or of any ground for objection to discovery with respect to such information, document or any other document or information, or the subject matter thereof or the information contained therein, or of the right of Plaintiff to object to the use of any such document or information.

2. That Plaintiff has responded or objected to the First Interrogatories, or to any part thereof, is not intended to be, nor should it be deemed, an admission that they accept or admit the existence of any alleged fact or documents described or assumed, or any allegations or statements set forth, assumed or implied, by any individual interrogatory, or that such response or objection constitutes admissible evidence. In responding to the First Interrogatories, Plaintiff neither waives nor intends to waive, but expressly reserve, every part of every objection to the First Interrogatories and reserves any and all objections as to authenticity, relevance, competency, materiality and/or admissibility at trial or any hearing of any information produced, set forth, identified, or referred to herein.

3. The following responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, privilege, materiality, admissibility, and any and all other objections and grounds that would require the exclusion of any statement or document made available herewith as if any request were asked of, or if any statements contained herein were made by, or if any documents made available herewith were

3

offered by, a witness present and testifying in court, all of which objections are reserved and may be interposed at the time of any hearing or trial in this action.

4. The following responses and any documents made available pursuant thereto are based on facts known to Plaintiff at the time of responding to the First Interrogatories and a review of files reasonably expected to contain responsive documents or information. Plaintiff reserves the right to amend and/or supplement these responses and any documents made available in the event new or different information or documents are discovered.

5. Unless otherwise defined herein, all capitalized terms in the specific responses below as defined in the same way as in Plaintiff's First Interrogatories to Defendant.

## SPECIFIC RESPONSES AND OBJECTIONS

The foregoing Enumerated Objections and the foregoing Terms and Conditions apply to the specific interrogatories and are incorporated in the specific responses and objections set forth below. In response to certain individual interrogatories, Williams may restate one or more of its objections for clarity or emphasis. The lack of such specific references and/or the provision of specific responses and objections stated below, however, are not intended as, and shall not be deemed to be, a waiver, either in whole or in part, of any of the foregoing Enumerated Objections or Terms and Conditions, and subject to and without waiving them, Williams further responds and objects to each specific interrogatory as follows:

**Interrogatory No. 1:**
Identify each person with knowledge or information concerning the facts alleged in the Complaint, along with the subjects of that knowledge or information you believe each person possesses.

**Response to Interrogatory No. 1:**

Plaintiff objects to Interrogatory No. 1 on the grounds set forth in Enumerated Objections 1, 2, 3, and 5. Subject to, limited by and without waiving his Enumerated Objections and the

Terms and Conditions, Plaintiff states as follows: In his Initial Disclosures, Plaintiff identified himself as a person with knowledge or information concerning the facts in the Complaint. In addition, Plaintiff communicated with a number of AT&T employees and/or agents in connection with the SIM Swaps that affected the Williams Account(s). The identifying information currently in Plaintiff's possession, custody, or control regarding those employees and/or agents is set forth in the Complaint, including in paragraphs 46, 47, 51, 52, 57, 58, 62, 63, 64, 65, 68, 71, 72, 74, 75, 78, and 80.

**Interrogatory No. 2:**
For each Account that you contend was accessed without authorization following any SIM Change:
   a. State the date(s) and time(s) of the unauthorized access;
   b. Identify each type of Password required to access the Account and how and where you stored any record of the Password or any App 2FA backup code associated with the account; and
   c. Identify each Security Measure implemented or activated to prevent unauthorized access to, or activity within, the Account.

**Response to Interrogatory No. 2:**

Plaintiff objects to Interrogatory No. 2 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: As described in the Complaint, AT&T's actions allowed third-party hackers to access without authorization Plaintiff's accounts with the following applications and/or services: Gmail; Twitter; Instagram; DropBox; Google Drive; LinkedIn; Coinbase; Slush Pool; Gemini; and First Citizens Bank. It is impossible for Plaintiff to know for certain how times each of the above accounts was accessed with authorization, and the exact date and time of each unauthorized access. Some of Plaintiff's accounts, including his Gmail, have been permanently compromised. To the best of Plaintiff's knowledge, Plaintiff is aware of the following instances of unauthorized access of the above accounts:

- Plaintiff's Gmail account was accessed without authorization on or about: (1) November 5, 2018, at 11:30 PM Eastern time; (2) November 30, 2018; (3) December 1, 2018; and (4) December 2, 2018;

- Plaintiff's Twitter account was accessed without authorization on or about: (1) November 5, 2018, at 11:30 PM Eastern time; and (2) December 2, 2018;

- Plaintiff's Instagram account was accessed without authorization on or about November 5, 2018, at 11:30 PM Eastern time;

- Plaintiff's DropBox account was accessed without authorization on or about November 5, 2018, at 11:30 PM Eastern time;

- Plaintiff's Google Drive account was accessed without authorization on or about November 5, 2018, at 11:30 PM Eastern time;

- Plaintiff's LinkedIn account was accessed without authorization on or about November 5, 2018, at 11:30 PM Eastern time;

- Plaintiff's Coinbase account was accessed without authorization on or about: (1) November 5, 2018, at 11:30 PM Eastern time; (2) February 4, 2019; (3) February 8, 2019; and (4) February 12, 2019;

- Plaintiff's Slush Pool account was accessed without authorization on or about November 5, 2018, at 11:30 PM Eastern time;

- Plaintiff's Gemini account was accessed without authorization on or about: (1) November 30, 2018; (2) December 1, 2018; (3) December 2, 2018; (4) February 4, 2019; and (5) February 6, 2019; and

- Plaintiff's First Citizens Bank account was accessed without authorization on or about: (1) February 8, 2019; and (2) February 12, 2019.

For each of the above accounts, Plaintiff created strong passwords, which he memorized and did not store in any physical or electronic location. Plaintiff's Gmail account was protected by a two-step authentication process that required SMS text messaging using Plaintiff's AT&T phone number to change the password for Plaintiff's Gmail account. Each of the other accounts could be accessed by using Plaintiff's Gmail account, and/or a similar two-step authentication process that required SMS text messaging using Plaintiff's AT&T, to change the passwords for those accounts. By provided the third-party hackers with Plaintiff's SIM Card (and thereby the ability to use SMS text messaging with Plaintiff's AT&T phone number), AT&T enabled those hackers to change the passwords for the above accounts, and which prevented Plaintiff from accessing them, and allow the hackers to access them without Plaintiff's authorization.

**Interrogatory No. 3:**
For each Account identified in your response to Interrogatory No. 2, describe in detail any changes you made to (i) the Passwords or Security Measures you utilized for the Account, and (ii) how or where you stored any record of any Password or App 2FA/TOTP backup code associated with the Account, following each of the SIM Changes alleged in the Complaint.

**Response to Interrogatory No. 3:**

Plaintiff objects to Interrogatory No. 3 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: As described in the Complaint, after each of the instances of unauthorized access described in Response No. 2, Plaintiff contacted AT&T to attempt to regain control of his SIM Card, which AT&T had provided to third-parties without authorization. Each time Plaintiff was able to regain control of his SIM Card, Plaintiff attempted to secure each account that had been accessed without authorization, by using his Gmail account and/or SMS text messaging to verify his identify associated with each account, and by changing the passwords for those accounts. Each time Plaintiff changed any of the passwords associated with the accounts listed above, Plaintiff memorized the passwords, and did not store those

passwords in any physical or electronic location. AT&T's repeated failure to protect Plaintiff's SIM Card from being improperly swapped allowed hackers to repeatedly access Plaintiff's accounts without authorization, by using the same methods that were used in the "First Sim Swap Attack," as that term is defined and described in the Complaint.

**Interrogatory No. 4:**
For each cryptocurrency Account (including but not limited to exchanges and wallets) you have maintained or created since January 1, 2015, state the name of the Account (*e.g.,* Binance), the date you created the account, and the full transaction ID for any unauthorized transaction or alleged theft within the Account.

**Response to Interrogatory No. 4:**

Plaintiff objects to Interrogatory No. 4 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: As described in the Complaint, after AT&T improperly provided Plaintiff's SIM Card to third-party hackers, those hackers stole from Plaintiff on the following occasions:

- On or about November 5, 2018, at 11:30 PM, third-party hackers stole .23 Bitcoin from Plaintiff's Slush Pool account;

- On or about February 11, 2019, third-party hackers transferred $1,500 from Plaintiff's First Citizens Bank account to Plaintiff's Coinbase account to purchase Bitcoin (transaction ID COINBASE.COM/BTC 8889087930 5BCPMTFJ11B8); and

- On or about February 12, 2019, third-party hackers transferred $5,000 from Plaintiff's First Citizens Bank account to Plaintiff's Coinbase account to purchase Bitcoin (transaction ID COINBASE.COM/BTC 8889087930 MX**2MMU11B8).

**Interrogatory No. 5:**

For each category of stolen funds or cryptocurrency you assert as damages in this action, describe in detail any investigation by you or any third party relating to same, and all efforts you have attempted or made to recover any of same, including whether such efforts resulted in recovery.

**Response to Interrogatory No. 5:**

Plaintiff objects to Interrogatory No. 5 on the grounds set forth in Enumerated Objections 1, 4, and 6. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: Plaintiff has been unable to recover the Bitcoin that was stolen from him on or about November 5, 2018, at 11:30 PM. Through his own diligent efforts to recover the stolen funds, and with the assistance of the Fraud Department at First Citizens Bank, Plaintiff was able to receive a credit to reimburse him for the $6,500 stolen from his First Citizens Bank account on February 11 and 12, 2019.

**Interrogatory No. 6:**

Identify each AT&T employee, representative or agent that you communicated with concerning the SIM Changes or the security of your AT&T account, state the date and time of the communication, and describe in detail the subject matter of the communication including any quotations or paraphrasing of aspects of the communication that you specifically recall.

**Response to Interrogatory No. 6:**

Plaintiff objects to Interrogatory No. 6 on the grounds set forth in Enumerated Objections 1, 2, 3, 5, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: Plaintiff communicated with a number of AT&T employees and/or agents in connection with the SIM Swaps that affected the Williams Account(s). All information about those communications in Plaintiff's possession, custody, or control regarding those employees and/or agents is set forth in the Complaint, including in paragraphs 46, 47, 51, 52, 57, 58, 62, 63, 64, 65, 68, 71, 72, 74, 75, 78, and 80.

**Interrogatory No. 7:**

Identify each third party, including law enforcement personnel, you communicated with concerning the SIM Changes and identify any documents you exchanged with that third party, including any reports you filed, created or received in connection with same.

**Response to Interrogatory No. 7:**

Plaintiff objects to Interrogatory No. 7 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: As described in the Complaint, Plaintiff communicated with various law enforcement personnel in connection with the SIM Swaps, including members of the FBI and the Raleigh Police Department. Plaintiff recalls communicating with FBI agents Peter Ahorn, Michael Breier, and John Maser concerning the SIM Swaps and the resulting hacks of his accounts. Plaintiff communicated with J.P. Baric at MiningStore in connection with Plaintiff's cryptocurrency mining operation and the hacking of that operation that resulted from the SIM Swaps. Plaintiff communicated with members of the Fraud Department at First Citizens Bank regarding the theft from his bank accounts that resulted from the SIM Swaps, including Brad Carr and Debbie Allen. Plaintiff provided certain documents regarding the SIM Swaps to the FBI. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, and subject to, limited by and without waiving any objections in Plaintiff's Responses to AT&T's Requests for Production, Plaintiff will identify any such documents in connection with his response to AT&T's Requests for Production.

**Interrogatory No. 8:**
Identify each specific item of your CPNI (as defined in 47 U.S.C. § 222(h)(1)) that you allege AT&T improperly disclosed to a third party and, for each, describe in detail how the item of CPNI enabled any unauthorized person to access your Account(s), including the Accounts identified in your response to Interrogatory No. 2.

**Response to Interrogatory No. 8:**

Plaintiff objects to Interrogatory No. 8 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: As described in the Complaint, AT&T improperly provided third-party hackers with Plaintiff's SIM Card. By doing so, AT&T improperly disclosed and failed to protect all of the information associated with Plaintiff's SIM Card, including but not limited to Plaintiff's call usage and history, text message usage and history, email account usage and history, internet browser usage and history, and other application usage and history. All of this proprietary information was made available to AT&T by Plaintiff solely by virtue of the carrier-customer relationship.

**Interrogatory No. 9:**
Describe each mining rig, server, and other piece of hardware you purchased and utilized in connection with your Slush Pool mining operations by providing the manufacturer and model number for each, when and from whom you purchased it, and its location and ownership as of the date of your response.

**Response to Interrogatory No. 9:**

Plaintiff objects to Interrogatory No. 9 on the grounds set forth in Enumerated Objections 1, 2, 4, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: At the time of AT&T's facilitation of the First SIM Swap Attack, Plaintiff owned 500 Antminer S9 13.5 th/s mining rig servers, which he used for Bitcoin mining. Plaintiff purchased these 500 mining rig servers for $2,830 each, on or about February 23, 2018, from Dazzle Manufacturing, Ltd. Plaintiff also spent an additional $650,000 to optimize the rigs, set up and pay for the electricity to power them, and otherwise maintain

them.  As a result of AT&T's SIM Swaps, hackers accessed his Slush Pool account at least

twice, changed his cryptocurrency wallet to funnel the cryptocurrency rewards away from

Plaintiff and to the hackers, and ultimately deleted his Slush Pool account, essentially making his

mining rigs useless.  The mining rigs Plaintiff purchased for himself were only usable for a

certain amount of time, before a combination of technologically-advanced servers being released

to the market and the increasing difficulty of Bitcoin mining rendered those servers obsolete.

Although Plaintiff is currently in possession of the 500 mining rig servers, those servers have

been rendered worthless as a result AT&T improperly providing Plaintiff's SIM Card to third-

party hackers.  In addition, Plaintiff refers to the allegations in the Complaint regarding his

mining rig servers.

**Interrogatory No. 10:**
Describe in detail any training you received or efforts you undertook to educate yourself on how
to securely hold, own, store, or trade cryptocurrency, providing, at a minimum the date and time,
subject matter, training provider, publications, and materials or sources of information relative to
such training or education.

**Response to Interrogatory No. 10:**

Plaintiff objects to Interrogatory No. 10 on the grounds set forth in Enumerated

Objections 1, 2, 4, 5, 6, and 8.  Subject to, limited by and without waiving his Enumerated

Objections and the Terms and Conditions, Plaintiff states as follows: Plaintiff is a co-founder and

partner of Morgan Creek Digital, a highly successful asset management firm in North Carolina

that invests in blockchain technologies and the digital assets industry.  Plaintiff was an early

cryptocurrency investor and enthusiast, and endeavors to stay up-to-date with the latest

cryptocurrency news and developments.  Plaintiff is a leader in the field of cryptocurrency

markets and security.

**Interrogatory No. 11:**

Describe each allegedly false representation or omission by AT&T that you contend supports any of your claims in this Action, by setting forth the exact statement made or fact not disclosed by AT&T, the source(s) or maker(s) of such statement or nondisclosure, the date and time of such statement or non-disclosure, and, for any described non-disclosures, the factual basis for your contention that AT&T was under a duty to disclose the fact to you.

**Response to Interrogatory No. 11:**

Plaintiff objects to Interrogatory No. 11 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: Plaintiff communicated with a number of AT&T employees and/or agents in connection with the SIM Swaps that affected the Williams Account(s). All information about statements made by those AT&T employees and/or agents in Plaintiff's possession, custody, or control is set forth in the Complaint, including in paragraphs 46, 47, 51, 52, 57, 58, 63, 64, 65, 71, 74, 75, 78, and 80.

**Interrogatory No. 12:**

Describe, by identifying the insurer and stating the nature of the claim, each claim you have submitted or tendered to an insurance carrier related to any loss, injury, or damage arising from or related to the facts or circumstances alleged in the Complaint.

**Response to Interrogatory No. 12:**

Plaintiff objects to Interrogatory No. 12 on the grounds set forth in Enumerated Objections 3, 4, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: Plaintiff has not made any claims to any insurers related to any loss, injury, or damage arising from or related to the facts or circumstances alleged in the Complaint.

**Interrogatory No. 13:**

Identify all facts in support of your contention that SIM changes on Your AT&T Account were used to gain unauthorized access to your cryptocurrency and or social media Account(s), including a detailed description for each Account accessed without authorization (including those identified in your response to Interrogatory No. 2) of all facts establishing how an unauthorized person was able to obtain the required Passwords and satisfy any Security Measures implemented on the Account.

**Response to Interrogatory No. 13:**

Plaintiff objects to Interrogatory No. 13 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: In response to this duplicative and overbroad request, Plaintiff refers to its allegations in the Complaint and its previous responses herein, including Response No. 2.

**Interrogatory No. 14:**

For each Account accessed without authorization, state which devices and/or computers you used to access that Account and whether you accessed the Account through an application, an internet browser, or other means on each such device.

**Response to Interrogatory No. 14:**

Plaintiff objects to Interrogatory No. 14 on the grounds set forth in Enumerated Objections 1, 6, and 8. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows: Prior to terminating his account with AT&T, Plaintiff used the following devices to access the accounts listed in Response No. 2:

- A password protected smartphone containing his AT&T SIM Card, generally using the respective phone applications for each account; and

- A password protected Macbook laptop computer, generally using the internet browser Google Chrome.

**Interrogatory No. 15:**
Identify all the cell phone numbers you used or had since January 2015 to present, and the wireless carrier associated with each number.

**Response to Interrogatory No. 15:**

      Plaintiff objects to Interrogatory No. 15 on the grounds set forth in Enumerated

Objections 1, 6, and 8.  Subject to, limited by and without waiving his Enumerated Objections

and the Terms and Conditions, Plaintiff states as follows: From January 2015 until February

2019, Plaintiff used a cell phone number associated with the SIM Card provided to him by

AT&T.  Plaintiff objects to producing that number in writing here, because AT&T is aware of

that number and it is unnecessary to do so.  As described in the Complaint, when Plaintiff

purchased a new cell phone and a Verizon account in February 2019, Plaintiff transferred the

number he had used with AT&T to his new Verizon phone.  Plaintiff still has a Verizon phone

using that previous phone number, but has disabled voicemail and does not take incoming calls

on that phone for security and privacy reasons.  As result of AT&T's failure to protect his SIM

Card and the cell phone number associated with it, Plaintiff has also been forced to purchase and

use, for security and privacy reasons: (1) an additional cell phone from Verizon, which has a

different cell phone number; and (2) a cell phone using a Google Voice phone number.  Plaintiff

objects to producing any of his cell phone numbers in writing here because those numbers are

not relevant to Plaintiff's claims or AT&T's defenses, because doing so would create

unnecessary security and privacy risks for Plaintiff.  As a result of AT&T improperly providing

Plaintiff's SIM Card to third-party hackers, the cell phone number that Plaintiff held with AT&T

is subject to continuous hacking attempts to this day (which is why Plaintiff needs to have

multiple phones).

Dated: July 6, 2020
New York, New York

WITHERS BERGMAN LLP

By: _____
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

Terence S. Reynolds
Lucas D. Garber
Shumaker Loop & Kendrick LLP
101 South Tryon Street
Suite 2200
Charlotte, NC 28280
(704) 945-2909
treynolds@shumaker.com
lgarber@shumaker.com

*Attorneys for Plaintiff Jason Williams*

TO:     Joseph S. Dowdy (N.C. State Bar No. 31941)
Phillip A. Harris, Jr. (N.C. State Bar No. 39740)
Kilpatrick Townsend & Stockton LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
jdowdy@kilpatricktownsend.com
pharris@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
mbreslin@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

## <u>VERIFICATION</u>

I, Jason Williams, have read the foregoing Responses and Objections to the First Set of Interrogatories. I verify under penalty of perjury that the foregoing responses are true and correct to the best of my knowledge, information, and belief.

_____
Jason Williams


Dated: July 6, 2020

# EXHIBIT E



Suite 1400, 4208 Six Forks Road
Raleigh, NC 27609
t 919 420 1700  f 919 420 1800

Joseph S. Dowdy, Partner
direct dial 919 420 1718
direct fax 919 510 6120
JDowdy@kilpatricktownsend.com

August 4, 2020

Terence S. Reynolds                          treynolds@shumaker.com
Lucas D. Garber                              lgarber@shumaker.com
Shumaker Loop & Kendrick LLP
101 South Tyron Street, Suite 2200
Charlotte, NC 28280

Christopher LaVigne                          christopher.lavigne@withersworldwide.com
Joe Gallo                                    joseph.gallo@withersworldwide.com
Withers Bergman LLP
430 Park Ave., 10th Floor
New York, NY 10022

  Re: *WILLIAMS V. AT&T MOBILITY, LLC*; CASE NUMBER: 5:19-CV-00475-BO

Dear Counsel:

  We are in receipt of Plaintiff Jason Williams' responses to Defendant's First Interrogatories and Document Requests. We have reviewed the responses and identified the deficiencies set forth below. This is our attempt under Local Rule 7.1(c)(2) to "meet and confer" to resolve these items.

  The following is a summary of each interrogatory/request, Plaintiff's response, and a description of the deficiencies to be addressed in Plaintiff's supplemental response:

  **Interrogatory No. 2** requested, at subpart (c), the identification of each Security Measure implemented or activated by Plaintiff to prevent unauthorized access to his various Accounts. The only portion of Plaintiff's response that could be construed as responsive to this subpart states that "each of the other [non-Gmail] accounts could be accessed by using Plaintiff's Gmail account and/or a similar SMS 2FA." This answer, however, does not provide the information requested.

  A generalized response that the Accounts could be accessed by "Gmail…**and/or** a similar SMS 2FA" is not responsive to the interrogatory's request for specific information as to the security measures actually activated on each Account. Please supplement Plaintiff's response to explain, separately for each account: (a) whether it could be "accessed by using plaintiff's Gmail account" and, if so, how accessing the Gmail account would grant access to the other Account, and (b) whether plaintiff had set up the Account to allow the password to be reset via SMS two factor authentication.

ANCHORAGE  ATLANTA  AUGUSTA  BEIJING  CHARLOTTE  DALLAS  DENVER  HOUSTON  LOS ANGELES  NEW YORK  RALEIGH  SAN DIEGO
SAN FRANCISCO  SEATTLE  SHANGHAI  SILICON VALLEY  STOCKHOLM  TOKYO  WALNUT CREEK  WASHINGTON  WINSTON-SALEM

Case 5:19-cv-00475-BO  Document 61-1  Filed 03/15/21  Page 79 of 173

Additionally, the Complaint at ¶¶ 72-73 alleges hackers deleted Plaintiff's Slush Pool account on or around February 6, 2019, but Plaintiff's response to Interrogatory No. 2 states the Slush Pool account was accessed without authorization only on November 5, 2018. Please supplement Plaintiff's response to clarify whether the Slush Pool account was accessed without authorization on days other than November 5, 2018, and confirm that the portions of Plaintiff's response relating to other Accounts accurately reflect each date those Accounts were accessed without authorization.

**Interrogatory No. 4** requested the identification of each cryptocurrency account or wallet Plaintiff has created or maintained since January 1, 2015, the date each such Account/wallet was created, and "the full transaction ID for any unauthorized transaction or alleged theft within the Account." Plaintiff's response does not contain any information regarding cryptocurrency exchange accounts or wallets he has opened or maintained since January 1, 2015, or the dates they were opened or created. Please supplement this response to provide the requested information.

Plaintiff's response also does not provide the transaction ID (also known as a "transaction hash") for the allegedly unauthorized transfer of 0.23 BTC from his Slush Pool account on or around November 5, 2018. All BTC transactions are recorded on the public BTC blockchain, including the information regarding the transactions Plaintiff alleges on November 5, 2018. Please supplement Plaintiff's response to provide the full transaction IDs for the stolen BTC Plaintiff alleges.

With respect to the unauthorized bank transfers used to purchase BTC at Coinbase on February 11 and 12, 2019, Plaintiff's response appears to provide internal Coinbase transaction IDs, but not the full transaction IDs for the BTC transfers on the public blockchain. Please supplement the response to identify the transaction IDs for these BTC purchases on the public BTC blockchain so that AT&T may identify and validate these transactions.

Last, please supplement Plaintiff's response to state the disposition of the $6,500 transferred into Plaintiff's Coinbase account on February 11 and 12, 2019. And if that money was used to purchase cryptocurrency, please supplement the response to include the disposition of that cryptocurrency.

**Interrogatory No. 5** requested a detailed description of Plaintiff's investigation regarding the cryptocurrency thefts and what amount of his alleged damages, if any, have been recovered. Plaintiff's response provides only an explanation of what money has been recovered thus far, stating that "Plaintiff has been unable to recover the BTC stolen from him," and that he was able to receive a "credit to reimburse him for the $6,500 stolen from his First Citizen's Bank account."

This answer does not sufficiently respond to the interrogatory, as it fails to explain Plaintiff's investigation of the alleged theft of his BTC or the unauthorized transfers out of his bank account. It appears Plaintiff has additional responsive information with which he can provide a more complete response, as his response to Interrogatory No. 7 identifies a number of parties he spoke with following the alleged theft, ostensibly as part of his investigation of the alleged theft.

Please supplement Plaintiff's response to describe the actions Plaintiff took to investigate and/or recover the 0.23 BTC stolen from him, including any interactions Plaintiff had with Slush Pool or any other third party regarding, including but not limited to law enforcement, mining platform representatives, and/or private investigators.

**Interrogatory No. 11** requested the specific false statements AT&T allegedly made to Plaintiff, the identity of the person making the false statement, and the date / time of the false statement. The response states "Plaintiff communicated with a number of AT&T employees and/or agents in connection with the SIM swaps" and references specific paragraphs in the Complaint, but does not provide any of the information requested.

The paragraphs Plaintiff identifies in the Complaint merely reference Plaintiff's general communications with unspecified AT&T representatives on unknown dates, and do not set forth any alleged false statements communicated to Plaintiff. Indeed, at ¶¶ 52, 57, 58, 65, 74, and 75, Plaintiff describes instances where AT&T employees helped Plaintiff with his investigation into the source of the alleged SIM swap, in some instances providing detailed information about each swap, and even calling the police on his behalf in another instance. It is unclear how any of these communications amount to any "false" statement by AT&T.

Please supplement Plaintiff's response to set forth the exact false statements made by AT&T that support Plaintiff's claims in this action, and for each, state the name of the person making the false statement (or whether Plaintiff does not know the person's name), and the date of same.

**Document Request No. 15** requested copies of all materials Plaintiff had reviewed prior to February 6, 2019 regarding how to properly secure online Accounts, or properly safeguard cryptocurrency wallets or exchange accounts. Plaintiff objected that the request is overly broad and that the phrase "how to properly secure Accounts" is vague and ambiguous. Unlike other document requests to which Plaintiff raised similar objections, however, Plaintiff did not agree to produce responsive materials subject to these objections.

To remove the basis for Plaintiff's vagueness objection, AT&T hereby clarifies that the phrase "how to properly secure Accounts" refers to actions an Account holder can take to reduce the risk of or prevent an unauthorized person gaining access to the Account. Documents responsive to this request (concerning the security of Accounts or the security of cryptocurrency wallets) are relevant to the merits of AT&T's defenses and Plaintiff's contentions regarding his expertise in cryptocurrency and security issues.

Please supplement Plaintiff's response to confirm Plaintiff will produce documents responsive to this request.

Should you have any questions about any of the above, please do not hesitate to contact us.

August 4, 2020
Page 4

Warm regards,

Joseph S. Dowdy

cc:     Michael Breslin, Esq.
        Adam Wiley, Esq.

# EXHIBIT F



430 Park Avenue, 10th Floor, New York, New York 10022-3505
t: +1 212 848 9800
f: +1 212 848 9888
www.withersworldwide.com

August 21, 2020

**By Email**
(JDowdy@kilpatricktownsend.com)

Joseph S. Dowdy
Kilpatrick Townsend
Suite 1400, 4208 Six Forks Road
Raleigh, NC 27609

      Re:    **Williams v. AT&T Mobility, LLC; Case Number: 5:19-CV-00475-BO**

Dear Mr. Dowdy:

We write in response to your August 4, 2020 letter to Plaintiff's Counsel regarding Plaintiff's responses to Defendant's First Interrogatories and Document Requests. We reject any assertion that Plaintiff's responses were "deficient" or otherwise not in compliance with applicable discovery rules. That said, in the interest of the parties working together in good faith to resolve discovery issues that arise in this lawsuit, we offer the following responses to your letter. All capitalized terms not defined herein are used as defined in the Complaint.

**Interrogatory No. 2**

Plaintiff's description of the security protocols for his account in his response to this Interrogatory fully complies with Plaintiff's discovery obligations. Plaintiff's response explains that each of his accounts was protected by a strong password, which Plaintiff had memorized and had not written down prior to the SIM Swaps. Plaintiff's response explains the additional two-step authentication protection on his Gmail account, which Defendant allowed the hackers to compromise by providing the hackers with his SIM Card. Plaintiff's response explains that, armed with his Gmail account and SIM Card, the hackers were able to change the passwords for the other accounts listed in the response. Plaintiff does not specifically know how the hackers used the information that Defendant gifted to them to access each account in each instance. However, Plaintiff's response explains that none of his accounts would have been accessible without Defendant providing the hackers with his SIM Card.

We can confirm that, consistent with the Complaint, Plaintiff's Slush Pool account was accessed without authorization on both November 5, 2018 and February 6, 2019. The February 6, 2019 instance of unauthorized access was inadvertently left out of Plaintiff's response to this Interrogatory. We will provide a supplemental response to Interrogatory No. 2 that reflects this information.

direct: +1 212 848 9882
fax: +1 212 824 4282
e-mail: christopher.lavigne@withersworldwide.com
admitted in New York
NY28603/0001-US-8465926/3

Withersworldwide

London Cambridge Geneva Milan Padua Sydney
Hong Kong Singapore Tokyo British Virgin Islands
New York Greenwich New Haven San Francisco
Los Angeles Rancho Santa Fe San Diego

## Interrogatory No. 4

As set forth in Plaintiff's objections and responses, this Interrogatory is overbroad and seeks discovery not reasonably calculated to lead to the discovery of admissible evidence. Information regarding "each cryptocurrency account or wallet Plaintiff has created or maintained since January 1, 2015, [and] the date each such Account/wallet was created" is not relevant to Plaintiff's claims or Defendant's asserted defenses, imposes an unreasonable discovery burden on Plaintiff, and would require Plaintiff to reveal confidential information about hypothetical cryptocurrency assets that have no connection with this lawsuit. In response to this Interrogatory and in full compliance with his discovery obligations, Plaintiff has provided information about the accounts and unauthorized transactions relevant to this lawsuit. In addition, since our receipt of your letter, you have received Plaintiff's production of documents Bates numbered JW_0001-0039, which contains documents relevant to this Interrogatory.

We are attempting to locate the public BTC blockchain transaction ID for the November 5, 2018 theft. If we are able to locate that information, we will provide a supplemental response to Interrogatory No. 4 that reflects that information.

We are not able to locate the public BTC blockchain transaction ID for the February 11 and 12, 2019 thefts, and so cannot include that information in a supplemental response.

We do not understand what you mean by "the disposition" of the funds and cryptocurrency connected to the February 11 and 12, 2019 thefts. We refer you to this Interrogatory response, and the responses to Interrogatories No. 5 and No. 7, for information that we believe may be responsive to this inquiry.

## Interrogatory No. 5

Plaintiff's response to this Interrogatory fully complies with Plaintiff's discovery obligations. Plaintiff has identified law enforcement personnel, bank employees, and a third party contractor that he contacted concerning the SIM Swaps and the resulting theft of his cryptocurrency. We refer you to the response to Interrogatory No. 7 for additional information that we believe may be responsive to this inquiry. In addition, since our receipt of your letter, you have received Plaintiff's production of documents Bates numbered JW_0001-0039, which contains documents relevant to this Interrogatory. Although our search for responsive information is ongoing, at this time, Plaintiff does not have a supplemental response to this Interrogatory.

## Interrogatory No. 11

Plaintiff's response to this Interrogatory fully complies with Plaintiff's discovery obligations. As Plaintiff's response to this Interrogatory makes clear, the Complaint contains numerous detailed allegations regarding Defendant's representations and omissions, including the dates of those representations and omissions and, when known to Plaintiff, the names of the persons who made them. Regardless of your characterization of Plaintiff's allegations, in its March 25, 2020 Order denying Defendant's motion to dismiss Plaintiff's claims, the Court held that the Complaint contained alleged false representations and omissions by Defendant sufficient to meet the heightened pleading requirements of FRCP 9(b). *See* Order, Dkt. No. 20, pp. 9-10.

Plaintiff's allegations of Defendant's false representations and omissions speak for themselves, and it would be duplicative and unreasonably burdensome for Plaintiff to restate those allegations in response to this Interrogatory. Accordingly, no supplemental response to this Interrogatory is required.

**Document Request No. 15**

Plaintiff cannot produce documents to this Document Request as written. Notwithstanding your attempt to clarify this Document Request in your letter, it remains vague and overbroad. This Document Request seeks "materials, instructions, and publications you reviewed prior to February 6, 2019 regarding how to properly secure Accounts, or properly safeguard cryptocurrency wallets or exchange Accounts." In effect, the Document Requests would require Plaintiff, who has worked with cryptocurrency for many years, to attempt to recall, locate, obtain, and produce every document regarding cryptocurrency security he had ever "reviewed," before February 6, 2019 and stretching back indefinitely in time. This Document Request is unreasonable and unduly burdensome as written, and Plaintiff stands by his objections and response.

If you believe this Document Request can be narrowed and clarified to bring it into conformity with applicable discovery rules, we are available to continue to meet and confer with you regarding any such effort. That said, in the interest of efficiency, Plaintiff's familiarity with cryptocurrency security may be an issue best left for his anticipated deposition, at least in the first instance.

We trust that this letter, along with the above-described forthcoming supplemental responses, resolves the issues you raised in your letter. If any issues remain unresolved in your view, we are available to continue to meet and confer with you to resolve them. We and our client reserve all rights.

Very truly yours,

Christopher N. LaVigne

cc: Terence S. Reynolds (treynolds@shumaker.com)
    Lucas D. Garber (lgarber@shumaker.com)

# EXHIBIT G

| | |
|---|---|
| **From:** | Gallo, Joseph <Joseph.Gallo@withersworldwide.com> |
| **Sent:** | Monday, August 31, 2020 12:41 PM |
| **To:** | Breslin, Mike; LaVigne, Christopher |
| **Cc:** | Dowdy, Joe; Wiley, Adam |
| **Subject:** | RE: Williams v. AT&T |

**CAUTION: External Email**

Thanks Mike.  My recollection largely comports with yours.

Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com| my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Monday, August 31, 2020 12:05 PM
**To:** LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Gallo, Joseph
<Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** Williams v. AT&T

Joe / Chris –

I appreciate your time on our meet and confer call today.  Here is a recap of where we left things based on my notes:

Interrogatory No. 2
Plaintiff will supplement his response to state to the best of his recollection for each account whether the account was
enabled to have its password reset via text message code or via a link sent to plaintiff's gmail address as the recovery
email (or if the account password could be reset via a different method, explain that method).

Interrogatory No. 4
We agreed you would confer with your client to obtain the names and approximate creation dates of any crypto wallets or exchange accounts Plaintiff has maintained in the past, and that you will let me know if you will supplement Plaintiff's response with that information.

Interrogatory No. 5
You agreed to confer with your client on whether he communicated with Coinbase or Slush Pool regarding the account breaches, and you would let me know if you will supplement your response to state whether he had those communications or not.

Interrogatory No. 11
You stated you would discuss with your colleagues and let me know if you will supplement Plaintiff's response to set out the specific misrepresentations Plaintiff is alleging AT&T made as the basis for Plaintiff's claims in this action.

RFP 15
I agreed to modify the responsive period to the two years prior to February 6, 2019, and you agreed to confer with your client to determine if he has any materials in his possession responsive to this request, as modified, and to either produce those materials or state no responsive materials exist.

If I've misinterpreted where we left any of these items, please let me know. Otherwise I'll look forward to your follow up and supplemental responses to these.

As always, I'm happy to discuss this further if you have any questions.

Best,
-Mike



**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA 30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard
**Click Here to Access Our COVID-19 Resources**

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Withers Bergman LLP** - 430 Park Avenue, 10th Floor, New York, NY 10022-3505 T: +1 212 848 9800 F: +1 212 848 9888

Withersworldwide

New York, Greenwich, New Haven, Los Angeles, Rancho Santa Fe, San Diego, San Francisco, London, Cambridge, Geneva, Milan, Padua, Dubai, Hong Kong, Singapore, Tokyo, British Virgin Islands, Sydney

This email (and any attachments) is confidential and may also be legally privileged. If you are not the intended recipient please immediately notify the sender then delete it from your system. You should not copy it or use it for any purpose nor disclose its contents to any other person.

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

-------------------------------------------------------- X

JASON WILLIAMS,

                Plaintiff,

      vs.

AT&T MOBILITY LLC,

           Defendant.

-------------------------------------------------------- X

Case No. 5:19-cv-00475-BO

**PLAINTIFF JASON WILLIAMS'
FIRST SUPPLEMENTAL
RESPONSES AND OBJECTIONS
TO DEFENDANT'S FIRST SET
OF INTERROGATORIES**

        Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the Eastern District of North Carolina 26.1 and 33.1, Plaintiff Jason Williams ("Plaintiff" or "Williams"), by his attorneys, Withers Bergman LLP, for his first supplemental responses and objections to Defendant AT&T Mobility LLC's ("Defendant" or "AT&T") First Set of Interrogatories (the "First Interrogatories" and each an "Interrogatory"), dated May 22, 2020, states as follows:

<div align="center">

**SPECIFIC RESPONSES AND OBJECTIONS**

</div>

        These supplemental responses fully incorporate the Enumerated Objections, Terms and Conditions, and Specific Responses and Objections to the First Set of Interrogatories, dated July 6, 2020.  Subject to and without waiving those previously stated Enumerated Objections, Terms and Conditions, and Specific Responses and Objections, Williams further responds and objects to each of the following specific interrogatories as follows:

**Interrogatory No. 2:**

For each Account that you contend was accessed without authorization following any SIM Change:
    a.  State the date(s) and time(s) of the unauthorized access;
    b.  Identify each type of Password required to access the Account and how and where you stored any record of the Password or any App 2FA backup code associated with the account; and

c.  Identify each Security Measure implemented or activated to prevent unauthorized access to, or activity within, the Account.

**Supplemental Response to Interrogatory No. 2:**

Plaintiff fully incorporates his previous responses and objections to this Interrogatory. Subject to, limited by and without waiving those previous responses and objections, Plaintiff states as follows: As described in the Complaint, AT&T's actions allowed third-party hackers to access without authorization Plaintiff's accounts with the following applications and/or services: Gmail; Twitter; Instagram; DropBox; Google Drive; LinkedIn; Coinbase; Slush Pool; Gemini; and First Citizens Bank.  For each of the above accounts, Plaintiff created strong passwords, which he memorized and did not store in any physical or electronic location.  Beyond the existence of those passwords, Plaintiff does not specifically recall what password change procedures or other security measures were present for each particular account when the hackers accessed those accounts.  Plaintiff generally recalls that some or all of those accounts could have their passwords reset by receiving codes from the respective account company, either via text message or email, and entering those codes into the respective website or application.  Plaintiff recalls receiving text alerts that attempts were being made to change some of those accounts. Plaintiff will produce any such alerts he is able to locate after a reasonable search, and the contents of those documents speak for themselves.

In addition to the unauthorized access attempts included in Plaintiff's previous responses and objections, Plaintiff's Slush Pool account was accessed without authorization on or about February 6, 2019.

**Interrogatory No. 4:**

For each cryptocurrency Account (including but not limited to exchanges and wallets) you have maintained or created since January 1, 2015, state the name of the Account (*e.g.,* Binance), the

date you created the account, and the full transaction ID for any unauthorized transaction or alleged theft within the Account.

**Supplemental Response to Interrogatory No. 4:**

Plaintiff fully incorporates his previous responses and objections to this Interrogatory. Subject to, limited by and without waiving those previous responses and objections, Plaintiff states as follows: To the best of his recollection, Plaintiff has maintained or created the following cryptocurrency accounts in the time period specified in the request, and those accounts were during the following years:

- Binance (2016)

- Poloniex (2016)

- Lynx Wallet (2018)

- Trust Wallet (2020)

- Lolli (2019)

- Gemini (2016 or 2017)

- CoinMine (2019)

- BlockFi (2018)

- Slush Pool (2017/18)

Plaintiff has not been able to identify the transaction IDs for any additional BTC transfers beyond those included in his previous responses and objections.

Plaintiff does not have knowledge of the status of the $6,500 transferred without his authorization to his Coinbase account from his First Citizens Bank account on February 11 and 12, 2019, and used by an unknown party to purchase Bitcoin, beyond knowing that neither the money nor the Bitcoin are currently in his possession. As set forth in his previous objections and responses, through his own diligent efforts to recover the stolen funds, and with the assistance of

the Fraud Department at First Citizens Bank, Plaintiff was able to receive a credit to reimburse

him for the $6,500 stolen from his First Citizens Bank account on February 11 and 12, 2019.

**Interrogatory No. 5:**

For each category of stolen funds or cryptocurrency you assert as damages in this action, describe in detail any investigation by you or any third party relating to same, and all efforts you have attempted or made to recover any of same, including whether such efforts resulted in recovery.

**Supplemental Response to Interrogatory No. 5:**

Plaintiff fully incorporates his previous responses and objections to this Interrogatory.

Subject to, limited by and without waiving those previous responses and objections, Plaintiff

states as follows: Plaintiff communicated by email with Google, Coinbase, and Gemini in his

attempts investigate the hacks, and to secure and recovery his accounts.  Plaintiff will produce

any such communications he is able to locate after a reasonable search, and the contents of those

documents will speak for themselves, so it would be unduly burdensome for Plaintiff to restate

the contents of those documents here.

**Interrogatory No. 11:**

Describe each allegedly false representation or omission by AT&T that you contend supports any of your claims in this Action, by setting forth the exact statement made or fact not disclosed by AT&T, the source(s) or maker(s) of such statement or nondisclosure, the date and time of such statement or non-disclosure, and, for any described non-disclosures, the factual basis for your contention that AT&T was under a duty to disclose the fact to you.

**Supplemental Response to Interrogatory No. 11:**

Plaintiff fully incorporates his previous responses and objections to this Interrogatory.

Subject to, limited by and without waiving those previous responses and objections, Plaintiff

states as follows: As the Court held in its March 3, 2020 Order, Plaintiff's fraud allegations are

sufficient to meet the pleading requirements of Federal Rule of Civil Procedure 9(b).  In relevant

part, the Court held:

The Court finds Rule 9(b) is satisfied and plaintiff has alleged reliance. The complaint alleges that following the first SIM swap on November 5, plaintiff contacted AT&T to discuss adding heightened security measures to his account. Pl.'s Comp. ¶ 4 7, DE 2. AT&T represented that it added specific protocols to plaintiff's account—SIM card changes could only be made in-person, at a designated store, with identification verified by two passports. *Id.* Plaintiff relied on this assurance and did not close his account. *Id.* From there, plaintiff's complaint details multiple instances of communication with AT&T employees at the designated AT&T store—on November 30, December 2, December 5, February 5, and February 6. In many of these communications, he discussed the specified security protocols with AT&T employees. They repeatedly confirmed the security protocols were listed on his account. In one of these interactions, on December 2, an AT&T employee induced plaintiff to purchase a new iPhone on assurances that it would mitigate his risk of another SIM swap.

In short, plaintiff's complaint clearly enumerates the time, place, and contents of the AT&T's representations to him. It alleges that on specific dates, he went to a specific AT&T store in Raleigh, and spoke with the associates there, who repeatedly reassured him that his SIM card would not be changed except under very limited circumstances. In reliance, plaintiff kept AT&T as his carrier. AT&T then proceeded to make numerous unauthorized changes to his SIM card, sometimes even changing his PIN as well. While the complaint in some instances specifies the first name of the AT&T employee with whom he interacted, plaintiff cannot reasonably be expected to remember and list the name of each and every employee he dealt with over the course of four months.

The Court is satisfied the requirements of Rule 9(b) are met.

In light of the Court's opinion, Plaintiff reiterates his objection that this request is unduly burdensome, in that it requires Plaintiff to unnecessarily restate his properly pleaded fraud allegations regarding his communications with AT&T. Plaintiff's best recollection of those communications are already pleaded in his complaint, which is readily available to Defendant, and Plaintiff's previous responses and objections included references to specific paragraphs of the complaint regarding those communications.

Similarly, Plaintiff's allegations regarding AT&T's Privacy Policy are set forth with particularity in paragraphs ¶¶152-174 of the complaint. Requiring Plaintiff to restate those allegations here is unnecessarily burdensome.

Plaintiff's counsel is unaware of any legal authority that stands for the proposition that parties that properly plead fraud claims are required to restate the alleged fraudulent statements in response to written interrogatories. However, in the interest of the parties working in good faith to resolve discovery disputes in this case, if Defendant's counsel is aware of any such authority, Plaintiff's counsel stands ready to further meet and confer regarding this Interrogatory.

Dated: September 28, 2020
New York, New York

WITHERS BERGMAN LLP

By: _____
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*

TO:     Joseph S. Dowdy (N.C. State Bar No. 31941)
Phillip A. Harris, Jr. (N.C. State Bar No. 39740)
Kilpatrick Townsend & Stockton LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
jdowdy@kilpatricktownsend.com
pharris@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
mbreslin@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

6

## <u>VERIFICATION</u>

I, Jason Williams, have read the foregoing Responses and Objections to the First Set of Interrogatories. I verify under penalty of perjury that the foregoing responses are true and correct to the best of my knowledge, information, and belief.

_____
Jason Williams

Dated: September 28, 2020

# EXHIBIT I



Suite 1400, 4208 Six Forks Road
Raleigh, NC 27609
t 919 420 1700  f 919 420 1800

Joseph S. Dowdy, Partner
direct dial 919 420 1718
direct fax 919 510 6120
JDowdy@kilpatricktownsend.com

October 26, 2020

Terence S. Reynolds                treynolds@shumaker.com
Lucas D. Garber                    lgarber@shumaker.com
Shumaker Loop & Kendrick LLP
101 South Tyron Street, Suite 2200
Charlotte, NC 28280

Christopher LaVigne                christopher.lavigne@withersworldwide.com
Joe Gallo                          joseph.gallo@withersworldwide.com
Withers Bergman LLP
430 Park Ave., 10th Floor
New York, NY 10022

Re:     *WILLIAMS V. AT&T MOBILITY, LLC*; CASE NUMBER: 5:19-cv-00475-BO

Dear Counsel:

We are in receipt of Plaintiff Jason Williams' first and second sets of document production in response to Defendant's Document Requests, Set One. We have reviewed both sets of documents produced by Mr. Williams, which total 39 and 26 pages, respectively, and have identified the deficiencies set forth below. This is our attempt under Local Rule 7.1(c)(2) to meet and confer to resolve these items.

The following is a summary of each request, Plaintiff's response and the corresponding documents produced by Plaintiff (if applicable), and a description of the deficiencies to be addressed by Plaintiff in a supplemental production. Any defined terms referenced in this letter shall have the same meaning as those terms are defined in AT&T's document requests.

**Document Request No. 3** requested all documents identified in Plaintiff's Rule 26(a)(1) disclosures. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request and **Document Request No. 5**, which requested all documents relating to communications between Plaintiff and AT&T concerning SIM changes, the security or protection of Plaintiff's AT&T Account, Personal Information, or CPNI, as well as the related **Document Request No. 29**, which requested all communications between Plaintiff and AT&T, its employees, agents, or representatives, concerning any of Plaintiff's allegations in the Complaint.

ANCHORAGE  ATLANTA  AUGUSTA  BEIJING  CHARLOTTE  DALLAS  DENVER  HOUSTON  LOS ANGELES  NEW YORK  RALEIGH  SAN DIEGO
SAN FRANCISCO  SEATTLE  SHANGHAI  SILICON VALLEY  STOCKHOLM  TOKYO  WALNUT CREEK  WASHINGTON  WINSTON-SALEM

Case 5:19-cv-00475-BO   Document 62-1   Filed 03/15/21   Page 100 of 173

Plaintiff's Rule 26(a)(1) disclosures, issued May 18, 2020, state in relevant part at Section 2 that Plaintiff has two categories of documents that he intends to use to support his claims or defenses. These include: (a) "Documents, including, among other things, emails and phone records concerning Mr. Williams' communications with Defendant regarding each SIM swap he suffered and regarding the impact of such SIM swap on his personal information, finances, business, and family," and (b) "Documents related to attorney's fees incurred by plaintiff and alleged to be recoverable as damages."

Accordingly, Plaintiff's production should include documents referencing communications with AT&T, changes or activity on his AT&T account, changes or activity on any of his cryptocurrency accounts that he alleges were hacked, and SIM swaps generally, none of which have been produced to AT&T. Plaintiff's document production and AT&T's internal records indicate that Plaintiff had a number of email addresses registered with AT&T, and used this patchwork of email accounts in connection with his cryptocurrency assets that he alleges were stolen as a result of the SIM Changes. These included but were not limited to jasonwilliamseow@gmail.com, j.williams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com. Plaintiff must submit his email records in each of these email accounts as well as any other applicable email accounts, including relevant communications contained in the redacted email account ending in "[xxx]jwill@icloud.com" depicted in JW_0010, to a search for documents that may be responsive to these requests.

Plaintiff's document production contains no documents responsive to either category outlined in section 2 of his Rule 26(a)(1) disclosures or in response to Document Request No. 29. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request, including but not limited to documents containing communications to or from AT&T, and documents reflecting the alleged attorney's fees Plaintiff seeks to recover as damages in this action.

**Document Request No. 4** requested production of any statements from any employee, agent, or representative of AT&T. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains only a limited number of documents related to this request, all of which appear to have limited relevance to the instant matter. These include an undated phone text message screenshot, presumably between Plaintiff and an automated system at AT&T showing Plaintiff's international travel history, and an undated AT&T retail store Wi-Fi login screenshot, found at JW_0003 and JW_0027-28, respectively. Please confirm whether Plaintiff's document production to date includes all documents in Plaintiff's possession or control that are responsive to this request. If not, please supplement the production with the remaining responsive documents.

**Document Request No. 6** requested production of all documents related to the SIM Changes, including but not limited to documents evidencing any transfer of cryptocurrency or losses Plaintiff alleges in connection with the SIM Changes. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains only a limited number of documents related to this request, and there are clearly many more documents in Plaintiff's possession that have not been produced. Plaintiff's production should include documents referencing AT&T, changes or activity on his AT&T account, changes or activity on any of his cryptocurrency accounts that he alleges were hacked, or the SIM Swaps, as well as communications with anyone regarding the SIM Swaps or any unauthorized access to his Accounts, documents concerning the damages he is asserting, and any threats or demands for payments from any unknown third parties. As evidenced by JW_0033 alone, Plaintiff is in possession of numerous responsive documents that have not been produced. Additionally, Plaintiff should produce *entire* email strings and text message threads responsive to this request with all relevant metadata intact, not isolated screen shots depicting only a portion of a responsive communication or document.

Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 7** requested production of all documents evidencing or relating to unauthorized access to each Account following any SIM change, including alerts or notifications, Account activity logs, and IP address access logs. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff appears to have produced some documents in response to this request, although the form of production is insufficient. Moreover, Plaintiff's document production to date indicates there are additional responsive documents Plaintiff has not yet produced (*see*, *e.g.*, JW_0033, indicating Plaintiff received communications from Slushpool regarding wallet address changes on Feb. 9, 2019). Such documents should be produced. And as noted previously, Plaintiff should produce entire email strings and text message threads responsive to this request with all relevant metadata intact, not isolated screen shots from his iPhone screen depicting only a portion of a responsive document.

Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 8** requested production of all instructions or warnings related to Account security that Plaintiff received, was referred to, or were made available to Plaintiff in connection with each Account. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no documents responsive to this request. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 9** requested production of all documents evidencing Plaintiff's entitlement to or ownership of the cryptocurrency Plaintiff alleged was stolen following any SIM Change, including but not limited to documents establishing Plaintiff's ownership of the wallet or

exchange Account where the cryptocurrency was held, and establishing the dates of acquisition of each type of cryptocurrency at issue and the method of acquisition. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no records or reports from any cryptocurrency wallet or exchange, nor any other documents responsive to this request. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 10** requested production of all documents stored in any Account compromised following any SIM Change that contained information related to any Password. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no documents responsive to this request. Examples of such documents include spreadsheets or word documents Plaintiff stored in his dropbox, gmail, or any other Account that contained Password information for other Accounts, including cryptocurrency Accounts. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

If, based on Plaintiff's response to Interrogatory No. 2 of AT&T's First Interrogatories, it is Plaintiff's contention that no documents responsive to this request ever existed, please state that fact in a supplemental response. However, JW_0033 indicates Mr. Williams utilized Authy and therefore may have stored his Authy recovery codes (which are included in the definition of a "Password") in some physical or electronic location. If so, Plaintiff should supplement his responses to describe the location and method of his storage of any Authy recovery codes.

**Document Request No. 11** requested production of all documents stored or accessible through any Account compromised following any SIM Change that contained "sensitive [and/or] confidential personal, legal, [and/or] business information," as referenced in Paragraph 83 and elsewhere in the Complaint. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no documents responsive to this request. Plaintiff cannot reasonably contend he has no documents responsive to this request, as Plaintiff alleges their existence in the Complaint. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 12** requested production of all documents provided to or received from any law enforcement agency, including but not limited to, the FBI, state, or local law enforcement, regarding the SIM Changes. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff appears to have produced some documents related to *communications* with law enforcement in response to this request, although the form of production is insufficient and Plaintiff has failed to include any *documents provided to or received from* law enforcement. As

noted previously, Plaintiff should produce entire email strings and text message threads responsive to this request with all relevant metadata intact, not selected screen shots displaying only a portion of a responsive document or communication.

Additionally, to the extent Plaintiff has any additional responsive documents in his possession and control that were provided to or received from law enforcement, those additional responsive documents should be produced. One such example includes any documents Plaintiff sent to FBI agent Peter Ahearn in response to the February 27, 2020 wherein Mr. Ahearn requested various documents from Plaintiff. *See* JW_0065.

Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 13** requested production of all documents evidencing that Plaintiff was the target or victim of identity theft, hacking, phishing attack, SIM change fraud, cryptocurrency theft, extortion, threats, or any other security breach or incident, other than the SIM Changes themselves. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff appears to have produced some documents in response to this request, although the form of production is insufficient. As noted previously, Plaintiff should produce entire email strings and text message threads responsive to this request with all relevant metadata intact, not selected screen shots of an iPhone screen displaying only a portion of a responsive document. Additionally, to the extent Plaintiff has any additional responsive documents in his possession and control, those additional responsive documents should be produced.

Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 14** requested production of all documents evidencing actions Plaintiff has taken to maintain adequate cybersecurity, including but not limited to maintaining strong Passwords, changing Passwords, not reusing Passwords, using two-factor authentication, using a Password manager, use of encryption, proper Password storage, and use of antivirus or other security software for all of Plaintiff's Accounts referenced or related to allegations in the Complaint, including but not limited to Plaintiff's AT&T, Gmail, Twitter, Instagram, DropBox, Google Drive, LinkedIn, HitBTC, Coinbase, Gemini, First Citizens Bank, and Slush Pool Accounts. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no documents responsive to this request. For example, Plaintiff should produce all emails and communications relating to the operation of or changes to his Authy account during Jan. 2018 to the present. *See* JW_0033. Plaintiff should also produce all emails and communications relating to the operation of or changes to any other 2FA service Plaintiff used at any time during January 2018 to present. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 15** requested production of copies of all materials, instructions, and publications Plaintiff reviewed prior to February 6, 2019 regarding how to properly secure Accounts, or properly safeguard cryptocurrency wallets or exchange Accounts. Plaintiff asserted objections and refused to produce copies of documents responsive to this request.

We previously addressed Plaintiff's insufficient response to this request in our August 4, 2020 meet and confer letter to you. In your August 21, 2020 response letter, you stated that Plaintiff could not produce documents in response to the request because you believed the request "remains vague and overbroad." Contrary to your suggestion in the response letter, AT&T is not requesting that Plaintiff "attempt to recall, locate, obtain, and produce every document regarding cryptocurrency security he had ever 'reviewed' before February 6, 2019."

In an effort to further clarify this request, AT&T is requesting production of any document currently in Plaintiff's *possession and control* that is responsive to this request, and is willing to specify a time frame of January 1, 2015 through February 6, 2019. Please supplement Plaintiff's document production to include any documents in Plaintiff's possession and control that are responsive to this request. To the extent no responsive documents exist, please provide a supplemental response to this request stating the same.

**Document Request No. 16** requested production of all documents containing or relating to Passwords or Security Measures associated with any Accounts that were accessed without authorization following any SIM Change, including but not limited to Plaintiff's AT&T, Gmail, Twitter, Instagram, DropBox, Google Drive, LinkedIn, HitBTC, Coinbase, Gemini, and Slush Pool Accounts, and any other wireless telephone Account held by Plaintiff. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Documents responsive to this request would include, without limitation, email or text message communications regarding changes to any Passwords or Security Measures on any of Plaintiff's Accounts that were compromised. While Plaintiff's document production contains a handful of responsive documents (*see* JW_0010-11, 16-19, 26 42-47, 50-54) there are several Accounts that Plaintiff claims were hacked for which no responsive documents have been provided, such as Plaintiff's Twitter, Instagram, Dropbox, and LinkedIn Accounts. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 17** requested production of all Account activity logs and transaction records for Plaintiff's Slush Pool, Gemini, HitBTC, and Coinbase Accounts since inception of the Account through the present, including but not limited to records of all deposits, transfers, trades, withdrawals, mining rewards, changes to any Account setting, wallet address changes, and logs of IP address access to the Account. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff appears to have produced some documents in response to this request that pertain to IP address logs and unauthorized access to his account, although the form of production is

insufficient. As noted previously, Plaintiff should produce entire email strings and text message threads responsive to this request with all relevant metadata intact, not selected photographs of an iPhone screen.

Additionally, Plaintiff has provided no transaction records for any cryptocurrency Account whatsoever and should supplement his document production to include this information. Plaintiff's primary contention in this matter is that he has suffered damages relating to his cryptocurrency Accounts, and he is obligated to produce documents evidencing these damages, including cryptocurrency ownership and transaction records. Moreover, Plaintiff has alleged he lost his entire investment in his Slushpool mining operation. *See, e.g.*, Compl. ¶¶ 20, 35, 76. Complete transaction and mining reward deposit records for Plaintiff's Slushpool account are necessary to establish, in part, what returns Plaintiff received from his mining investments and therefore bear directly on the veracity of his damages claims as well as various allegations in the Complaint (*see, e.g.*, Compl. ¶ 77), and should be produced. Please supplement Plaintiff's document production to include these and all other documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 19** requested production of all documents evidencing or relating to actions Plaintiff took following any SIM Change to alter the security of any of Plaintiff's Accounts (including, without limitation, by changing Passwords or Security Measures utilized, or changing the manner in which you stored records of Passwords). Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff appears to have produced some documents in response to this request, including an email chain of communications with Coinbase, Gemini, and First Citizen's Bank. However, some of these emails reference other communications with Plaintiff that have not been produced, and regardless, there are clearly many more records of communications between Plaintiff and Coinbase, Gemini, First Citizen's Bank, and other third party Account administrators that have not been produced. Plaintiff must supplement his document production to include *all* communications with Coinbase, First Citizen's Bank and any other third party Account administrator that are responsive to this request. Additionally, documents responsive to this request would include email or text message confirmations of Password or Security Measure changes (including but not limited to changes to 2FA or recovery email settings) that Plaintiff performed following any of the SIM Swaps. As noted previously, any further production from Plaintiff should include entire email strings and text message threads responsive to this request with all relevant metadata intact, not selected screen shots of an iPhone screen displaying only a portion of relevant communications.

Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 20** requested production of all documents evidencing that any of Plaintiff's CPNI that Plaintiff alleges AT&T improperly disclosed was used to enable unauthorized access to any of Plaintiff's Accounts. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no documents responsive to this request. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 21** requested production of all documents referencing, containing, or evidencing each false statement or misrepresentation made to Plaintiff by AT&T. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no documents responsive to this request. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 22** requested production of all documents evidencing or otherwise relating to the manner, information, processes, and means utilized by any person to access any of Plaintiff's Accounts without authorization following any SIM Change, including but not limited to documents related to how the person obtained, satisfied, or bypassed any Password or Security Measure for each Account. For purposes of this request, the specific Accounts include Plaintiff's Gmail, HitBTC, Coinbase, Gemini, Slush Pool, LinkedIn, Twitter, Instagram, and First Citizens Bank Accounts. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Documents responsive to this request would include, without limitation, email or text message communications regarding changes to any Passwords or Security Measures on any of Plaintiff's Accounts that were compromised. While Plaintiff's document production contains a handful of responsive documents (*see* JW_0010-11, 16-19, 26 42-47, 50-54) there are several Accounts that Plaintiff claims were hacked for which no responsive documents have been provided, such as Plaintiff's Twitter, Instagram, Dropbox, and LinkedIn Accounts. Documents related to any unauthorized use of Plaintiff's Authy account would also be responsive to this request. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 23** requested production of all documents relating to the market value, as of February 2019, of each item of equipment or hardware in which Plaintiff had invested prior to February 2019 for the purpose of mining Bitcoin. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no documents responsive to this request. Plaintiff has produced documents appearing to state the price Plaintiff paid for S9-Antminer equipment in February 2018 (*see* JW_0001-0002), but no documents have been produced pertaining to their market value in February 2019. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request Nos. 24-25** requested production of all documents supporting or evidencing Plaintiff's allegations in several enumerated paragraphs of the Complaint, including paragraphs: 155, 157, 160, 162, 163, 167, and 170 – each of which concern the alleged falsity of representations

regarding the security or privacy of Plaintiff's AT&T account. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production does not contain any documents supporting these allegations. As just one example, there are no documents supporting Plaintiff's allegation in paragraph 155 that "AT&T's representation that it 'uses encryption and other security safeguards to protect customer data' is false and misleading." Please supplement Plaintiff's document production to include all responsive documents in Plaintiff's possession, custody, or control.

**Document Request Nos. 26 and 31** requested production of all documents supporting or evidencing any injury, damage, or loss Plaintiff asserts in this Action, or that Plaintiff relies upon in support of his calculation of alleged damages, as well as any documents that Plaintiff believes supports his claim that he has suffered damages as a result of any actions or omissions by AT&T. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production appears to contain documents that are only partially responsive to this request. Plaintiff should produce, at minimum, an accounting of all cryptocurrency Plaintiff alleges was stolen from him as a result of AT&T's conduct, including transaction logs demonstrating Plaintiff's ownership of the cryptocurrency, and transaction logs showing the same cryptocurrency being transferred to wallets controlled by third party hackers. Plaintiff's production should also include all documents substantiating or relating to his allegation that "[h]e has spent an additional $650,000 in this business, including optimizing the rigs' set up and paying for the electricity to power them," Compl. ¶ 33, and any other costs or damages he alleges in connection with his mining operation. To the extent you believe Plaintiff has produced documents responsive to this request, please identify each responsive document by its bates number and confirm that Plaintiff's document production currently includes all documents in Plaintiff's possession or control that are responsive to each request.

**Document Request No. 27** requested production of all documents supporting or evidencing Plaintiff's inability to mine Bitcoin after February 2019. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff's document production contains no documents responsive to this request. Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

**Document Request No. 30** requested production of all documents relating to communications between Plaintiff and any third party regarding Plaintiff's claims against AT&T in the Complaint. Plaintiff asserted objections but agreed to produce copies of documents responsive to this request.

Plaintiff appears to have produced some documents in response to this request, including a partial email chain of communications with Coinbase, Gemini, and First Citizen's Bank, incomplete text message chains with unknown third parties, and selected communications with law enforcement officials. However, some of these emails and text messages reference other communications with Plaintiff that have not been produced, and regardless, there are clearly many more records of

relevant communications between Plaintiff and numerous third parties that have not been produced. *See, e.g.*, JW_0033, 65. Plaintiff must supplement his document production to include *all* communications with third parties that concern the SIM swaps or the subsequent unauthorized access of Plaintiff's Accounts, or are otherwise responsive to this request. As noted previously, Plaintiff should supplement his production to include entire email strings and text message threads responsive to AT&T's document requests with all relevant metadata intact, not selected screen shots of an iPhone screen showing only a portion of a responsive conversation or document.

Please supplement Plaintiff's document production to include all documents Plaintiff agreed to produce in connection with this request.

We would like to schedule a meet and confer conference to address the above deficiencies on November 2, 3 or 4. Please let us know what times you are available those days. In the meantime, should you have any questions about any of the above, please do not hesitate to contact us.

Warm regards,

Joseph S. Dowdy

cc:     Michael Breslin, Esq.
        Adam Wiley, Esq.

# EXHIBIT J



Suite 1400, 4208 Six Forks Road
Raleigh, NC 27609
t 919 420 1700  f 919 420 1800

Joseph S. Dowdy, Partner
direct dial 919 420 1718
direct fax 919 510 6120
JDowdy@kilpatricktownsend.com

October 26, 2020

Terence S. Reynolds                    treynolds@shumaker.com
Lucas D. Garber                        lgarber@shumaker.com
Shumaker Loop & Kendrick LLP
101 South Tyron Street, Suite 2200
Charlotte, NC 28280

Christopher LaVigne                    christopher.lavigne@withersworldwide.com
Joe Gallo                              joseph.gallo@withersworldwide.com
Withers Bergman LLP
430 Park Ave., 10th Floor
New York, NY 10022

   Re: *WILLIAMS V. AT&T MOBILITY, LLC*; CASE NUMBER: 5:19-cv-00475-BO

Dear Counsel:

We are in receipt of Plaintiff Jason Williams' First Supplemental Responses and Objections to Defendant's First Set of Interrogatories. We have reviewed Plaintiff's responses, and have identified the deficiencies set forth below with respect to Plaintiff's supplemental response to Interrogatory No. 11. Any defined terms referenced in this letter shall have the same meaning as those terms are defined in AT&T's interrogatories. This is our attempt under Local Rule 7.1(c)(2) to "meet and confer" to resolve these items.

**Interrogatory No. 11** requested the specific false statements AT&T allegedly made to Plaintiff, the identity of the person making the false statement, and the date / time of the false statement. Plaintiff's initial response to this interrogatory stated that "Plaintiff communicated with a number of AT&T employees and/or agents in connection with the SIM swaps" and referenced specific paragraphs in the Complaint, but did not provide any of the information requested.

On August 4, 2020, we sent a meet and confer letter addressing these deficiencies and requesting a supplemental response. Your August 21, 2020 response letter stated, in essence, that Plaintiff's reference to allegations in the Complaint was sufficiently responsive to the interrogatory because the Court's Order denying AT&T's motion to dismiss met "the heightened pleading requirements of FRCP 9(b)," and that "no supplemental response … [was] required." However, Plaintiff provided a supplemental response to this interrogatory as part of his First Supplemental Responses dated September 28, 2020, which cited the aforementioned Order denying AT&T's motion to

ANCHORAGE  ATLANTA  AUGUSTA  BEIJING  CHARLOTTE  DALLAS  DENVER  HOUSTON  LOS ANGELES  NEW YORK  RALEIGH  SAN DIEGO
SAN FRANCISCO  SEATTLE  SHANGHAI  SILICON VALLEY  STOCKHOLM  TOKYO  WALNUT CREEK  WASHINGTON  WINSTON-SALEM

Case 5:19-cv-00475-BO   Document 61-1   Filed 03/15/21   Page 111 of 173

dismiss and reiterated Plaintiff's position that a response that only references portions of the Complaint is adequate. The response further stated that "Plaintiff's counsel is unaware of any legal authority that stands for the proposition that parties that properly plead fraud claims are required to restate the alleged fraudulent statements in response to written interrogatories." We disagree with the manner in which you have positioned this issue, as well as your conclusion that Plaintiff is not required to provide a complete response to Interrogatory No. 11.

First, there is a clear distinction between "properly plead fraud claims" and a party's response to an interrogatory, under oath, once the case is at issue. *See Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 688 (D.Colo.1991), ("all references in plaintiff's Interrogatory Responses to the *allegations* in the Complaint amount to nothing more than *claims* or *allegations* that the *allegations* are true.") (emphasis in original). Accordingly, the Court's ruling on a motion to dismiss, where the factual allegations of the complaint were "taken as true,"[1] has no bearing on the veracity Plaintiff's allegations or the sufficiency of Plaintiff's response to an interrogatory which incorporates those allegations by reference.

Second, there is ample case law, both in the Fourth Circuit and elsewhere, standing for the proposition that a party must provide a complete response to an interrogatory and may not simply rely on references to allegations from pleadings or other documents. *See, e.g.*, *Flying J. Inc. v. TA Operating Corporation*, 2007 WL 1302756 at *1 (D. Utah May 2, 2007) ("Although it is true, as one court has observed, that the allegations in the complaint shed some light on the role defendants apparently played, a general reference to the allegations in the complaint is not a proper response to an interrogatory. Similarly, vague references to [allegations] are not appropriate responses to the interrogatories. If Plaintiffs do not have the 'necessary information to make a full, fair and specific answer to an interrogatory, [they] should so state under oath.'); *Glenn v. BellSouth Telecommunications, Inc.*, 2006 WL 8445350 at *2 (D. South Carolina, Feb. 23, 2006) ("Although reference is made to the Complaint, various depositions, and other discovery responses, the Court does not believe that the plaintiff was actually trying to rely on or incorporate information as alleged in those sources. But to the extent that was his intent, it is a nonresponsive answer." (collecting cases).); *Lawman v. City and County of San Francisco*, 159 F.Supp.3d 1130, 1140-41 (N.D. Cal. 2016).

Furthermore, the sections of Plaintiff's Complaint referenced in Plaintiff's supplemental response to Interrogatory No. 11 appear to relate more specifically to defects Plaintiff perceives in AT&T's processes than to actionable misrepresentations Plaintiff contends AT&T made to him. For example, ¶ 50 of the Complaint states that "despite AT&T's representations that Mr. Williams' account would be safe from unauthorized SIM swaps and that the company had put robust security protocols in place to protect his account . . ." This allegation fails to specifically provide all information requested by the interrogatory, to wit, the identity of the person making the false statement, and the date / time of the false statement. Another example is found at ¶ 57, where Plaintiff contends an AT&T employee told him that buying a new iPhone would "mitigate the risk of another SIM swap attack." It is unclear whether Plaintiff is alleging that this is a misrepresentation or simply a restatement of an assertion allegedly made by AT&T.

---

[1] *See* Dkt. 21, Pg. 6

Finally, at ¶¶ 152-174, where Plaintiff alleges misrepresentations in AT&T's Privacy Policy, there are similar instances where it is unclear whether Plaintiff is alleging an actionable misrepresentation made by AT&T. At ¶ 152, Plaintiff does not elaborate on the specific "material information about its data security practices" that AT&T failed to disclose. At ¶ 159, it is unclear whether Plaintiff is alleging AT&T represented that it would put in place "adequate systems." If so, Plaintiff should provide a complete response to the interrogatory with the identity of the person making the statement and the date / time of the false statement, bearing in mind that the word "adequate" is found nowhere in the Privacy Policy.

These ambiguities in the allegations in the Complaint, though sufficient to overcome a motion to dismiss, are insufficient for purposes of responding to AT&T's Interrogatory No. 11, which underscores the need for Plaintiff to provide a complete response to this interrogatory rather than broadly reference a range of allegations in his Complaint that he believes are responsive. Please supplement Plaintiff's response to set forth the exact false statements made by AT&T that support Plaintiff's claims in this action, and for each, state the name of the person making the false statement (or whether Plaintiff does not know the person's name), and the date of same.

We would like to schedule a meet and confer conference to address the above deficiencies on November 2, 3, or 4. Please let us know what times you are available those days. In the meantime, should you have any questions about any of the above, please do not hesitate to contact us.


Warm regards,


Joseph S. Dowdy


cc:     Michael Breslin, Esq.
        Adam Wiley, Esq.

# EXHIBIT K

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| JASON WILLIAMS,<br><br>    Plaintiff,<br><br>vs.<br><br>AT&T MOBILITY LLC,<br><br>    Defendant. | Case No. 5:19-cv-00475-BO<br><br>**DEFENDANT AT&T MOBILITY LLC'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF JASON WILLIAMS** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 26.1 and 34.1 of the Local Rules for the Eastern District of North Carolina, Defendant AT&T Mobility LLC ("AT&T"), acting by and through its undersigned counsel, hereby requests that Plaintiff Jason Williams ("Plaintiff") respond in writing and produce the documents requested below at the offices of Kilpatrick Townsend & Stockton LLP, 4208 Six Forks Road, Suite 1400, Raleigh, NC 27609.

### DEFINITIONS

1.     The term "You," "Your," or "Plaintiff" shall mean Plaintiff Jason Williams.

2.     The term "Complaint" shall mean and refer to the Complaint filed by Plaintiff in this action dated October 24, 2019, and any amendments and/or corrections thereto.

3.      The term "Action" shall mean and refer to the above-captioned proceeding.

4.      The term "Password" means any username, user ID, password, passcode, keys (public or private), personal identification numbers ("PINs"), backup code or recovery seed for App 2FA or TOTP, or other authentication mechanism or credential capable of being used to gain access to an Account or information.

5.      The term "Account" means any website, application, computer system or software you are able to access by virtue of providing Passwords or other authentication credentials, including but not limited to email, cloud storage, financial services, Password managers, cryptocurrency exchanges and cryptocurrency wallets.

6.      The term "Security Measure" refers to security features or steps utilized to prevent unauthorized access to or activity within Accounts, including but not limited to challenge questions, SMS two-factor authentication ("SMS 2FA"), email two-factor authentication either through a passcode or link sent to your registered email on the Account ("Email 2FA"), application-based two-factor authentication ("App 2FA") such as Google Authenticator or Authy (also referred to as time-expiring one time PINs, or "TOTP"), and wallet whitelisting.

7.      The term "Personal Information" means personal identifying information, including but not limited to names, addresses, phone numbers, Social Security numbers, or government identification numbers.

8.      The term "SIM Changes" shall mean and refer to the alleged SIM Changes described in and referred to in Paragraphs 37 through 81 of the Complaint, each a "SIM Change."

9. The term "Document" or "Documents" is used in its customary broad sense and shall include, by way of illustration only and not by way of limitation, all Communications (as defined below), all Electronic Communications (as defined below), all Electronically Stored Information (as defined below), all written and graphic matter of every kind and description, whether printed or reproduced by any process, electronically stored, or written and/or produced by hand, whether final draft, original, or reproduction, such as: correspondence, hand-written or typed notes, memoranda of telephone or personal conversations, notices, press releases, reports, rules, regulations, directives, minutes, records of meetings, inter-office communications, financial statements, ledgers, books, accounts, proposals, prospectuses, offers, orders, receipts, working papers, desk calendars, appointment books, routing slips, time sheets, logs, movies, tapes (or visual or audio reproduction), recordings, drawings, graphs, charts, photographs, purchase orders, electronic media information, data processing paper results, data printouts and computations (both in existence and stored in memory components), transcripts or oral statements or testimony, reports and/or summaries of interviews, reports and/or summaries of investigations, opinions or reports of consultants, and any and all other data compilations or information resources from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form or material similar to any "document" as used herein. As used herein, the term is to be given the broadest possible meaning that the Federal Rules of Civil Procedure and the Federal Rules of Evidence allow.

10. The term "Electronically Stored Information" is defined to be synonymous in meaning and equal in scope to the usage of the term "electronically stored information" in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

11. The term "Communication" shall mean the transmission or exchange of any information, whether written, oral, or by any other means, and includes, but is not limited to, any Electronic Communication (as defined below) and any Documents which abstract, digest, transcribe, or record any such Communication.

12. The term "Electronic Communication" shall mean any Communication created, modified, stored, sent, or received electronically, digitally, via e-mail, computer, telephone, cellular phone, digital phone and/or personal digital assistant (PDA), and shall include, but not be limited to, e-mail, text messages, and messages known as MMS, SMS and 1MS, and shall include any of the above that have been deleted, but that are reasonably available in the ordinary course of business.

13. The term "Person" means any natural person, group of persons, or any business, legal, or governmental entity or association.

14. The terms "Concerning," "Regarding," "Referring to," "Relating to" or "Evidencing" are used in their broadest sense allowed under the Federal Rules of Civil Procedure and shall mean directly or indirectly referring to, alluding to, relating to, pertaining to, connecting with, commenting on, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing,

constituting, embodying and/or demonstrating a stated subject matter, including, but not limited to, the particular category of information or Document requested.

15.     All other undefined terms shall have the meaning found at http://www.merriam-webster.com, consistent with the context in which such terms are used.

## **INSTRUCTIONS**

1.     The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

2.     The singular shall be deemed to include the plural, and the plural shall be deemed to include the singular, as necessary to make the request inclusive rather than exclusive.

3.     Each of the words "each," "every," "any" and "all" shall be deemed to include each of the other words.

4.     Any request phrased in the present tense shall be read as if propounded in the past tense and vice versa as necessary to make each request inclusive rather than exclusive.

5.     Requests that cannot be responded to in full shall be answered as completely as possible, and incomplete responses shall be accompanied by an explanation of the reasons for the incompleteness of the response as well as by a statement of whatever knowledge, information, or belief You possess with respect to each incompletely answered request.  If You object to or otherwise decline to answer

any portion of any request, provide all information called for by that portion of the request to which You do not object or which You do not decline to answer.

6. If You object to any request on the basis of attorney-client privilege, work-product doctrine, or confidentiality, then provide a general description of the type of information withheld sufficient to enable Plaintiff and the Court to assess the applicability of the asserted privilege or protection. If You claim privilege or confidentiality as to any Document sought by or responsive to these requests, state the general subject matter of the Document, the date the information or Document was transmitted or prepared, each Person having knowledge of the Document (and, as applicable, its author, signer, and each Person to whom a copy was directed), and the nature of the privilege, confidentiality, or other legal basis for it being withheld from production.

7. Unless otherwise addressed by the parties' electronic discovery protocol, each responsive Document is to be produced in its original form (or copy where original is not available), together with any copies thereof bearing notations, memoranda, or other written information not contained on the original, and each responsive Document is to be produced in its original file, jacket, folder, cover or other container, if available. For all non-electronically stored information, an accurate copy of any Document may be attached to the response of these requests in lieu of the production described in this paragraph. In the event You attach a copy of a Document, identify to which request the Document is responsive.

8.      Unless otherwise addressed in these requests, the relevant time period for these Document Requests extends from the date Mr. Williams became an AT&T customer until the present.

9.      These Document Requests are continuing.  Your responses to these requests shall be supplemented as required by Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

1.      Produce the portions of tax returns for the years 2018, 2019, and 2020 reflecting all revenues (including without limitation, all money, cryptocurrency, and/or property) derived from, and expenses incurred in, the Slush Pool cryptocurrency mining activities referenced in the Complaint, including but not limited to any such portions of tax returns filed by Plaintiff, Apollo Kids Mining, or any other person or entity that received revenue, money, or property from the mining activities.

**RESPONSE:**


2.      Produce any hosting contract or other agreement Plaintiff entered into with any third party related to the cryptocurrency mining operation referenced in the Complaint.

**RESPONSE:**

3.    Produce records documenting each expense incurred in connection with the cryptocurrency mining operation referenced in the Complaint, including but not limited to electricity, hosting, consulting, setup, configuration, optimization, storage, real estate, warehouse, and maintenance expenses.

**RESPONSE:**


4.    Produce documents sufficient to identify each payout wallet address utilized to receive payouts from the Slush Pool cryptocurrency mining activities referenced in the Complaint during the period January 1, 2018 to the present.

**RESPONSE:**


5.    For each deposit, payout, or mining reward transaction derived from the cryptocurrency mining activities referenced in the Complaint, produce the transaction record showing the date, amount, and complete receiving wallet address of the transaction.

**RESPONSE:**


6.    For the following email Accounts: jasonwilliamseow@gmail.com, j.williams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com, produce all emails and any attachments thereto that were sent, received, or drafted during November 1, 2018 to February 13, 2019, and which contain any of the following terms ("!" denotes a wildcard term):

8

a. AT&T
b. SIM
c. Swap!
d. Hijack!
e. Hack!
f. Fraud!
g. Imposter!
h. Steal!
i. Slush!
j. Hitbtc
k. Gemini
l. Coinbase
m. Linkedin
n. Twitter
o. Instagram
p. Dropbox
q. Apple!
r. iCloud
s. "First Citizens"
t. Dazzle
u. "Apollo Kids"
v. Antminer
w. S9
x. "1780 Business Center"
y. iPhone
z. FBI
aa. "Federal Bureau of Investigations"
bb. Police
cc. "law enforcement"
dd. REACT
ee. Gun
ff. Kidnap!
gg. Threat!
hh. 7464
ii. 5162
jj. Recover!
kk. Passport
ll. Password
mm. Passcode
nn. Authy
oo. Authenticator
pp. "new device"
qq. "new login"
rr. "new sign in"

ss.   "security alert"
tt.   "unrecognized"
uu.   "two factor"
vv.   2FA
ww.   "extra security"

**RESPONSE:**


7.     For the following email Accounts: jasonwilliamseow@gmail.com, j.williams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com, produce all emails and any attachments thereto that were sent, received, or drafted during February 13, 2019 to the present, and which contain any of the following terms ("!" denotes a wildcard term):

a.   AT&T
b.   SIM
c.   Slush!
d.   Coinbase
e.   Hack!
f.   Fraud!
g.   Apollo
h.   Antminer
i.   S9
j.   "1780 Business Center"
k.   FBI
l.   "Federal Bureau of Investigations"
m.   Police
n.   "law enforcement"
o.   REACT
p.   Authy
q.   Authenticator
r.   "new device"
s.   "new login"
t.   "new sign in"
u.   "security alert"
v.   "unrecognized"
w.   "two factor"
x.   2FA

y. Password

**RESPONSE:**

8.     To the extent not produced in response to the foregoing requests, produce all emails, and any attachments thereto, that were sent, received, or drafted in any of the following email Accounts: jasonwilliamseow@gmail.com, j.williams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com, and which relate to any of the allegations in the Complaint or are responsive to any Document Request served on You in this Action.

**RESPONSE:**

9.     Produce a copy of each Document or file that contained any sensitive or personal information that "was compromised as a result of the SIM swaps" as alleged in Paragraphs 44 and 83-86 of the Corrected Complaint [Doc. 2].

**RESPONSE:**

10.     For the period February 8, 2019 to the present, produce all Documents evidencing or referencing any actual or attempted identity theft, sale or publication (on the black market or otherwise), extortion attempts, disclosure to additional third parties, or other malicious or improper use of any of Plaintiff's or his family members' sensitive personal, business, legal, or financial information that "was compromised as a result of the SIM swaps" as alleged in Paragraphs 44 and 83-86 of the Corrected Complaint [Doc. 2].

**RESPONSE:**

11.    For the period February 8, 2019 to the present, produce all Documents evidencing any actual or attempted efforts by You to regain access to any Accounts You allege were compromised as a result of the SIM swaps and which You did not control or have access to as of the date the Complaint was filed in this matter on October 24, 2019, including but not limited to any such Accounts with Gmail, Dropbox, Coinbase, Slushpool, Facebook, WhatsApp, or Apple iCloud.

**RESPONSE:**

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Joseph S. Dowdy
Joseph S. Dowdy (N.C. State Bar No. 31941)
Phillip A. Harris, Jr. (N.C. State Bar No. 39740)
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com
        pharris@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
Email: mbreslin@kilpatricktownsend.com

*Local Civil Rule 83.1(e) Counsel for Defendant AT&T Mobility LLC*

*Counsel for Defendant AT&T Mobility LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on date set out below, I served a true copy of the foregoing

**DEFENDANT AT&T MOBILITY LLC'S SECOND SET OF REQUESTS FOR**

**PRODUCTION OF DOCUMENTS** by electronic mail, pursuant to the agreement

of counsel for all parties, to all counsel of record and additional persons listed below:

SHUMAKER LOOP & KENDRICK LLP
Terence S. Reynolds
treynolds@shumaker.com
Lucas D. Garber
lgarber@shumaker.com
101 South Tyron Street
Suite 2200
Charlotte, North Carolina 28280

*Local Civil Rule 83.1(d) Counsel for Plaintiff Jason Williams*

PIERCE BAINBRIDGE BECK PRICE
& HECHT LLP
Christopher LaVigne
clavigne@piercebainbridge.com
Patrick Bradford
pbradford@piercebainbridge.com
William L. Geraci
wgeraci@piercebainbridge.com
277 Park Avenue, 45th Floor
New York, NY 10172

*Counsel for Plaintiff Jason Williams*

This the 8th day of January, 2021.

/s/ Joseph S. Dowdy
Joseph S. Dowdy

13

# EXHIBIT L

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

-------------------------------------------------------X

JASON WILLIAMS,

      Plaintiff,

   vs.

AT&T MOBILITY LLC,

      Defendant.

-------------------------------------------------------X

Case No. 5:19-cv-00475-BO

**PLAINTIFF JASON WILLIAMS'
RESPONSES AND OBJECTIONS
TO DEFENDANT'S SECOND SET
OF REQUESTS FOR
PRODUCTION OF DOCUMENTS**

   Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the

Eastern District of North Carolina 26.1 and 34.1, Plaintiff Jason Williams ("Plaintiff" or

"Williams"), by his attorneys, Withers Bergman LLP, for his responses and objections to

Defendant AT&T Mobility LLC's ("Defendant" or "AT&T") Second Set of Requests for

Production of Documents (the "Second Request" and each a "Request"), dated January 8, 2021,

states as follows:

## <u>ENUMERATED OBJECTIONS</u>

   1.  Plaintiff objects to the Request on the grounds that it is overly broad, calls for

disclosure of information not relevant to the claims or defenses of any party, seeks documents

and information not relevant to the subject matter of this action, and in that it is not reasonably

calculated to lead to the discovery of admissible evidence.

   2.  Plaintiff objects to the Request on the ground that it is unduly burdensome.

   3.  Plaintiff objects to the Request on the grounds that it is redundant and duplicative

of other requests.

   4.  Plaintiff objects to the Request on the grounds that it is argumentative, factually

unfounded, and/or based on factual premises that are false, inaccurate, or not conceded, or based

on recitations of events that did not occur, or the occurrence of which is, or may be, disputed. Plaintiff has no obligation to the correct all the factual errors, inaccuracies, and false premises stated or embedded in the Request. In responding to the Request, Plaintiff does not concede the validity or accuracy of any factual assertion or premise stated, or embedded, in any instruction, definition, or individual Request.

5.      Plaintiff objects to the Request on the grounds that it seeks information not in Plaintiff's possession, custody or control, or to the extent that it seeks to impose discovery obligations on non-parties.

6.      Plaintiff objects to the Request on the grounds that it calls for the disclosure of information that represents or contains confidential, proprietary, and/or personal information.

7.      Plaintiff objects to the Request on the grounds that it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Plaintiff hereby claims all such privileges, immunities, and protections to the extent implicated by each Request. Any disclosure of information subject to any claim of privilege, immunity, or protection is inadvertent, and without waiver of Plaintiff's rights to recall and retrieve such inadvertently disclosed information.

8.      Plaintiff objects to the Request and the Second Requests' Instructions and Definitions to the extent they purport to impose obligations contrary to, different from, or in addition to those set forth in the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Eastern District of North Carolina, or the Individual Practice Rules of Judge Terrence W. Boyle, and other applicable rules and laws.

## TERMS AND CONDITIONS

Subject to, limited by and without waiving the foregoing Enumerated Objections and the specific objections stated below, Williams agrees to make available copies of documents responsive to the Second Request on the following terms and conditions:

1.     Inadvertent production of any information that is confidential, privileged, was prepared in anticipation of litigation or for trial or is otherwise protected from discovery, shall not constitute a waiver of any privilege or of any ground for objection to discovery with respect to such information, document or any other document or information, or the subject matter thereof or the information contained therein, or of the right of Plaintiff to object to the use of any such document or information.

2.     That Plaintiff has responded or objected to the Second Requests, or to any part thereof, is not intended to be, nor should it be deemed, an admission that he accepts or admits the existence of any alleged fact or documents described or assumed, or any allegations or statements set forth, assumed or implied, by any individual Request, or that such response or objection constitutes admissible evidence.  In responding to the Second Requests, Plaintiff neither waives nor intends to waive, but expressly reserves, every part of every objection to the Second Requests and reserves any and all objections as to authenticity, relevance, competency, materiality and/or admissibility at trial or any hearing of any information produced, set forth, identified, or referred to herein.

3.     The following responses are made solely for the purpose of this action.  Each response is subject to all objections as to competence, relevance, privilege, materiality, admissibility, and any and all other objections and grounds that would require the exclusion of any statement or document made available herewith as if any request were asked of, or if any

3

statements contained herein were made by, or if any documents made available herewith were offered by, a witness present and testifying in court, all of which objections are reserved and may be interposed at the time of any hearing or trial in this action.

4.      The following responses and any documents made available pursuant thereto are based on facts known to Plaintiff at the time of responding to the Second Requests and a review of files reasonably expected to contain responsive documents or information.  Plaintiff reserves the right to amend and/or supplement these responses and any documents made available in the event new or different information or documents are discovered.

5.      Unless otherwise defined herein, all capitalized terms in the specific responses below as defined in the same way as in Plaintiff's Second Requests for Production to Defendant.

<div align="center"><u>**SPECIFIC RESPONSES AND OBJECTIONS**</u></div>

The foregoing Enumerated Objections, and the foregoing Terms and Conditions, apply to all of the specific requests and are incorporated into each and every specific response and objection set forth below.  In response to certain requests, Williams may restate one or more of its objections for clarity or emphasis.  The lack of such specific references, and/or the provision of specific responses and objections stated below, however, are not intended as, and shall not be deemed to be, a waiver, either in whole or in part, of any of the foregoing Enumerated Objections or Terms and Conditions, and, subject to and without waiving them, Williams further responds and objects to each individual request as follows:

**Request No. 1:**
Produce the portions of tax returns for the years 2018, 2019, and 2020 reflecting all revenues (including without limitation, all money, cryptocurrency, and/or property) derived from, and expenses incurred in, the Slush Pool cryptocurrency mining activities referenced in the Complaint, including but not limited to any such portions of tax returns filed by Plaintiff, Apollo Kids Mining, or any other person or entity that received revenue, money, or property from the mining activities.

<div align="center">4</div>

**Response to Request No. 1:**

Plaintiff objects to Request No. 1 on the grounds set forth in Enumerated Objections 1, 4, 5, 6, and 8.  Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 2:**
Produce any hosting contract or other agreement Plaintiff entered into with any third party related to the cryptocurrency mining operation referenced in the Complaint.

**Response to Request No. 2:**

Plaintiff objects to Request No. 2 on the grounds set forth in Enumerated Objections 1, 3, 4, 5, 6, and 8.  Plaintiff further objects to this Request on the grounds that the parties have already met and conferred regarding documents responsive to this request, Plaintiff has represented to Defendant that he has already undertaken a search for documents responsive to this request, and therefore that this Request is unreasonably cumulative and duplicative.  Subject to, limited by and without waiving his Enumerated Objections, further objections, and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 3:**
Produce records documenting each expense incurred in connection with the cryptocurrency mining operation referenced in the Complaint, including but not limited to electricity, hosting, consulting, setup, configuration, optimization, storage, real estate, warehouse, and maintenance expenses.

**Response to Request No. 3:**

Plaintiff objects to Request No. 3 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8.  Plaintiff further objects to this Request on the grounds that the parties have

already met and conferred regarding documents responsive to this request, Plaintiff has

represented to Defendant that he has already undertaken a search for documents responsive to

this request, and therefore that this Request is unreasonably cumulative and duplicative. Subject

to, limited by and without waiving his Enumerated Objections, further objections, and the Terms

and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents

in his possession, custody, or control responsive to this Request to the extent such documents

exist and can be, and have been, identified and located.

**Request No. 4:**
Produce documents sufficient to identify each payout wallet address utilized to receive payouts
from the Slush Pool cryptocurrency mining activities referenced in the Complaint during the
period January 1, 2018 to the present.

**Response to Request No. 4:**

Plaintiff objects to Request No. 4 on the grounds set forth in Enumerated Objections 1, 2,

3, 4, 5, 6, and 8. Plaintiff further objects to this Request on the grounds that the parties have

already met and conferred regarding documents responsive to this request, Plaintiff has

represented to Defendant that he has already undertaken a search for documents responsive to

this request, and therefore that this Request is unreasonably cumulative and duplicative. Subject

to, limited by and without waiving his Enumerated Objections, further objections, and the Terms

and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents

in his possession, custody, or control responsive to this Request to the extent such documents

exist and can be, and have been, identified and located.

**Request No. 5:**
For each deposit, payout, or mining reward transaction derived from the cryptocurrency mining
activities referenced in the Complaint, produce the transaction record showing the date, amount,
and complete receiving wallet address of the transaction.

**Response to Request No. 5:**

Plaintiff objects to Request No. 5 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to this request on the grounds that the parties have already met and conferred regarding documents responsive to this request, Plaintiff has represented to Defendant that he has already undertaken a search for documents responsive to this request, and therefore that this request is unreasonably cumulative and duplicative. Subject to, limited by and without waiving his Enumerated Objections, further objections, and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 6:**
For the following email Accounts: jasonwilliamseow@gmail.com, jwilliams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com, produce all emails and any attachments thereto that were sent, received, or drafted during November 1, 2018 to February 13, 2019, and which contain any of the following terms ("!" denotes a wildcard term): a. AT&T; b. SIM; c. Swap!; d. Hijack!; e. Hack!; f. Fraud!; g. Imposter!; h. Steal!; i. Slush!; j. Hitbtc; k. Gemini; l. Coinbase; m. Linkedin; n. Twitter; o. Instagram; p. Dropbox; q. Apple!; r. iCloud; s. "First Citizens"; t. Dazzle; u. "Apollo Kids"; v. Antminer; w. S9; x. "1780 Business Center"; y. iPhone; z. FBI; aa. "Federal Bureau of Investigations"; bb. Police; cc. "law enforcement"; dd. REACT; ee. Gun; ff. Kidnap!; gg. Threat!; hh. 7464; ii. 5162; jj. Recover!; kk. Passport; ll. Password; mm. Passcode; nn. Authy; oo. Authenticator; pp. "new device"; qq. "new login"; rr. "new sign in"; ss. "security alert"; tt. "unrecognized"; uu. "two factor"; vv. 2FA; ww. "extra security."

**Response to Request No. 6:**

Plaintiff objects to Request No. 6 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to this request on the grounds that the parties have already met and conferred regarding the email accounts related to jwilliams@prtitech.com, Plaintiff has represented to Defendant that he has already undertaken a search of for documents responsive documents responsive to Defendant's Second Requests for Production that are stored in that account, and therefore that this request is unreasonably cumulative and duplicative.

NY28603/0001-US-9006272/1

Plaintiff further objects to this request on the grounds that, as Plaintiff has represented to Defendant during parties' meet and confer efforts, Plaintiff does not have access to jwilliams@fastmed.com, jasonwilliamseow@gmail.com, or jasonwilliams@yahoo.com. Plaintiff does not and has never had a Yahoo email account. Plaintiff has not had access to a fastmed.com account since 2015, when he left the company associated with that email account. As alleged in the Complaint, Defendants' failure to protect Plaintiff from SIM swaps caused Plaintiff to lose access to his jasonwilliamseow@gmail.com account, and he has not regained access to that account since those SIM swaps occurred. As Defendant is aware from the parties' meet and confer efforts, Plaintiff is in the process of attempting to regain access to his jasonwilliamseow@gmail.com account and/or the documents stored therein.

Plaintiff further objects to this request on the grounds that its use of search terms calls for the production of documents that are neither relevant to any parties' claims or defenses nor proportional to the needs of this case. As Defendant is well aware from the parties' meet and confer efforts regarding Defendant's discovery obligations, the use of search terms in electronic discovery may be useful to direct the parties' efforts to locate relevant documents. However, it is not typically useful or appropriate for a party to demand the production of all documents that contain broad search terms like those contained in this Request. Many of the search terms in this Request are virtually guaranteed to be found in irrelevant documents, including, for example, the search terms Twitter, Police, and Password.

Plaintiff is willing to meet and confer with Defendant regarding Plaintiff's use of search terms to locate potentially relevant documents and documents responsive to other Requests, particularly if and when Plaintiff regains access to his jasonwilliamseow@gmail.com. However,

Plaintiff does not and will not agree that documents containing the search terms in this request

are *de facto* relevant or responsive to any other Requests.

**Request No. 7:**
For the following email Accounts: jasonwilliamseow@gmail.com, j.williams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com, produce all emails and any attachments thereto that were sent, received, or drafted during February 13, 2019 to the present, and which contain any of the following terms ("!" denotes a wildcard term): a. AT&T; b. SIM; c. Slush!; d. Coinbase; e. Hack!; f. Fraud!; g. Apollo; h. Antminer; i. S9; j. "1780 Business Center"; k. FBI; l. "Federal Bureau of Investigations"; m. Police; n. "law enforcement"; p. REACT; q. Authy; r. Authenticator; s. "new device"; t. "new login"; u. "new sign in"; v. "security alert"; w. "unrecognized"; x. "two factor"; y. 2FA; z. Password

**Response to Request No. 7:**

Plaintiff objects to Request No. 7 on the grounds set forth in Enumerated Objections 1, 2,

3, 4, 5, 6, 7, and 8.  Plaintiff further objects to this request on the grounds that the parties have

already met and conferred regarding the email accounts related to jwilliams@prtitech.com,

Plaintiff has represented to Defendant that he has already undertaken a search of for documents

responsive documents responsive to Defendant's Second Requests for Production that are stored

in that account, and therefore that this request is unreasonably cumulative and duplicative.

Plaintiff further objects to this request on the grounds that, as Plaintiff has represented to

Defendant during parties' meet and confer efforts, Plaintiff does not have access to

jwilliams@fastmed.com, jasonwilliamseow@gmail.com, or jasonwilliams@yahoo.com.

Plaintiff does not and has never had a Yahoo email account.  Plaintiff has not had access to a

fastmed.com account since 2015, when he left the company associated with that email account.

As alleged in the Complaint, Defendants' failure to protect Plaintiff from SIM swaps caused

Plaintiff to lose access to his jasonwilliamseow@gmail.com account, and he has not regained

access to that account since those SIM swaps occurred.  As Defendant is aware from the parties'

meet and confer efforts, Plaintiff is in the process of attempting to regain access to his

jasonwilliamseow@gmail.com account and/or the documents stored therein.

Plaintiff further objects to this request on the grounds that its use of search terms calls for the production of documents that are neither relevant to any parties' claims or defenses nor proportional to the needs of this case. As Defendant is well aware from the parties' meet and confer efforts regarding Defendant's discovery obligations, the use of search terms in electronic discovery may be useful to direct the parties' efforts to locate relevant documents. However, it is not typically useful or appropriate for a party to demand the production of all documents that contain broad search terms like those contained in this Request. Many of the search terms in this Request are virtually guaranteed to be found in irrelevant documents, including, for example, the search terms Twitter, Police, and Password.

Plaintiff is willing to meet and confer with Defendant regarding Plaintiff's use of search terms to locate potentially relevant documents and documents responsive to other Requests, particularly if and when Plaintiff regains access to his jasonwilliamseow@gmail.com. However, Plaintiff does not and will not agree that documents containing the search terms in this request are *de facto* relevant or responsive to any other Requests.

**Request No. 8:**
To the extent not produced in response to the foregoing requests, produce all emails, and any attachments thereto, that were sent, received, or drafted in any of the following email accounts: jasonwilliamseow@gmail.com, j.williams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com, and which relate to any of the allegations in the Complaint or are responsive to any Document Request served on You in this Action.

**Response to Request No. 8:**

Plaintiff objects to Request No. 8 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to this request on the grounds that the parties have already met and conferred regarding the email accounts related to jwilliams@prtitech.com, Plaintiff has represented to Defendant that he has already undertaken a search of for documents

responsive documents responsive to Defendant's Second Requests for Production that are stored in that account, and therefore that this request is unreasonably cumulative and duplicative.

Plaintiff further objects to this request on the grounds that, as Plaintiff has represented to Defendant during parties' meet and confer efforts, Plaintiff does not have access to jwilliams@fastmed.com, jasonwilliamseow@gmail.com, or jasonwilliams@yahoo.com. Plaintiff does not and has never had a Yahoo email account. Plaintiff has not had access to a fastmed.com account since 2015, when he left the company associated with that email account. As alleged in the Complaint, Defendants' failure to protect Plaintiff from SIM swaps caused Plaintiff to lose access to his jasonwilliamseow@gmail.com account, and he has not regained access to that account since those SIM swaps occurred. As Defendant is aware from the parties' meet and confer efforts, Plaintiff is in the process of attempting to regain access to his jasonwilliamseow@gmail.com account and/or the documents stored therein.

Subject to, limited by and without waiving his Enumerated Objections, further objections, and the Terms and Conditions, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 9:**
Produce a copy of each Document or file that contained any sensitive or personal information that "was compromised as a result of the SIM swaps" as alleged in Paragraphs 44 and 83-86 of the Corrected Complaint [Doc. 2].

**Response to Request No. 9:**

Plaintiff objects to Request No. 9 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to this Request on the grounds that the parties have already met and conferred regarding documents responsive to this request, Plaintiff has represented to Defendant that he has already undertaken a search for documents responsive to

11

this request, and therefore that this Request is unreasonably cumulative and duplicative. Plaintiff further objects to this Request on the grounds that, as a result of the SIM Swaps enabled by Defendant, Plaintiff no longer has possession, custody or control of many of the documents and/or files that would be responsive to this request. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 10:**
For the period February 8, 2019 to the present, produce all Documents evidencing or referencing any actual or attempted identity theft, sale or publication (on the black market or otherwise), extortion attempts, disclosure to additional third parties, or other malicious or improper use of any of Plaintiff's or his family members' sensitive personal, business, legal, or financial information that "was compromised as a result of the SIM swaps" as alleged in Paragraphs 44 and 83-86 of the Corrected Complaint [Doc. 2].

**Response to Request No. 10:**

Plaintiff objects to Request No. 10 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to this Request on the grounds that the parties have already met and conferred regarding documents responsive to this request, Plaintiff has represented to Defendant that he has already undertaken a search for documents responsive to this request, and therefore that this Request is unreasonably cumulative and duplicative. Plaintiff further objects to this Request on the grounds that, as a result of the SIM Swaps enabled by Defendant, Plaintiff no longer has possession, custody or control of many of the documents and/or files that would be responsive to this request. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or

control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

**Request No. 11:**
For the period February 8, 2019 to the present, produce all Documents evidencing any actual or attempted efforts by You to regain access to any Accounts You allege were compromised as a result of the SIM swaps and which You did not control or have access to as of the date the Complaint was filed in this matter on October 24, 2019, including but not limited to any such Accounts with Gmail, Dropbox, Coinbase, Slushpool, Facebook, WhatsApp, or Apple iCloud.

**Response to Request No. 11:**

Plaintiff objects to Request No. 11 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to this Request on the grounds that the parties have already met and conferred regarding documents responsive to this request, Plaintiff has represented to Defendant that he has already undertaken a search for documents responsive to this request, and therefore that this Request is unreasonably cumulative and duplicative. Subject to, limited by and without waiving his Enumerated Objections, the Terms and Conditions, and his further objections, Plaintiff will produce copies of non-privileged and non-work product documents in his possession, custody, or control responsive to this Request to the extent such documents exist and can be, and have been, identified and located.

13

Dated: February 8, 2021
New York, New York

WITHERS BERGMAN LLP

By: _____
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*


TO:    Joseph S. Dowdy (N.C. State Bar No. 31941)
Phillip A. Harris, Jr. (N.C. State Bar No. 39740)
Kilpatrick Townsend & Stockton LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
jdowdy@kilpatricktownsend.com
pharris@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
mbreslin@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

14

# EXHIBIT M

| From: | Breslin, Mike |
|---|---|
| Sent: | Thursday, March 4, 2021 8:22 AM |
| To: | Gallo, Joseph |
| Cc: | Dowdy, Joe; LaVigne, Christopher; Wiley, Adam |
| Subject: | RE: Williams v AT&T meet and confer |

Joe –

Good morning.  Please let me know if and when you will be sending the correspondence to date with Gmail/Google about obtaining access to Mr. Williams' documents.  I think you'd agree this is a critical piece to understanding the salient facts in the case, and there should be transparency about the efforts and status on getting those documents.

We plan to produce additional documents next week, and will update you again once we have a timeline for completing the review of the most recent searches.

Thank you,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Wednesday, February 24, 2021 4:56 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

**CAUTION: External Email**

Mike:

In response to your February 23 email:

- Per your email, please do provide us with an estimated production date for the additional emails you mentioned when you are able to do so.  We do not agree that the search terms from your January 22 email are sufficient, reiterate our position set forth in the motion to compel, and reserve all rights to request additional searches and documents.

- Have you, Adam or anyone at Kilpatrick conducted an independent search of AT&T's records for responsive information that AT&T has not yet produced?

- As we have represented to you, our client has conducted numerous searches of the electronic accounts and devices he still has access to for responsive information.  Chris and I have reviewed the information our client has located for responsiveness and privilege, and produced the responsive information to you.  We have also reviewed and produced to you the documents and information we have received thus far in response to our third-party subpoenas.

- We have reviewed the tax returns requested in your RFP, and are seeking additional information from Mr. Williams' accountants to ensure that we produce the responsive portions of those returns.

- We received an initial production from Coinbase this week, which we have included in its entirety in the share file below. Please note that Coinbase has included different types of confidentiality designations in the file names of the documents they produced (consistent with the parties' protective order in this case), and indicated that the documents should be treated accordingly. Please note that Coinbase has told us it expects to make an additional production of responsive communications within the next few weeks.

https://withersworldwide.sharefile.com/d-sa59b908678684760a843006cb6a53ba3

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Tuesday, February 23, 2021 1:06 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

In response to your questions, we are working with our document management vendor to determine the fastest way to complete the redactions. I don't have a timetable for completing that yet but hope to know that in the next few days and will update you. We also have completed the culling of the email searches we agreed to run from the list you sent on Jan. 22, which we had to narrow and re-run based on the disproportionate results some of your searches returned (as explained in my Feb. 12 email to you). Those documents were uploaded to the document manager yesterday and they are being processed into the database. Once that is complete, we will begin reviewing those for responsiveness and privilege and will update you (hopefully in the next few days) when we have a better sense of how long that review will take.

Regarding Slush Pool, I am good with your proposal. I will send an email introducing you to Slush Pool's president, Pavel Moravec, and you can lead the conversation from there, with me and Adam Wiley cc'd on all of those emails.

Regarding information responsive to AT&T's Second Document Requests, you say that you believe responsive information may have been stored in Plaintiff's Gmail account. As of today, have you (meaning you and Chris, his counsel) conducted any independent search of any of the files or repositories that are accessible to Mr. Williams for information responsive to any of AT&T's document requests for which Mr. Williams has not produced all responsive

documents?  Also, please provide an update on the tax return materials you agreed to provide (Second RFPs No. 1) on February 8.

Relatedly, have you found any additional documents responsive to any of the following requests for which Mr. Williams indicated he could not access all responsive documents?:
SET ONE: 1; 2; 3; 4; 5; 6; 7; 8; 9; 10; 12; 13; 14; 16; 17; 18; 19; 20; 21; 22; 23; 24; 25; 26; 27; 29; 30; 31.
SET TWO: 2; 4; 5; 6 and 7

Last, regarding Coinbase and Gmail, please forward us copies of your correspondence with them about the subpoena and your efforts to restore Mr. Williams' access. As those communications bear directly on the parties' ability to obtain relevant information, we believe we are entitled to see them. If you disagree, please let us know why.

Thanks,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Tuesday, February 16, 2021 12:56 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer


Mike:

See below for responses to the issues raised in your February 12 email:

1. We did receive a batch of emails on February 12.  Please provide clarification on the following points:

   a. You mentioned producing a second batch of emails.  Please provide an estimated date for that production.

   b. Please clarify whether AT&T is still in the process of searching for, reviewing, and or will be producing additional emails beyond the two productions you mentioned.

   c. We do not object to you redacting personal information about other customers at this time, but reserve to right to raise questions or objections about any redactions once we have reviewed your production.

   d. We gather from your email that the two productions you mentioned only contain emails that were collected using the search terms in your January 26 email (with the proximity modifications discussed below).  Has AT&T (or does it to intend to) run any searches using any other terms, include any of the other terms in my January 22 email to you?

2. We do not object at this time to your proposed proximity limitations for the two terms you highlighted.  However, we reserve to right to raise questions or objections about these proximity limitations (or other search parameters) once we have reviewed your productions.

3. As we have discussed, our client has legitimate privacy concerns about sharing his confidential financial information with AT&T.  Nonetheless, we have offered to go to your contact at Slush Pool and get what information we can from it, and then produce any responsive information to AT&T.  You objected to this idea based on your baseless accusation that we would attempt to hide responsive information from you.  We will not agree to have our client incur the expense of preparing an "itemized list" of any documents we receive from Slush Pool, which is not required by the Federal Rules.

That said, in the interest of moving forward, we propose that we reach out to your contact at Slush Pool to authorize the release of Plaintiff's documents to us. We will copy you on all correspondence with Slush Pool. If and when we receive documents from Slush Pool, we will review them for potential production to you. If we intend to withhold the production of any documents or categories of documents, will describe to you any such documents or categories of documents and provide you with our reasons for not producing them. If you think any such non-production is unreasonable, we can meet and confer.

If this is acceptable to you, please provide us with contact information for your contact at Slush Pool, so that we can seek these documents from them.

4. As we have discussed with you, our client has searched for information responsive to your RFPs (including your RFPs about his damages), and produced what he has located. As we have told you (and as your email alludes to), we believe additional responsive information may have been stored in Plaintiff's Gmail account, which he has lost access to because of the SIM Swaps.

To your question about Google, we are in contact with their legal department and in the process of attempting to restore my client's access to his Gmail account. If and when that is successful, we will review that account for information responsive to your RFPs, and produce any such information (in accordance with our objections).

We have also reached out to other third-parties to attempt to collect responsive information from them. We have received from Plaintiff's accountant his tax returns for the requested years, will review them for responsive information, and produce any portions that are responsive (with appropriate redactions, if any), per your RFP. Additionally, Plaintiff has reached out to his utility provider to obtain documents regarding expenses related to his mining operation.

Lastly, though your email does not mention this, we are in contact with Coinbase regarding its objections to Plaintiff's subpoena and are scheduled to meet and confer with them this week regarding production of documents.

Please provide responses to items 1(a),(b), (d) and item 3 above. Thank you.


Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Friday, February 12, 2021 7:34 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

I'm following up on the below and also have some updates:

(1) You should have received the first batch of emails today.  This will be followed by another set that needs redactions (e.g., attachments with other customers' personal info, etc.) once we complete those.

(2) We've received hit counts for the additional terms we agreed to run.  The two highlighted terms in my 1/26 email below are generating on average 1600% more hits per custodian than similar but more narrow terms which already have a high false hit rate. We are therefore going to shorten the proximity requirement from 10 to 4 and re-run those.

(3) Please advise on where we are with the Slush Pool issue.  Is it still Plaintiff's position that AT&T should not know what documents Slush Pool is able to provide about Plaintiff's account?

(4) Regarding your responses to our 2nd RFPs, please help us understand how it is that Mr. Williams does not have, or why he has not produced, documents evidencing the basic allegations in his complaint such as the damage figures and expenses he is claiming.  For example, your responses to RFPs 2 & 3 state he has searched for but has not been able to produce things like his electricity bills, hosting contract, and any other of the $600k expenses the complaint alleges he incurred in his mining operation.  Did he keep his utility bills and hosting contracts in his Gmail account?  If so, when are you planning to serve the subpoena on Google that you told us on Dec. 18 that you would send?

Please let me know on #'s 3-4 as soon as you are able.

Thanks,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Breslin, Mike
**Sent:** Tuesday, January 26, 2021 5:39 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

You're correct. Our search terms captured all the emails you sent, except one, because it referenced an "unauthorized SIM *card* change" rather than an "unauthorized SIM change."  To address that, we will run an additional search using the "(SIM or subscriber identity module or subscriber identification module) w/10 Unauthoriz!" term you proposed.  Also, in good faith, we agree to run the following additional searches you proposed:

- (SIM or subscriber identity module or subscriber identification module) w/10 Fraud!
- (SIM or subscriber identity module or subscriber identification module) & Defiore
- Defiore & Prime
- (SIM or subscriber identity module or subscriber identification module) & Vasquez
- Vasquez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Jimenez
- Jimenez & Alorica

- (SIM or subscriber identity module or subscriber identification module) & Mostoles
- Mostoles & (TPUSA or Teleperformance)
- (SIM or subscriber identity module or subscriber identification module) & Libanan
- Libanan & (Concentrix or Convergence)
- (SIM or subscriber identity module or subscriber identification module) & Hancock

The remaining terms you sent are inappropriate for the reasons I outlined in my December 11, 2020 email, as well as other reasons we discussed, and I have not received any substantive response to the rationale we laid out in early December. We are reviewing the emails that our prior searches retrieved and hope to have those to you soon. Your demand for a February 5 production based on search terms you first proposed on January 22 is unreasonable. We will include the results from these new terms in our ongoing review and supplement our production as we are able.

As for Slush Pool, we initiated this process, sought your cooperation in subpoenaing the records, and now seek your cooperation in obtaining the records via a direct channel we have set up with the founder. I can't think of any reason you would refuse to cooperate unless AT&T turns the process over to you and relinquishes all insight into what records Slush Pool can produce, other than to prevent AT&T from knowing what potentially relevant materials it should demand. Unless you can articulate a good reason why AT&T should not be included on the communications with Slush Pool and should not know what documents Slush Pool can provide about the account, I suggest we ask the court to intervene and determine what would be fair in this process.

Let me know your preference.

Best,
-Mike

**Michael Breslin**
Kilpatrick Townsend & Stockton LLP
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Monday, January 25, 2021 12:35 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer


Mike:

Please see page 1 of the attached PDF ("PRIME000001") for the email we are referring to. We received these documents late Tuesday night. The first email, from Dan Haley to Ray Hill, would not have been captured by your proposed terms. We have not yet received any other substantive communications involving AT&T from the third parties we have subpoenaed thus far, but we will prepare a share file with the remaining productions we have received, and plan to get that to you later this week.

Please give us the contact information for Slush Pool's founder, and we will reach out to him to request Mr. Williams' information. You insinuation that we intend to withhold relevant documents from AT&T is ridiculous and unfounded. Your "compromise" is nonsensical. AT&T cannot "authorize" Slush Pool to release any of Mr. Williams records; only Mr. Williams can do that. We will review what we receive from Slush Pool and provide any responsive documents to AT&T, in accordance with our discovery responsibilities.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Friday, January 22, 2021 12:35 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

Send us the email you are referencing from your third party efforts so we can assess what you're claiming.  In the same vein, please fulfill your obligation to send us complete sets of any documents you have received from your third party discovery efforts, as I don't believe we have received any of those from you yet. We will review that and get back to you on your request.

Regarding Slush Pool, I have a dialogue with Slush Pool's founder about this and we should use that channel for this request as it will expedite the process.  Your concern about the release of "wholesale information" is unfounded, and ignores the scope of Mr. Williams' allegations and the specific information Slush Pool said it could provide that I outlined below. Mr. Williams alleges AT&T caused the entire loss of his mining operation, and his complaint puts all of his mining reward transaction history (Paras. 32-34), the records of security and account setting changes (Paras. 42, 73), and any communications he had with Slush Pool (which would be limited to discussing the incidents alleged in the complaint) directly at issue in this case.  Given that, there is no reason to object to Slush Pool releasing the specific information they identified – his mining transaction histories, account activity and security settings changes, and his communications with Slush Pool – outside of a desire to prevent AT&T from obtaining relevant information.  As a compromise, I will agree that we can jointly contact Slush Pool and authorize them to release all available information to you, as counsel for Mr. Williams, provided that we receive an itemized list of all materials Slush Pool provides that we can use to assess the sufficiency of what you ultimately produce to us.

Let me know if that is acceptable.

Thanks,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Friday, January 22, 2021 11:10 AM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer


We are responding to the two issues you raised in your January 13 email.

1)  Notwithstanding your discussions with the custodians AT&T has identified, AT&T's proposed search terms are still plainly insufficient.  In fact, our third party discovery efforts have revealed an email communication between one of your identified AT&T custodians and a third party that is plainly responsive and relevant, but would not have been captured by AT&T's narrow terms.  As we have explained to you many times, AT&T's proposed search terms are simply too restrictive to effectively capture responsive documents, and fall well short of AT&T's discovery obligations.

    This back and forth has gone on long enough.  It is nearly the end of January, and AT&T is seemingly no closer to producing responsive documents from even the four custodians that AT&T has itself identified.  In a final effort to meet and confer with you in good faith, we are proposing the below list of search terms.  This list dramatically narrows the scope of our original list.  To be clear, this list is our attempt to reach a compromise regarding initial searches for documents from the four custodians AT&T has identified to date.  If the discovery process reveals the need for additional searches and/or custodians, we reserve the right to seek any such additional discovery from AT&T.  If AT&T does not search for and produce responsive documents from the four identified custodians using the below search terms (as well as producing any other responsive documents that AT&T locates) on or before February 5, 2021, we will move to compel AT&T's discovery compliance.

    - (SIM or subscriber identity module or subscriber identification module) w/10 Swap!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Hack!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Intercept!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Hijack
    - (SIM or subscriber identity module or subscriber identification module) w/10 Chang!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Fraud!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Defraud!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Impersonat!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Scam!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Verif!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Imposter
    - (SIM or subscriber identity module or subscriber identification module) w/10 Pretend!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Fake!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Faking
    - (SIM or subscriber identity module or subscriber identification module) w/10 Compromise!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Pose!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Posing
    - (SIM or/and subscriber identity module or subscriber identification module) w/10 Compromise!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Breach!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Unauthoriz!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Authoriz!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Polic!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Train!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Investigat!
    - (SIM or subscriber identity module or subscriber identification module) w/10 Compliance
    - (SIM or subscriber identity module or subscriber identification module) w/10 Risk

- (SIM or subscriber identity module or subscriber identification module) w/10 Secur!
- (SIM or subscriber identity module or subscriber identification module) w/10 Access!
- (SIM or subscriber identity module or subscriber identification module) w/10 (CPNI or Customer Proprietary Network Information)
- (SIM or subscriber identity module or subscriber identification module) w/10 (Consent Decree)
- (SIM or subscriber identity module or subscriber identification module) w/10 (Ident! w/3 (Theft or False))
- (SIM or subscriber identity module or subscriber identification module) w/10 (ID w/3 (Theft or False))
- (SIM or subscriber identity module or subscriber identification module) w/10 Privacy
- (SIM or subscriber identity module or subscriber identification module) w/10 (Information w/3 (Confi! or Private or Personal or Sensitive))
- (SIM or subscriber identity module or subscriber identification module) w/10 (Data w/3 (Confi! or Private or Personal or Sensitive))
- (SIM or subscriber identity module or subscriber identification module) w/10 (Customer w/3 (Confi! or Private or Personal or Sensitive))
- (SIM or subscriber identity module or subscriber identification module) & Prime
- (SIM or subscriber identity module or subscriber identification module) & Alorica
- (SIM or subscriber identity module or subscriber identification module) & (Concentrix or Convergence)
- (SIM or subscriber identity module or subscriber identification module) & (TPUSA or Teleperformance)
- (SIM or subscriber identity module or subscriber identification module) & Defiore
- Defiore & Prime
- (SIM or subscriber identity module or subscriber identification module) & Vasquez
- Vasquez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Jimenez
- Jimenez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Mostoles
- Mostoles & (TPUSA or Teleperformance)
- (SIM or subscriber identity module or subscriber identification module) & Libanan
- Libanan & (Concentrix or Convergence)
- (SIM or subscriber identity module or subscriber identification module) & Hancock
- ("Jason Williams" or "534115196684" or "919-889-7464")
- (SIM or subscriber identity module or subscriber identification module) & Williams

2) As we mentioned before, Mr. Williams has justified concerns about AT&T obtaining wholesale information regarding his private financial accounts, and will not give his permission for Slush Pool to release such information to AT&T.  If Slush Pool is willing to release information to AT&T with Mr. Williams' permission, it is simpler and more secure for us to make a request for that information to Slush Pool directly, and then produce any responsive documents to you.  We intend to make such a request to Slush Pool shortly.


Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505


Beyond Brexit
Challenges and opportunities
Read more

**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Wednesday, January 13, 2021 5:24 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

I'm providing an update as discussed on our call last week.

(1) We've surveyed the AT&T custodians and they confirmed that, when discussing SIM swaps, they use the terms "SIM swap" or "SIM hijack," and that searching for the terms you proposed in Tranche 1 will not return pertinent results beyond what we've already culled.

(2) We've spoken with Slush Pool and, given their operations are in the Czech Republic, a subpoena from our court does not seem viable. They have, however, agreed to release to us the following information (to the extent they can find it) if Mr. Williams will provide them his permission:  transaction histories, account activity histories (including login IP addresses, and changes to account and security settings), and communications with Mr. Williams. This is relevant information that was requested in our discovery, and that Mr. Williams claims he is unable to access on his own.  Please let us know if he will authorize Slush Pool to release the information and, if so, we can discuss the procedure for getting it.

Thanks,
-Mike

**Michael Breslin**
Kilpatrick Townsend & Stockton LLP
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Monday, January 4, 2021 1:02 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Mike:

As we have stated, we disagree with AT&T's approach regarding the search terms.  At this point, we think a call to discuss the search terms would be useful.  What is your availability on Wednesday, Thursday, or Friday of this week?  Please let us know, thanks.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely, whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Wednesday, December 30, 2020 3:20 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

Thanks for sending these responses and the updates.  On your proposed search terms, we won't agree to run searches that we believe are aimed at categories of irrelevant materials and, even as to those categories, still appear too broad. I am not foreclosing further discussion on this, but we took the time to lay out our rationale as to the irrelevance of those tranches of terms, and it would be helpful to a continuation of our good faith efforts here to get some sort of substantive response to the specific issues we set out. A statement that you believe the terms are proper and will retrieve relevant materials doesn't give us any factual basis to reconsider our position.

On the subpoenas, we are happy for you to take the lead on Gmail / Google Drive, so as to avoid any issues with the Stored Communications Act – thank you for offering to do that. I'm not sure I understand what materials will be returned by a subpoena requesting "full access" to those accounts, but we have no objection to how you choose to word it so long as (a) whatever you request encompasses the document requests we previously circulated, and (b) we receive a log (date, sender, recipient, subject line) of the records responsive to our request so we can assess the sufficiency of the ultimate production. In all events, we would like to see a draft of the subpoena before it goes out.

As to the other subpoenas we proposed (Slush Pool, Coinbase, etc.), we will issue those.  Having taken a closer look at the SCA, we don't believe the docs we're going to request will trigger any of the SCA's prohibitions.  This obviously wouldn't foreclose Mr. Williams issuing his own subpoenas to those entities if he likes, but if there are additional materials he wants beyond the document requests we previously circulated, let us know since it would probably make sense to coordinate a single subpoena to each entity.

11

A few follow up items on the updates you sent below:

- The account notes we produced indicate JASONWILLIAMS@YAHOO.COM was used as the registered email address for Mr. Williams' AT&T account right around or after the time he alleges the SIM swaps happened. Am I understanding you correctly that Mr. Williams says he has never used that address (and therefore didn't register it on his AT&T account)?

- The account notes also indicate J.WILLIAMS@FASTMED.COM was associated with Mr. Williams' AT&T account during the time of the SIM changes he alleges and that he received relevant communications to that address from AT&T relating to the changes on his account during Nov. 2018-Feb. 2019. Have you searched that email for communications responsive to our document requests?

- Any updates on Mr. Williams' review of the PRTITECH.COM and MORGANCREEKCAP.COM email accounts?

Thanks and Happy New Year to you and Chris.
-Mike

**Michael Breslin**
Kilpatrick Townsend & Stockton LLP
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Friday, December 18, 2020 9:25 AM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


Mike:

We are responding to your December 11 email regarding discovery issues.

AT&T's Discovery Responses

- We appreciate your efforts to meet and confer regarding search terms, and we have reviewed your proposed "tranches" of search terms, but your proposed approach is insufficient. As you know, we believe our list is entirely proper and will capture relevant documents and communications for the four custodians you have identified. That said, and as we have stated previously, while we are amenable in theory to amending or removing certain terms in our proposed list, it does not make sense to do so until we know if any of those terms are potentially unduly burdensome.

  Why can AT&T not simply run our proposed search terms using the date range in Plaintiff's requests for each of the four custodians you have identified, and then use those results metrics as the basis for a discussion (as we proposed in our November 17 email)? You identified the four initial custodians on October 21. Surely you (or AT&T) have segregated the four custodians' documents for the requested date ranges by now. We sent our list of terms to you on November 11. It would take only a couple of hours, at most, to run our search terms and record the results. If you think reviewing and producing documents in response to any of our search terms will create an undue burden on AT&T, this is how we can meaningfully discuss that issue.

  To that point, AT&T's delays in producing responsive documents and communications are getting increasingly unreasonable. You received Plaintiff's first document requests and interrogatories on June 5, but based upon your meet and confer communications, it appears that you and AT&T have still not even begun reviewing any AT&T emails that are potentially responsive to this request. The fact that AT&T has not yet produced results metrics for even the handful of (overly narrow) search terms that AT&T itself proposed is only AT&T's latest

discovery delay, and does not bode well for AT&T's ability to timely review and produce AT&T's responsive documents and communications. Even with the extended discovery schedule, we will need sufficient time to review the documents that AT&T produces ahead of depositions and expert discovery. The parties agreed to an extension of the discovery deadlines in this case based on mutual representations that the parties would continue to work in good faith to search for and produce responsive documents. If AT&T cannot demonstrate at least some good faith by providing us with results metrics for our full list of search terms by January 8, 2021, we will be forced to seek appropriate relief from the Court.

- Regarding the subpoenas, thank you for providing the scope of AT&T's proposed requests to each subpoena recipient. However, there is no need for you to issue these subpoenas or for our client to consent to them. Given the breadth of AT&T's requests, and because these documents are our client's documents that we, too, wish to review to the extent they are available and accessible, we will issue subpoenas to Google, Slush Pool, Coinbase & Dropbox. We will then review and produce documents to you in response to AT&T's discovery requests (subject to Plaintiff's objections and any future meet and confer efforts). Plaintiff's subpoenas will request full access to the information in those accounts, so they will necessarily encompass the entire scope of AT&T's proposed subpoena requests. This approach eliminates the need for AT&T to obtain Plaintiff's consent and thereby simplifies the process for getting this information, and would also address Plaintiff's understandable privacy concerns regarding authorizing AT&T to have such broad access to his personal and financial accounts (including his personal email).

<u>Mr. Williams's Discovery Responses</u>

We have some updates regarding the topics you raised in your email:

- Mr. Williams is currently unable to download or otherwise access any iCloud or other cloud storage containing relevant emails, text, other messages or information.

- The screenshots of partial conversations that you refer to are screenshots of mobile devices that are no longer operable. Mr. Williams is currently unable to access the information in those devices.

- Please see attached for a version of the previously produced document JW_0007 with wallet address / transaction hash information unredacted. The document has an alternative Bates number that corresponds to the originally produced document. The other redactions in the production contain confidential personal information unrelated to the claims and defenses in this lawsuit.

- To his knowledge, Mr. Williams has never had a Yahoo email account. Mr. Williams has used a fastmed.com email account for limited professional purposes in the past, but has not done so recently, and that account does not contain responsive documents. Mr. Williams has been searching his prtitech.com email for responsive documents, and has already produced documents from that account. Mr. Williams has also identified a morgancreekcap.com email account that he may have used during the responsive time period, and is in the process of searching that account for responsive documents.

- Beyond what he has produced to date, Mr. Williams has not located any additional responsive, non-privileged documents regarding his mining losses.

- Beyond what he has produced to date, Mr. Williams has not located any copies of statements made to third parties regarding the SIM swap incidents (including statements related to the podcast and interview you refer to in your email).

We do not believe it is necessary to have a call at this point to discuss any of the above issues, but we are certainly willing to reconsider having a call based on your response to the issues raised in this email. In any event, please respond to our request above regarding AT&T's discovery responses. Thank you.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856

withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Friday, December 11, 2020 2:39 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** Re: Williams v AT&T meet and confer

Joe –

Thanks for your patience on this.  I am responding to a few of the outstanding items and looking for your feedback so we can reach agreement on these or set up a call to have further discussions.

1) Regarding the search terms you proposed, we continue to believe they are too broad and exceed the scope of the incidents and issues in this case.  See our attached comments to your list and let us know your thoughts and whether we should set up a call to talk through them (or feel free to send responses to our comments if that would help frame our discussion). On a related note, we are hopeful that we will soon have the results metrics on the terms we proposed, which were designed to capture emails and documents that concern either unauthorized SIM changes (in any context) or Mr. Williams or his AT&T account. Our intent has been to discuss those with you and talk through any modifications that you believe are necessary (including with reference to the terms you proposed) to capture any additional categories of relevant documents that we have not already produced or would not be returned by our search terms. We will let you know when we have that information.

2) Your concerns regarding Mr. Williams consenting to the third party subpoenas we are proposing, without first knowing what documents we would request, are fair. We've prepared the attached summary of the four subpoenas we are envisioning (based on our understanding that these represent the four accounts Mr. Williams says he still cannot access – Gmail/Google, Slush Pool, Coinbase & Dropbox – if that is wrong, let us know). Let us know if Mr. Williams will consent to the production of these documents.  If you have concerns about any of the requests, please provide comments or proposed redlines so we can work through those.

3) Please let us know if you have an update on Mr. Williams' efforts to supplement his document production.  On our last call, we noted the following issues that you were going to look into:

     - Whether he can download an iCloud backup of his prior phone memory to obtain relevant emails / texts / chat messages, including iMessage, WhatsApp, Facebook messenger, etc.

- Whether he can produce complete email / text threads of relevant conversations where we received only a screenshot of a portion of the conversation.

- Whether Mr. Williams would produce the wallet addresses / transaction hash information it appears he redacted from his document production. *See*, for example, JW_0007.

- Searching the other email addresses our records show he used during the relevant period - - [j.williams@fastmed.com](mailto:j.williams@fastmed.com), [jasonwilliams@yahoo.com](mailto:jasonwilliams@yahoo.com), and [jwilliams@prtitech.com](mailto:jwilliams@prtitech.com) -- for additional responsive documents (*i.e.*, communications with law enforcement, or concerning the hacks of his third party accounts, *e.g.*, Gmail, Dropbox, Instagram, Twitter, LinkedIn, etc.).

- Whether Mr. Williams has additional documents substantiating his claimed mining losses, such as records of the $650,000 of expenses he claims he incurred, or documents showing why he couldn't continue mining after the February 2019 incidents, the market value of his rigs when he shut down the operation, etc.

- Whether Mr. Williams has copies of his statements to third parties regarding the SIM swap incidents (on our call we referenced a podcast and a separate interview we found that he's done about them).

4) Last, one item that we need and we think Mr. Williams should be able to produce fairly easily is the payout wallet address(es) he used for his Slush Pool operation. Those addresses would be included in the materials we requested in RFP 17. Can you please check if he has those addresses and will provide them?

Thanks,
-Mike



**KILPATRICK TOWNSEND**
ATTORNEYS AT LAW

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA 30309-4528
office 404 685 6752 | fax 404 541 4749
[mbreslin@kilpatricktownsend.com](mailto:mbreslin@kilpatricktownsend.com) | My Profile | VCard
**Click Here to Access Our COVID-19 Resources**

---

**From:** Breslin, Mike
**Sent:** Wednesday, December 9, 2020 8:42:55 PM
**To:** Gallo, Joseph; Wiley, Adam
**Cc:** Dowdy, Joe; LaVigne, Christopher
**Subject:** Re: Williams v AT&T meet and confer

Joe -

Sorry for the delay in responding. We've had a network outage at the firm and are just now getting emails from earlier this week. We will respond to your email shortly.

Thanks,
-Mike



**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard
**Click Here to Access Our COVID-19 Resources**

---

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Tuesday, December 8, 2020 10:29:48 AM
**To:** Wiley, Adam; Breslin, Mike
**Cc:** Dowdy, Joe; LaVigne, Christopher
**Subject:** RE: Williams v AT&T meet and confer


Adam, I am following up on my query regarding search terms.  Please respond, thanks.

Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely, whether through our offices or remotely. For more information on how we can help, please click on the banner below.



---

**From:** Gallo, Joseph
**Sent:** Tuesday, November 24, 2020 6:52 PM
**To:** 'Wiley, Adam' <AWiley@kilpatricktownsend.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <christopher.lavigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


Adam:

Thank you for drafting the motion papers.  Please see attached for a version of the joint motion with a revised signature block for Plaintiff.  Other than the signature block, we have no revisions to the papers, so please go ahead and file them.

Regarding AT&T's proposed subpoenas, we understand your request, but Mr. Williams cannot provide his consent to hypothetical subpoenas at this time. We do not know what information AT&T intends to request from the contemplated service providers, or how those service providers will respond to any such requests. Without more information, Mr. Williams cannot provide his blanket, preemptive consent. We are, however, willing to discuss this issue with you further.

Regarding the scope of AT&T's searches, we appreciate Mike's expression of your and AT&T's intent to cooperate on discovery issues. However, neither you nor Mike responded to the inquiries in my November 17, 2020 email regarding AT&T's search terms. When will you provide us with the requested hit counts for our proposed search terms, so that we can continue to meaningfully meet and confer regarding those terms? Again, while we are happy to join you in making this motion for an extension of the discovery schedule, we think it is better to know now if we are at an impasse regarding AT&T's discovery obligations, so we can seek Court assistance sooner rather than later. Please let us know, thanks.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely, whether through our offices or remotely. For more information on how we can help, please click on the banner below.



---

**From:** Wiley, Adam [mailto:AWiley@kilpatricktownsend.com]
**Sent:** Monday, November 23, 2020 12:37 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>; Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe,

We prepared the attached joint motion and proposed order requesting the scheduling order modifications we discussed. Let us know if you have any revisions in redline.

Also following up on Mike's request below for confirmation that Mr. Williams will cooperate with the anticipated third party subpoenas to avoid any SCA related issues.

Thanks,

**Adam Wiley**
Kilpatrick Townsend & Stockton LLP
1801 Century Park East | Suite 2300 | Los Angeles, CA 90067

**From:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Sent:** Tuesday, November 17, 2020 12:08 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe,

Thank you for the response. We are happy to hear you are amenable to the schedule extension we proposed, and we will get started on a joint motion for you to review.  With respect to the remainder of the email, we note two items.

First, as you likely anticipated, we disagree with your characterizations, including your contention that AT&T is permitting discovery on only some of Mr. Williams' claims. Though we view Plaintiff's requests as exceeding what the Federal Rules authorize, we will continue in a good faith effort to reach agreement with you on a reasonable scope that comports with Rule 26. We look forward to continuing our cooperation with you to work through the issues on both sides.

Second, regarding third party subpoenas to service providers such as Gmail where Mr. Williams maintains an account containing relevant materials, certain laws, including the Stored Communications Act, would render the subpoenas ineffective absent Mr. Williams' consent to the production of responsive materials. Because Mr. Williams claims he is unable to access those relevant materials on his own, we are requesting his cooperation in obtaining them through a subpoena, including by providing written consent if necessary to the service providers to comply with the subpoenas.  Please let us know if Mr. Williams will cooperate in that regard.

Best,
-Mike


**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard
**Click Here to Access Our COVID-19 Resources**

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Tuesday, November 17, 2020 1:00 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher
<Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer



Adam:

I am responding to your November 12, 2020 email regarding the discovery status in this case.  We agree that a joint motion to the Court seeking a continuance of the scheduling order is in the parties' interest at this time.  Unfortunately, it appears that is about the extent of our agreement.  The rest of your email is disingenuous and counterproductive, and purports to "avoid any further finger pointing" while making a number of erroneous claims and accusations about

discovery in this case. We are consequently compelled to correct the record regarding the numerous mischaracterizations in your email.

We acknowledge that you disagree with our position that AT&T's improper delay in providing discovery responses is the reason the parties are in the positon of having to ask the Court for the proposed extension. Your incomplete description of the parties' meet and confer efforts aside, we think the fact that AT&T has not searched for, let alone produced, any emails or non-account note communications in response to Mr. Williams' discovery requests speaks for itself.

AT&T's discovery recalcitrance seems to be based on its continued insistence that its discovery obligations are somehow limited to only certain of Mr. Williams' claims. As Mr. Williams clearly alleged in the complaint and as we have repeatedly explained to you during our meet and confer efforts, Mr. Williams' claims concern, in part, AT&T's negligence in failing to adequately protect its customers' private information from SIM swaps. Accordingly, discovery in this case must necessarily encompass AT&T's policies, procedures, training documents, and communications regarding AT&T's SIM swap prevention and response efforts, including but not limited to those SIM swaps that Mr. Williams was subjected to. Mr. Williams' discovery requests, which were served on AT&T five months ago, plainly and clearly request documents and information regarding SIM swapping beyond the specific SIM swaps that affected Mr. Williams. AT&T tried to limit Mr. Williams' claims regarding AT&T's failure to protect its customers from SIM swaps at the motion to dismiss stage, and the Court comprehensively rejected that attempt. AT&T's attempt to re-litigate its failed motion to dismiss arguments by unilaterally imposing arbitrary and unreasonable limits on Mr. Williams' discovery requests is an abuse of the discovery process.

In keeping with AT&T's continued efforts to avoid its discovery obligations in this lawsuit, your position regarding Mr. Williams' proposed search terms is nonsensical. AT&T, not Mr. Williams, asked that Mr. Williams propose search terms for four (4) custodians that AT&T, not Mr. Williams, identified. We agree to provide AT&T with proposed terms in an effort to facilitate the discovery process. In the parties' meet and confer conversations and in AT&T's supplemental initial disclosures identifying those custodians, you and AT&T explicitly represented that those four custodians had knowledge of topics that did not include information regarding Mr. Williams specifically, and that AT&T does not have any non-privileged documents regarding Mr. Williams other than what you have already produced to us. Accordingly, in our November 11, 2020 email to you, we explicitly stated:

Our understanding, based on your representations, is that the custodians you have identified thus far do not have any documents in their possession related to Mr. Williams's account specifically. Accordingly, the search terms below are focused on SIM swapping issues more generally. If you determine that the custodians you have identified thus far, or other custodians you identify in the future, do have documents related to Mr. Williams account specifically, please let us know promptly, we can discuss additional terms accordingly.

In light of this context, for you to now claim that the lack of Mr. Williams' name in our list of proposed search terms is indicative of an "improper fishing expedition" is bizarre, and smacks of bad faith. Again, AT&T is required to provide discovery regarding all of Mr. Williams' claims, not just the ones it wants to.

If you identify proposed edits to our list of search terms, we are willing to discuss those edits with you. Indeed, facilitating such a discussion was the entire point of sending you the list of terms; during the parties' November 4 meet and confer discussion, you stated specifically that you were requesting proposed search terms because it is your and your client's position that the parties should agree on those search terms before AT&T began searching for responsive communications. However, instead of engaging in a good faith discussion regarding our search terms, you have simply asserted that AT&T will begin searching for documents using an unreasonable narrow set of terms that will likely omit large amounts of relevant and responsive documents. While we welcome the fact that AT&T is finally searching for responsive communications and other documents in the possession of AT&T custodians, and we acknowledge that AT&T is certainly free to conduct any searches it would like in addition to the search terms we have thus far proposed (and AT&T should do so if it believes those additional searches will help it locate responsive documents that might otherwise be missed), we do not agree that the terms in your November 20 email are "broad enough to capture the documents" Mr. Williams has requested in connection with his claims against AT&T. To the contrary, your limited list of search terms makes clear that AT&T is still not taking its discovery obligations in this lawsuit seriously, and is continuing its attempts to pick and choose which of Mr. Williams' allegations are acceptable topics for discovery, which is of course improper.

Additionally, it is unclear to us why it would take AT&T nearly two weeks to run a handful of search terms for four custodians, as you state in your email. To your point about the potential for mishits and irrelevant documents if AT&T used our proposed search terms, it would incredibly helpful for the discovery process if you could tell us which of our specific proposed search terms are producing large numbers of hits for each custodian, and then we could discuss whether limiting or modifying those terms makes sense to streamline discovery and weed out irrelevant documents. However, if AT&T is unable to run such a small number of terms on a limited set of custodians in a timely

manner, it will be impossible for the parties to efficiently meet and confer regarding search terms. Therefore, in order to make meaningful progress towards a workable list that encompasses all of Mr. Williams' claims and discovery requests, AT&T should run our full list of proposed search terms immediately, and then we can discuss the results.

Regarding the claims in your November 20 email concerning Mr. Williams' discovery responses: Mr. Williams has met and will continue to meet his discovery obligations in this case, and we do not agree that any deficiencies that you allege exist in Mr. Williams' responses to date would require any continuance or extension to remedy. Your email attempts to create a false equivalency between AT&T's and Mr. Williams' discovery conduct that does not exist. AT&T's discovery obligations exist separate and apart from Mr. Williams' obligations, and AT&T must meet those obligations regardless of its claims about Mr. Williams' responses.

The purported issues regarding Mr. Williams' discovery responses you raise in your email are either not legitimate issues, or in the process of being resolved. For example, you raise the issue of Mr. Williams searching for and producing documents in response to your request (as opposed to us doing it for him), as if that were somehow improper. It is, of course, entirely proper for an individual plaintiff to search his own records for responsive documents. As we told you in our November 4 meet and confer phone conference, we have worked with our client to respond to AT&T's discovery requests in good faith, and will continue to do so in our ongoing search for additional responsive information. We also note that throughout our meet and confer discussions, you have repeatedly represented that you have been relying on your client to identify responsive documents, information, and custodians. "Goose and gander" idioms aside, there is nothing unreasonable about Mr. Williams' discovery efforts and responses to date. Mr. Williams, as an individual, will necessarily have fewer relevant documents than AT&T (particularly when he has suffered multiple SIM hacks and when we have provided evidence that certain of his accounts are inaccessible), and any of the alleged deficiencies you have raised regarding his responses can be resolved within the current discovery schedule.

Regarding Mr. Williams' response to AT&T's Interrogatory No. 11, you are correct that the parties dispute the sufficiency of Mr. Williams' responses to date. As we stated in the November 4 meet and confer phone conference, Mr. Williams has not learned any information since filing his amended complaint that would materially change his fraud allegations and, as a result, any response to this interrogatory would necessarily simply repeat those fraud allegations. We also stated that we remain unconvinced that there is any legal authority that requires Mr. Williams to duplicate his fraud allegations in a discovery response, when those fraud allegations are already clearly and sufficiently pleaded in the complaint. In that same conference, you stated that Mr. Williams re-stating his fraud allegations in response to this interrogatory might address your current issues with his response. We said that we would consider that option, and we are still doing so in consultation with our client. If you wish to make a motion to compel while we are considering supplementing our response, you are of course free to do so. In any event, this is not an issue that would require an extension of time for the parties to resolve.

Your proposal to "take a limited deposition of Mr. Williams regarding his efforts to identify responsive materials since you have relied on him to self-produce documents" is ridiculous. As we have stated, we are continuing to work with Mr. Williams to identify any responsive documents that may still be in his possession. Any questions you have for Mr. Williams regarding the documents he has produced (or hypothetical documents that he has not) can be addressed at his full deposition. What is more, as discussed above, you have told us that you are also relying on your client to identify and collect information responsive to Mr. Williams' requests. So, by your logic, we should be deposing all AT&T employees who provided, or that you have spoken with about providing, you with responsive documents, provided you with potential custodians, and are conducting the proposed searches of those custodians. If you insist on seeking a limited deposition of Mr. Williams on the basis that he is responsible for providing documents to us in response to AT&T's discovery requests, we will seek an appropriate protective order.

Regarding your proposed third-party subpoenas: AT&T may, of course, send subpoenas to whomever it likes, and does not require Mr. Williams' consent to do so.

Having addressed the claims in your November 12 email for the record, as we mentioned above, we will agree to a joint motion for a continuance of the scheduling order in this lawsuit. We do not want, nor do we believe it is necessary, to delay the Court's suggested trial date of October 18, 2021. Because your proposed extended schedule does not necessitate a change to the suggested trial date, we are fine with that proposed schedule. Please prepare and circulate a joint motion along the lines you propose, and we will review it.

However, before we agree to submit any joint motion seeking a continuance of the scheduling order, we believe it is crucial that the parties reach an understanding regarding the scope of AT&T's search for documents responsive to Mr. Williams' SIM swapping discovery requests. If the parties are not able to reach an understanding regarding AT&T's discovery obligations on this point, we should seek Court assistance promptly, as opposed to waiting for five more months when we have another time crunch. Accordingly, concurrent with your preparation of the joint motion, please confer with

your client and advise us when you are able to have a meet and confer call this week to discuss AT&T's proposed searches for responsive documents.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely, whether through our offices or remotely. For more information on how we can help, please click on the banner below.



---

**From:** Wiley, Adam [mailto:AWiley@kilpatricktownsend.com]
**Sent:** Thursday, November 12, 2020 4:11 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe,

I am responding to your November 11, 2020 email below regarding proposed AT&T custodian search terms, as well as the attached November 6, 2020 email where you provided clarifying points to our meet and confer conference summary and proposed new expert discovery deadlines.

First, we object to your general characterization that AT&T is unfairly delaying the discovery process. Mr. Williams has produced a total of 65 pages of documents thus far in the case and you revealed that you have been relying on Mr. Williams to gather and self-produce documents of his choosing rather than having him turn over his files to you for review and production. We also did not resolve our dispute over the selection of AT&T PMKs until our October 5 meet and confer call, before which you had requested the names of every person over the past 13 years who has had any responsibility or direct responsibility for protecting customer data and privacy. Similarly, as you noted in your meet and confer clarification email, we are still in the middle of a dispute over AT&T's Interrogatory No. 11, and while not clearly stated, it appears that you are refusing to supplement Plaintiff's response to this interrogatory on the basis that AT&T must produce documents before Mr. Williams can determine what alleged misrepresentations were made to him by AT&T. "Cart before the horse" idioms aside, it's worth noting that there are outstanding discovery issues on both sides of this dispute that have led to where we are now.

Accordingly, we believe it would be prudent for both sides to recognize that the delay in this case is not one-sided, avoid any further finger pointing, and move forward with a joint motion requesting a continuance of the scheduling order. While we appreciate your effort to propose revised expert discovery deadlines that could fit within the current

scheduling order's dates, we expect that this process will take longer than the current scheduling order will allow, which necessitates its revision. We propose asking the court to push all dates back by four months as outlined at the bottom of this email.

Second, your proposed search terms are broader than necessary to produce responsive documents to your client's discovery requests and would return such a voluminous set of documents that your proposed deadline of November 24, 2020 would be impossible to meet. The search terms you have proposed are not tailored to the issues in the case and are so broad that they would return hundreds of thousands (if not millions) of documents, more than 99% of which would have no relevance to any issue in the case. For example, the term "SIM" alone would pull a massive amount of irrelevant documents given that AT&T is in the business of operating a global cell phone network that is reliant on the use of SIM cards. We also note that your proposed search terms don't even include the name "Williams," which signals these terms are geared more towards an improper fishing expedition than identification of records actually relevant to our clients' dispute.

We have already begun the process of testing search terms on the previously identified AT&T custodians using a set of search terms that we believe are fairly tailored to the issues yet broad enough to capture the documents we believe you are seeking. The proposed search terms we sent to AT&T are as follows: ("SIM SWAP*" or "SIM HIJACK*" or ("SIM CHANGE*" w/2 (UNAUTHORIZ* or FRAUD*))) OR ("Jason Williams" or "534115196684" or "919-889-7464"). However, even using these more targeted search terms, our client informed us yesterday that it will be at least two weeks (Nov. 25, the day before Thanksgiving) before we get the result metrics, after which we will need to review those metrics to determine whether the search terms should be modified further and, in all events, once we agree on appropriate search terms, we must review the returned documents for responsiveness/privilege. Given this timeline, we will not be able to produce additional AT&T custodian documents by your proposed response deadline under any circumstance, which is another reason we believe the parties should seek an extension of the scheduling order.

Finally, in the interest of moving forward discovery on our end, we would like to: (a) take a limited deposition of Mr. Williams regarding his efforts to identify responsive materials since you have relied on him to self-produce documents; and (b) obtain Mr. Williams' consent to subpoenas to third parties such as Gmail, Slushpool, and Coinbase, where Mr. Williams maintains accounts containing key relevant materials but, as you have informed us, Mr. Williams claims he is unable to access. Please let us know if you will agree to these.

Here are our proposed revisions to the scheduling order:

**Current Scheduling Order/Stipulated Dates**

- Nov. 15, 2020 – P's expert disclosures (as agreed by parties)
- Nov. 30, 2020 – P's deadline to amend pleadings or join add'l parties
- Dec. 15, 2020 – D's expert disclosures (as agreed by parties)
- Dec. 30, 2020 – D's deadline to amend pleadings or join add'l parties
- Jan. 15, 2020 – rebuttal expert disclosures (as agreed by parties)
- Feb. 19, 2021 –
- all discovery completed (must serve in time to be completed by this date)
- deadline to mediate before Rene Stemple Trehy (Beason & Trehy Conflict Resolution)
- Apr. 16, 2021 – dispositive motions due
- Trial date – not set yet, but could be set as early as May 16, 2021

**Proposed changes to Scheduling Order**

- Mar. 15, 2021 – P's deadline to amend pleadings or join add'l parties
- Mar. 30, 2021 – P's expert disclosures
- Apr. 15, 2021 – D's deadline to amend pleadings or join add'l parties
- Apr. 30, 2021 – D's expert disclosures

- May 17, 2021 – rebuttal expert disclosures
- Jun. 18, 2021 –
o all discovery completed (must serve in time to be completed by this date)
o deadline to mediate before Rene Stemple Trehy (Beason & Trehy Conflict Resolution)
- Aug. 16, 2021 – dispositive motions due
- Trial date – not set yet, but could be set as early as September 16, 2021

This extension would allow us sufficient time to work through our numerous discovery issues, avoid a multitude of key deadline during the holidays, and is long enough that we should not need to seek a further extension from the Court. Let us know your thoughts on the above and, if you are agreeable, we are happy to get started on a draft joint motion for you to review.

Thank you,

**Adam Wiley**
Kilpatrick Townsend & Stockton LLP
1801 Century Park East | Suite 2300 | Los Angeles, CA 90067
office 310 777 3733 | fax 310 388 5804
awiley@kilpatricktownsend.com | My Profile | vCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Wednesday, November 11, 2020 7:07 AM
**To:** Wiley, Adam <AWiley@kilpatricktownsend.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


Adam:

Per our meet and confer discussions, please see below for a list of search terms for AT&T's custodians. As we have stated in our meet and confer discussions, our position is that Mr. Williams' discovery requests to AT&T, as originally propounded five months ago, are sufficiently clear to allow AT&T to search for and produce responsive documents. We also reiterate our opposition to your request for these terms more than halfway through the discovery period despite your pervious representations that your client has been searching for and collecting documents responsive to our discovery requests. Furthermore, it borders on absurd that it took your client five months to come up with the names of the four custodians that we are now providing search terms for. Accordingly, these search terms are not offered to limit or waive Mr. Williams' discovery requests in any way, but are instead offered to facilitate the discovery process. We reserve the right to supplement this list as the discovery process continues.

Our understanding, based on your representations, is that the custodians you have identified thus far do not have any documents in their possession related to Mr. Williams's account specifically. Accordingly, the search terms below are focused on SIM swapping issues more generally. If you determine that the custodians you have identified thus far, or other custodians you identify in the future, do have documents related to Mr. Williams account specifically, please let us know promptly, we can discuss additional terms accordingly.

Please contact us with any questions. Please also produce documents from the custodians you have identified thus far no later than Tuesday, November 24, 2020. As discussed, any further delays in AT&T production of responsive documents would be unreasonable, and would make the Court's discovery schedule untenable.


Search terms:

- SIM
- Subscriber identity module
- Subscriber identification module
- Hack!

- Swap!
- Intercept!
- Compromise!
- Scam!
- Verif!
- Impersonat!
- Imposter
- Pretend!
- Fake!
- Faking
- Pose!
- Posing
- Breach!
- Defraud!
- Authoriz!
- Unauthoriz!
- Customer w/10 secur!
- Customer w/10 fraud!
- Customer w/10 access!
- Customer w/10 id
- Customer w/10 ident!
- Customer w/10 priv!
- Account w/10 secur!
- Account w/10 fraud!
- Account w/10 access!
- Account w/10 id
- Account w/10 ident!
- Account w/10 priv!
- Data w/10 secur!
- Data w/10 fraud!
- Data w/10 access!
- Data w/10 id
- Data w/10 ident!
- Data w/10 priv!
- Information w/10 secur!
- Information w/10 fraud!
- Information w/10 access!
- Information w/10 id
- Information w/10 ident!
- Information w/10 priv!
- Information w/10 personal
- Prime
- Alorica
- TPUSA
- Teleperformance
- Concentrix
- Convergys
- CPNI
- Customer Proprietary Network Information
- Consent w/10 decree
- Consent w/10 order
- Comply w/10 decree
- Comply w/10 order
- Compliance w/10 decree
- Compliance w/10 order
- Compliance w/10 report
- Compliance w/10 office!

- Compliance w/10 plan!
- FCC
- Federal Communications Commission
- Information Security Program
- Risk Assessment

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon   t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely, whether through our offices or remotely. For more information on how we can help, please click on the banner below.



---

**From:** Gallo, Joseph
**Sent:** Friday, November 6, 2020 2:28 PM
**To:** 'Wiley, Adam' <AWiley@kilpatricktownsend.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <christopher.lavigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Adam:

Thank you for your email.  We have a few points of clarification:

- Regarding AT&T's Interrogatory No. 11, we would add that even if there was a legal basis for AT&T to request supplemental responses along the lines set forth in your recent letter, we maintain that Mr. Williams doing so at this time would be premature in light of the discovery that AT&T has yet to produce, and that his providing responses now would result in unnecessary costs and duplication of effort.  In addition, to the extent you took the position yesterday that Mr. Williams' response to Interrogatory No. 11 has somehow resulted in a delay in AT&T's production of communications and other outstanding internal documents in response to Mr. Williams' discovery requests, we believe that this position is meritless for obvious reasons (as we stated on our call).

- Regarding AT&T's review and production of potentially responsive of communications and other outstanding internal documents, we would add that although we intend to provide you with proposed search terms in order to avoid further discovery delays, we maintain that in light of the allegations in the complaint and Mr. Williams' original discovery requests, there is no justifiable reason why we have not received any responsive communications to date (outside of Mr. Williams' account notes).  We understand that you disagree with that position.

Regarding, expert discovery deadlines, we suggest the following revised dates:

- Plaintiff's expert disclosure = December 16
- Defendant's expert disclosure = January 18
- Rebuttal disclosures = February 18

These new dates will only work if AT&T makes a prompt production of responsive communications and other outstanding internal documents. Otherwise, we will likely have to ask the Court for a formal extension of the dates in the discovery schedule, and explain why an extension is necessary.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely, whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Wiley, Adam [mailto:AWiley@kilpatricktownsend.com]
**Sent:** Thursday, November 5, 2020 4:44 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe,

The following is our summary of the meet and confer call held yesterday afternoon. Let me know if you have any revisions or disagree with any of the below:

**AT&T's Discovery Requests**
1. You disagree with our analysis that Mr. Williams cannot reference a range of paragraphs in the Complaint as his response to AT&T's Interrogatory No. 11. We maintained our position that Mr. Williams should amend the response to list the specific misrepresentations or fraudulent omissions by AT&T that he is asserting as a basis for his claims. You agreed to discuss offline and get back to us on how Mr. Williams will address this issue.
2. Generally speaking, Mr. Williams is working with you to determine whether he may have additional documents, emails, and other written communications that are responsive to all of AT&T's document requests addressed in our October 27, 2020 meet and confer letter, although Mr. Williams contends he is still unable to access his Gmail, Coinbase, and Slushpool accounts or the materials in those accounts that may be relevant to this matter.
3. You advised us that you have not conducted any independent search of Mr. Williams's ESI or documents, and thus far have relied on Mr. Williams to provide you with documents responsive to our requests.

4. Mike noted that Mr. Williams may be able to access old text message and chat messages in Facebook, WhatsApp, etc. by attempting to restore an old iCloud backup of Mr. Williams' iPhone and/or review his chat history, and you agreed to check with your client on this possibility.

5. We requested that Mr. Williams supplement his production with complete email chains and text message threads of responsive communications, as opposed to the screen shots we have received of only a portion of those communications. You stated you were uncertain whether Mr. Williams still has access to complete versions of those communications and that you would discuss with him and get back to us.

6. We then discussed each of the specific document requests where AT&T believes Mr. Williams may have additional documents. I summarized our conversations about some of the following specific requests:

a. **RFP 8**: We clarified that this request seeks initial warnings about account security that are provided when an account is opened, not (for example) the warnings that are provided after an account has been accessed using an unrecognized device or login location. You agreed to check with your client on whether he has any additional documents with that clarification in mind.

b. **RFP 9**: We noted that Mr. Williams appears to have redacted wallet addresses or transaction hashes from his document production that would otherwise tend to establish his ownership of the allegedly stolen cryptocurrency. See, for example, JW_0007. You agreed to check with your client on whether he would be willing to produce this redacted information and see if he has any other documents verifying his ownership of the cryptocurrency.

c. **RFP 12**: You agreed to check with your client to see if he received any other documents from the FBI or other law enforcement other than the communications that have already been produced.

d. **RFP 21 (and 24, 25)**: We noted that these requests track interrogatory No. 11, addressed above, regarding AT&T's alleged misrepresentations. You agreed to check with your client to determine if he has responsive documents.

e. **RFP 16 (and 22)**: You agreed to check with Mr. Williams about documents pertaining to his Twitter, Instagram, Dropbox, and Linkedin accounts.

f. **RFP 23 (and 26, 27, 31)**: We noted that Mr. Williams would need to provide evidence of the market value of his mining rigs, cryptocurrency lost, the $650,000 spent on his business, his inability to mine bitcoin after February 2019, and other claimed losses to establish his claimed damages. You agreed to check with Mr. Williams to determine whether he has any additional documents supporting his alleged losses.

g. **RFP 30**: We noted that Mr. Williams has publicly discussed his case with third parties, including at least one instance on a podcast. We requested production of any communications with third parties about the case, and you agreed to check with Mr. Williams to determine whether he has any responsive documents.

**Mr. Williams' Discovery Requests**

1. You expressed concern with the timing of AT&T's review of internal documents relating to SIM swapping generally. We responded that the process has been ongoing and that we disclosed the custodians most likely to have the information you are seeking about SIM swaps after receiving clarification from you on our last meet and confer discussion.

2. We explained that AT&T has taken steps to sequester potentially responsive documents from the identified custodians, and we expressed our desire to reach agreement with you on appropriate ESI search terms and parameters for searching those documents. You stated that it was your understanding those searches were already underway, and Mike responded that he believes the better practice is for the parties to reach agreement on the search parameters before undertaking those efforts.

3. We ended the discussion by agreeing to move forward with the process of (a) selecting search terms together; (b) using those search terms to conduct a search of AT&T's records to determine the number of documents that are potentially responsive to the request; and (c) providing an estimated timeline of production of responsive documents to Mr. Williams after initial steps (a) and (b) above have been completed.

4. We also agreed to cooperate with you regarding any necessary extensions to the current case deadlines.

Thanks,

**Adam Wiley**
Kilpatrick Townsend & Stockton LLP

1801 Century Park East | Suite 2300 | Los Angeles, CA 90067
office 310 777 3733 | fax 310 388 5804
awiley@kilpatricktownsend.com | My Profile | vCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Thursday, October 29, 2020 10:55 AM
**To:** Wiley, Adam <AWiley@kilpatricktownsend.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


3:30pm works, thanks.

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely,
whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**From:** Wiley, Adam [mailto:AWiley@kilpatricktownsend.com]
**Sent:** Thursday, October 29, 2020 1:45 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>; Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer

Hi Joe,

We're available after 3pm ET on November 4th. How about 3:30 pm to give you some extra time in case your other commitment runs over? If so I'll circulate conference line information.

Thanks,

**Adam Wiley**
**Kilpatrick Townsend & Stockton LLP**
1801 Century Park East | Suite 2300 | Los Angeles, CA 90067
office 310 777 3733 | fax 310 388 5804
awiley@kilpatricktownsend.com | My Profile | vCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Thursday, October 29, 2020 8:19 AM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** Williams v AT&T meet and confer


Mike:

We are in receipt of your meet and confer letters dated October 26.  We are available to meet and confer with you regarding the issues in your letters, as well as AT&T's ongoing discovery deficiencies, on November 4.  We are free at all other times besides 10-11am and 2-3am ET.  Please let us know your availability on November 4, thanks.


Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely, whether through our offices or remotely. For more information on how we can help, please click on the banner below.



**Withers Bergman LLP** - 430 Park Avenue, 10th Floor, New York, NY 10022-3505 T: +1 212 848 9800 F: +1 212 848 9888

Withersworldwide
New York, Greenwich, New Haven, Los Angeles, Rancho Santa Fe, San Diego, San Francisco, London, Cambridge, Geneva, Milan, Padua, Dubai, Hong Kong, Singapore, Tokyo, British Virgin Islands, Sydney

This email (and any attachments) is confidential and may also be legally privileged. If you are not the intended recipient please immediately notify the sender then delete it from your system. You should not copy it or use it for any purpose nor disclose its contents to any other person.


Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.


***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not

intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

30