# EXHIBIT B

Case 5:19-cv-00475-BO     Document 85-3     Filed 09/16/21     Page 1 of 10

| From: | Gallo, Joseph <Joseph.Gallo@withersworldwide.com> |
|---|---|
| Sent: | Wednesday, February 24, 2021 1:56 PM |
| To: | Breslin, Mike |
| Cc: | Dowdy, Joe; LaVigne, Christopher; Wiley, Adam |
| Subject: | RE: Williams v AT&T meet and confer |

**CAUTION: External Email**

Mike:

In response to your February 23 email:

- Per your email, please do provide us with an estimated production date for the additional emails you mentioned when you are able to do so. We do not agree that the search terms from your January 22 email are sufficient, reiterate our position set forth in the motion to compel, and reserve all rights to request additional searches and documents.

- Have you, Adam or anyone at Kilpatrick conducted an independent search of AT&T's records for responsive information that AT&T has not yet produced?

- As we have represented to you, our client has conducted numerous searches of the electronic accounts and devices he still has access to for responsive information. Chris and I have reviewed the information our client has located for responsiveness and privilege, and produced the responsive information to you. We have also reviewed and produced to you the documents and information we have received thus far in response to our third-party subpoenas.

- We have reviewed the tax returns requested in your RFP, and are seeking additional information from Mr. Williams' accountants to ensure that we produce the responsive portions of those returns.

- We received an initial production from Coinbase this week, which we have included in its entirety in the share file below. Please note that Coinbase has included different types of confidentiality designations in the file names of the documents they produced (consistent with the parties' protective order in this case), and indicated that the documents should be treated accordingly. Please note that Coinbase has told us it expects to make an additional production of responsive communications within the next few weeks.

https://withersworldwide.sharefile.com/d-sa59b908678684760a843006cb6a53ba3

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Tuesday, February 23, 2021 1:06 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

In response to your questions, we are working with our document management vendor to determine the fastest way to complete the redactions. I don't have a timetable for completing that yet but hope to know that in the next few days and will update you. We also have completed the culling of the email searches we agreed to run from the list you sent on Jan. 22, which we had to narrow and re-run based on the disproportionate results some of your searches returned (as explained in my Feb. 12 email to you). Those documents were uploaded to the document manager yesterday and they are being processed into the database. Once that is complete, we will begin reviewing those for responsiveness and privilege and will update you (hopefully in the next few days) when we have a better sense of how long that review will take.

Regarding Slush Pool, I am good with your proposal. I will send an email introducing you to Slush Pool's president, Pavel Moravec, and you can lead the conversation from there, with me and Adam Wiley cc'd on all of those emails.

Regarding information responsive to AT&T's Second Document Requests, you say that you believe responsive information may have been stored in Plaintiff's Gmail account. As of today, have you (meaning you and Chris, his counsel) conducted any independent search of any of the files or repositories that are accessible to Mr. Williams for information responsive to any of AT&T's document requests for which Mr. Williams has not produced all responsive documents?  Also, please provide an update on the tax return materials you agreed to provide (Second RFPs No. 1) on February 8.

Relatedly, have you found any additional documents responsive to any of the following requests for which Mr. Williams indicated he could not access all responsive documents?:
SET ONE: 1; 2; 3; 4; 5; 6; 7; 8; 9; 10; 12; 13; 14; 16; 17; 18; 19; 20; 21; 22; 23; 24; 25; 26; 27; 29; 30; 31.
SET TWO: 2; 4; 5; 6 and 7

Last, regarding Coinbase and Gmail, please forward us copies of your correspondence with them about the subpoena and your efforts to restore Mr. Williams' access. As those communications bear directly on the parties' ability to obtain relevant information, we believe we are entitled to see them. If you disagree, please let us know why.

Thanks,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Tuesday, February 16, 2021 12:56 PM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Mike:

See below for responses to the issues raised in your February 12 email:

1. We did receive a batch of emails on February 12. Please provide clarification on the following points:

    a. You mentioned producing a second batch of emails. Please provide an estimated date for that production.

    b. Please clarify whether AT&T is still in the process of searching for, reviewing, and or will be producing additional emails beyond the two productions you mentioned.

    c. We do not object to you redacting personal information about other customers at this time, but reserve to right to raise questions or objections about any redactions once we have reviewed your production.

    d. We gather from your email that the two productions you mentioned only contain emails that were collected using the search terms in your January 26 email (with the proximity modifications discussed below). Has AT&T (or does it to intend to) run any searches using any other terms, include any of the other terms in my January 22 email to you?

2. We do not object at this time to your proposed proximity limitations for the two terms you highlighted. However, we reserve to right to raise questions or objections about these proximity limitations (or other search parameters) once we have reviewed your productions.

3. As we have discussed, our client has legitimate privacy concerns about sharing his confidential financial information with AT&T. Nonetheless, we have offered to go to your contact at Slush Pool and get what information we can from it, and then produce any responsive information to AT&T. You objected to this idea based on your baseless accusation that we would attempt to hide responsive information from you. We will not agree to have our client incur the expense of preparing an "itemized list" of any documents we receive from Slush Pool, which is not required by the Federal Rules.

    That said, in the interest of moving forward, we propose that we reach out to your contact at Slush Pool to authorize the release of Plaintiff's documents to us. We will copy you on all correspondence with Slush Pool. If and when we receive documents from Slush Pool, we will review them for potential production to you. If we intend to withhold the production of any documents or categories of documents, will describe to you any such documents or categories of documents and provide you with our reasons for not producing them. If you think any such non-production is unreasonable, we can meet and confer.

    If this is acceptable to you, please provide us with contact information for your contact at Slush Pool, so that we can seek these documents from them.

4. As we have discussed with you, our client has searched for information responsive to your RFPs (including your RFPs about his damages), and produced what he has located. As we have told you (and as your email alludes to), we believe additional responsive information may have been stored in Plaintiff's Gmail account, which he has lost access to because of the SIM Swaps.

    To your question about Google, we are in contact with their legal department and in the process of attempting to restore my client's access to his Gmail account. If and when that is successful, we will review that account for information responsive to your RFPs, and produce any such information (in accordance with our objections).

    We have also reached out to other third-parties to attempt to collect responsive information from them. We have received from Plaintiff's accountant his tax returns for the requested years, will review them for responsive

information, and produce any portions that are responsive (with appropriate redactions, if any), per your RFP.  Additionally, Plaintiff has reached out to his utility provider to obtain documents regarding expenses related to his mining operation.

Lastly, though your email does not mention this, we are in contact with Coinbase regarding its objections to Plaintiff's subpoena and are scheduled to meet and confer with them this week regarding production of documents.

Please provide responses to items 1(a),(b), (d) and item 3 above.  Thank you.

Regards,
Joe

**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
withersworldwide.com | my profile

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505



**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Friday, February 12, 2021 7:34 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

I'm following up on the below and also have some updates:

(1) You should have received the first batch of emails today.  This will be followed by another set that needs redactions (e.g., attachments with other customers' personal info, etc.) once we complete those.

(2) We've received hit counts for the additional terms we agreed to run.  The two highlighted terms in my 1/26 email below are generating on average 1600% more hits per custodian than similar but more narrow terms which already have a high false hit rate. We are therefore going to shorten the proximity requirement from 10 to 4 and re-run those.

(3) Please advise on where we are with the Slush Pool issue.  Is it still Plaintiff's position that AT&T should not know what documents Slush Pool is able to provide about Plaintiff's account?

(4) Regarding your responses to our 2nd RFPs, please help us understand how it is that Mr. Williams does not have, or why he has not produced, documents evidencing the basic allegations in his complaint such as the damage figures and expenses he is claiming.  For example, your responses to RFPs 2 & 3 state he has searched for but has not been able to

produce things like his electricity bills, hosting contract, and any other of the $600k expenses the complaint alleges he incurred in his mining operation. Did he keep his utility bills and hosting contracts in his Gmail account? If so, when are you planning to serve the subpoena on Google that you told us on Dec. 18 that you would send?

Please let me know on #'s 3-4 as soon as you are able.

Thanks,
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA 30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Breslin, Mike
**Sent:** Tuesday, January 26, 2021 5:39 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

You're correct. Our search terms captured all the emails you sent, except one, because it referenced an "unauthorized SIM *card* change" rather than an "unauthorized SIM change." To address that, we will run an additional search using the "(SIM or subscriber identity module or subscriber identification module) w/10 Unauthoriz!" term you proposed. Also, in good faith, we agree to run the following additional searches you proposed:

- (SIM or subscriber identity module or subscriber identification module) w/10 Fraud!
- (SIM or subscriber identity module or subscriber identification module) & Defiore
- Defiore & Prime
- (SIM or subscriber identity module or subscriber identification module) & Vasquez
- Vasquez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Jimenez
- Jimenez & Alorica
- (SIM or subscriber identity module or subscriber identification module) & Mostoles
- Mostoles & (TPUSA or Teleperformance)
- (SIM or subscriber identity module or subscriber identification module) & Libanan
- Libanan & (Concentrix or Convergence)
- (SIM or subscriber identity module or subscriber identification module) & Hancock

The remaining terms you sent are inappropriate for the reasons I outlined in my December 11, 2020 email, as well as other reasons we discussed, and I have not received any substantive response to the rationale we laid out in early December. We are reviewing the emails that our prior searches retrieved and hope to have those to you soon. Your demand for a February 5 production based on search terms you first proposed on January 22 is unreasonable. We will include the results from these new terms in our ongoing review and supplement our production as we are able.

As for Slush Pool, we initiated this process, sought your cooperation in subpoenaing the records, and now seek your cooperation in obtaining the records via a direct channel we have set up with the founder. I can't think of any reason you would refuse to cooperate unless AT&T turns the process over to you and relinquishes all insight into what records Slush Pool can produce, other than to prevent AT&T from knowing what potentially relevant materials it should demand. Unless you can articulate a good reason why AT&T should not be included on the communications with Slush

**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Wednesday, December 30, 2020 3:20 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Subject:** RE: Williams v AT&T meet and confer

Joe –

Thanks for sending these responses and the updates. On your proposed search terms, we won't agree to run searches that we believe are aimed at categories of irrelevant materials and, even as to those categories, still appear too broad. I am not foreclosing further discussion on this, but we took the time to lay out our rationale as to the irrelevance of those tranches of terms, and it would be helpful to a continuation of our good faith efforts here to get some sort of substantive response to the specific issues we set out. A statement that you believe the terms are proper and will retrieve relevant materials doesn't give us any factual basis to reconsider our position.

On the subpoenas, we are happy for you to take the lead on Gmail / Google Drive, so as to avoid any issues with the Stored Communications Act – thank you for offering to do that. I'm not sure I understand what materials will be returned by a subpoena requesting "full access" to those accounts, but we have no objection to how you choose to word it so long as (a) whatever you request encompasses the document requests we previously circulated, and (b) we receive a log (date, sender, recipient, subject line) of the records responsive to our request so we can assess the sufficiency of the ultimate production. In all events, we would like to see a draft of the subpoena before it goes out.

As to the other subpoenas we proposed (Slush Pool, Coinbase, etc.), we will issue those. Having taken a closer look at the SCA, we don't believe the docs we're going to request will trigger any of the SCA's prohibitions. This obviously wouldn't foreclose Mr. Williams issuing his own subpoenas to those entities if he likes, but if there are additional materials he wants beyond the document requests we previously circulated, let us know since it would probably make sense to coordinate a single subpoena to each entity.

A few follow up items on the updates you sent below:

- The account notes we produced indicate JASONWILLIAMS@YAHOO.COM was used as the registered email address for Mr. Williams' AT&T account right around or after the time he alleges the SIM swaps happened. Am I understanding you correctly that Mr. Williams says he has never used that address (and therefore didn't register it on his AT&T account)?

- The account notes also indicate J.WILLIAMS@FASTMED.COM was associated with Mr. Williams' AT&T account during the time of the SIM changes he alleges and that he received relevant communications to that address from AT&T relating to the changes on his account during Nov. 2018-Feb. 2019. Have you searched that email for communications responsive to our document requests?

- Any updates on Mr. Williams' review of the PRTITECH.COM and MORGANCREEKCAP.COM email accounts?

Thanks and Happy New Year to you and Chris.
-Mike

**Michael Breslin**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 685 6752 | fax 404 541 4749
mbreslin@kilpatricktownsend.com | My Profile | VCard

**From:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>
**Sent:** Friday, December 18, 2020 9:25 AM
**To:** Breslin, Mike <mbreslin@kilpatricktownsend.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher <Christopher.LaVigne@withersworldwide.com>
**Subject:** RE: Williams v AT&T meet and confer


Mike:

We are responding to your December 11 email regarding discovery issues.

AT&T's Discovery Responses

- We appreciate your efforts to meet and confer regarding search terms, and we have reviewed your proposed "tranches" of search terms, but your proposed approach is insufficient. As you know, we believe our list is entirely proper and will capture relevant documents and communications for the four custodians you have identified. That said, and as we have stated previously, while we are amenable in theory to amending or removing certain terms in our proposed list, it does not make sense to do so until we know if any of those terms are potentially unduly burdensome.

  Why can AT&T not simply run our proposed search terms using the date range in Plaintiff's requests for each of the four custodians you have identified, and then use those results metrics as the basis for a discussion (as we proposed in our November 17 email)? You identified the four initial custodians on October 21. Surely you (or AT&T) have segregated the four custodians' documents for the requested date ranges by now. We sent our list of terms to you on November 11. It would take only a couple of hours, at most, to run our search terms and record the results. If you think reviewing and producing documents in response to any of our search terms will create an undue burden on AT&T, this is how we can meaningfully discuss that issue.

  To that point, AT&T's delays in producing responsive documents and communications are getting increasingly unreasonable. You received Plaintiff's first document requests and interrogatories on June 5, but based upon your meet and confer communications, it appears that you and AT&T have still not even begun reviewing any AT&T emails that are potentially responsive to this request. The fact that AT&T has not yet produced results metrics for even the handful of (overly narrow) search terms that AT&T itself proposed is only AT&T's latest discovery delay, and does not bode well for AT&T's ability to timely review and produce AT&T's responsive documents and communications. Even with the extended discovery schedule, we will need sufficient time to review the documents that AT&T produces ahead of depositions and expert discovery. The parties agreed to an extension of the discovery deadlines in this case based on mutual representations that the parties would continue to work in good faith to search for and produce responsive documents. If AT&T cannot demonstrate at least some good faith by providing us with results metrics for our full list of search terms by January 8, 2021, we will be forced to seek appropriate relief from the Court.

- Regarding the subpoenas, thank you for providing the scope of AT&T's proposed requests to each subpoena recipient. However, there is no need for you to issue these subpoenas or for our client to consent to them. Given the breadth of AT&T's requests, and because these documents are our client's documents that we, too, wish to review to the extent they are available and accessible, we will issue subpoenas to Google, Slush Pool, Coinbase & Dropbox. We will then review and produce documents to you in response to AT&T's discovery requests (subject to Plaintiff's objections and any future meet and confer efforts). Plaintiff's subpoenas will request full access to the information in those accounts, so they will necessarily encompass the entire scope of AT&T's proposed subpoena requests. This approach eliminates the need for AT&T to obtain Plaintiff's consent and thereby simplifies the process for getting this information, and would also address Plaintiff's understandable privacy concerns regarding authorizing AT&T to have such broad access to his personal and financial accounts (including his personal email).

Mr. Williams's Discovery Responses

We have some updates regarding the topics you raised in your email:

- Mr. Williams is currently unable to download or otherwise access any iCloud or other cloud storage containing relevant emails, text, other messages or information.

- The screenshots of partial conversations that you refer to are screenshots of mobile devices that are no longer operable. Mr. Williams is currently unable to access the information in those devices.

- Please see attached for a version of the previously produced document JW_0007 with wallet address / transaction hash information unredacted. The document has an alternative Bates number that corresponds to the originally produced document. The other redactions in the production contain confidential personal information unrelated to the claims and defenses in this lawsuit.

- To his knowledge, Mr. Williams has never had a Yahoo email account. Mr. Williams has used a [fastmed.com](fastmed.com) email account for limited professional purposes in the past, but has not done so recently, and that account does not contain responsive documents. Mr. Williams has been searching his [prtitech.com](prtitech.com) email for responsive documents, and has already produced documents from that account. Mr. Williams has also identified a [morgancreekcap.com](morgancreekcap.com) email account that he may have used during the responsive time period, and is in the process of searching that account for responsive documents.

- Beyond what he has produced to date, Mr. Williams has not located any additional responsive, non-privileged documents regarding his mining losses.

- Beyond what he has produced to date, Mr. Williams has not located any copies of statements made to third parties regarding the SIM swap incidents (including statements related to the podcast and interview you refer to in your email).

We do not believe it is necessary to have a call at this point to discuss any of the above issues, but we are certainly willing to reconsider having a call based on your response to the issues raised in this email. In any event, please respond to our request above regarding AT&T's discovery responses. Thank you.

Regards,
Joe


**Joseph Gallo**
Senior Associate
Litigation
t +1 212 848 9856
[withersworldwide.com](withersworldwide.com) | [my profile](my profile)

Secretary: Lana Moon  t +1 212 848 9821

Withers Bergman LLP
430 Park Avenue, 10th Floor, New York, New York 10022-3505

Withers, as a global firm, is employing business continuity practices to deliver effective client service around the world safely, whether through our offices or remotely. For more information on how we can help, please click on the banner below.



---

**From:** Breslin, Mike [mailto:mbreslin@kilpatricktownsend.com]
**Sent:** Friday, December 11, 2020 2:39 PM
**To:** Gallo, Joseph <Joseph.Gallo@withersworldwide.com>; Wiley, Adam <AWiley@kilpatricktownsend.com>
**Cc:** Dowdy, Joe <JDowdy@kilpatricktownsend.com>; LaVigne, Christopher

<Christopher.LaVigne@withersworldwide.com>
**Subject:** Re: Williams v AT&T meet and confer

Joe –

Thanks for your patience on this. I am responding to a few of the outstanding items and looking for your feedback so we can reach agreement on these or set up a call to have further discussions.

1) Regarding the search terms you proposed, we continue to believe they are too broad and exceed the scope of the incidents and issues in this case. See our attached comments to your list and let us know your thoughts and whether we should set up a call to talk through them (or feel free to send responses to our comments if that would help frame our discussion). On a related note, we are hopeful that we will soon have the results metrics on the terms we proposed, which were designed to capture emails and documents that concern either unauthorized SIM changes (in any context) or Mr. Williams or his AT&T account. Our intent has been to discuss those with you and talk through any modifications that you believe are necessary (including with reference to the terms you proposed) to capture any additional categories of relevant documents that we have not already produced or would not be returned by our search terms. We will let you know when we have that information.

2) Your concerns regarding Mr. Williams consenting to the third party subpoenas we are proposing, without first knowing what documents we would request, are fair. We've prepared the attached summary of the four subpoenas we are envisioning (based on our understanding that these represent the four accounts Mr. Williams says he still cannot access – Gmail/Google, Slush Pool, Coinbase & Dropbox – if that is wrong, let us know). Let us know if Mr. Williams will consent to the production of these documents. If you have concerns about any of the requests, please provide comments or proposed redlines so we can work through those.

3) Please let us know if you have an update on Mr. Williams' efforts to supplement his document production. On our last call, we noted the following issues that you were going to look into:

- Whether he can download an iCloud backup of his prior phone memory to obtain relevant emails / texts / chat messages, including iMessage, WhatsApp, Facebook messenger, etc.

- Whether he can produce complete email / text threads of relevant conversations where we received only a screenshot of a portion of the conversation.

- Whether Mr. Williams would produce the wallet addresses / transaction hash information it appears he redacted from his document production. *See*, for example, JW_0007.

- Searching the other email addresses our records show he used during the relevant period - j.williams@fastmed.com, jasonwilliams@yahoo.com, and jwilliams@prtitech.com -- for additional responsive documents (*i.e.*, communications with law enforcement, or concerning the hacks of his third party accounts, *e.g.*, Gmail, Dropbox, Instagram, Twitter, LinkedIn, etc.).

- Whether Mr. Williams has additional documents substantiating his claimed mining losses, such as records of the $650,000 of expenses he claims he incurred, or documents showing why he couldn't continue mining after the February 2019 incidents, the market value of his rigs when he shut down the operation, etc.

- Whether Mr. Williams has copies of his statements to third parties regarding the SIM swap incidents (on our call we referenced a podcast and a separate interview we found that he's done about them).

4) Last, one item that we need and we think Mr. Williams should be able to produce fairly easily is the payout wallet address(es) he used for his Slush Pool operation. Those addresses would be included in the materials we requested in RFP 17. Can you please check if he has those addresses and will provide them?