# EXHIBIT A

# [PUBLICLY AVAILABLE
# REDACTED VERSION]

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

JASON WILLIAMS,

     Plaintiff,

vs.

AT&T MOBILITY LLC,

     Defendant.

Case No. 5:19-cv-00475-BO

**AT&T'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**
**OR PARTIAL SUMMARY JUDGMENT IN THE ALTERNATIVE**
**[FED. R. CIV. PROC. 56]**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND ...................................................................................... 2

III. STANDARD OF REVIEW ......................................................................................... 2

IV. ARGUMENT ............................................................................................................... 3

    A. The Court should rule as a matter of law that Mr. Williams cannot recover any damages suffered by non-party Apollo Kids Mining, LLC. ................................ 3

    B. Williams' punitive damages claim should be dismissed. ............................................. 5

        1. The Court should rule as a matter of law that the plain terms of the parties' contract preclude Mr. Williams from recovering punitive damages. ................................................................................................................... 5

        2. Williams cannot meet the standard to recover punitive damages against AT&T under North Carolina law ...................................................... 6

    C. The Court should rule as a matter of law that Mr. Williams cannot recover damages for any emotional distress suffered by his daughter, who is not a party to this suit. ............................................................................................................ 9

    D. The Court should grant summary judgment as to Mr. Williams' own emotional distress claims because they are not "severe" as required by North Carolina law and, in any event, are limited by his contract with AT&T. ................ 9

    E. The Court should rule as a matter of law that the economic loss rule precludes Mr. Williams from recovering any economic damages through his tort claims. ....................................................................................................................... 11

    F. The Court should grant AT&T's motion for summary judgment as to Mr. Williams' federal claims ........................................................................................... 14

    G. The Court should also grant summary judgment as to Mr. Williams' claim for violation of North Carolina's Anti-Hacking Statute (Count V) .............................. 17

    H. Mr. Williams' Claims Fail for Lack of Causation ...................................................... 19

V. CONCLUSION ......................................................................................................... 21

# TABLE OF AUTHORITIES

Page

**Cases**

*Alaimo Family Chiropractic v. Allstate Ins. Co.,*
155 N.C. App. 194, 574 S.E.2d 496 (2002) ................................................................. 5

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................... 3, 6

*Barger v. McCoy Hillard & Parks,*
346 N.C. 650, 488 S.E.2d 215 (1997) ......................................................................... 3

*Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.,*
246 N.C. App. 27, 783 S.E.2d 35 (2016) ............................................................. 12, 13

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .............................................................................................. 3

*Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.,*
376 N.C. 54, 852 S.E.2d 98 (2020) ......................................................................... 12

*Crouse v. Mineo,*
189 N.C. App. 232, 658 S.E.2d 33 (N.C. Ct. App. 2008) ........................................ 3, 9

*FDIC v. Prince George Corp.,*
58 F.3d 1041 (4th Cir. 1995) ............................................................................. 5, 11

*Foster v. Hyman,*
197 N.C. 189, 148 S.E.2d 36 (1929) .................................................................... 7, 8

*Fulton v. Talbert,*
255 N.C. 183, 120 S.E.2d 410 (1961) ....................................................................... 4

*George v. Greyhound Lines, Inc.,*
210 N.C. App. 388 (2011) ................................................................................... 7, 8

*Hairston v. Alexander Tank & Equip. Co.,*
310 N.C. 227, 311 S.E.2d 559 (1984) ...................................................................... 19

*Hinson v. Dawson,*
244 N.C. 23, 92 S.E.2d 393 (1956) ........................................................................... 7

*Holt v. N.C. Dep't of Transp.,*
245 N.C. App. 167, 781 S.E.2d 697 (2016) ............................................................. 19

*In re C.A.D.,*
247 N.C. App. 552, 786 S.E.2d 745 (2016) ............................................................ 3, 9

*Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*,
    327 N.C. at 283 (1990)...................................................................................................................10

*Kelly v. Ga.-Pac. LLC*,
    671 F. Supp. 2d 785 (E.D.N.C. 2009) ................................................................................ 12, 13

*Lee v. CertainTeed, Corp.*,
    No. 5:13-CV-826-FL, 2015 WL 4526165 (E.D.N.C. July 27, 2015)..........................................7

*Martin v. Ray Lackey Enters., Inc.*,
    100 N.C. App. 349, 396 S.E.2d 327 (1990) ..............................................................................5

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).....................................................................................................................3

*Mayor of City Council of Balt. v. Actelion Pharms. Ltd.*,
    995 F.3d 123 (4th Cir. 2021).......................................................................................................3

*Mills v. Union Sec. Ins. Co.*,
    832 F. Supp. 2d 587 (E.D.N.C. 2011) ........................................................................................2

*Moore v. Archie*,
    31 N.C. App. 209, 228 S.E.2d 778 (1976) ...............................................................................19

*Norman v. Nash Johnson & Sons' Farms, Inc.*,
    140 N.C. App. 390, 537 S.E.2d 248 (2000) ...............................................................................4

*North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co. (Ports Authority)*,
    294 N.C. 73, 240 S.E.2d 345 (1978) ................................................................................. 12, 13

*Patten v. Hall*,
    No. 5:15-CT-3118-FL, 2019 WL 4858845 (E.D.N.C. Sept. 30, 2019)...................................10

*Philips v. Restaurant Management of Carolina*, L.P.,
    146 N.C. App. 203 (2001) ...........................................................................................................8

*Pierce v. Atl. Grp., Inc.*,
    219 N.C. App. 19 (2012) ...........................................................................................................10

*Rivers v. Wachovia Corp.*,
    665 F.3d 610 (4th Cir. 2011).......................................................................................................4

*Robbins v. Tweetsie Railroad, Inc.*,
    126 N.C. App. 572, 486 S.E.2d 453 (1997) ...............................................................................3

*Schenk v. HNA Holdings, Inc.,*
170 N.C. App. 555, 613 S.E.2d 503 (2005) ................................................................. 8

*Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc.,*
182 N.C. App. 128, 641 S.E.2d 711 (2007) ................................................................. 5

*Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel,*
20 F.3d 1311 (4th Cir. 1994) ..................................................................................... 4

*Spillman v. Am. Homes of Mocksville, Inc.,*
108 N.C. App. 63, 422 S.E.2d 740 (1992) ............................................................... 12

*Tise v. Yates Constr. Co.,*
345 N.C. 456, 480 S.E.2d 677 (1997) ...................................................................... 19

*Van Buren v. United States,*
141 S.Ct. 1648,
*on remand,* 5 F.4th 1327 (11th Cir. 2021) ......................................................... 16, 17

*Verizon Nw., Inc. v. Showalter,*
282 F.Supp.2d 1187 (W.D. Wash. 2003) ................................................................. 15

*Waddle v. Sparks,*
331 N.C. 73 (1992) ................................................................................................... 10

*Walls v. Ford Motor Co.,*
No. 1:20-CV-98, 2022 WL 588901 (M.D.N.C. Feb. 25, 2022) ................................. 6

*Warth v. Seldin,*
422 U.S. 490 (1975) ............................................................................................... 3, 9

*Williams v. HomEq Servicing Corp.,*
184 N.C. App. 413 (2007) ................................................................................... 10, 11

**Statutes**

18 U.S.C. § 1030(a)(2)(C) .................................................................................... 15, 16

18 U.S.C. § 1030(e)(6) .............................................................................................. 15

18 U.S.C. § 1030(g) ................................................................................................... 15

47 U.S.C. § 222 (h)(1)(A) .......................................................................................... 15

47 U.S.C. § 222(a) ..................................................................................................... 14

## TABLE OF AUTHORITIES
(continued)

Page

47 U.S.C. § 222(c) ...................................................................................................................14

47 U.S.C. § 222(h)(1)(A) .........................................................................................................15

N.C. Gen. Stat. § 1-15(d) ............................................................................................................6

N.C. Gen. Stat. § 14-458 (1995)...................................................................................17, 18, 19

N.C. Gen. Stat. § 14-458(a)(1)-(6) ...........................................................................................18

N.C. Gen. Stat. § 1-539.2A .......................................................................................................17

N.C. Gen. Stat. § 1D-15(a) ..........................................................................................................6

N.C. Gen. Stat. § 1D-15(b) ..........................................................................................................6

N.C. Gen. Stat. § 1D-15(c) ..........................................................................................................6

N.C. Gen. Stat. § 1D-5(7) ............................................................................................................7

N.C. Gen. Stat. § 57D-2-01(a) (2015) .........................................................................................3

**Rules & Regulations**

Fed. R. Civ. P. 30(b)(6)................................................................................................................7

Fed. R. Civ. P. 56 ..............................................................................................................1, 2, 21

Fed. R. Civ. P. 56(b) ....................................................................................................................3

Fed. R. Civ. P. 56(d) ....................................................................................................................3

## I.    INTRODUCTION

The Court previously denied Defendant AT&T Mobility LLC's ("AT&T") motion to dismiss Plaintiff Jason William's ("Mr. Williams") claims. *See* Order (ECF 20). But after discovery, it has become clear that Mr. Williams is not entitled to recover damages as a matter of law based on undisputed material facts. His claims fail for claim-specific reasons, and all of Mr. Williams' claims fail for lack of causation. For the reasons discussed below, the Court should grant AT&T's Motion for Summary Judgment or Partial Summary Judgment in the Alternative and rule as a matter of law that Mr. Williams:

- cannot personally recover lost profit damages that were suffered by a separate business entity, Apollo Kids Mining, LLC;

- cannot recover any punitive damages under the plain terms of the parties' contract and under North Carolina law;

- cannot personally recover damages for the emotional distress that was suffered by his daughter or any other family member;

- cannot recover emotional distress damages at all because the undisputed evidence shows that the alleged damages are not "severe," as required by North Carolina law and, in any event, they are barred by the terms of the parties' contract;

- cannot recover on any of his tort claims (violation of UDTPA, negligence, and negligent supervision), based on North Carolina's economic loss rule;

- cannot recover on his federal claims for violation of the Federal Communications Act and the Computer Fraud and Abuse Act;

- cannot recover on his claim for violation of North Carolina's Anti-Hacking Law; and

- cannot prove that AT&T's conduct was the but for proximate cause of his alleged harm;

AT&T therefore respectfully asks the Court to grant its Motion for Summary Judgment or for Partial Summary Judgment in the Alternative as to any claims, parts of claims or items of damages which the Court finds are not genuinely at issue.  Fed. R. Civ. Proc. 56.

## II. FACTUAL BACKGROUND

The Court previously recounted Mr. Williams' allegations in its order denying Defendant's motion to dismiss. *See* Order (ECF 20) 1-5. In short, Mr. Williams entered into a contract for wireless telephone services with AT&T in 2000. Complaint (ECF 2), ¶ 10. And between November 2018 and February 2019, Mr. Williams was the target of six[1] unauthorized SIM swaps, perpetrated by unknown third-party hackers. *Id.* ¶ 36. Mr. Williams alleges that during these SIM swaps, the hackers obtained control of his wireless telephone number and used this control to gain access to his online personal and financial accounts—including accounts related to his business's cryptocurrency mining operations. *See, e.g., id.* ¶¶ 26, 36. And Mr. Williams further alleges that these third-party hackers threatened him and his family's safety through text messages. *See, e.g., id.* ¶¶ 6, 20, 48, 82.

Mr. Williams has sued AT&T for the financial losses and emotional distress that allegedly resulted from these SIM swaps and third-party actions. *Id.* ¶¶ 175-236. Mr. Williams seeks to recover lost profit damages resulting from having to "shut down" cryptocurrency mining operations. *See id.* ¶¶ 76-77. Mr. Williams also seeks to recover punitive damages against AT&T. *Id.* ¶ 236(D). And, Mr. Williams seeks to recover damages for his own emotional distress, as well as emotional distress was suffered by his teenage daughter and potentially other family members. *See id.* ¶¶ 6, 20, 82, 88.

For the reasons provided below, AT&T now moves for Summary Judgment or Partial Summary Judgment in the Alternative and asks the Court to rule as a matter of law that Mr. Williams is not entitled to recover damages and/or continue to assert these claims.

## III. STANDARD OF REVIEW

The Court should grant summary judgment if there are no genuine issues of material fact so that judgment is appropriate as a matter of law. *Mills v. Union Sec. Ins. Co.*, 832 F. Supp. 2d 587, 597-598 (E.D.N.C. 2011) (citing Fed. R. Civ. P. 56). On a motion for summary judgment, the

---

[1] As with nearly every claim Mr. Williams has raised, his original claim of seven SIM swaps in this Complaint is exaggerated. The actual number of SIM swaps was six, not seven. *See* Valerie Scheder Depo., Appendix 4, 115:7-117:4.

Court must view the facts in the light most favorable to the nonmoving party. *Ibid.* The Court can grant summary judgment on "all or part" of a claim. Fed. R. Civ. P. 56(b). And if the Court grants partial summary judgment, it should issue an order "specifying what facts—including items of damages or other relief—are not genuinely at issue." Fed. R. Civ. P. 56(d).

The moving party bears the initial responsibility of informing the district court of the basis for its motion; once the moving party has met this burden, the nonmoving party then must set forth specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). And there is no issue for trial unless the nonmoving party can show there is sufficient evidence for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV. ARGUMENT

### A. The Court should rule as a matter of law that Mr. Williams cannot recover any damages suffered by non-party Apollo Kids Mining, LLC.

"An LLC is an entity distinct from its interest owners." N.C. Gen. Stat. § 57D-2-01(a) (2015). And it is well established that an individual lacks standing to sue for an injury suffered by a separate individual or entity. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see Mayor of Balt. v. Actelion Pharms. Ltd.*, 995 F.3d 123, 133 (4th Cir. 2021); *see also In re C.A.D.*, 247 N.C. App. 552, 563, 786 S.E.2d 745, 752 (2016); *Crouse v. Mineo*, 189 N.C. App. 232, 247, 658 S.E.2d 33, 42 (N.C. Ct. App. 2008). Similarly, under North Carolina law, the owner of an LLC cannot individually recover damages for an injury that was suffered by the LLC. *See Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997); *Robbins v. Tweetsie Railroad, Inc.*, 126 N.C. App. 572, 577, 486 S.E.2d 453 (1997).

Here, Mr. Williams seeks damages resulting from having to "shut down" a cryptocurrency mining operation. *See* Complaint (ECF 2), ¶¶ 76-77, 90, 178. Indeed, the claimed damages related to this cryptocurrency mining operation—allegedly millions of dollars in lost profits—are the most significant component of Mr. Williams' damage claims in this action. Complaint (ECF 2), ¶¶ 9, 20. But Mr. Williams now admits that the cryptocurrency mining operation relevant to this lawsuit was

undertaken and performed by a separate Delaware entity, Apollo Kids Mining, LLC ("AKM")—using mining rigs owned by AKM—and that any losses or damages suffered from shutting down this mining operation were therefore suffered by AKM. *See* Williams Depo., Appx. 1, 25:19-24, 35:5-8 (admitting "SIM swap attacks…most specifically [affected] Apollo Kids Mining"), 211:4-13, 232:11-233:23, 235:15-21, 236:11-25, 237:5-10, 291:20-294:9. And Mr. Williams further acknowledges that AKM was not an AT&T wireless customer, never had an AT&T account (*id.* at 267:14-18), and that Mr. Williams never told AT&T that AKM's mining rigs and mining operation were dependent on AT&T's security practices (*id.* at 268:2-10).

Given Plaintiff's admissions, it is undisputed that any damages resulting from any "shut down" or loss of cryptocurrency mining operations constitute damages that were suffered by AKM—and not by Mr. Williams personally. Notably, AKM is not a party to this suit. As a matter of law, Mr. Williams lacks standing and cannot recover for injuries that were suffered by this separate corporate entity. *Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) (shareholders lack standing to bring claims alleging injury to the corporation); *see also Fulton v. Talbert*, 255 N.C. 183, 185, 120 S.E.2d 410, 412 (1961) ("[S]hareholders have no right to bring actions 'in their [individual] names to enforce causes of action accruing to the corporation."), rather, such claims must be brought derivatively on behalf of the corporation. *Rivers v. Wachovia Corp.*, 665 F.3d 610, 614 (4th Cir. 2011); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d 248, 253 (2000). Because Mr. Williams lacks standing with respect to AKM's alleged damages, the Court should rule as a matter of law that Mr. Williams cannot recover any alleged damages resulting from shutting down AKM's cryptocurrency mining operations.

The Court previously rejected this argument as a basis for AT&T's motion to dismiss because (1) "the precise legal structure of Plaintiff's business [was] not specified in the complaint," and (2) AT&T sought to dismiss Plaintiff's entire suit on this basis when Mr. Williams "clearly [had] alleged his own injury." *See* Order (ECF 20) at 6. Now, after discovery, the precise legal structure of AKM has been identified and AT&T seeks to dismiss Plaintiff's claims for injuries or

damages that, if they exist at all, belong to AKM, not Williams. *See also*, AT&T's Motion *in limine* 1, filed concurrently with this Motion, seeking to exclude any argument or evidence proffered by Mr. Williams regarding any lost profit or other damages from AKM's "crypto-mining" operations.

For these reasons, the Court should rule as a matter of law that Mr. Williams cannot recover damages related to the shutdown of AKM's cryptocurrency mining operations and dismiss these damage claims.

### B. Williams' punitive damages claim should be dismissed.

#### 1. The Court should rule as a matter of law that the plain terms of the parties' contract preclude Mr. Williams from recovering punitive damages.

The Court must give the terms of a contract their plain meaning. *Alaimo Family Chiropractic v. Allstate Ins. Co.*, 155 N.C. App. 194, 197, 574 S.E.2d 496 (2002) (citing *Martin v. Ray Lackey Enters., Inc.*, 100 N.C. App. 349, 354, 396 S.E.2d 327, 330 (1990)). And parties may, through contractual terms, limit the damages that are recoverable by a party to the contract. *Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc.*, 182 N.C. App. 128, 130-131, 641 S.E.2d 711, 713 (2007) ("Under the fundamental principle of freedom of contract, the parties to a contract have a broad right to stipulate in their agreement the amount of damages recoverable in the event of a breach, and the courts will generally enforce such an agreement."); *FDIC v. Prince George Corp.*, 58 F.3d 1041, 1050 (4th Cir. 1995).

Here, Section 4.1 of the parties' contract for wireless telephone service limits AT&T liability for certain categories of damages, including punitive damages:

> Unless prohibited by law, AT&T isn't liable for any indirect, special, **punitive**, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, Services, Software, or Devices provided by or through AT&T, including loss of business or goodwill, revenue or profits, or claims of personal injuries.

Wireless Customer Agreement, Appendix 3, § 4.1, What Are The Limitations On Service And Liability? [emphasis added.]

Mr. Williams executed an acknowledgment that he reviewed and accepted the terms and

conditions contained in the Wireless Customer agreement, including its limitations on liability. Signed Electronic Acknowledgement, Appendix 6, ATT-WIL-01564.

Punitive damages disclaimers are not prohibited under North Carolina law. *See, generally*, N.C. Gen. Stat. Chapter 1D Punitive Damages (no statute prohibiting punitive damage waiver included). To the contrary, North Carolina prohibits awarding punitive damages against a person solely for breach of contract. N.C. Gen. Stat. § 1-15(d). Thus, under the plain terms of the parties' contract for services, Williams cannot recover any punitive damages against AT&T based on his Wireless Customer Agreement with AT&T.

### 2. Williams cannot meet the standard to recover punitive damages against AT&T under North Carolina law.

Under North Carolina law, a claim for punitive damages requires proof that the defendant is liable for compensatory damages—plus proof that, when the defendant caused the injury for which compensatory damages were awarded, the defendant acted with (1) fraud, (2) malice, or (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a). The existence of one of these aggravating factors must be proved by clear and convincing evidence. N.C. Gen. Stat. § 1D-15(b). In the case of a corporate defendant, such as AT&T, the officers, directors or manager of the corporation must have participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages. N.C. Gen. Stat. § 1D-15(c). And on a motion for summary judgment, the Court must view the evidence presented through the "prism" of this heightened evidentiary burden. *Walls v. Ford Motor Co.*, No. 1:20-CV-98, 2022 WL 588901, at *14 (M.D.N.C. Feb. 25, 2022) (citing *Anderson*, 477 U.S. at 254).

Here, even if the Court determines the AT&T customer agreement does not prohibit recovery of punitive damages, Mr. Williams can produce no evidence—and certainly not clear and convincing evidence—that AT&T, acting through its officers, directors or managers, acted with fraud, malice, or willful or wanton conduct in connection with the SIM swaps.

In fact, the evidence shows the very opposite of what Mr. Williams is required to prove to obtain punitive damages from AT&T for the actions of its officers, directors and managers.

Valerie Scheder, AT&T's corporate witness, produced by AT&T for deposition pursuant to Rule 30 (b)(6), testified that AT&T took significant actions ███████████████████████, to respond to any customer complaints of unauthorized SIM swapping. Scheder testified that Williams' complaints of unauthorized SIM swaps leading to alleged losses from cryptocurrency online accounts were ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████ Scheder Depo., Appx. 4, 29:8-21; 30:14-33:25, 36:15-38:17; 39:2-40:3, 45:3-48:25, 52:4-53:5, 57:17-58:6, 72:15-76:14, 77:23-85:15, 86:9-101:1, 104:6-109:2, 109:21-113:22, 177:6-178:15 and 190:4-191:2. The evidence overwhelmingly and indisputably demonstrates that AT&T did not act with fraud, malice or willfulness towards Mr. Williams, and its officers, directors and managers did not condone these unauthorized SIM swaps

On this record, AT&T's motion is supported by law. North Carolina's punitive damages statute defines "willful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. *'Willful or wanton conduct' means more than gross negligence*." N.C. Gen. Stat. § 1D-5(7) (emphasis added). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *George v. Greyhound Lines, Inc.*, 210 N.C. App. 388, 394 (2011). "Conduct is wanton when [completed] in conscious and intentional disregard of and indifference to the rights and safety of others." *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E.2d 393, 396 (1956).

"Willful negligence" has been defined as an act done purposely and deliberately in violation of law or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason. *Lee v. CertainTeed, Corp.*, No. 5:13-CV-826-FL, 2015 WL 4526165 (E.D.N.C. July 27, 2015) (quoting *Foster v. Hyman*, 197 N.C. 189, 191, 148 S.E.2d 36, 37 (1929)). The true conception of willful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has

assumed by contract, or which is imposed on the person by operation of law. *Id.*

In *Schenk v. HNA Holdings, Inc.*, 170 N.C. App. 555, 613 S.E.2d 503 (2005), the North Carolina Court of Appeals affirmed the trial court's grant of the defendant's motion dismissing plaintiff's punitive damages claims despite where the defendant used a non-OSHA approved method for removing asbestos and where an engineer affiliated with defendant had deleted a memorandum regarding concerns with asbestos insulation removal procedures. The Court held that those violations might show negligence, but they failed to show wanton or willful conduct to support punitive damages. *Id.* The violations failed to show deliberate and intentional purpose to injure, and thus, plaintiff's punitive damages claim was dismissed. *Id.* In *Philips v. Restaurant Management of Carolina*, L.P., 146 N.C. App. 203 (2001), the North Carolina Court of Appeals held that the plaintiff, a state trooper, failed to show that an officer, director, or manager condoned or participated in the employee's conduct in spitting in the plaintiff's food or other willful or wanton act to justify punitive damages. In *George v. Greyhound Lines, Inc.,* 210 N.C. App. 388, 394-98, 708 S.E.2d 201, 205-08 (2011), the North Carolina Court of Appeals declined to impose punitive damages on the defendant corporation whose employee driving a bus had collided with the plaintiffs for the corporation's failure to inspect its drivers in violation of federal regulations. The Court stated while there may be evidence of a violation of the regulation, the same could only be considered negligence in a civil action, not willful or wanton conduct. *Id.*

Here, Mr. Williams cannot show that AT&T acted purposefully and deliberately or purposefully to cause him harm. Mr. Williams cannot show that any officer, director or managing agent of AT&T knew, much less committed, ratified or authorized any of the criminal third party actions about which he complains. The SIM swaps were the independent and sophisticated criminal acts of third parties. There is no evidence that AT&T was acting with the deliberate purpose to injure plaintiff required for a punitive damages award. To the contrary, all the evidence demonstrates that AT&T reversed each SIM swap to restore Mr. Williams' service, and AT&T's management team ██████████████████████████████████████████ ██████████████████████████████████████████. Scheder Depo., Appx. 4, 29:8-21;

30:14-33:25, 36:15-38:17; 39:2-40:3, 45:3-48:25, 52:4-53:5, 57:17-58:6, 72:15-76:14, 77:23-85:15, 86:9-101:1, 104:6-109:2, 109:21-113:22, 177:6-178:15 and 190:4-191:2.

Because Mr. Williams cannot meet the heightened burden for punitive damages, the Court should dismiss Mr. Williams' claims for punitive damages as a matter of law.

**C.    The Court should rule as a matter of law that Mr. Williams cannot recover damages for any emotional distress suffered by his daughter, who is not a party to this suit.**

As discussed in Part IV.B., above, an individual lacks standing to sue for an injury suffered by another individual or entity. *Warth*, 422 U.S. at 499; *see also C.A.D.*, 786 S.E.2d at 752; *Crouse*, 658 S.E.2d at 42. Here, it is not clear whether Mr. Williams seeks to recover damages for emotional distress allegedly suffered by family members, including his daughter. *See* Complaint (ECF 2) ¶¶ 82, 88; Williams Depo. Appendix. 1 at 247:13-249:7, 252:16-253:21 (failing to clearly answer as to whether he seeks to recover damages for emotional distress suffered by his daughter). But Mr. Williams' daughter is not a party to this suit and was not a party to any contract with AT&T—and Mr. Williams lacks standing to recover for any injury suffered by his daughter, or any other family member. So—to the extent Mr. Williams seeks to recover damages for emotional distress suffered by his daughter (or wife or other family member) —the Court should rule as a matter of law that Mr. Williams cannot recover such damages. *See also*, AT&T's Motion in Limine 2, seeking to exclude evidence of Mr. Williams' daughter's emotional distress, filed concurrently with this Motion.

**D.    The Court should grant summary judgment as to Mr. Williams' own emotional distress claims because they are not "severe" as required by North Carolina law and, in any event, are limited by his contract with AT&T.**

The Court should also grant summary judgment as to Mr. Williams' own emotional distress damage claims because the undisputed evidence shows that any such distress was not *severe* emotional distress as required to recover under North Carolina law. In addition, as discussed above at IV.B. regarding Mr. Williams' punitive damages claims, the terms of his contract with AT&T bar

recovery for personal injury damages.[2]  AT&T WCA, Appx. 3, § 4.1.

At most, Mr. Williams testified that the SIM swaps caused him stress in relation to his work, annoyance associated to having to repeatedly go to the AT&T store, and negative impacts on his relationship with this family. Williams Depo., Appx. 1 at 217:15-218:17, 247:18-249:13; *see also*, *Williams v. HomEq Servicing Corp.*, 184 N.C. App. 413, 419 (2007) ("*HomEq Servicing Corp*") (testimony that repeated phone calls and aggressive debt collection practices caused work related stress and chronic depression did not amount to severe emotional distress.); *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 32 (2012) (finding negative impacts to Plaintiff's relationship with wife and family members is insufficient). Even to the extent that anonymous text threats he received during this time caused him fear, North Carolina law requires that the distress be "severe" rather than "temporary fright." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. at 283, 304 (1990). There is simply no evidence in the record suggesting that Mr. Williams experienced a "disabling emotional or mental condition" because of AT&T's alleged acts or omissions. *Id.* Mr. Williams admits that he has no corroborating evidence that he suffered severe emotional distress at the time that these events were occurring. He admits that he kept no personal diary of his alleged distress (Williams Depo., Appx. 1 at 252:5-10); he admits that he saw no healthcare provider regarding his alleged distress (*id.* at 252:11-15); and he admits that he saw no counselor regarding his alleged distress (*id.* at 254:4-11). Mr. Williams offers only his *post hoc*, uncorroborated testimony that the SIM swap incidents (and other acts that were committed by third party hackers, not AT&T) "affected" him mentally and emotionally. *See*, *e.g.*, *id.* at 248:14-249:7. That is not sufficient as a matter of law.

North Carolina courts have repeatedly rejected emotional distress claims where deposition testimony is the only evidence offered.  *Waddle v. Sparks*, 331 N.C. 73, 85 (1992) (finding deposition testimony was insufficient proof of severe emotional distress); *Patten v. Hall*, No. 5:15-CT-3118-FL, 2019 WL 4858845, at *17 (E.D.N.C. Sept. 30, 2019) (statement in his deposition that plaintiff sought treatment for "nightmares" is not sufficient to show he suffered from a mental

---

[2] As discussed below at IV.E., these damages are also barred by the economic loss rule.

disorder "generally recognized and diagnosed by trained professional."); *HomEq Servicing Corp.*, 184 N.C. App. at 419 (plaintiff's testimony stating they suffer from chronic depression is insufficient evidence). During his deposition, Mr. Williams made clear that he had not seen a doctor or other health care professional in relation to the emotional distress he claims to have experienced. Williams Depo., Appx. 1 at 254:04-254:11; 255:06-255:12. Given that Mr. Williams lacks any other evidence suggesting that he suffered harm rising to the level of severe emotional distress, his claim for emotional distress damages should be dismissed.

Moreover, these type of claims for personal injury damages are precluded by the terms of Mr. Williams' contract for wireless telephone service with AT&T. *See* Wireless Customer Agreement, Appendix 3, § 4.1. Parties to a contract have a broad right to stipulate in their agreement the amount of damages recoverable in the event of a breach, and the courts will generally enforce such an agreement. *FDIC* , 58 F.3d at 1050 .

Here, Section 4.1 of the parties' contract for wireless telephone service limits AT&T's liability for certain categories of damages, including claims for personal injury:

> Unless prohibited by law, AT&T isn't liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, Services, Software, or Devices provided by or through AT&T, including loss of business or goodwill, revenue or profits, **or claims of personal injuries.**

Wireless Customer Agreement, Appendix 3, § 4.1, What Are The Limitations On Service And Liability? [emphasis added.] Mr. Williams executed an acknowledgment that he reviewed and accepted the terms and conditions contained in the Wireless Customer agreement, including its limitations on liability. Signed Electronic Acknowledgment, Appendix 6, ATT-WIL-01564.

For each of these reasons, Mr. Williams' damage claims for emotional distress must be dismissed as a matter of law.

E.    **The Court should rule as a matter of law that the economic loss rule precludes Mr. Williams from recovering any economic damages through his tort claims.**

The economic loss rule prohibits a Mr. Williams from recovering economic losses through

tort claims, where those losses are governed by contract. *Kelly v. Ga.-Pac. LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009); *Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.*, 246 N.C. App. 27, 33, 783 S.E.2d 35, 39 (2016). Here, it is undisputed that AT&T's obligations to Mr. Williams were entirely based on their contractual relationship for wireless telephone services. Complaint (ECF 2) ¶¶ 1, 5, 10-11, 16-17, 35, 120 (Mr. Williams describing his relationship with AT&T as "customer, plan, account, subscriber"); *see also* Williams Depo., Appx. 1 at 70:6-10. So, as a matter of law, Mr. Williams cannot recover economic losses through any tort claim, and his negligence, negligent supervision and UDPTA counts should be dismissed.

In North Carolina, the economic loss rule bars tort claims where there is an operative contract between the parties to a dispute. *Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 376 N.C. 54, 852 S.E.2d 98 (2020) (stating that North Carolina has long refused to recognize breach of contract claims disguised as tort claims and applied the economic loss rule to bar a plaintiff's tort claims against a manufacturer where the subject matter of the contract caused the alleged injury); *Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992) ("Absent the existence of a public policy exception, as in the case of contracts involving a common carrier, innkeeper or other bailee, a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract.")

In seminal case of *North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co. (Ports Authority)*, 294 N.C. 73, 240 S.E.2d 345 (1978), the North Carolina Supreme Court analyzed a case where a state agency entered a services contract with a general contractor for the construction of a transit shed and a warehouse. *Ports Auth.*, 294 N.C. at 78, 240 S.E.2d at 347-49. The general contractor then entered a subcontract with a roofing company to construct the roofs on the two buildings. *Id.* Fry manufactured and supplied the materials in constructing the roofs. After the state agency took possession of the transit shed and warehouse, the roofs leaked. *Id.* The state agency sued the general contractor, the roofing subcontractor, and Fry. Among other claims, the

state agency alleged that the general contractor and the roofing subcontractor negligently performed the construction services required. *Id.* The North Carolina Supreme Court applied the economic loss rule and held that plaintiff failed to state a negligence claim against either the general contractor or the roofing subcontractor. *Id.* at 87, 240 S.E.2d at 351,353.

Likewise, this Court in *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009), a homeowners filed suit against a house trim manufacturer for purely economic damages where the homeowner had a warranty remedy against the manufacturer and, likewise dismissed the homeowners' claims for unfair and deceptive trade practices because plaintiffs merely restated their breach of warranty claims attempting to manufacture an unfair and deceptive trade practice claim. The court in *Kelly* stated that under North Carolina law, a breach of contract is insufficient to state an unfair and deceptive trade practice claim and that even if the breach of contract is intentional, does not rise to the level of an unfair and deceptive trade practice claim. *Id.* at 799.

Here, there relationship between Mr. Williams and AT&T was a contractual relationship based on the Wireless Customer Agreement. Because the relationship between the parties is governed by this contract, Mr. Williams' tort claims for violation of the North Carolina unfair trade practices act (Count II), negligence (Count III) and negligent supervision (Count IV) must be dismissed. *See Beaufort Builders, Inc.*, 246 N.C. App. at 32-38, 783 S.E.2d at 39–42 (applying the economic loss rule to bar a negligence claim where the denial of a occupancy permit for the contract's subject matter—a church building—constituted the plaintiff's alleged injury). Because the subject matter of Mr. Williams' complaint is the subject matter of the contract, the law of contract, and not of tort, applies, barring these tort claims.

For this straightforward reason, the Court should rule as a matter of law that Mr. Williams cannot recover any alleged economic losses under Counts II, III and IV of his complaint—*i.e.*, for violation of UDTPA, negligence and for negligent supervision—because such recovery is barred by North Carolina's economic loss rule.

**F.     The Court should grant AT&T's motion for summary judgment as to Mr. Williams' federal claims.**

Mr. Williams asserted this Court's jurisdiction based, in part, on federal question jurisdiction arising from two federal statutory claims: violations of the Federal Communications Act ("FCA") for unauthorized disclosure of Customer Proprietary Information ("CPNI") (Count I) and violation of the Computer Fraud and Abuse Act ("CFAA") (Count VI). Complaint (ECF 2), ¶¶ 15, 175-79, 228-35. However, both of Mr. Williams' federal claims fail as a matter of law and there is no genuine issue of material fact in dispute as to either. First, Mr. Williams cannot prove AT&T failed to protect or permitted access to any of his CPNI in violation of the FCA, nor can he show any damages purportedly resulting from an AT&T employee viewing his CPNI during the SIM swaps at issue. Second, Mr. Williams cannot prove that AT&T violated the CFAA by exceeding authorized access to its own computer systems in making the SIM changes to Mr. Williams' AT&T account.

As to the FCA violation, Mr. Williams asserts a claim against AT&T for (1) violation of the Federal Communication Act, 47 U.S.C. § 222(a) for failing to protect the confidentiality of Mr. Williams' CPNI, and (2) violation of 47 U.S.C. § 222(c) for using, disclosing, and/or permitting access to Mr. Williams' CPNI without the notice, consent, and/or legal authorization required under the FCA. Complaint, (ECF 2), at ¶¶ 94, 176-177.

Mr. Williams has not produced any evidence that any AT&T employee accessed or disclosed his CPNI. As AT&T's witnesses testified, a SIM swap does not involve the transfer of a customer's SIM card to the fraudsters and/or exposure or access to any CPNI. A SIM swap simply entails registering an existing number of a cell phone on a new SIM card. In an unauthorized SIM swap, only the customer's wireless telephone number gets transferred to the SIM that is in hacker's wireless telephone device, and the fraudsters take over the phone number. A SIM swap alone is not a gateway to CPNI or any other personally identifying information or communications. Hill Depo. Appx. 5, at 89:15-90:12 (a SIM swap moves the wireless phone number from SIM A to SIM B); Scheder Depo., Appx. 4, at 46:21- 48:25 ████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████; 157:25-158:9 ("[CPNI]

includes information about what types of services the customer has, rate plans, features on the

account, billing data"). To state it more plainly, SIM swaps do not provide the criminals with

personal data about Mr. Williams; only with access to and use of his phone number for telephone

calls and texts after the SIM swap. Mr. Williams' telephone number, which is all the information

the hackers obtained from AT&T, is not CPNI. 47 U.S.C. § 222 (h)(1)(A). ████████████████

████████████████████████████████████████████████

████████████████████████ Valerie Scheder Depo., Appx. 4, at 40:25-41:7 and 46:21-48:25.

As a result, Mr. Williams cannot prove that AT&T permitted access to any of his personal data,

much less disclosure of the CPNI specifically protected by Section 222. *See* 47 U.S.C. §

222(h)(1)(A); *Verizon Nw., Inc. v. Showalter*, 282 F. Supp. 2d 1187, 1189 (W.D. Wash. 2003) ("CPNI

includes information about calls made and received such as whether they were local or long

distance, time of day of the call, the originating and destination phone numbers, and whether the

call was answered or the line was busy."). In addition, Mr. Williams hasn't produced any evidence

to show he suffered any damages because an AT&T employee incidentally viewed his CPNI while

effectuating the SIM swaps. As a result, the FCA claim (Count I) should be dismissed.

The Court should also grant summary judgment as to Mr. Williams' other federal claim, for

violation of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act (Count VI). The CFAA states

that a person who "intentionally accesses a computer without authorization or exceeds authorized

access, and thereby obtains information from any protected computer," can be sued for economic

damages. 18 U.S.C. §§ 1030(a)(2)(C), 1030(g). The phrase "exceeds authorized access" is statutorily

defined as "access[ing] a computer with authorization and…us[ing] such access to

obtain…information in the computer that the accesser is not entitled so to obtain." *Id.* §

1030(e)(6). Thus, under the plain terms of the statute, a person can be sued for (1) intentionally

"access[ing] a computer without authorization" to obtain information or (2) intentionally

"access[ing] a computer with authorization" and then using that access to obtain information that

the accesser was not entitled to obtain. *See Van Buren v. United States*, 141 S.Ct. 1648, 1654-56, 1658, *on remand*, 5 F.4th 1327 (11th Cir. 2021).

Here, Mr. Williams alleges that AT&T—through its employees— "accessed [his] mobile device, and intentionally and/or negligently assisted others in accessing his mobile device, without [his] authorization, in order to assist hackers into [*sic*] stealing cryptocurrency." Complaint (ECF 2), ¶ 230. But Mr. Williams' CFAA action is fatally flawed for several reasons.

First, Mr. Williams alleges that AT&T acted "intentionally and/or negligently." But under the CFAA, there is no cause of action for "negligently" accessing a computer, or for "negligently assist[ing] others" in accessing a computer. So, the "negligently" portion of Mr. Williams' CFAA action must be dismissed as a matter of law.

Second, Mr. Williams can produce no evidence that AT&T "intentionally…assisted others in accessing his mobile device…in order to assist hackers into [*sic*] stealing cryptocurrency." AT&T performed the SIM swaps at issue when they were requested. But the parties' service agreement states plainly that AT&T may make changes to a customer's service if those changes are requested by the customer or authorized user who presents the subscriber's information to AT&T. *See* WCA, Appx. 3, §§ 1.10(b), 4.3. AT&T's performance of the requested SIM swaps does not amount to intentionally "assist[ing] hackers" to steal Mr. Williams' money or information.

Third, Mr. Williams alleges that the "information" that was wrongfully obtained from his wireless telephone was the information that was used by "hackers" for the purpose of accessing his online accounts and "stealing cryptocurrency." But Mr. Williams does not allege—and he can produce no evidence—that AT&T ever had or obtained any of his sensitive personal information to provide to the hackers. In other words, regardless of whether AT&T acted with or without authorization in performing the requested SIM swaps, Mr. Williams cannot prove that AT&T intentionally accessed his wireless telephone "and thereby obtain[ed] information"—as is required for a CFAA action against AT&T. *See* 18 U.S.C. § 1030(a)(2)(C). The only information that was "obtain[ed]." if at all, was obtained by third-party hackers—not by AT&T, and it was not obtained from Mr. Williams' SIM card or telephone number, but from third party online accounts that had

nothing to do with AT&T.

Finally, the Supreme Court has recently held that the CFAA provides only a narrow civil remedy for "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." *Van Buren*, 141 S.Ct. at 1660. The CFAA's provision for civil remedy is not meant for "remediating 'misuse' of sensitive information," where there is no direct harm to the computer system itself. *Ibid.* (holding defendant's misuse of information did not violate CFAA because his actions "did not impair…data" or "otherwise harm the database system itself"). Here, as in *Van Buren*, AT&T's actions (*i.e.*, performing the SIM swaps) did not destroy or corrupt any wireless telephone system, file, or data. Instead, following the SIM swaps, third-party hackers purportedly obtained and misused Mr. Williams' private information. Mr. Williams alleges that the hackers took control over Mr. Williams' phone number and purportedly used his phone number to change his passwords so they could access his various online accounts, such as his email accounts and cryptocurrency accounts. *See* Complaint (ECF 2), ¶¶ 230, 232-233. Even if this activity could somehow be attributed to AT&T, this misuse of sensitive information does not constitute the narrow type of harm that the CFAA is designed to remedy. *See Van Buren*, 141 S.Ct. at 1159-1160. As a result, Williams' CFAA claim against AT&T cannot be sustained as there is not a genuine issue of triable fact or law.

For these reasons, the Court should grant AT&T's summary judgment motion as to both of Mr. Williams' federal claims: Count I, for violation of the FCA, and Count VI, for violation of the CFAA.

> ### G. The Court should also grant summary judgment as to Mr. Williams' claim for violation of North Carolina's Anti-Hacking Statute (Count V).

Mr. Williams has also asserted a claim against AT&T for violation of North Carolina's Anti-Hacking Statute, N.C. Gen. Stat. § 1-539.2A, which provides a private right of action for those injured by a violation of § 14-458, North Carolina's criminal trespass statute. Complaint (ECF 2), ¶¶ 221-227. The Court previously held that Mr. Williams had pleaded a valid claim under this section. Order (ECF 20) at pp. 11-12. But now that discovery has concluded, it is apparent Mr.

Williams cannot establish the elements of such a claim and this count must be dismissed.

Section 14-458 states:

§ 14-458. Computer trespass; penalty.

(a) Except as otherwise made unlawful by this Article, it shall be unlawful for any person to use a computer or computer network without authority and with the intent to do any of the following:

(1) Temporarily or permanently remove, halt, or otherwise disable any computer data, computer programs, or computer software from a computer or computer network.

(2) Cause a computer to malfunction, regardless of how long the malfunction persists.

(3) Alter or erase any computer data, computer programs, or computer software.

(4) Cause physical injury to the property of another.

(5) Make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs, or computer software residing in, communicated by, or produced by a computer or computer network.

(6) Falsely identify with the intent to deceive or defraud the recipient or forge commercial electronic mail transmission information or other routing information in any manner in connection with the transmission of unsolicited bulk commercial electronic mail through or into the computer network of an electronic mail service provider or its subscribers.

For purposes of this subsection, a person is "without authority" when (i) the person has no right or permission of the owner to use a computer, or the person uses a computer in a manner exceeding the right or permission, or (ii) the person uses a computer or computer network, or the computer services of an electronic mail service provider to transmit unsolicited bulk commercial electronic mail in contravention of the authority granted by or in violation of the policies set by the electronic mail service provider.

N.C. Gen. Stat. § 14-458 (1995).

There is simply no evidence that any AT&T employee who accessed AT&T's computer systems to perform any of the SIM swaps connected to Mr. Williams acted with any intent to

perform any of the prohibited actions in § 14-458(a)(1)-(6), let alone to cause injury or harm to Mr. Williams. Even mere negligence by AT&T employees (such as failing to read account notes cautioning against changes to Mr. Williams' account or falling for criminal phishing activity on Mr. Williams' account) is not sufficient to establish a violation of § 14-458, which requires intent to cause the enumerated harms. N.C. Gen. Stat. § 14-458. Moreover, the mere processing of a SIM swap by an AT&T employee is not a suspicious or improper activity: AT&T corporate witness Valerie Scheder testified that SIM swaps are a regular part of AT&T's provision of wireless telephone services to its customers. *See* Scheder Depo., Appx. 4, at 36:15-38:17 and 72:15-76:14. While the criminals targeting Mr. Williams may have sought to commit criminal trespass in Mr. Williams' AT&T wireless telephone and other online accounts, there is no evidence that any AT&T employee acted in violation of § 14-458. As a result, summary judgment as to Count V is proper.

### H.      Mr. Williams' Claims Fail for Lack of Causation

Finally, the Court should dismiss Mr. Williams' claims for lack of proximate cause. Under North Carolina law, AT&T can be held liable only for its acts or omissions that proximately caused Mr. Williams' injury. *Moore v. Archie*, 31 N.C. App. 209, 212, 228 S.E.2d 778, 780 (1976). And proximate cause is defined as "a cause which in natural and continuous sequence, *unbroken by any new and independent cause*, produced the plaintiff's injuries, and without which the injuries would not have occurred." *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984) (emphasis added). But here, Mr. Williams seeks to hold AT&T liable for the actions of an unidentified person or persons who purportedly engaged in a series of intentional criminal acts to harass, extort and steal from Mr. Williams. Complaint (ECF 2), ¶204. And some of the actions Mr. Williams complains of did not involve a SIM swap at all: Mr. Williams seeks to hold AT&T liable for anonymous text messages he received seeking to extort him and threaten to kidnap his daughter. Williams Depo., Appx. 1 at 69:9-70:4. Not only is there no evidence that these unidentified persons have any relationship to AT&T, there is no evidence that SIM swaps played any role in these incidents at all. *Id.* Rather, the intervening criminal acts of these third parties break

19

any potential causal chain and preclude liability for the initial actor, if the plaintiff's injury was caused by the intervening criminal acts. *Holt v. N.C. Dep't of Transp.*, 245 N.C. App. 167, 176, 781 S.E.2d 697 (2016) (citing *Tise v. Yates Constr. Co.*, 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997)).

According to Mr. Williams' own testimony, his alleged damages (losses from cryptocurrency accounts, crypto-mining lost profits, and emotional distress) were caused by the intervening criminal acts of third parties, not by AT&T. *See, e.g., id.* at 203:2-12 (linking emotional distress to threats of kidnapping), 248:14-249:7 (same), 250:16-252:3 (admitting individuals who "targeted" him are "responsible" for "threaten[ing]" his life and "threaten[ing] to kidnap [his] kids"). Because under North Carolina law AT&T cannot be held liable for harms caused by the intervening criminal acts of third parties, the Court should rule as a matter of law that Mr. Williams cannot recover from AT&T for these damages. In this instance, that would include all Mr. Williams' damages, as Mr. Williams has no damages directly related to AT&T's acts or omissions in performing the SIM swaps. On each occasion, AT&T promptly restored Mr. Williams' wireless telephone service. Williams Depo., Appx. 1, at 34:17-35:8; 208:5-209:4.

The Court previously rejected a similar argument when it denied AT&T's motion to dismiss. *See* Order (ECF 20) at p. 8. But in that order the Court ruled that Mr. Williams had sufficiently pleaded proximate cause—as it generally applies to all of Plaintiff's claims for damages—because "the SIM swaps" themselves were reasonably foreseeable, and because "the criminal conduct involved in a SIM swap is not 'independent,' but is facilitated by the wireless carrier." *Ibid.* Importantly, even if this is true and AT&T's involvement in the SIM swaps themselves could have proximately caused some of Mr. Williams' damages, it is now clear after discovery that his claim for damages is based on the actions of the criminals, not AT&T. *See, e.g.,* Williams Depo., Appx. 1 at 70:15-18, 203:2-12, 248:14-249:7, 251:22-252:3, 262:3-10. These criminal actions were entirely independent—they were not "facilitated" by AT&T in the same way that the SIM swaps themselves may have been "facilitated" by AT&T. And there is no evidence that these criminal actions were foreseeable in the same way that the SIM swaps themselves may have been foreseeable. If the causal chain begins with AT&T's actions, followed by the SIM swaps,

followed by the criminal threats to Mr. Williams, which he alleges resulted in his emotional distress, and the persistent hacking of Mr. Williams' online, financial and social media accounts, then these criminal acts were independent intervening criminal acts that broke the causal chain and caused a particular harm that cannot be attributed to AT&T as the initial actor. *See Holt*, 245 N.C. App. at 176.

For these reasons, the Court should rule as a matter of law that Mr. Williams cannot recover damages against AT&T that were caused by the intervening criminal acts of third parties.

## V.    CONCLUSION

For each of the foregoing reasons, AT&T respectfully requests that the Court to grant summary judgment in its favor as to each count in the Complaint; or grant partial summary judgment in the alternative as to any claims, parts of claims or items of damages which the Court finds are not genuinely at issue pursuant to Fed. R. Civ. Proc. 56.

Respectfully submitted this 30th day of March 2022.

/s/    Joseph S. Dowdy
Joseph S. Dowdy (N.C. State Bar No. 31941)
KILPATRICK TOWNSEND & STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com

Michael Breslin (GA State Bar No. 142551)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
Email: mbreslin@kilpatricktownsend.com

Nancy L. Stagg (CA State Bar No. 157034)
KILPATRICK TOWNSEND & STOCKTON LLP
12255 El Camino Real, Suite 250
San Diego, CA  92130
Telephone: (858) 350-6156
Facsimile: 858) 350-6111
Email:  nstagg@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on date set out below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| SHUMAKER LOOP & KENDRICK LLP | WITHERS BERGMAN LLP |
| Terence S. Reynolds | Joseph Gallo |
| treynolds@shumaker.com | Joseph.gallo@withersworldwide.com |
| Lucas D. Garber | Christopher LaVigne |
| lgarber@shumaker.com | christopher.lavigne@withersworldwide.com |
| 101 South Tyron Street | Martin J. Auerbach |
| Suite 2200 | Martin.auerbach@withersworldwide.com |
| Charlotte, North Carolina 28280 | 430 Park Avenue, 10th Floor |
| | New York, New York 10022-3505 |
| *Counsel for Jason Williams* | *Counsel for Jason Williams* |

This the 30th day of March, 2022.

/s/ Joseph Dowdy
Joseph S. Dowdy

22