# EXHIBIT B

# [PUBLICLY AVAILABLE REDACTED VERSION]

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

JASON WILLIAMS,

    Plaintiff,

vs.

AT&T MOBILITY LLC,

    Defendant.

Case No. 5:19-cv-00475-BO

**DEFENDANT AT&T MOBILITY LLC'S SEPARATE STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT IN THE ALTERNATIVE
(LOCAL CIVIL RULE 56.1)**

## AT&T's Statement of Undisputed Material Facts

1. Plaintiff Jason Williams ("Mr. Williams") was an AT&T Mobility wireless telephone subscriber during the relevant period of November 5, 2018 through February 6, 2019. Appendix 1, Jason Williams Depo., at 271:12-16 (AT&T customer for over 10 years), 73:9-12 (terminated AT&T service in February 2019) and 70:6-10. See also, Complaint (ECF 2) at ¶¶ 1,5, 10-11, 16-17, 35, 120 (Mr. Williams describing his relationship with AT&T as "customer, plan, account, subscriber").

2. Mr. Williams' AT&T wireless telephone service was subject to the terms and conditions of the written Wireless Customer Agreement ("WCA"). At true and correct copy of the two WCAs in effect during the relevant period (March 2018 -Nov. 2018, Nov. 2018-Feb. 2019) are attached as Exhibit 3 to the Appendix (no changes to the relevant sections between versions). Appendix 3, WCAs.

3. Mr. Williams executed an acknowledgment that he reviewed and accepted the terms and conditions contained in the Wireless Customer agreement, including its limitations on liability. Appendix 6, Signed Electronic Acknowledgment, ATT-WIL-01564.

4. §4.1 of the WCA states:

> Unless prohibited by law, AT&T isn't liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, Services, Software, or Devices provided by or through AT&T, including loss of business or goodwill, revenue or profits, or claims of personal injuries.

Appendix 3, Wireless Customer Agreement, § 4.1, What Are The Limitations On Service And Liability?.

5. The WCA also states at §4.1:

> AT&T MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, ACCURACY, SECURITY, OR PERFORMANCE REGARDING ANY SERVICES, SOFTWARE OR GOODS, AND IN

2

NO EVENT SHALL AT&T BE LIABLE, WHETHER OR NOT DUE TO ITS OWN NEGLIGENCE, for any:

a. act or omission of a third party;
b. mistakes, omissions, interruptions, errors, failures to transmit, delays, or defects in the Services or Software provided by or through us;
c. damage or injury caused by the use of Services, Software, or Device, including use in a vehicle;
d. claims against you by third parties;
e. damage or injury caused by a suspension or termination of Services or Software by AT&T; or
f. damage or injury caused by failure or delay in connecting a call to 911 or any other emergency service.

Notwithstanding the foregoing, if your Service is interrupted for 24 or more continuous hours by a cause within our control, we will issue you, upon request, a credit equal to a pro-rata adjustment of the monthly Service fee for the time period your Service was unavailable, not to exceed the monthly Service fee. Our liability to you for Service failures is limited solely to the credit set forth above.

Unless prohibited by law, AT&T isn't liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, Services, Software, or Devices provided by or through AT&T, including loss of business or goodwill, revenue or profits, or claims of personal injuries.

To the full extent allowed by law, you hereby release, indemnify, and hold AT&T and its officers, directors, employees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by AT&T or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING IN WHOLE OR IN PART ROM THE ALLEGED NEGLIGENCE OF AT&T, or any violation by you of this Agreement. This obligation shall survive termination of your Service with AT&T. AT&T is not liable to you for changes in operation, equipment, or technology that cause your Device or Software to be rendered obsolete or require modification.

SOME STATES, INCLUDING THE STATE OF KANSAS, DON'T ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH. THEREFORE, THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS AGREEMENT GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

Appendix 3, WCAs, §4.1.

6. The WCA also states at §4.3 that AT&T does not guarantee security:

4.3 **Who Is Responsible For Security?**

> AT&T DOES NOT GUARANTEE SECURITY. Data encryption is available with some, but not all, Services sold by AT&T.

Appendix 3, WCAs, §4.3.

7. The AT&T WCA also states that AT&T may make changes to a person's device if those changes are requested by someone who presents the subscriber's information to AT&T. Appendix 3, WCA, §§ 1.10(b).

8. Between November 5, 2018 and February 6, 2019, six SIM swaps were performed on Plaintiff's AT&T wireless telephone. In each instance, AT&T restored his wireless telephone service after he complained to AT&T that he had not requested the SIM change. Appendix 1, Jason Williams Depo., at 178:13-180:12; 184:14-23; Appendix 4, Valerie Scheder Depo., at 115:11-125:5.

9. A SIM swap does not entail the transfer of the subscriber's SIM card. A SIM swap simply moves the subscriber's telephone number to a new SIM card, and a fraudulent SIM swap typically involves transfer of the customer's phone number to a SIM card that's inside a wireless device in possession of the fraudster. A SIM swap allows the person gaining control over the wireless device to make and receive voice calls and text messages using the subscriber's assigned wireless number after the swap. A SIM swap alone is not a gateway to CPNI or any other personally identifying information or communications. Appendix 5, Ray Hill Depo., at 89:15-90:12 (a SIM swap moves the wireless phone number from SIM A to SIM B); Appendix 4, Valerie Scheder Depo., at 46:21-48:25 (████████████████████████████████████████████████████████████████████████) and 157:25-158:9 ("[CPNI] includes information about what types of services the customer has, rate plans, features on the account, billing data).

10. SIM swaps are a regular part of AT&T's provision of wireless telephone services to its customers. See Appendix 4, Valerie Scheder Depo., at 36:15-38:17 and 72:15-76:14.

11. Customer Proprietary Network Information ("CPNI") includes information about calls made and received such as whether they were local or long distance, time of day of the call, the originating and destination phone numbers, and whether the call was answered or the line was busy. Appendix 4, Valerie Scheder Depo., at 158:2-9; 47 U.S.C. § 222 (h)(1)(A) (definition of CPNI in Federal Communications Act).

12. CPNI is not transferred by AT&T to the person gaining control over the subscriber's wireless telephone number through a SIM swap. In fact, a SIM swap does not involve the transfer of any customer information –it simply entails registering an existing number of a cell phone on a new SIM card. A SIM swap alone is not a gateway to CPNI or any other personally identifying information or communications. Appendix 5, Ray Hill Depo., at 89:15-90:12 (a SIM swap moves the wireless phone number from SIM A to SIM B); Appendix 4, Valerie Scheder Depo., at 46:21- 48:25 (█████████████████████████████████████████████████████████████████████████████████████████) and 157:25-158:9 ("[CPNI] includes information about what types of services the customer has, rate plans, features on the account, billing data). 47 U.S.C. §222 (h)(1)(A).

13. Apollo Kids Mining, LLC ("AKM") is an active Limited Liability Company registered in Delaware. Appendix 1, Jason Williams Depo., at 25:19-24, 211:4-13, 231:25-235:25, 237:5-10, 291:20-294:9; Appendix 7, State of Delaware Department of State website entity registration details, March 25, 2022.

14. AKM conducted the crypto-mining activities at issue in this action. It owned the mining rigs. Appendix 1, Jason Williams Depo., at 25:19-24, 35:5-8 (admitting "SIM swap attacks…most specifically [affected] Apollo Kids Mining") and 231:25-235:25.

15. AKM is not an AT&T subscriber and Mr. Williams never advised AT&T that AKM

5

was relying on AT&T's security practices for its crypto-mining activities. Appendix 1, Jason Williams Depo., at 267:14-18 and 268:2-10.

16. Mr. Williams does not know who sent him threatening text messages, hacked his social media, email, online storage account, cryptocurrency and financial accounts. Mr. Williams has no evidence that any AT&T employee was involved in these threats or hacks. Appendix 1, Jason Williams Depo., at 59:18-61:6; 63:8-64:2.

17. Mr. Williams was reimbursed by First Citizens Bank for all amounts transferred from his First Citizens account to his Coinbase account. Appendix 1, Jason Williams Depo., at 238:15-239:4.

18. Mr. Williams did not seek or obtain any medical or psychological treatment for emotional distress. Mr. Williams does not have any receipts for out-of-pocket expenses related to any claim for emotional distress. Mr. Williams does not have a diary or other record of his alleged emotional distress. Appendix 1, Jason Williams Depo. at 254:04-254:11; 255:06-255:12 (no counseling or medical treatment) and 252:5-10 (no diary).

19. Mr. Williams' complaints of unauthorized SIM swaps leading to alleged losses from cryptocurrency online accounts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Appendix 4, Valerie Scheder Depo., 29:8-21; 30:14-33:25, 36:15-38:17; 39:2-40:3, 45:3-48:25, 52:4-53:5, 57:17-58:6, 72:15-76:14, 77:23-85:15, 86:9-101:1, 104:6-109:2, 109:21-113:22, 177:6-178:15 and 190:4-191:2 (describing series of actions AT&T undertook in response to reports by AT&T customers complaining that SIM swaps being used to gain control of their wireless telephone numbers to steal from their cryptocurrency and other online accounts).

-6-

Case 5:19-cv-00475-BO   Document 127-3   Filed 03/30/22   Page 7 of 9

Respectfully submitted this 30th day of March, 2022.

/s/ Joseph S. Dowdy
Joseph S. Dowdy (N.C. State Bar No. 31941)
KILPATRICK TOWNSEND & STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com

Michael Breslin (GA State Bar No. 142551)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
Email: mbreslin@kilpatricktownsend.com

Nancy L. Stagg (CA State Bar No. 157034)
KILPATRICK TOWNSEND & STOCKTON LLP
12255 El Camino Real, Suite 250
San Diego, CA 92130
Telephone: (858) 350-6156
Facsimile: (858) 350-6111
Email: nstagg@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on date set out below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

SHUMAKER LOOP & KENDRICK LLP
Terence S. Reynolds
treynolds@shumaker.com
Lucas D. Garber
lgarber@shumaker.com
101 South Tyron Street
Suite 2200
Charlotte, North Carolina 28280

*Counsel for Plaintiff Jason Williams*

WITHERS BERGMAN LLP
Joseph Gallo
Joseph.gallo@withersworldwide.com
Christopher LaVigne
christopher.lavigne@withersworldwide.com
Martin J. Auerbach
Martin.auerbach@withersworldwide.com
430 Park Avenue, 10th Floor
New York, New York 10022-3505

*Counsel for Plaintiff Jason Williams*

This the 30th day of March, 2022.

/s/ Joseph Dowdy
Joseph S. Dowdy