IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

---

JASON WILLIAMS,

        Plaintiff,

vs.

AT&T MOBILITY LLC,

        Defendant.

---

Case No. 5:19-cv-00475-BO

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF JASON WILLIAMS' MOTION TO COMPEL
DEFENDANT AT&T MOBILITY LLC TO PRODUCE DOCUMENTS**

**Withers Bergman LLP**
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ........................................................................................................2

ARGUMENT .................................................................................................................................5

I. AT&T Has Not Met Its Burden of Demonstrating that the 2018 Investigation Is Privileged ...........................................................................................................5

II. AT&T's Investigative Findings of Fact Are Discoverable Pursuant to Fed. R. Civ. P. 26(b)(3) ...............................................................................................................7

III. In the Interest of Fairness and Justice, Plaintiff's Motion to Compel Should be Deemed Timely ..................................................................................................9

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991*,
    33 F.3d 342 (4th Cir. 1994) ....................................................................................... 7

*Phillips v. Dallas Carriers Corp.*,
    133 F.R.D. 475 (M.D.N.C. 1990) ............................................................................... 7

*Republican Party of N. Carolina v. Martin*,
    136 F.R.D. 421 (E.D.N.C. 1991) ................................................................................ 7

*Suggs v. Whitaker*,
    152 F.R.D. 501 (M.D.N.C. 1993) ............................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 26(b)(3) ................................................................................................ 1, 4, 7

# INTRODUCTION

Plaintiff Jason Williams moves, pursuant to Federal Rules of Civil Procedure 26, 34 and 37, and the Local Rules of the Eastern District of North Carolina 7.1, 26.1 and 34.1, to compel Defendant AT&T Mobility LLC's ("AT&T") production of responsive and relevant documents, or relevant portions thereof, that AT&T claims are privileged. Plaintiff is seeking the production of three documents that AT&T included in its privilege log, each of which purportedly contains the findings of AT&T's investigations into the facts concerning Plaintiff's claims that his AT&T cellular phone account was subject to unauthorized SIM swaps. By making this motion, Plaintiff is not seeking the legal opinions, instructions, or conclusions of AT&T's lawyers, or even the opinions or conclusions of the non-legal professionals that purportedly drafted the investigative documents at issue. Instead, Plaintiff is seeking to obtain the same facts about his claims, and AT&T's defenses, that are available to AT&T. Testimony from AT&T's own witnesses indicates that its investigators may have factual information that its 30(b)(6) witness was unable to testify about. Pursuant to Fed. R. Civ. P. 26(b)(3), to properly prosecute this case through summary judgment practice and trial, Plaintiff has a substantial need to review the factual information uncovered by AT&T's investigators in connection with his SIM swap claims, and Plaintiff has no way to obtain that factual information from a different source than the purportedly privileged investigative documents, without undue hardship.

Plaintiff only brings this motion to compel as a last resort, after engaging in good faith efforts to resolve this dispute through the meet and confer process, which continued until early April 2022. In reliance on the parties' meet and confer efforts, and because AT&T was still producing documents and other information past the March 30, 2022, discovery deadline, Plaintiff did not make a motion to compel the production of AT&T's investigative documents prior to that deadline, and instead continued to attempt to resolve this dispute directly with AT&T. Despite this, and after the March 30, 2022 deadline passed, AT&T recently took the position that the parties' dispute over these documents was no

longer "live," and that any meet and confer process would be pointless. In response to AT&T's bait and switch, Plaintiff now has no choice but to seek relief from the Court regarding AT&T's investigative documents.

## FACTUAL BACKGROUND

On June 5, 2020, Plaintiff served AT&T with its First Set of Document Requests, included a request for "[a]ll Documents and Communications Concerning any actual or attempted changes to the SIM Card(s) associated with the Williams Account(s)...." (*See* April 28, 2022 Declaration of Christopher LaVigne ("LaVigne Decl."), Ex. A at 10, Request No. 3.) In response to the Plaintiff's discovery requests, AT&T produced account notes which purport to show changes made to Plaintiff's cell phone account, including unauthorized changes to his SIM card made by AT&T employees and agents. (*See e.g.* LaVigne Decl., Ex. B at ATT-WIL-00678, 675, 668, 666, 656, 652, 647, 643, 639.)

On November 17, 2021, AT&T employee Ray Hill gave testimony in a deposition in his personal capacity and as one of AT&T's Fed. R. Civ. P. 30(b)(6) designated witnesses on the topics of: (1) "AT&T's knowledge Concerning [Mr. Williams'] Claims" and (2) "AT&T['s] knowledge Concerning Mr. Williams' account and account notes." (*See id.*, Exs. C and D.) Mr. Hill testified that Plaintiff's account notes were his only source of information about the SIM swaps on Plaintiff's account, and that he had not seen Plaintiff's account notes prior to AT&T's attorneys provided them to him in preparation for his deposition. (*See* LaVigne Decl., Ex. E at 25:7-9; 30:2-12; 170:12-15.) When Mr. Hill was asked a series of questions about who might have information regarding Mr. Williams' SIM swaps that came from another source outside of the account notes, Mr. Hill eventually testified: "Robert Arno or [another Asset Protection] investigator." (*See id*. at 170:18-172:1.)

On November 24, 2021, Plaintiff served AT&T with a deposition notice seeking testimony from Robert Arno. (*See* LaVigne Decl., Ex. F.) In an accompanying meet and confer letter, Plaintiff represented that it was seeking Mr. Arno's testimony based on Mr. Hill's inability to testify about

factual information beyond what was in the account notes, and demanded that AT&T produced all documents regarding its investigations into Mr. Williams' claims. (*See* LaVigne Decl., Ex. G at 1.) In a December 7, 2021 letter, AT&T objected to Mr. Arno's deposition and represented that all of AT&T's internal investigative documents were privileged and not subject to discovery. (*See* LaVigne Decl., Ex. H at 1-3.) Ultimately, after additional meet and confer communications between the parties, AT&T agreed to Mr. Arno's deposition, but represented that "…much if not all of Mr. Arno's knowledge relating to any investigation into Mr. Williams account and any SIM changes is privileged as attorney work product and attorney client privilege." (*See* LaVigne Decl., Ex. I at 1.)

On February 15, 2022, AT&T provided an amended privilege log[1] to Plaintiff containing only three entries, all of which concern investigations into the SIM swaps on Plaintiff's account. (*See* LaVigne Decl., Ex. J. ("AT&T's Amended Log"); Ex. K at 3 (AT&T's counsel describing these entries as related to AT&T's investigations in Plaintiff's claims.) The first two entries of the log, ATT PRIV_001-ATT PRIV_009 and ATT PRIV_010-ATT PRIV_19, concern an investigation that purportedly took place on or about December 5, 2018 (the "2018 Investigation"), before Plaintiff filed this lawsuit. The third entry on the log, ATT PRIV_20-ATT PRIV_30, concerned an investigation that purportedly took place on or about November 21, 2019 (the "2019 Investigation"). According to AT&T's Amended Log, Robert Arno authored the 2019 Investigation, and reviewed the 2018 Investigation as part of his preparation of the 2019 Investigation.

Mr. Arno's deposition took place on February 28, 2022, the final day of the discovery period. During the deposition, AT&T's attorney objected to questions regarding the scope of the Mr. Arno's 2019 Investigation, including who he spoke to and what documents he reviewed as part of that

---

[1] AT&T provided a previous version of the privilege log to Plaintiff on January 27, 2022, but later amended it to include more information.

investigation. (*See e.g.* LaVigne Decl., Ex. L at 88:5-90:17.) After Mr. Arno's deposition, on March 17, 2022, Plaintiff sent AT&T a meet and confer letter regarding a number of discovery issues, including the three documents referred to on AT&T's Amended Log. Plaintiff sought the production of the investigative documents, or at least portions thereof, because, among other things, (1) AT&T had not met its burden of demonstrating that the 2018 Investigation was privileged, and (2) he has a substantial need for the factual findings in the 2018 Investigation and 2019 Investigation pursuant to Fed. R. Civ. P. 26(b)(3). (*See id.*, Ex. M at 2-3.) In a March 25, 2022 response letter, AT&T declined to produce the documents regarding the 2018 Investigation and 2019 Investigation, and represented to Plaintiff's counsel: "If you would like to schedule a call to discuss these issues further by telephone, please suggest some convenient dates and times." (*See* LaVigne Decl., Ex. K at 3-4.)

In response to and reliance on AT&T's representation that it would further meet and confer on these issues, Plaintiff did not seek to extend the March 30, 2022 deadline for the parties to bring pre-trial motions. On March 29, 2022, Plaintiff's counsel proposed a meet and confer call on that same day. (*See* LaVigne Decl., Ex. N at 5-6.) On the same day, the parties agreed to speak the following morning, March 30, 2022. (*Id*. at 4-5.) On March 30, 2022, Plaintiff's counsel, Chris LaVigne, called AT&T's counsel, Nancy Stagg but the call went to voicemail. Mr. LaVigne left a voicemail indicating that while he was aware that the parties' motion deadline was that day, he did not object to the parties' counsel speaking the following day because Plaintiff was still waiting for AT&T to produce responsive documents (which were unrelated to AT&T's Amended Log), and the parties were still in the process of meeting and conferring regarding discovery issues, including AT&T's promised production of additional documents related to the SIM swaps on Plaintiff's account. (LaVigne Decl., ¶ 16.) On March 31, 2022, on or around 12:27 PM ET, Ms. Stagg called Mr. LaVigne and left her own voicemail, in which she discussed the parties' open discovery issues. In her voicemail, Ms. Stagg acknowledged

4

that AT&T still "owed [Plaintiff] the data documents [that Plaintiff had raised in his March 25 meet and confer letter]." Regarding the privilege dispute, Ms. Stagg stated: "I don't know that we have too much to talk about, but happy to have the discussion." (*Id.*, ¶ 17.)

On April 8, 2022, because the parties had not yet spoken after the March 29, 2022 email exchange regarding the privilege issues, Plaintiff emailed AT&T to reschedule the meet and confer call. (*See* LaVigne Decl., Ex. N at 4.) On April 11, 2022, AT&T responded:

> Always happy to schedule a call, and can do so on Wednesday, but based on the case motion deadline previously set by the court and our prior communications, the deadline to have brought a discovery motion was 3/30/2022. So I don't think there is any "live" discovery issue to meet and confer on at this point.

(*Id.* at 3.) In subsequent meet and confer efforts, AT&T reiterated its position that Plaintiff's time to file a discovery motion had expired, which made further meet and confer efforts futile. (*Id.* at 1-2.) Accordingly, Plaintiff had no choice but to file this motion to compel.

## ARGUMENT

### I. AT&T Has Not Met Its Burden of Demonstrating that the 2018 Investigation Is Privileged

As set forth above, AT&T's Amended Log referred to documents concerning two purported investigations: the 2018 Investigation and 2019 Investigation. The Amended Log's two entries regarding the 2018 Investigation, ATT PRIV_001-ATT PRIV_009 and ATT PRIV_010-ATT PRIV_19, concern documents that were created before the litigation, on December 5, 2018. (*See* LaVigne Decl., Ex. J.) The first such entry refers to a "Privacy Incident," and the second such entry refers to an "Asset Protection Event." (*Id.*) AT&T has asserted that each document is subject to Attorney/Client Privilege and is Attorney Work Product, but has failed to provide sufficient information to establish that either privilege ground applies to these documents.

In response to questioning regarding AT&T's Amended Log, Robert Arno provided ample testimony to demonstrate that "Privacy Incident" and "Asset Protection Event" documents are created

by non-lawyers in the ordinary course of AT&T's business, and that these categories of documents are not categorically privileged. Mr. Arno, who is not a lawyer, testified that he has created approximately ten "Privacy Incident" documents during his time at AT&T, including documents regarding SIM swaps, as part of his normal course of business as an investigator and a member of AT&T's Asset Protection team, and that he has never created a "Privacy Incident" document at the direction of an attorney. (*See e.g.* LaVigne Decl., Ex. O at 97:23-99:10.) Mr. Arno also testified that asset protection cases, which is how he characterized the "Asset Protection Event" entry in the log, were created by members of AT&T's Asset Protection team. (*See e.g.,* LaVigne Decl., Ex. P at 103:20-104:15.)

Consistent with Mr. Arno's testimony, AT&T has provided no information or evidence to establish that "Privacy Incident" and "Asset Protection Event" documents are de facto privileged. However, during the meet and confer process, AT&T claimed that these particular documents related to the 2018 Investigation are privileged because Plaintiff, during one of his visits to an AT&T store in Raleigh, verbally threatened to sue AT&T in connection with the SIM swaps on his account. (*See, e.g.*, LaVigne Decl., Ex. K at 3.) Outside of the context of justifying its privilege log, AT&T has never made this claim and has not produced any records or other evidence to substantiate this claim. Plaintiff has no recollection of threatening to sue AT&T during a visit to an AT&T store. (*See* April 28, 2022 Declaration of Jason Williams ("Williams Decl.") ¶¶ 2-3.) Moreover, Plaintiff testified at length about his communications with AT&T employees during his visits to the AT&T store in Raleigh, and there is no testimony regarding any purported threat of litigation. (*See* LaVigne Decl., Ex. Q at 201:9-207:16.) When Plaintiff raised these points during the meet and confer process (*see* LaVigne Decl., Ex. M at 2-3), AT&T responded without offering any information to substantiate its claim, and instead simply wrote: "Regarding your statement that there is no evidence Mr. Williams threatened litigation against

6

AT&T prior to August 9, 2019, Mr. Williams certainly knows what he stated to AT&T employees." (*See* LaVigne Decl., Ex. K at 3.)

If AT&T has additional information regarding its claim that the documents on its Amended Log related to the 2018 Investigation were created in response to a threatened litigation, it should have provided that information during the meet and confer process. Indeed, if there are documents regarding any purported threat of litigation made by Plaintiff before the lawsuit, such documents should have been provided to Plaintiff in response to his discovery requests, and cannot be relied upon now to prevent Plaintiff from obtaining relevant facts in discovery. In any event, absent any information to substantiate its claims that the first two entries of the 2018 Investigation were created in response to a threatened litigation, AT&T cannot meet its burden of establishing that the documents it seeks to withhold are privileged. *See In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 353 (4th Cir. 1994) ("The burden is on the party asserting the privilege to demonstrate the applicability of the asserted privilege."); *Republican Party of N. Carolina v. Martin*, 136 F.R.D. 421, 429 (E.D.N.C. 1991) (same).

## II. AT&T's Investigative Findings of Fact Are Discoverable Pursuant to Fed. R. Civ. P. 26(b)(3)

Pursuant to Fed. R. Civ. P. 26(b)(3), even if AT&T's documents related to its 2018 and 2019 Investigations were prepared in anticipation of litigation and/or trial, they may be discoverable upon Plaintiff's showing "that [he] has substantial need for the materials to prepare [his] case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See also Suggs v. Whitaker*, 152 F.R.D. 501, 507 (M.D.N.C. 1993) (ordering defendants to produce witness statements because plaintiffs had made a showing that could not obtain the substantial equivalent); *Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 480–81 (M.D.N.C. 1990) (same).

Plaintiff is a former AT&T cell phone customer, and he alleges that AT&T provided his SIM card to other individuals without his authorization. The privilege log and testimony from AT&T's witnesses indicate that AT&T conducted two investigations into the SIM swaps at the heart of Plaintiff's claims, and that those investigations include facts that are not contained in the notes for Plaintiff's account provided by AT&T. (*See* LaVigne Decl., Ex. J; Ex. E at 170:18-172:1.) In light of that evidence, Plaintiff's need to discover any additional facts contained in the account notes is substantial and clear. To the extent the documents on AT&T's Amended Log contain facts not contained in documents produced by AT&T, Plaintiff's inability to review those facts will unduly prejudice his ability to prosecute his claims.

Plaintiff is only seeking the production of the factual findings contained in reports (which were created by AT&T's non-lawyer investigators). Plaintiff is not seeking the production of any attorney-client communications (none of which were included on AT&T's Amended Log in any event). Nor is Plaintiff seeking the production of any thoughts, impressions, or opinions provided by attorneys, and does not object to AT&T redacting the documents on AT&T's Amended Log to the extent they contain such information.

Contrary to AT&T's representations in the meet and confer process (*see* LaVigne Decl., Ex. K at 3), Plaintiff cannot obtain the substantial equivalent of the factual findings in AT&T's investigative reports through other means. AT&T points to its account notes as a substantial equivalent; indeed, the account notes were the only source of AT&T's 30(b)(6) witness's testimony regarding the SIM swaps at issue in this case. (*See* LaVigne Decl., Ex. E at 170:12-15.) But the account notes only paint a partial picture of the events surrounding the SIM swaps on Plaintiff's account. Although the notes contain entries demonstrating when the SIM swaps took place, and which AT&T employees and agents effected those changes, there is no information in the notes or elsewhere in AT&T's production about

8

whether, for example, when and how any of those employees and agents escalated or reported the relevant events beyond entering them into the notes. There is also no information in the notes or elsewhere what repercussions (e.g., firing, referral to criminal authorities) faced by the employees that improperly SIM swapped Mr. Williams. Likewise, to the extent the AT&T employees and agents provided statements regarding the changes to Plaintiff's account, those statements are not in the account notes, or anywhere in AT&T's productions to date.

If AT&T's 2018 and 2019 Investigations relied on facts or information besides the facts and information contained in the account notes, Plaintiff has a substantial need to discover those facts and information to prepare for trial, and Plaintiff has no others means of obtaining that information without undue hardship. Accordingly, Plaintiff is entitled to the production of the documents related to 2018 and 2019 Investigations on AT&T's Amended Log, with appropriate redactions, notwithstanding AT&T's privilege designations.

### III. In the Interest of Fairness and Justice, Plaintiff's Motion to Compel Should be Deemed Timely

As set forth above, Plaintiff sought to resolve this discovery dispute without motion practice through his good faith meet and confer efforts, which extended past the Court's March 30, 2022, deadline for pre-trial motions. (*See generally* LaVigne Decl.) Plaintiff did not make this motion to compel before March 30 because the parties were actively meeting and conferring on this and other discovery issues up to and past that deadline, and Plaintiff was relying on AT&T's presumed good faith that it would continue to attempt to resolve any disputes after March 30. Indeed, AT&T produced responsive documents unrelated to this dispute on April 1, 2022, as a result of the parties' meet and confer efforts in the preceding weeks. However, once March 30 had passed, AT&T indicated that it no longer considered this discovery dispute to be a "live" issue and ended the possibility of meaningful meet and confer discussions. (*See* LaVigne Decl., Ex. N at 1-3.) AT&T should not be permitted to

9

Case 5:19-cv-00475-BO    Document 135    Filed 04/28/22    Page 12 of 14

"run out the clock" on a discovery dispute by offering to meet and confer, and then failing to do so after the motion deadline has passed.

The Court's consideration of Plaintiff's motion to compel would not prejudice AT&T. There is no trial date set, so resolving this discovery dispute will not require any rescheduling of trial dates (or pre-trial dates). The three investigative documents at issue have already been identified and collected by AT&T, so there is no material additional expense or cost associated with their production if the motion is successful, except any minimal costs for redacting non-factual information from the document. To the extent AT&T attempts to argue that the production of these documents would have affected their recently filed summary judgment motion, that is an issue of their own making. As set forth above, the parties were actively meeting and conferring about this dispute in the days leading up to AT&T's summary judgment filing, and AT&T did not tell Plaintiff that it intended to file a summary judgment motion. If AT&T had sought an extension of the deadline to file pre-trial motions to ensure that this dispute was resolved before it filed a summary judgment motion, Plaintiff would have consented to such an extension. Instead, AT&T continued to meet and confer right until the motion deadline, filed its summary judgment papers without reference to this dispute, and now claims that any motion seeking to resolve this dispute is untimely. The Court, in its inherent discretion to set and modify its own deadlines, should reject this attempt at gamesmanship, and consider this motion to compel on its merits.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff respectfully requests this Court to enter an order compelling Defendant to produce the documents listed in AT&T's Amended Log, with appropriate redactions.

Dated: April 28, 2022
New York, New York

        **WITHERS BERGMAN LLP**

By: /s/ Christopher LaVigne
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
Telephone: (212) 848-9800
Facsimile: (212) 848-9888
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*

Terence S. Reynolds
**SHUMAKER LOOP & KENDRICK LLP**
101 South Tyron Street, Suite 2200
Charlotte, North Carolina 28280
Telephone: (704) 375-0057
Facsimile: (704) 332-1197
treynolds@shumaker.com
State Bar No. 49848

*Local Civil Rule 83.1(d) Counsel for Plaintiff Jason Williams*