# EXHIBIT G



**withers Bergman** LLP

430 Park Avenue, 10th Floor, New York, New York 10022-3505
t: +1 212 848 9800
f: +1 212 848 9888
www.withersworldwide.com

November 24, 2021

**By Email**
mbreslin@kilpatricktownsend.com

Michael J. Breslin, Esq.
Kilpatrick Townsend & Stockton LLP
Suite 2800, 1100 Peachtree Street NE
Atlanta, GA 30309-4528

      Re:    **WILLIAMS V. AT&T MOBILITY, LLC; CASE NUMBER: 5:19-CV-00475-BO; Meet and Confer Letter**

Dear Mr. Breslin:

We write to meet and confer regarding several discovery issues that came to light during the November 17, 2021 deposition of Ray Hill. Given the proposed deadlines below, we request a response by December 3, 2021. If we do not receive a response by that date, we may be forced to seek relief from the Court. We are aware that the Thanksgiving holiday is this week, so we also propose that the parties meet and confer regarding these issues during the week beginning November 29, 2021, either in lieu of or in addition to a formal written response from AT&T.

**A.**     **Deposition of Robert Arno and the Production of AT&T's Investigative Records Regarding Mr. Williams' SIM Swaps**

Mr. Hill was designated by AT&T as its 30(b)(6) representative to testify regarding, among other topics, "AT&T's knowledge Concerning [Mr. Williams'] Claims." Mr. Hill testified that his knowledge "about the SIM swaps at issue in this case" only came from his brief review of Mr. Williams' account notes, and not from his own investigation of Mr. Williams' SIM swaps (or any other source besides the account notes, for that matter). When Mr. Hill was asked who had investigated Mr. Williams' SIM swaps, he testified that possibly "Robert Arno or [another asset protection] investigator" would have done so. (November 17, 2021 Rough Draft Deposition of Ray Hill ("Rough Hill Tr.") at 157-59.) Mr. Hill also testified that: (1) he met with an asset investigator named Robert Arno in preparation for his deposition (Rough Hill Tr. at 21-22); and (2) that Robert Arno is a member of AT&T's asset protection team (Rough Hill Tr. at 111).

From this testimony, it is apparent that AT&T has additional knowledge regarding Mr. Williams' claims beyond what is contained in Mr. Williams' account notes, and that Mr. Hill was not sufficiently educated regarding that knowledge. Specifically, it appears that Robert Arno (and/or additional AT&T employees) undertook an investigation of the SIM swaps related to Mr. Williams' claims, and that Mr. Hill was not able to testify to the process, circumstances, or results of that investigation. Accordingly, we are enclosing a Notice for the Deposition of Robert Arno. The notice contains a December 10, 2021 deposition date, but

direct: +1 212 848 9882
fax: +1 212 824 4282
e-mail: christopher.lavigne@withersworldwide.com
admitted in New York

Withersworldwide
London   Cambridge   Geneva   Milan   Padua
Hong Kong   Singapore   Tokyo   British Virgin Islands
New York   Boston   Greenwich   New Haven   Texas
San Francisco   Los Angeles   Rancho Santa Fe   San Diego

we will work with you to find a date and time that works for all parties, counsel, and the witness. Also, to the extent Mr. Hill was mistaken and Robert Arno was not the only AT&T employee that investigated Mr. Williams' SIM swaps, we will meet and confer with you regarding whether alternative and/or additional witness(es) should be noticed.

In addition to Robert Arno's deposition, Mr. Williams also hereby demands that AT&T produce all of its records, including all documents and communications, regarding any investigation that any of its employees undertook into Mr. Williams' claims. Mr. Hill's testimony demonstrates that such an investigation took place, and records regarding that investigation are responsive to Mr. Williams' June 5, 2020 Requests for Production of Documents. Mr. Williams is entitled to the production of those records with sufficient time to review them before Robert Arno's noticed deposition, and therefore demands their production on or before December 6, 2021. In light of the Thanksgiving holiday, we are willing to meet and confer with you regarding the date of the production of these documents (and, as mentioned above, the date of Robert Arno's deposition).

B.  **Deficiencies Regarding AT&T's Previous Documents Productions**

A number of deficiencies regarding AT&T's previous document productions came to light during Mr. Hill's deposition. First, it became clear that Mr. Hill was unable to explain why certain of his emails appear to have been produced without their attachments. (Rough Hill Tr. at 231.) There appear to be attachments missing from multiple parent emails in AT&T's production of emails from the four custodians in its first supplemental initial disclosures (Brian Rexroad, Valerie Scheder, Kristi Parrott, Ray Hill), including several Exhibits to Mr. Hill's deposition (*see, e.g.*, ATT-WIL-05927; ATT-WIL-05957). It is possible that AT&T produced those attachments in one of its earlier productions, but because AT&T did not produce the attachments sequentially with their parent emails, and did not produce family metadata regarding its production, Mr. Williams has no way to determine if that is the case (or to accurately match any such attachments with their parent emails). Because Mr. Hill was unable to shed light on this issue regarding his own emails, and because depositions of the additional custodians on this issue may be likewise unhelpful, Mr. Williams hereby demands that AT&T produce sufficient family metadata for him to identify whether or not AT&T produced all of the attachments to the produced emails, on or before December 6, 2021. If the production of such metadata reveals that any attachments were not produced, we will meet and confer with you regarding the reasons for their non-production.

Second, Mr. Hill's deposition also revealed that he was unable to explain the nature of certain redactions. (Rough Hill Tr. at 268.) A number documents in AT&T's production, including several Exhibits to Mr. Hill's deposition (*see, e.g.*, ATT-WIL-05957; ATT-WIL-03254), were produced with substantial redactions, without explanation of the redactions. We are aware the that parties have not yet discussed privilege logs in this case, and we are not yet demanding that the parties set a deadline for the exchange of privilege logs. We also acknowledge that the parties have agreed that the identity of other AT&T customers may be redacted for privacy purposes. However, to the extent AT&T has redacted any documents other than for privilege and to keep the identify of other AT&T customers confidential (which appears to be the case), we hereby demand that AT&T identify any such documents and provide the reasons for any such redactions, on or before December 6, 2021. Once AT&T has done so, we will meet and confer to determine if any such documents should be produced without redaction.

**C.** **Mr. Hill's Knowledge Regarding AT&T's Training and Policies Regarding Prime, Alorica, Teleperformance, and Concentrix**

Mr. Hill was designated by AT&T as its 30(b)(6) representative to testify regarding, among other topics, "AT&T's business relationships with Prime, Alorica, Teleperformance, and Concentrix", including AT&T's communication and enforcement of its training and policies throughout these vendor/partners. In response to questions about AT&T's policies and training regarding Prime, Mr. Hill testified that he did not have key information about the nature and frequency of SIM swap related training that AT&T offered to Prime, and that he was "not the subject matter expert" for that information. (Rough Hill Tr. at 244-46.) From this testimony, it is apparent that AT&T has additional knowledge regarding AT&T's training of its vendor/partners, and that Mr. Hill was not sufficiently educated regarding that knowledge. We will proceed with the depositions of Ms. Scheder and Mr. Arno at this time, but we reserve the right to seek additional 30(b)(6) testimony related to this topic.

Please contact us to discuss the issues above. Thank you.

Sincerely,

*/s/ Christopher N. LaVigne*

Christopher N. LaVigne