# EXHIBIT H



KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

Suite 2800, 1100 Peachtree Street NE
Atlanta, GA 30309-4528
t 404 815 6500 f 404 815 6555

December 7, 2021

direct dial 404 685 6752
direct fax 404 541 4749
mbreslin@kilpatricktownsend.com

*By Email*

Christopher LaVigne, Esq.
Withers Bergman LLP
430 Park Avenue, 10th Floor
New York, NY 10022
Christopher.LaVigne@withersworldwide.com

    Re:    Jason Williams v. AT&T Mobility LLC;
            Meet and Confer Letter Dated November 24, 2021

Dear Mr. LaVigne:

This letter responds to your meet and confer correspondence dated November 24, 2021. Once you have reviewed this response, please contact me to schedule a meet and confer conference at your earliest convenience.

    **A.  Requests to depose Robert Arno and for production of AT&T investigation materials.**

Your letter asserts Mr. Williams should be allowed to depose AT&T employee Robert Arno, based on your claim that Ray Hill was not sufficiently prepared to testify regarding the questions asked during the 30(b)(6) portion of his deposition. In good faith, we have reviewed the transcript of Mr. Hill's deposition and cannot find any support for your claim.

During the designated 30(b)(6) portion of his deposition (Tr. 114-205),[1] there were no questions about the events underlying Mr. Williams' claims that Mr. Hill was unable to answer. In fact, except for recalling with certainty the name of the specific AT&T employee who investigated Mr. Williams' claims (Tr. 159), whether Mr. Williams received a specific account change notice in November 2018 by mail versus some other means (Tr. 174), and what the acronym "VID" stands for (Tr. 176), we have not identified *any* questions asked during Mr. Hill's 30(b)(6) deposition that he was unable to answer.

---

[1] All citations to the Transcript refer to the Rough Ray Hill Transcript.

ANCHORAGE ATLANTA AUGUSTA BEIJING CHARLOTTE DALLAS DENVER HOUSTON LOS ANGELES NEW YORK RALEIGH SAN DIEGO
SAN FRANCISCO SEATTLE SHANGHAI SILICON VALLEY STOCKHOLM TOKYO WALNUT CREEK WASHINGTON WINSTON-SALEM

Case 5:19-cv-00475-BO   Document 137-8   Filed 04/28/22   Page 2 of 6

Christopher LaVigne
December 7, 2021
Page 2

As you'll recall, AT&T promptly served written objections to, *inter alia*, the breadth and vagueness of the examination topics in Plaintiff's notice of AT&T's Rule 30(b)(6) deposition, including Topic 1 that requested testimony of "AT&T's knowledge Concerning the Claims." Contemporaneously, and to avoid the need for AT&T to move for a protective order, AT&T's counsel requested to meet and confer regarding the specific areas of inquiry its witnesses should be prepared to testify about under the broad topics, while preserving AT&T's right to seek a protective order if necessary. Counsel held that conference on October 13, 2021 and later confirmed the substance of those discussions via email. Specifically, counsel for Mr. Williams advised AT&T that they intended to seek testimony under Topic 1 regarding:

1. Mr. Williams' interactions with AT&T in retail stores and on the phone after each SIM change;
2. The notes and instructions Mr. Williams requested to be put on his account and what happened to them;
3. The SIM changes themselves;
4. What happened to the employees/contractors who performed SIM changes;
5. AT&T's knowledge of the facts alleged in the Complaint as giving rise to the claims; and
6. AT&T's statements to its customers and policies regarding privacy, data protection, and SIM swapping.

Regarding item 1, Mr. Hill testified extensively regarding AT&T's knowledge of those interactions whenever asked about them, and did not claim a lack of knowledge in response to those questions. *See, e.g.*, Tr. 187-90, 201-02. The same is true for item 2. *See, e.g.*, Tr. 189, 196, 201.

Regarding item 3, Mr. Hill testified at length regarding the details of every SIM change that he was asked about, and did not claim a lack of any information known to AT&T in response to those questions.[2] That same testimony is in our view applicable to item 5, and further as to item 5 the transcript does not contain any questions seeking AT&T's knowledge regarding the allegations underlying Mr. Williams' claims that Mr. Hill stated he was unable to answer.

Regarding item 4, Mr. Hill was asked — during the designated fact witness portion of his deposition — only whether Stephen Defiore (the retail associate who performed the November 5, 2018 SIM change) was subjected to disciplinary action. Mr. Defiore was not an AT&T employee, but rather an employee of third party Prime. Mr. Hill stated he could not recall what disciplinary action Prime took with regard to its employee. Tr. 215. Mr. Hill was not asked what happened to any of the five individuals who performed the other SIM changes at issue. Putting aside AT&T's position that the details of any subsequent disciplinary action imposed on an employee does not fall within any of the noticed topics for examination, Mr. Hill's inability to answer that one

---

[2] *See* Tr. 127-28, 137-38, 147, 161-66 (detailed testimony about the Nov. 5, 2018 SIM change and related account transactions and interactions with AT&T); Tr. 183, 185-190 (same, Dec. 1, 2018 SIM change); Tr. 191-96 (same, Dec. 4, 2018 SIM change); Tr. 197-202 (same, Feb. 3, 2019 SIM change); Tr. 202-204 (same, Feb. 6, 2019 SIM change); Tr. 204-205 (same, Feb. 8, 2019 SIM change).

question does not justify an additional deposition of a separate witness — particularly when Prime's own document production indicates in several place that Mr. Defiore was terminated. PRIME000009-11; *see also Preferred Carolinas Realty, Inc. v. American Home Realty Network, Inc.*, 2014 WL 1320133, at *7 (M.D.N.C., Mar. 28, 2014) (refusing to hold a 30(b)(6) deponent's "inability to answer certain questions at his deposition" warrants deposition of another witness; noting "absolute perfection is not required of a 30(b)(6) witness").

Regarding item 6, the transcript does not reflect Mr. Hill was asked any questions on those issues.

In summary, we think the transcript establishes there was no deficiency in Mr. Hill's preparation or ability to answer the questions he was asked. The transcript in fact demonstrates Mr. Hill was able to answer every question posed to him regarding Mr. Williams' claims, which is at odds with your contention that AT&T must have additional knowledge about those claims that Mr. Hill was not prepared to provide. Also, your letter does not specify any discoverable fact within the noticed 30(b)(6) topics that you could obtain through deposing Mr. Arno, that both Mr. Hill and Ms. Scheder were asked but unable to provide during their depositions, and that is not available through less burdensome means.

We of course welcome further discussion on this matter and will engage in the same in good faith. At this time, however, and based on our analysis of the issues raised in your letter, we cannot agree your November 24, 2021 attempt to notice Mr. Arno's deposition is warranted under the facts or permissible under the Court's discovery orders.

As to your demand for documents and communications concerning AT&T's investigation of Mr. Williams' legal claims, AT&T has already produced all responsive and non-privileged communications and attachments identified pursuant to the ESI searches which the parties agreed to earlier this year. The documents containing AT&T's internal analysis and investigation of Mr. Williams' legal claims (which AT&T has not produced) were created by, or at the direction and under the supervision of, AT&T's legal counsel and therefore are not subject to discovery.

    **B. Alleged deficiencies in AT&T's document production.**

        1. <u>Alleged missing email attachments</u>.

We have investigated your allegation that three emails in AT&T's document production appear to be missing attachments, and we do not agree any deficiency exists. As to the first email you reference, displayed on ATT-WIL-05958 (also page 2 of Ex. 8 to Mr. Hill's deposition), the only notes referenced in that email and responsive to Mr. Williams' document request are those already embedded in the body of the response on ATT-WIL-05958 ("1) SIM Swaps done via out-of-policy. a. [Update 4/10]. Report logic is comples. ETA ~ End of May.").

Regarding the second email you identify, ATT-WIL-05927, the Power Point attachment referenced in that email was produced, sequentially with and immediately following its parent

Christopher LaVigne
December 7, 2021
Page 4

email. *See* ATT-WIL-05928. Regarding the third email you identify, ATT-WIL-05957, that is the same email discussed in the preceding paragraph.

If you contend any other emails are missing attachments, or any defect exists in AT&T's document production, please do not hesitate to contact me directly so we can investigate. Regarding your comment that Mr. Hill was unable to testify as to why a particular attachment was not produced, I would recommend you not reserve such inquiries for witnesses at their depositions, since a witness is unlikely to know why counsel elected to produce or not produce a particular document. The better course is to direct such inquiries to the counsel who oversaw the production.

2. Basis for redactions.

Similarly, it is unreasonable to expect a witness at a deposition to know the reason(s) for each redaction within a large document production. Redacting decisions are made by legal counsel and inquiries as to their basis should be directed to legal counsel.

Whenever possible, the redactions in AT&T's document production were applied to intentionally leave certain information visible that would enable the recipient to ascertain the basis for the redaction. Often this was accomplished by leaving the title, heading, and/or first portion of a redacted section visible, which would convey the nature of the redacted material and allow the reader to infer the basis for the redaction.

If you have questions about the basis for a particular redaction, we are happy to confer with you about those.

**C. Testimony regarding training and policies concerning Prime, Alorica, Teleperformance, and Concentrix**

Mr. Hill was prepared and able to testify at his deposition regarding AT&T's communication and enforcement of *AT&T's* training and policies for vendors and partners such as Prime, Alorica, Teleperformance, and Concentrix. The concerns raised in your letter, however, address Mr. Hill's knowledge of *the vendors'* "in-house" training programs that those vendors develop and administer themselves, independent of AT&T (Tr. 245:19-246:1). Such third party, non-AT&T training courses were not a topic designated in the 30(b)(6) deposition notice or discussed in the parties' meet and confer communications prior to these depositions.

For the same reason, we cannot agree that Mr. Hill lacked key information about the nature and frequency of SIM swap related training that AT&T offered to Prime. The only basis you offer for that assertion is, again, Mr. Hill's statement that he is not an expert on the details of *Prime's* in-house (non-AT&T) training programs.

AT&T's document production contained extensive training materials and outlines, depictions and screenshots of interactive online courses, and videos applicable to vendors and authorized retailers that spanned numerous training categories including SIM changes, protection of CPNI and

Christopher LaVigne
December 7, 2021
Page 5

customer privacy, social engineering, and fraud prevention. None of those materials were introduced during Mr. Hill's deposition, nor was he asked any question about their contents or the training programs they described. In light of this, we are struggling to understand the basis for any complaint that Mr. Hill was not prepared to testify about these programs. Again, however, we are happy to address your concerns in good faith if you would like to discuss this issue further.

Best Regards,

Michael J. Breslin