# EXHIBIT K



KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

Suite 250, 12255 El Camino Real
San Diego, CA 92130
t 858 350 6100  f 858 350 6111

March 25, 2022

direct dial 858 350 6156
direct fax 858 408 3931
NStagg@kilpatricktownsend.com

*Via Email – Christopher.LaVigne@withersworldwide.com*

Mr. Christopher N. LaVigne
Withers Bergman LLP
430 Park Avenue, 10th Floor
New York, NY  10022

Re:   *Jason Williams v. AT&T Mobility LLC;* EDNC Case No. 5:19-CV-00475-BO

Dear Mr. LaVigne:

This letter is in response to your meet and confer letter dated March 17, 2022

AT&T does not agree that AT&T employee Rob Arno identified four new categories of non-privileged, responsive documents that had not previously been produced by AT&T at his recent deposition. First, during Mr. Arno's deposition, Mr. Gallo showed Mr. Arno a document (AT&T account notes) which AT&T had previously produced in this action. In a few areas, the text was cut-off, which partially obscured a few words or names (much like an Excel field where the printed version does not print the entire cell that is visible when viewing electronically). That was, as he explained, a function of the printing process, as the notes were designed to be viewed electronically on AT&T's systems, not printed. Indeed, as it turns out, AT&T previously produced additional versions of the same documents with the full text revealed, such as in ATT-WIL-06076. Nevertheless, for the avoidance of doubt, AT&T has reprinted the relevant account notes in a different format which should address the issue of obscured text. These account notes will be sent to you separately today via our secure sharefile system. Please let us know if you have any difficulty in reading the text of these account notes.

Second, the Device Life Cycle documents you claim were not previously produced, were previously produced by AT&T at ATT-WIL-01208.

Third, as Mr. Arno testified, SCAMP is a system, not a document. See Arno Depo. Tr. 79:13-15 While Mr. Arno generally described the SCAMP system and testified he may query SCAMP in connection with his investigations for Asset Protection, Mr. Arno did not testify that he did so in connection with his investigation (nor could he, as AT&T properly imposed an objection that any investigation he did – because it occurred after the date of your August 9,

ANCHORAGE  ATLANTA  AUGUSTA  BEIJING  CHARLOTTE  DALLAS  DENVER  HOUSTON  LOS ANGELES  NEW YORK  RALEIGH  SAN DIEGO
SAN FRANCISCO  SEATTLE  SHANGHAI  SILICON VALLEY  STOCKHOLM  TOKYO  WALNUT CREEK  WASHINGTON  WINSTON-SALEM

Case 5:19-cv-00475-BO   Document 137-11   Filed 04/28/22   Page 2 of 5

2019 letter to AT&T asserting legal claims on behalf of Mr. Williams as well as after the filing of the Complaint in this action on October 24, 2019, and because it was done at the request of AT&T's litigation counsel – is privileged by the attorney work product doctrine and attorney client privilege). Mr. Arno did not provide any testimony which established or even suggested that AT&T did not previously produce all non-privileged information in its possession, custody or control that was responsive to Plaintiff's written discovery requests, subject to its written objections, prior agreements of counsel in meet and confer communications and prior court rulings upon discovery motion practice. Moreover, cell site data as to the location of the devices at the time of SIM swaps is irrelevant to the claims against AT&T in this case. By the terms of the protective order in this action, such data cannot be used for other purposes.

Nonetheless, AT&T will conduct a single data retrieval to pull and produce any existing cell site or location data for the devices utilizing Williams' wireless telephone number on the relevant dates. We will provide it as soon as it is available. However, at this late stage of the case, AT&T is not willing to perform any other additional searches or run queries in databases simply to determine if there is any scintilla of data that might be tangentially related to Williams' AT&T wireless account that was not previously produced. That would not be proportional to the needs of the case. As evidenced by AT&T's extensive production of documents in this case, AT&T has engaged in a substantial, good faith effort to locate and produce responsive documents.

Fourth, PC SIMS is a document management system, not a document. The only data in PC SIMS relating to Mr. Williams' account are the documents listed on the privilege log. Indeed, during the Arno deposition, the topic of PC SIMS came up in connection with Mr. Gallo's questions to Mr. Arno regarding his knowledge of the documents listed on AT&T's privilege log. There are no undisclosed documents in the PC SIMS system. The documents in the PC SIMS system have been identified, but the documents are privileged as identified on the privilege log and will not be produced.

In addition to the four categories of documents, your meet and confer letter requests information regarding Mr. Arno's communications with counsel, including its outside counsel and seeks to have AT&T provide a log of his communications. AT&T declines to do so. You initially contacted AT&T on August 9, 2019, asserting legal claims on behalf of Mr. Williams, and stating his intent to bring claims against AT&T "for monetary and injunctive relief." Mr. Williams thereafter filed suit on October 24, 2019. As Mr. Arno testified, his investigation was conducted at the request of AT&T's legal counsel. Arno Depo. Tr. 86:25-87:13. While he could not recall the date of that communication, the privilege log makes clear his report was dated November 21, 2019, well after your initial communications to AT&T threatening suit and after this Action was filed. Fed. R. Civ. Proc. 26(b)(1) limits the scope of discovery as follows: "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." [underline added.] There is no circumstance reasonably applicable to this case in which Mr. Arno's communications with AT&T's legal counsel defending this case are discoverable. You did not cite any legal authority for your proposition that AT&T identify and log its communications between AT&T employees and AT&T's counsel created after the Complaint was filed or even after it was readily apparent

Mr. Williams had engaged counsel to assert claims on his behalf against AT&T. Regarding your statement that there is no evidence Mr. Williams threatened litigation against AT&T prior to August 9, 2019, Mr. Williams certainly knows what he stated to AT&T employees. Indeed, Mr. Williams testified at his recent deposition that based on his communications to the AT&T retail store personnel, they contacted the Raleigh, NC police department to respond to the store while Mr. Williams was present due to his statements to them. AT&T stands by its determination and objections that the reports, identified on the privilege log, are privileged from disclosure, and that AT&T, like Plaintiff, need not log communications with its counsel after Mr. Williams had asserted claims against AT&T.

  Regarding the two documents included on the AT&T privilege log that Mr. Arno did not author, he did testify that the recipients of those documents identified on the privilege log were attorneys for AT&T at that time (Ann Beck and Cynthia Hennessey). Arno Depo. Tr. 99:11-25. Mr. Arno's testimony about his general practices has no bearing on AT&T's determination to assert privilege over those two documents and certainly nothing he testified to changes AT&T's assertion of privilege as to those documents. In addition, Mr. Arno was not designated to testify as an AT&T corporate witness. Plaintiff noticed his deposition in his individual capacity. He is not an officer, director or managing agent, nor is he an attorney. Simply put, even if sometimes Mr. Arno conducts non-privileged investigations within the Asset Protection group, that does not mean these specific investigations are not privileged. Moreover, Plaintiff has not articulated any factual or legal basis for asserting that there is a substantial need for the materials to prepare the case and he cannot reasonably obtain their substantial equivalent by other means. Here, for example, AT&T has provided the accounts notes for Mr. Williams' AT&T wireless account which show the dates, times, methods, devices and statements of Mr. Williams and the various AT&T personnel he interacted during the SIM incidents at issue, as well as the information documented in AT&T's records relating to the SIM swap incidents. It appears that what Plaintiff is really seeking here are not underlying facts, but AT&T's attorneys and its investigators conclusions. Those conclusions are privileged in this context and not discoverable. AT&T stands by its privilege assertions.

  Finally, you raised similar arguments regarding communications among members of AT&T's SSRT team, contending such communications are not privileged. Mr. Arno's testimony does not provide support for that position for three reasons. First, Mr Arno testified that any recommendations he has made regarding the prevention of unauthorized SIM swaps has been made to AT&T attorneys, or with AT&T attorneys present (during the SSRT task force meetings). Second, Mr. Arno testified he was aware and believed such communications were privileged because he was advised these communications were privileged at the beginning of each SSRT meeting. Third, Mr. Arno testified he recalled these meetings began in the period after your client threatened or commenced litigation (October or November 2019). See Arno Depo. Tr. 32:15-35:23. AT&T stands on its assertion of privilege and its instructions to Mr. Arno not to answer the questions which sought attorney client privileged communications and attorneys work product.

Mr. Christopher LaVigne
March 25, 2022
Page 4

      If you would like to schedule a call to discuss these issues further by telephone, please suggest some convenient dates and times.

                      Very truly yours,

                      Nancy L. Stagg