# EXHIBIT M



430 Park Avenue, 10th Floor, New York, New York 10022-3505
t: +1 212 848 9800
f: +1 212 848 9888
www.withersworldwide.com

March 17, 2022

By Email: nstagg@kilpatricktownsend.com

Ms. Nancy L. Stagg
Kilpatrick Townsend & Stockton LLP
2255 El Camino Real, Suite 250
San Diego, CA 92130

**Re: Meet and Confer**

Dear Ms. Stagg:

We write to meet and confer regarding several discovery issues that came to light during the February 28, 2022 deposition of Robert Arno. Given the Court's discovery deadline and the parties' agreement regarding discovery motion practice, we request a response by March 25, 2022. If we do not receive a response by that date, we may be forced to seek relief from the Court.

**A. Additional Responsive Documents and Information Identified in Mr. Arno's Testimony**

Mr. Arno's testimony revealed at least four additional sources of responsive documents and information that have not been produced to Mr. Williams by AT&T. First, Mr. Arno testified that AT&T possesses a version of Mr. Williams' account notes that has more information than the version AT&T has previously produced to Plaintiff, and that Mr. Arno had personally reviewed that more complete version of the notes. (*See e.g.*, Rough Draft Transcript of Deposition of Robert Arno ("Arno Rough Tr.") at 105-06.) At the end of Mr. Arno's February 28 testimony, you represented that AT&T would produce the version of the account notes that Mr. Arno referred to in his testimony. Please confirm that AT&T intends to do so on or before March 25, 2022.

Second, Mr. Arno testified that AT&T possesses a system called "Device Life Cycle." (*See* Arno Rough Tr. at 73, 124-25, 143.) According to his testimony, Device Life Cycle contains historical information about when different equipment and devices were used in connection with particular phone numbers for AT&T account holders. The information in Device Life Cycle regarding Mr. Williams' account is responsive to multiple of Mr. Williams' previously issued discovery requests, including without limitation Requests Nos. 2, 3, and 5 from Plaintiff's First Set of Requests for Production of Documents, dated June 5, 2020. Accordingly, Mr. Williams hereby demands that AT&T produce any and all Device Life Cycle information related to his AT&T account on or before March 25, 2022.

direct: +1 212 848 9882
fax: +1 212 824 4282
e-mail: christopher.lavigne@withersworldwide.com
admitted in New York
10586120/1

Withersworldwide
London  Cambridge  Geneva  Milan  Padua
Hong Kong  Singapore  Tokyo  British Virgin Islands
New York  Boston  Greenwich  New Haven  Texas
San Francisco  Los Angeles  Rancho Santa Fe  San Diego

Third, Mr. Arno testified that AT&T possesses a system called "SCAMP." (*See* Arno Rough Tr. at 73, 125, 127, 143.) According to his testimony, SCAMP contains historical information about the usage of particular AT&T wireless accounts, including SIM card use, IMEI use, the location of cell towers used. Mr. Arno testified that SCAMP contains "a lot of information that's not on a customer's bill." (*See* Arno Rough Tr. at 127.) The information in SCAMP regarding Mr. Williams' account is responsive to multiple of Mr. Williams' previously issued discovery requests, including without limitation Requests Nos. 2, 3, and 5 from Plaintiff's First Set of Requests for Production of Documents, dated June 5, 2020. Accordingly, Mr. Williams hereby demands that AT&T produce any and all SCAMP information related to his AT&T account on or before March 25, 2022.

Fourth, Mr. Arno testified that AT&T possesses a system called "PC Simms." (*See* Arno Rough Tr. at 97-99.) According to his testimony, PC Simms contains information about what asset protection cases are associated with particular AT&T wireless customers. The information in PC Simms regarding Mr. Williams' account is responsive to multiple of Mr. Williams' previously issued discovery requests, including without limitation Requests Nos. 2, 3, and 5 from Plaintiff's First Set of Requests for Production of Documents, dated June 5, 2020. Accordingly, Mr. Williams hereby demands that AT&T produce any and all PC Simms information related to his AT&T account on or before March 25, 2022

To avoid the issues that arose regarding the account notes that AT&T previously produced to Mr. Williams in an incomplete format, we are happy to meet and confer with you regarding the format and method of the production of the above documents and information.

**B.     AT&T's Privilege Claims**

1. AT&T's Privilege Claims Regarding Its Investigations

During the meet and confer process and through its amended privilege log, AT&T has represented that it is asserting privilege over two investigations into the SIM swaps involving Mr. Williams' account. According to AT&T's amended log, two documents relating to the first of those investigations were created on December 5, 2018, and one document relating to the second of those investigations was created on November 21, 2019. During the meet and confer process and through its discovery responses, AT&T has represented that these two investigations were the only ones AT&T has undertaken regarding Mr. Williams' SIM swaps, and AT&T does not have any other documents related to those investigations that are not referred to in its amended log. However, Mr. Arno testified that he had communications with counsel regarding the investigation by email, and no such communications appear on the amended log. (*See* Arno Rough Tr. at 101-02.) Accordingly, please confirm that AT&T's representations regarding the completeness of its amended log are still correct.

Mr. Arno's testimony also raised questions regarding the basis of AT&T's privilege claim regarding the December 5, 2018 investigation. The two documents related to this investigation on AT&T's amended log are described as a "Privacy Incident" and an "Asset Protection Event," respectively. Our understanding is that AT&T's position is that the first two documents on the amended log are privileged because they were created in response to Mr. Williams stating to an employee at an AT&T store that he was planning to sue AT&T. However, we are not aware of any evidence in the record that substantiates that claim about Mr. Williams' statement regarding a potential suit, and Mr. Arno's testimony indicates that both Privacy Incident and Asset Protection Event documents are and have been created by AT&T's asset protection team in the ordinary course of business. (*See* Arno Rough Tr. at 90-92, 95-97).

In addition, during Mr. Arno's testimony, you objected on privilege grounds to multiple questions regarding the investigation related to the third entry in the amended log. (*See e.g.,* Arno Rough Tr. at 81.) Even if certain aspects of, or communications about, that investigation are ultimately determined to be privileged, some of the factual findings of Mr. Arno's investigation (and the previous investigation referred to in the amended log) may be subject to exceptions in the federal work product doctrine, and subject to discovery. In particular, it appears that the factual findings of AT&T's investigations may be the only source of certain facts regarding when and how the SIM swaps against Mr. Williams' account took place, and, therefore, that Mr. Williams will be able to demonstrate a substantial need to obtain those factual findings pursuant to FRCP 26(b)(3).

Accordingly, we request that the parties meet and confer further regarding the entries on the amended log, and AT&T's basis for asserting privilege over the documents and investigations referred to therein.

2. AT&T's Privilege Claims Regarding SSRT

Mr. Arno also testified that he was, and still is, a member of AT&T's SSRT team, which deals with SIM swap issues. (*See* Arno Rough Tr. at 31-35, 70, 74, 76-78, 92.) Mr. Arno also testified that Ray Hill was a member of the SSRT team. (*See* Arno Rough Tr. at 31.) Based upon Mr. Arno's testimony, it appears that AT&T produced at least two documents that were related to the SSRT team. (*See* Arno Rough Tr. at 70, 77-78.) Mr. Hill testified at length about his work at AT&T regarding SIM swaps, at least some of which apparently related to the SSRT.

During Mr. Arno's deposition, you instructed him not to answer several questions regarding the SSRT team on privilege grounds, including why the SSRT team was created. (*See* Arno Rough Tr. at 33-35.) However, aside from the fact that some attorneys may have been members of the SSRT team, which is not in itself grounds for privilege regarding the SSRT team's actions and communications, it is unclear what the basis of the privilege objection is. Accordingly, we request that the parties meet and confer regarding Mr. Arno's testimony about the SSRT team, and the basis for AT&T's assertion of privilege regarding certain aspects of the SSRT team.

We look forward to receiving your response regarding the above issues on or before March 25, 2022.

Sincerely,

Christopher N. LaVigne

CNL/lzg