IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

------------------------------------------------------------ X
: 
: 
JASON WILLIAMS, :
: Case No. 5:19-cv-00475-BO
Plaintiff, :
: 
vs. :
: 
AT&T MOBILITY LLC, :
: 
Defendant. :
: 
------------------------------------------------------------ X

**PLAINTIFF JASON WILLIAMS' OPPOSITION TO AT&T'S MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE OF PLAINTIFF'S ALLEGED CRYPTO-MINING DAMAGES (MEMORANDUM OF LAW IN OPPOSITION TO MOTION IN LIMINE NO. 1)**

**Withers Bergman LLP**
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ........................................................................................................................ 3

CONCLUSION ..................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l. Fund, L.P.*,
   829 A.2d 143 (Del. Ch. 2003) .................................................................................................. 6

*Barger v. McCoy Hillard & Parks*,
   346 N.C. 650 (1997) ................................................................................................................. 3, 4

*Bouygues Telecom, S.A. v. Tekelec*,
   No. 4:05-CV-78-FL, 2007 WL 9718142 (E.D.N.C. Feb. 23, 2007) (unpublished) .......................... 2, 3

*Citigroup Inc. v. AHW Inv. P'ship*,
   140 A.3d 1125 (Del. 2016) ........................................................................................................... 5

*Finch v. Covil Corp.*,
   388 F.Supp.3d 593 (M.D.N.C. 2019), *aff'd*, 972 F.3d 507 (4th Cir. 2020) ............................................ 1

*LeCann v. Cobham*,
   No. 10 CVS 11169, 2011 WL 3329317 (N.C. Super. Aug. 2, 2011) ...................................................... 4

*NAF Holdings, LLC. v. Li & Fung (Trading) Ltd.*,
   118 A.3d 175 (Del. 2015) ........................................................................................................... 4, 5

*Sara James Zoutewelle v. Mathis*,
   No. 17CVS20422, 2018 WL 4698735 (N.C. Super. Sep. 13, 2018) ...................................................... 4

*Sehoy Energy LP v. Haven Real Estate Group, LLC*,
   No. CV 12387-VCG, 2017 WL 1380619 (Del. Ch. April 17, 2017) (unpublished) .............................. 6

*Suntrust Bank v. Dowdy*,
   No. 5:08-CV-458-DAN, 2010 WL 3834573 (E.D.N.C. Sept. 30, 2010) (unpublished) ........................ 6

*Tarlton for McCollum v. Sealey*,
   No. 5:15-CV-451-BO, 2021 WL 1845171 (E.D.N.C. 2021) (Boyle, J.) (unpublished) ..................... 1, 2

*Under Armour, Inc. v. Battle Fashions, Inc.*,
   No. 5:19-CV-297-BO, 2021 WL 2518212 (E.D.N.C. June 18, 2021) (Boyle, J.)
   (unpublished) ............................................................................................................................. 1, 2

**Other Authorities**

Federal Rules of Evidence 402 ........................................................................................................ 2, 7

Federal Rules of Evidence 403 ........................................................................................................ 2, 7

Local Civil Rule 39.1(a) ...................................................................................................................... 1

**INTRODUCTION**

AT&T's motion in limine to exclude evidence of Mr. Williams' crypto-mining damages, which merely duplicates the arguments which AT&T also makes in its summary judgment motion, is an improper attempt to use an evidentiary motion for summary judgment purposes. *Cf. Tarlton for McCollum v. Sealey*, No. 5:15-CV-451-BO, 2021 WL 1845171, *3 (E.D.N.C. 2021) (Boyle, J.) (unpublished) ("plaintiffs correctly argue that this is not a motion *in limine* but rather an untimely motion for summary judgment"). Furthermore, the motion is premature, because AT&T's motion for partial summary judgment on this same issue is still *sub judice*, and is unlikely to be granted for the reasons set forth in Mr. Williams' opposition to that motion. *Cf.* Local Civil Rule 39.1(a) (motions in limine shall be filed seven days before trial). If AT&T's motion for summary judgment on this issue is denied, then this motion is limine should be denied as moot.

Even in the unlikely event that the motion for summary judgment on crypto-mining damages is granted, some or all of the evidence relating to the crypto-mining losses suffered by Mr. Williams will be relevant to other issues in the case – a determination which can best be made at trial, or at a point nearer to trial, when the parties are preparing the pre-trial order, and determining what evidence will be introduced for what purposes. *See generally Under Armour, Inc. v. Battle Fashions, Inc.*, No. 5:19-CV-297-BO, 2021 WL 2518212, at *1 (E.D.N.C. June 18, 2021) (Boyle, J.) (unpublished) (district court's rulings on motions *in limine* are preliminary and "subject to change as the trial unfolds," and would be denied where they could best be resolved as evidence develops during trial (*citing Luce v. United States*, 469 U.S. 38, 41 (1984)); *accord Finch v. Covil Corp.*, 388 F.Supp.3d 593, 612 n.14 (M.D.N.C. 2019), *aff'd*, 972 F.3d 507 (4th Cir. 2020) (courts generally defer ruling on motions in limine until they have enough information, which usually occurs at trial) (collecting cases).

In any event, the motion in limine fails as a matter of law, because under black-letter North Carolina and Delaware law, Mr. Williams has standing to sue AT&T directly for these damages, **first**, because all of these damages occurred as a result of AT&T's breaches of various duties which AT&T owed directly to Mr. Williams, and **second**, because Mr. Williams suffered direct damages as a result of

1

AT&T's conduct. Because Mr. Williams has direct standing to recover those damages from AT&T, evidence of those losses is directly relevant under Fed. R. Evid. 402, and not unfairly prejudicial under Fed. R. Evid. 403. AT&T's motion in limine to exclude evidence of these damages should be denied. *See generally Under Armour, Inc.,* 2021 WL 2518212, at *1-2; *Tarlton for McCollum,* 2021 WL 1845171 at *1-2; *Bouygues Telecom, S.A. v. Tekelec*, No. 4:05-CV-78-FL, 2007 WL 9718142, at *2-3 (E.D.N.C. Feb. 23, 2007) (unpublished).

## FACTUAL BACKGROUND

This motion in limine is premature and duplicative of arguments made in AT&T's Memorandum of Law in Support of its Motion for Summary Judgment. (*See* Doc. No. 119 at 3-5.) In the interest of brevity and avoiding duplication, Mr. Williams does not reproduce herein the full Statement of Facts contained in his Memorandum of Law in Opposition to AT&T's Motion for Summary Judgment, filed concurrently with this opposition, and instead offers facts relevant to his cryptocurrency mining damages.

Before AT&T facilitated the SIM-swap attacks against him, Mr. Williams operated a successful Bitcoin operation, via a single-member LLC, Apollo Kids Mining, LLC ("Apollo"). However, AT&T's duties to its customer, Mr. Williams, were entirely independent of, and unrelated to, Mr. Williams' status as the sole member of Apollo.

As Apollo's one member, Williams was (and remains) entitled to all its proceeds. (*See* Appendix, Ex. 3 at 25:19-24; 231:25-235:4; 237:5-19.) All of the proceeds from Apollo cryptocurrency rewards were deposited directly into Mr. Williams' online cryptocurrency accounts, each of which was accessed via Mr. Williams' personal email, and subject to his sole control. (*See* Williams Decl. ¶¶ 2-3; Appendix, Ex. 13; Ex. 14 at 4-7.) Mr. Williams's cryptocurrency accounts received the proceeds from his Apollo Bitcoin mining operation, as well as cryptocurrency he received from other sources. (Williams Decl. ¶ 4.) As a result of the AT&T's first SIM swap of Mr. Williams' account, hackers were able to divert his Apollo Bitcoin mining operation proceeds from Mr. Williams' cryptocurrency accounts to an account (or accounts) controlled by the hackers. (*See* Appendix, Ex. 2; Ex. 14 at 4-5; Ex. 3 at 90:24-92:5.) After AT&T's repeated SIM swaps of Mr. Williams' account compromised the safety of this mining operation,

2

Mr. Williams was forced to discontinue it, or risk attacks against his other (as yet un-hacked) operations. (*See* Appendix, Ex. 14 at 11-14; Ex. 3 at 256:9-259:19.)

## ARGUMENT

The motion should be denied, in its entirety, because it seeks to exclude a broad category of evidence, in a general and unspecific manner. *Bouygues Telecom, S.A.*, 2007 WL 9718142 at *1 (request to exclude an entire category of unspecified documents and evidence cannot be properly addressed in limine, and thus, "to the extent that defendant's motions intend to exclude any broad category of evidence not specifically identified, the motion is DENIED."). Furthermore, to the extent that any part of this motion is not rendered moot by the determination of AT&T's motion for summary judgment and/or to the extent that AT&T seeks to exclude evidence based on arguments not raised in its summary judgment motion, plaintiff requests the opportunity to submit additional, specific arguments as to any specific evidence or documents which AT&T continues to seek to exclude after the summary judgment motion is decided.

In addition, the motion in limine should be denied, because Mr. Williams has standing to assert these claims directly, because all of the damages to Mr. Williams' Apollo Bitcoin mining operation occurred as a result of AT&T's breach of contractual, statutory, and common-law duties which AT&T owed directly to Mr. Williams. Thus, Mr. Williams' claims to recover the damages to his mining operation are direct claims, not derivative claim, and Mr. Williams has standing to assert these claims directly against AT&T, as a matter of settled North Carolina and Delaware law.

Under North Carolina law, a shareholder (or an LLC member) has standing to sue <u>directly</u> for injuries to the corporation (or LLC), "even if the corporation also has a cause of action arising from the same wrong," where ***either*** (a) "the shareholder can show that the wrongdoer owed him a special duty" ***or*** (b) "the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself." *See Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658-59 (1997). Here, both grounds for standing apply, although either one of them would be sufficient.

As the North Carolina Supreme Court held in *Barger,* "to proceed with [his] lawsuit under the first exception to the general rule, [Mr. Williams] must allege facts from which it may be inferred that [AT&T] owed plaintiff[] a special duty. *The special duty may arise from contract or otherwise* . . . [T]he duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual." 346 N.C. at 659 (emphasis added). A special duty can be found where the defendant "performed individualized services directly for the shareholder." *Id.* It can also be found where a defendant made representations directly to a person, thus undertaking a separate duty to that person. *Id.* at 662

That is exactly what happened here. AT&T had a commercial relationship directly with Mr. Williams, which was entirely independent of, and unrelated to, Mr. Williams' status as the sole member of Apollo. As a result of this relationship, AT&T also took on statutory and common law duties to Mr. Williams. AT&T's repeated and wanton breaches of these duties caused all of Mr. Williams' injuries, including the diversion of Apollo distributions to the hackers, and the need for Mr. Williams to discontinue Apollo's Bitcoin mining business. Thus, as a matter of North Carolina law, Mr. Williams has standing to sue AT&T directly.[1] *Sara James Zoutewelle v. Mathis*, No. 17CVS20422, 2018 WL 4698735, at *9 (N.C. Super. Sep. 13, 2018) (unreported) (plaintiff had standing to sue former husband directly for conduct which harmed jointly owned limited liability companies, based on marital settlement agreement under which husband owed duties directly to wife separate from duties he owed her as manager of the entities); *accord LeCann v. Cobham*, No. 10 CVS 11169, 2011 WL 3329317, at *5 (N.C. Super. Aug. 2, 2011) (unreported).

Furthermore, to the extent that Delaware law applies, Delaware recognizes the same direct-duty exception. *See NAF Holdings, LLC. v. Li & Fung (Trading) Ltd*., 118 A.3d 175, 179 (Del. 2015) ("a party to a commercial contract may sue to enforce it contractual rights directly, without proceeding by way of derivative action"). In *NAF,* plaintiff/shareholder executed a contract directly with defendant; defendant's

---

[1] AT&T fails to even mention this exception in its papers, although it is clearly applicable, thus foreclosing its ability to argue the issue for the first time on reply, when Williams will have no opportunity to respond.

4

breach damaged the value of certain wholly owned subsidiaries; plaintiff/shareholder brought a direct suit against defendant; and defendant moved to dismiss on the ground that the claims were derivative because the harm was done to a corporate entity. *Id.* at 179-180. The Delaware Supreme Court flatly disagreed and held that plaintiff – like any contracting party – could bring a direct claim for all the damages done to wholly-owned entities, because the claim belonged to plaintiff, as the contracting party. *Id.* at 181 ("It would be inconsistent with these legal principles to subject commercial parties to a burdensome demand excusal process before allowing them to sue on their own commercial contracts."). The Delaware Supreme Court in *NAF* further explained that claims in tort, contract, or for statutory harm are generally direct whenever a plaintiff "seek to bring a claim belonging to her personally," – *i.e.*, any claim based on breach of duties that defendant owed directly to plaintiff – even if "the corporation of which the plaintiff is the stockholder suffered the alleged harm." *Id.* at 180. *See also Citigroup Inc. v. AHW Inv. P'ship,* 140 A.3d 1125, 1138-39 (Del. 2016) (negligent misrepresentation and fraud claims were direct, because they arose from breaches of duty owed directly to shareholders, even if alleged harm was to corporation).

In its motion, AT&T does not (and cannot) deny that it had a commercial contract with Mr. Williams, and thus all contractual, statutory, and common-law duties arising out of that contract ran directly to him. (AT&T's SMJ Br. at 9-11.) Indeed, AT&T has the temerity to argue both (1) that Mr. Williams cannot sue AT&T for the millions of dollars of losses associated with the shut-down of Apollo because those claims belong only to Apollo; **and** (2) that Apollo cannot sue AT&T for those losses, because AT&T's duties ran only to Mr. Williams. (*Id.*; AT&T's AKM Motion in Limine at 2.) However, because AT&T's duties did run to Mr. Williams, he is the one with direct standing under both North Carolina and Delaware law.

While this direct-duty standing is sufficient in and of itself, Mr. Williams also has standing because he has alleged direct injury, over and above (and different from) any injury suffered by Apollo. After the first SIM-swap attack on November 5, 2018, the hackers were able to direct the distribution of proceeds from Mr. Williams to themselves. (*See* Appendix, Ex. 2; Ex. 14 at 4-5.) In diverting this distribution, the hackers stole directly from Mr. Williams, who suffered the injury.

5

Mr. Williams sought to continue Apollo's business through at least six SIM swaps and resulting hacks.  However, ultimately, when the facility housing and powering these mining rigs shut down, Mr. Williams decided not to restart his bitcoin mining operation because he believed the hackers would continue to attack these rigs. (*See* Appendix, Ex. 14 at 11-14; ("Mr. Williams was the CEO and Chairman of Product Recovery Technologies International, Inc. ("PRTI"), which runs a first-of-its-kind cryptocurrency mining operation powered by the decomposition of old tires. Mr. Williams could have, at minimal personal cost, immediately transferred his mining rigs from the Anexio Virginia data center to the PRTI facility, where PRTI employees could have reestablished his mining rigs with minimal downtime. Mr. Williams chose not to because, in light of the repeated SIM swaps he suffered and the repeated hacks of his BTC mining rigs enabled by those SIM swaps, he was concerned that associating these rigs with the PRTI facility would compromise the security of PRTI's operations, which, to this day, remain secure and have not been hacked."). Furthermore, the FBI told Mr. Williams that, as a result of the hacks against him, his personal information (not Apollo's) was on the dark web, and he was concerned that he would repeatedly lose the ability to personally reap the proceeds from those rigs. (*See* Appendix, Ex. 3 at 256:9-259:19.)

This is direct injury, especially because Apollo was a pass-through entity. *See Sehoy Energy LP v. Haven Real Estate Group, LLC*, No. CV 12387-VCG, 2017 WL 1380619, *8-9 (Del. Ch. April 17, 2017) (unpublished) (claims for loss of value of pass-through entity, and for inability to withdraw investment from entity likely belong directly to member, not entity); *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l. Fund, L.P.*, 829 A.2d 143, 152 (Del. Ch. 2003) (finding claims direct in pass-through entity, where "whenever the value of the Fund is reduced, the injury accrues irrevocably and almost immediately to the current partners but will not harm those who later become partners . . . . Such losses confer only a fleeting injury to the Fund, one that is immediately and irrevocably passed through to the partners."); *see also Suntrust Bank v. Dowdy*, No. 5:08-CV-458-DAN, 2010 WL 3834573, *4-5 (E.D.N.C. Sept. 30, 2010) (unpublished).

Because these damages were all directly suffered by Mr. Williams, Mr. Williams is entitled to introduce evidence of them at trial, in order for the jury to enter an appropriate award compensating him for the damages he suffered directly.

In sum, AT&T breached contractual, common law, and statutory duties which it owed directly to Mr. Williams, and it is therefore legally responsible *to Mr. Williams* for all the damages its wrongful conduct caused to Mr. Williams regardless of whether or not the damages occurred directly to him, or via his single-member limited liability company, or otherwise. AT&T cannot escape responsibility by trying to hide behind the fact that Mr. Williams conducted crypto-currently mining via a single-member limited liability company. From AT&T's perspective, its liability is in the same amount, and to the same person, regardless of how Mr. Williams conducted his crypto-mining business.

Because AT&T is liable for Mr. Williams' cryptocurrency mining damages, evidence regarding those damages is both relevant under Federal Rule of Evidence 402, and not unfairly prejudicial under Rule 403. In addition, much of this evidence may also be relevant to other claims or defenses in this case, an issue better hashed out at or closer to trial.

## CONCLUSION

For all the foregoing reasons, AT&T's motion in limine to exclude any evidence of Mr. Williams' crypto-mining damages should be denied.

Dated: May 2, 2022
New York, New York

WITHERS BERGMAN LLP

By: _____
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*

Terence S. Reynolds
Lucas Garber
**SHUMAKER LOOP & KENDRICK LLP**
101 South Tyron Street, Suite 2200
Charlotte, North Carolina 28280
Telephone: (704) 375-0057
Facsimile: (704) 332-1197
treynolds@shumaker.com
State Bar No. 49848

*Local Civil Rule 83.1(d) Counsel for Plaintiff Jason Williams*

**CERTIFICATE OF SERVICE**

I hereby certify that on date set out below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Nancy L. Stagg
KILPATRICK TOWNSEND & STOCKTON LLP
12255 El Camino Real, Suite 250
San Diego, CA 92130
Telephone: (858) 350-6156
Facsimile: (858) 350-6111
Email: nstagg@kilpatricktownsend.com

Joseph S. Dowdy
KILPATRICK TOWNSEND & STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com

Michael Breslin
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
Email: mbreslin@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility, LLC*

This the 2nd day of May, 2022

/s/ Christopher LaVigne
Christopher LaVigne