IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

JASON WILLIAMS,

    Plaintiff,

v.

AT&T MOBILITY LLC,

    Defendant.

Case No.: 5:19-cv-00475-BO

**DEFENDANT AT&T MOBILITY LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF AT&T'S MOTION OF SUMMARY JUDGMENT**

**ARGUMENT**

Defendant AT&T Mobility LLC's ("AT&T") Motion for Summary Judgment as to Plaintiff Jason Williams' ("Mr. Williams") Complaint should be granted. Mr. Williams cannot recover for himself the alleged crypto-mining damages belonging to non-party Apollo Kids Mining, LLC ("AKM"). Mr. Williams' emotional distress and punitive damages claims fail as a matter of law, and the economic loss doctrine bars his tort claims.[1] Because of reply page limitations, AT&T incorporates by reference its arguments asserted in its moving memorandum at pp. 14-17 regarding Mr. Williams' claims for violations of FCA and North Carolina Anti-Hacking Statute, as well as lack of proximate cause.

**1. MR. WILLIAMS CANNOT RECOVER AKM'S DAMAGES.**

Mr. Williams cannot recover AKM's damages for himself. The cases relied on by Mr. Williams in his opposition show that direct individual claims have been allowed only where there is a relationship between the corporate entity (AKM) and the defendant (AT&T), as well as between the individual (Williams) and the third party (AT&T). That relationship does not exist between AKM and AT&T.

In seeking to directly recover AKM's crypto-mining damages from AT&T for himself, Mr. Williams is improperly attempting to assert a third-party beneficiary claim for AKM. Mr. Williams has not shown that the agreement he had for personal

---

[1] Williams conceded in his Opposition that Count VI, for Violation of the Computer Fraud and Abuse Act, 18, U.S.C. §1030, should be dismissed. ECF 141, Williams Opp. Memo., p. 25, fn 6.

1

telephone service with AT&T was for the benefit of AKM.[2] AT&T did not undertake to perform services or enter a contract with AKM in mind, and therefore it does not owe any duty to AKM. The contract at issue here is between Mr. Williams and AT&T only. *See, G.E.B., Inc. v. QVC, Inc.,* 129 F.Supp.2d 856, 860 (M.D.N.C. 2000) (applying North Carolina law and finding that plaintiff was not a third party beneficiary because the plaintiff was not a party to the Agreement and the Agreement was not intended by both parties to directly benefit the plaintiff); *see also Hoisington v. ZT–Winston–Salem Assocs.,* 133 N.C.App. 485, 490–94(1999) (holding that an employee injured by criminal activity at the employer's premises was an incidental beneficiary of a contract between her employer and the security company, and therefore, could not recover directly from the security company).

Mr. Williams should not be allowed to assert a claim for AKM's alleged damages as his own. Each case relied on by Mr. Williams in his opposition brief shows that for an individual shareholder action to be permissible, the third party against whom a claim is asserted must have a relationship with *both* the corporate entity and the individual plaintiff.

Mr. Williams' citations to two N.C. Business Court cases in his opposition brief are unpersuasive and entirely distinguishable from this action. In *Zoutewelle v. Mathis*, 2018 WL 4698735, (N.C.B.C. 2018), the plaintiff, a shareholder in real estate companies operated by her former husband, was permitted to bring an action in the

---

[2] "When a party seeks enforcement of a contract as a third-party beneficiary, the contract must be construed strictly against the party seeking enforcement." *Michael v. Huffman Oil Co.,* 190 N.C.App. 256, 269 (2008).

N.C. Business Court against her former husband because the husband assumed specific contractual duties to her and also had a duty to the real estate companies. *Zoutewelle*, 2018 WL 4698735 at *9. AT&T, unlike the former husband-defendant in *Zoutewelle*, doesn't operate AKM and has no separate duty to AKM arising out of Williams' AT&T account for personal telephone service. ECF 2, Complaint, ¶10. *Zoutewelle* has no application here. Similarly, in *LeCann v. Cobham*, 2011 WL 3329317 (N.C.B.C. 2011) (unpublished), the N.C. Business Court allowed the plaintiff to assert claims against the defendant because both parties were joint officers and managers and therefore had fiduciary duties to each other because of those roles.[3] *LeCann*, 2011 WL 3329317 at *5. Like *Zoutewelle*, *LeCann*'s facts are entirely distinguishable from this case: defendant Cobham was plaintiff LeCann's former partner in a dental practice, and they were joint officers and directors in certain professional entities they had formed. LeCann filed suit against Cobham for breach of fiduciary duty and related claims based on various derivative claims of the entities. *LeCann*, 2011 WL 3329317 at *1. *LeCann* is also of no application here: AT&T has no relationship at all with AKM, providing only personal telephone service to Mr. Williams.

In his opposition, Mr. Williams overlooks key facts in these two decisions. In each instance, the defendant against whom a claim is asserted had a duty to or a special relationship with the corporate entity **and** the individual plaintiff. *Zoutewelle*, 2018 WL 4698735 at *9. *LeCann*, 2011 WL 3329317 at *5. In contrast, here, AT&T

---

[3] "The Business Court is a special Superior Court, the decisions of which have no precedential value in North Carolina." *Estate of Browne v. Thompson*, 219 N.C. App. 637 (2012).

3

had no relationship at all with AKM. ECF 2, Complaint, *passim* (no mention of AKM in the Complaint). Therefore, the general rule from *Barger v. McCoy Hillard & Parks*, 346 N.C. 650 (1997) applies, and Mr. Williams cannot appropriate AKM's alleged damages for himself as "[s]hareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the . . . diminution of the value of their stock." *Barger*, 346 N.C. at 658. There is no such evidence in this case.

As a matter of law, Mr. Williams cannot recover for injuries that were suffered by this separate corporate entity. *Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) (shareholders lack standing to bring claims alleging injury to the corporation); see also *Fulton v. Talbert*, 255 N.C. 183, 185 (1961) ("[S]hareholders have no right to bring actions 'in their [individual] names to enforce causes of action accruing to the corporation.'"), rather, such claims must be brought derivatively on behalf of the corporation. *Rivers v. Wachovia Corp.*, 665 F.3d 610, 614 (4th Cir. 2011).

### 2. PLAINTIFF'S CLAIM FOR EMOTIONAL DISTRESS FAILS.

Mr. Williams cannot recover emotional distress damages as he cannot show he suffered "severe emotional distress" as required by North Carolina law.

The North Carolina Supreme Court has stated, "[T]he term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by

4

professionals trained to do so. *Waddle v. Sparks*, 331 N.C. 73, 83 (1992). In *Waddle*, when questioned at her deposition about seeing a psychiatrist, the plaintiff stated she had not seen psychiatrist since well before the events comprising her suit. *Id.* at 85. She produced no medical documentation to support her alleged "severe emotional distress" nor any forecast of evidence of "severe and disabling" psychological problems. *Id.* Thus, the North Carolina Supreme Court held, because plaintiff failed to forecast sufficient evidence of the "severe emotional distress" element of the tort, plaintiff's claim could not survive summary judgment.

Here, Mr. Williams' allegations about unknown third parties sending a threat via text message do not constitute severe emotional distress attributable to AT&T. There is no evidence of any connection between AT&T and any threat text message or any connection between any of the SIM swaps and any threat text message. Other unknown parties were responsible for those texts. Rough language, including threats, are an unfortunate reality of living in the modern mobile age. *See Gauthier v. Shaw Group, Inc.,* 3:12-CV-274-GCM, 2012 WL 6043012 at *7 (W.D.N.C. 2012) ("Mere insults, indignities, and threats do not constitute extreme and outrageous conduct because plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind."). Mr. Williams' vague testimony about the "highly disruptive" outcome of the SIM Swaps and "worry" about his family's safety is insufficient to carry his burden of proof or to rise to the level of "emotional or mental disorder, such as . . . neurosis, psychosis, chronic depression, phobia, or any other

5

type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83 (1992); *see also, McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 612–13 (M.D.N.C. 2019) (finding that plaintiff "must provide some verification that he actually suffers from such a condition as a result of the defendant's conduct"); *Estate of Hendrickson v. Genesis Health Venture, Inc.*, 151 N.C.App. 139, 157 (reversing trial court's denial of directed verdict motion where "there was evidence that plaintiffs were emotionally distressed ... [but] plaintiffs failed to present evidence that such distress was severe"); *Johnson v. Scott*, 137 N.C.App. 534, 539 (2000) (affirming that summary judgment was proper where plaintiff's evidence of "difficulty sleeping," nightmares and periodic loss of appetite failed to "me[e]t the requisite level of 'severe' emotional distress"); *Patten v. Hall*, No. 5:15-CT-3118-FL, 2019 WL 4858845, at *17 (E.D. N.C. Sept. 30, 2019) (stating that testifying in his deposition that plaintiff sought treatment for "nightmares" is not sufficient to show he suffered from a mental disorder "generally recognized and diagnosed by trained professional."). Mr. Williams' emotional distress claims fail as a matter of law because he cannot show severe emotional distress and the Court should grant AT&T's Motion for Summary Judgment as to these damages.

The cases referenced by Mr. Williams for the proposition that his deposition testimony alone is sufficient evidence of his emotional distress are misleading at best. *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536 (4th Cir. 2003) involved a federal Title VII race discrimination claim and not North Carolina state law claims

and therefore relies on a different evidentiary standard. *Bryant*, 333 F.3d 547. *Reis v. Hoots,* 131 N.C. App 721 (1998) involved a "rare" claim for mental anguish for breach of contract arising out of a marital agreement non-molestation clause. *Reis*, 131 N.C. App. at 731-733. *Lima v. MH & WH, LLC,* 2019 WL 2602142 (E.D.N.C. Mar. 8, 2019) *supports* AT&T's argument that Ms. Williams' testimony alone is insufficient for emotional distress damages. The court in that case found that claims for "PTSD" "paralysis" "pain" and "significant medical expenses" required evidence outside of the plaintiff's own statements. *Id.* at *20. Each of the other cases in cited in Mr. Williams' brief is similarly inapplicable to this case for these reasons. And Mr. Williams misses the critical point: because he cannot present evidence of the *severe* emotional distress that is required as a matter of North Carolina law, the Court should grant AT&T's Motion for Summary Judgment.

### 3. PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES.

Mr. Williams cannot recover punitive damages as he cannot show that AT&T's officers, managers, or directors ratified or condoned or acted willfully or intentionally to injure him and the parties agreed to limit their damages by contract.

Mr. Williams' claim for punitive damages against AT&T fails as a matter of law because there is no evidence that AT&T's officers, managers, or directors participated in or condoned the SIM swaps at issue here, let alone the alleged third party hacking of his accounts. Mr. Williams' own brief admits that Stephen Defiore, an employee of an independent wireless dealer, Prime Communication – not an employee of AT&T – was involved in the SIM swaps at issue in this case. ECF 141,

7

William Opp. at p. 22. Mr. Defiore was not an officer or director at AT&T, nor was he a manger for AT&T. He had no power to make independent personnel decisions at AT&T. *See Ward v. AutoZoners, LLC*, 958 F3d 254 (4th Cir. 2020) (stating that power to make independent decisions regarding personnel matters or determine policy for the employer was required impute vicarious liability for punitive damages). Mr. Williams cannot show that any officer, director or managing agent of *AT&T* knew, much less committed, ratified or authorized any of the criminal third party actions about which he complains. The SIM swaps and subsequent manipulation of accounts were the independent and sophisticated criminal acts of third parties. All the evidence demonstrates that AT&T reversed each SIM swap to restore Mr. Williams' service, and AT&T's management team was investing millions of dollars and installing new technology and policies and procedures to address and prevent unauthorized SIM swaps. ECF 119, AT&T Memo., at p. 7, citing to Appx. 4, Scheder Deposition Testimony. Because Mr. Williams cannot meet the heightened burden for punitive damages, Mr. Williams' claim for punitive damages fails as a matter of law.

Mr. Williams and AT&T agreed to limit categories of available damages, including punitive damages, and that agreement should be allowed by this Court. Section 4.1 of the Wireless Customer Agreement stated in pertinent part that, "AT&T isn't liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, Services, Software, or Devices provided by or through AT&T, including loss of business or

8

goodwill, revenue or profits, or claims of personal injuries." *Wireless Customer Agreement*, Appendix 3, § 4.1, What Are The Limitations On Service And Liability?

"[A]n exculpatory contract will be enforced unless it violates a statute, is gained through inequality of bargaining power, or is contrary to a substantial public interest." *Fortson v. McClellan,* 131 N.C.App. 635, 636 (1998). "This principle arises out of 'the broad policy of the law which accords to contracting parties freedom to bind themselves as they see fit [.]'" *Sylva Shops Ltd. P'ship v. Hibbard,* 175 N.C.App. 423, 428 (2006). When the language of the contract and intent of the parties is clearly exculpatory, the contract, including the exculpatory clause, will be upheld. *See Gibbs v. Carolina Power & Light Co.,* 265 N.C. 459, 467 (1965). The exculpatory clause contained within the Wireless Customer Agreement contains unequivocal and explicit language, freeing AT&T from liability from punitive damages.

Courts have upheld unambiguous language limiting categories of damages between parties. See *Ada Liss Group v. Sara Lee Corp.*, 2010 WL 3910433 (M.D.N.C. 2010) (enforcing an exculpatory clause limiting liability for incidental and consequential damages).

Mr. Williams now alleges that the agreement he signed was a contract of adhesion; however, AT&T's Wireless Agreement has been held as valid and not unconscionable. *See AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011). Additionally, Mr. Williams' claims of unequal bargaining power rings hollow as Mr. Williams had other wireless carrier options which he could have obtained and which he did obtain after alleged SIM swaps occurred. *See Hyatt v. Mini Storage on Green*, 236 N.C. App.

9

278 (2014) (where plaintiff challenged an exculpatory clause in storage unit agreement, the court concluded that because the plaintiff had other storage options "up the road," the exculpatory clause was not the result of unequal bargaining power); *see also Hall v. Sinclair Refining Company, Inc.*, 242 N.C. 707, 710 (1955) (dismissing plaintiff's allegations of unequal bargaining power, even though plaintiff had to sign the documents "to obtain something of importance to him which for all practical purposes is not obtainable elsewhere"). This Court should dismiss Plaintiff's punitive damages claim.

### 4. NORTH CAROLINA'S ECONOMIC LOSS RULE BARS PLAINTIFF'S CLAIMS.

Mr. Williams' claims against AT&T are properly set forth in the law of contract. The economic loss doctrine provides that a breach of contract does not give rise to a tort action by the promisee against the promisor." *Ellis v. La.–Pac. Corp.,* 699 F.3d 778, 783 (4th Cir. 2012). It "prohibits recovery for purely economic loss in tort when a contract, . . .operates to allocate risk." *Kelly v. Ga.–Pac. LLC,* 671 F.Supp.2d 785, 791 (E.D.N.C. 2009); see also, *Lord v. Customized Consulting Specialty, Inc.,* 182 N.C.App. 635, (2007); and W*ilson v. Dryvit Sys., Inc.*, 206 F.Supp.2d 749 (E.D.N.C. 2002. Contrary to Mr. Williams' conclusory argument about the application of exceptions to the economic loss rule, those exceptions do not apply here. AT&T is not an innkeeper or a bailee. N.C. *Ports Authority v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 82 (1978), rejected in part on other grounds by *Trs. Of Rowan Tech. Coll. v J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230 (1985). The economic loss rule applies to bar Mr. Williams' tort claims.

10

## CONCLUSION

For the foregoing reasons, AT&T's Motion for Summary Judgment should be granted.

Respectfully submitted this 3rd day of June, 2022.

/s/  Joseph S. Dowdy
Joseph S. Dowdy (N.C. State Bar No. 31941)
KILPATRICK TOWNSEND & STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6120
Email: jdowdy@kilpatricktownsend.com

Michael Breslin
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
Email: mbreslin@kilpatricktownsend.com

Nancy L. Stagg (CA State Bar No. 157034)
KILPATRICK TOWNSEND & STOCKTON LLP
12255 El Camino Real, Suite 250
San Diego, CA  92130
Telephone: (858) 350-6156
Facsimile: (858) 350-6111
Email:  nstagg@kilpatricktownsend.com

*Counsel for Defendant AT&T Mobility LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that on date set out below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| SHUMAKER LOOP & KENDRICK LLP<br>Terence S. Reynolds<br>treynolds@shumaker.com<br>Lucas D. Garber<br>lgarber@shumaker.com<br>101 South Tyron Street<br>Suite 2200<br>Charlotte, North Carolina 28280 | WITHERS BERGMAN LLP<br>Joseph Gallo<br>Joseph.gallo@withersworldwide.com<br>Christopher LaVigne<br>christopher.lavigne@withersworldwide.com<br>Martin J. Auerbach<br>Martin.auerbach@withersworldwide.com<br>430 Park Avenue, 10th Floor<br>New York, New York 10022-3505 |
| *Counsel for Plaintiff Jason Williams* | *Counsel for Plaintiff Jason Williams* |

This the 3rd day of June, 2022.

/s/ Joseph Dowdy
Joseph S. Dowdy