IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00475-BO

| | |
|---|---|
| **Jason Williams**, | |
| Plaintiff, | |
| v. | **Order** |
| **AT&T Mobility**, | |
| Defendant. | |

Well after the close of discovery and weeks after the motion-filing deadline, Jason Williams asks the court to compel AT&T Mobility to produce documents it claims are privileged. The court will deny this motion for two reasons. First, Williams's motion is untimely. By filing his motion after the motions-filing deadline he not only violated the scheduling order, but he also violated this court's local rules and its general practices. While he could remedy this issue by showing good cause for his untimely filing, he has not done so. Williams was aware of this privilege dispute months before the relevant deadlines passed and AT&T never waivered in its position that the documents were privileged.

Second, Williams would not be entitled to the documents even if his motion was timely. The documents at issue were prepared at the direction of counsel in response to, in some cases, the strong possibility of litigation and, in another case, this lawsuit. So the documents are entitled to the protections of the attorney-client privilege and the work-product doctrine. And Williams cannot overcome these protections because he has not shown that the information he seeks was unavailable to him through other discovery tools.

## I.     Background

Cell phones use Subscriber Identity Module (SIM) cards to communicate with wireless carriers. The information transmitted by SIM cards also allow the wireless carrier to identify the phones on its network. Wireless carriers can modify the SIM card associated with a particular phone.

There are various legitimate reasons why a consumer may want to replace their phone's SIM card. For example, a customer may want to "move their wireless number from one cell phone to another[.]" Compl. ¶ 25. Or they may want to switch cell phones but remain with the same wireless carrier. *Id.*

There are also various illegitimate reasons why third parties would want to engage in a SIM swap without the cell phone owner's knowledge. If third-party can have a victim's SIM card associated with their cell phone, they can receive all the victims' text messages and phone calls. Access to those communications would allow the third party to circumvent various security measures used to restrict access to the victim's online accounts. This could include the victims' financial accounts.

Williams claims that he suffered substantial losses after being the victim of a SIM swap. He blames AT&T for his losses, claiming the company lacked enough procedures to safeguard his account information.

After filing their pleadings, the parties exchanged discovery requests. Among the requests Williams served in June 2020 was one seeking documents or communications related to actual or attempted changes to the SIM card associated with his account. Mem in Supp. Mot. to Compel. at 2. AT&T's response to this request included account notes that showed "unauthorized changes to his SIM card made by AT&T employees and agents." *Id*.

Then, in mid-November 2021, Williams deposed Ray Hill, an AT&T employee. *Id.* Hill testified as AT&T's corporate representative on its knowledge of Williams's claims, his account, and his account notes. *Id.* As part of his testimony, Hill stated that an AT&T employee named Robert Arno might have more information on the SIM swap that impacted Williams's account. *Id.*

A week after taking Hill's deposition, Williams noticed Arno's deposition. *Id.* He believed Arno could provide "factual information beyond what was in the account notes[.]" *Id.* at 3. He also asked AT&T to produce all documents related to its investigation into Williams's claims.

AT&T responded by telling Williams that much of what he sought was privileged information. It claimed that "much if not all" of Arno's knowledge about the investigation into Williams's claims was "privileged as attorney work product and attorney client [sic] privilege." *Id.* It also claimed that its "internal investigative documents were privileged and not subject to discovery." *Id.* In mid-February 2022, the company produced a privilege log containing three entries for documents related to its investigation into the SIM swap on Williams's account. The first two entries on the log relate to a December 2018 investigation, and the remaining entry involved a November 2019 investigation.

About two weeks later, on the final day of the discovery period, Williams deposed Arno. Throughout the deposition, AT&T instructed Arno to not answer questions because, in the company's view, the questions called for privileged information.

Then, in mid-March 2022, Williams sent AT&T a letter outlining concerns he had over various discovery issues, including whether the documents listed on the privilege log were privileged. And he argued that even if they were, he was entitled to them because he had a substantial need for the investigations' factual findings.

AT&T was not persuaded by Williams's arguments and stood by its claim that the documents were privileged. In a March 25, 2022 letter, the company's counsel told Williams's attorney, "If you would like to schedule a call to discuss these issues further by telephone, please suggest some convenient dates and times." While the parties exchanged some voicemails about discovery issues, they did not resolve the privilege issue before the March 30, 2022 motion-filing deadline.

Williams's attorney next reached out to his counterpart at AT&T on April 8, 2022. In response to Williams's request to continue discussing the privilege issue, AT&T responded that since the motion-filing deadline passed, there was no longer anything to discuss on that topic. This motion followed about three weeks later.

## II.    Discussion

### A.    Timeliness of Williams's Motion

AT&T argues that the court should deny Williams's motion because it is untimely. The company points out that he did not make his motion until well after the discovery period ended and after the deadline to file all non-evidentiary motions. Williams responds that the course of conduct between the parties justifies its late filing.

Williams's motion must overcome three timeliness-based issues. First, it is well established in this district that, as a general matter, motions to compel must be filed before the end of the discovery period. *See Spilker* v. *Medtronic, Inc.*, No. 4:13-CV-00076-H, 2015 WL 1643258, at *3 (E.D.N.C. Apr. 15, 2015); *Davenport* v. *Elks*, No. 5:13-CT-0209-BO & 5;12-CV-3203-BO, 2015 WL 7306446 (E.D.N.C. Nov. 19, 2015); *Powell* v. *Kamireddy*, No. 7:13-CV-00267-F, 2015 WL 333015, at *4 (E.D.N.C. Jan. 26, 2015); *English* v. *Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014), *aff'd*, 582 F. App'x 229 (4th Cir. 2014); *Sager* v. *Standard Ins.*

4

*Co.*, No. 5:08-CV-628-D, 2010 WL 2772433, at* 1 (E.D.N.C. July 12, 2010). Second, the scheduling order required that the parties file all motions except for those relating to the admission of evidence no later than March 30, 2022. Dec. 21, 2021 Order, D.E 105. And third, the court's local rules require that motions not directed at the admissibility of evidence be filed 30 days after the close of discovery, which in this case was March 30, 2022. Local Civil Rule 7.1(a).

There is no question that Williams's motion was filed after each of these deadlines. So to have the court consider his motion, he must show good cause for his untimely filing. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); Local Civil Rule 1.1 ("A judge or magistrate judge, for good cause and in his or her discretion, may alter these rules in any particular case."). To meet this standard, he must show "at a minimum" that he acted diligently in meeting the now-expired deadline. *Franklin Livestock, Inc.* v. *Boehringer Ingelheim Vetmedica, Inc.*, No. 5:15-CV-63-BO, 2016 WL 7613690, at *2 (E.D.N.C. Sept. 26, 2016).

Williams has not met the good-cause standard for modifying the scheduling order to allow his untimely filing. The record shows that Williams knew well before the close of discovery that there was a dispute over whether AT&T could withhold certain documents based on a privilege objection.

The topic first came up in in early December 2021 when AT&T told Williams that its "internal investigative documents were privileged" and thus undiscoverable. Letter from Breslin to LaVigne (Decl. 7, 2021), D.E. 137–8 at 4. Shortly after learning that fact, Williams asked AT&T to support its privilege claims. Email from Gallo to Breslin (Decl. 17, 2021), D.E. 137–9 at 2–3. About six weeks after Williams made this request, AT&T again told Williams that it considered matters related to its internal investigation to be privileged. Email from Stagg to LaVigne &

Gallow (Jan. 24, 2022), D.E. 137–9 at 2; Mem. in Supp. at 6 n.1. It sent Williams a privilege log included the documents he now asks the court to compel AT&T to produce.[1] *Id*.

And if all that had not put Williams on notice that he may need to move to compel production of the privileged documents, Robert Arno's deposition left no question about it. During that deposition AT&T repeatedly levied privilege objections to Williams's inquiries into Arno's investigation and its findings. *See* D.E. 137-12;

So before the close of discovery, Williams knew or should have known that he would need to seek court intervention to obtain those documents. But rather than ask for additional time to conduct discovery or to move to compel, he let the deadline expire without taking any formal action.

It was not until the discovery period closed that Williams directly challenged AT&T's privilege claim. Letter from LaVigne to Stagg (Mar. 17, 2022), D.E. 137–13 at 3–4. At the time AT&T responded to and rejected Williams's arguments against its claim of privilege, there were still several days left before the motion-filing deadline. Letter from Stagg to LaVigne (Mar. 25, 2022), D.E. 137–11.

Then, in the final hours before the motion-filing deadline, AT&T once again reaffirmed its view that the documents were privileged. LaVigne Decl. ¶ 20. Its counsel told Williams's attorney that while she would have a discussion, she "didn't know that we have too much to talk about[.]" *Id.* Yet Williams allowed the deadline to pass without filing anything with the court.

Another eight days passed before Williams's attorneys emailed AT&T again. Email from Gallo to Stagg (Apr. 8, 2022), D.E. 137–14 at 5. Then, on April 11, 2022, AT&T shared that since

---

[1] Although Williams notes that AT&T provided an amended privilege log in mid-February 2022 that included "more information," he has not explained what additional information the company included or why the lack of that information would have prevented him from understanding that AT&T believed the documents to be privileged.

the motion-filing deadline was passed, there was no need to meet and confer on discovery issues. Email from Stagg to Gallo & LaVigne (Apr. 11, 2022), D.E. 137–14 at 4. Yet despite knowing on April 11th that AT&T believed that Williams had missed the deadline to file a discovery motion, it was not until 17 days later that he moved to compel.

By waiting until weeks after those deadlines passed (and weeks after AT&T said it missed those deadlines) to file his motion, Williams failed to act with the diligence necessary for the court to consider his untimely motion. He was on notice since November 2021 that there could be a dispute over privileged documents. And at every opportunity from the time the issue first arose until all the relevant deadlines passed, AT&T reaffirmed its commitment to the documents' privileged status. Nothing suggests that AT&T ever led Williams to believe that it would turn the documents over without a court order. The need to act in some way—be it by moving to compel, a motion to extend the discovery period, or a motion to extend the motion-filing deadline—was clear before any of the relevant deadlines passed. His motion is denied because it was untimely.

## B. Whether Documents are Privileged

Yet even if Williams's motion were timely, the court would still deny it. AT&T has established that the records contain attorney-client communications or are fact work product. Williams has not shown that he can overcome the protections provided by those doctrines.

### 1. Attorney-Client Privilege

The attorney-client privilege is the oldest of the common-law privileges and encourages free communications between attorneys and their clients. *Upjohn Co.* v. *United States*, 449 U.S. 383, 389 (1981). It "affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins* v. *Stables*, 148 F.3d 379, 383 (4th Cir. 1998).

7

AT&T, as the party invoking the privilege, bears the burden of showing that the privilege applies and that AT&T has not waived it. *United States* v. *Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). To make this showing, it must establish four things. First that the holder of the privilege either was or was seeking to become a client. *NLRB* v. *Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011).[2] Second that the person receiving the communication is an attorney (or an attorney's subordinate) and acted as an attorney when they received it. *Id.* Third that the communication relates to facts conveyed by a client outside the presence of strangers and to receiving legal services. *Id.* And fourth that the party has claimed the privilege and not waived it. *Id.*

When assessing whether the privilege applies, the court should not just take the proponent at their word. Instead, "[i]t is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit . . . and an improperly asserted privilege is the equivalent of no privilege at all." *Byrnes* v. *Jetnet Corp.,* 111 F.R.D. 68, 71 (M.D.N.C. 1986). Conclusory allegations are not enough. *See N. River Ins. Co.* v. *Stefanou*, 831 F.2d 484, 487 (4th Cir. 1987).

### 2. Work-Product Doctrine

Under the work-product doctrine, documents prepared "in anticipation of litigation . . . by or for another party or its representative" are generally not discoverable. Fed. R. Civ. P. 26(b)(3)(A). As with the attorney-client privilege, the party invoking the doctrine bears the burden of showing that it applies. *Sandberg* v. *Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992). Meeting this burden requires making "this showing with a specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons."

---

[2] Given that federal law supplies the rules of decision here, federal law applies to privilege issues. Fed. R. Evid. 501.

*E.I. Du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, No. 3:09-CV-58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010) (internal quotations omitted). Ultimately, the court's decision will turn on whether "the 'primary motivating purpose' behind the performance of the work was to assist in the pending or impending litigation." *Burroughs Wellcome Co.* v. *Barr Labs., Inc.*, 143 F.R.D. 611, 617 (E.D.N.C. 1992) (quoting *Application of Minebea Co., Ltd.*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992)).

Courts distinguish between two types of attorney work-product: fact work-product and opinion work-product. Fact work-product, which consists of documents that lack an attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Procs #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005). The party who seeks disclosure of fact work-product must show a "substantial need" for the document. *United States* v. *Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 WL 3932167, at *7 (E.D.N.C. June 25, 2015) (citing *Republican Party of N.C.* v. *Martin*, 136 F.R.D. 421, 429 (E.D.N.C. 1991)).

Opinion work-product contains an attorney's "mental impressions, opinions, and legal theories[,]" *Duplan Corp.* v. *Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir. 1976), and is "more scrupulously protected as it represents the actual thoughts and impressions of the attorney." *In re Grand Jury Procs*, 401 F.3d at 250. Once a document qualifies as opinion work-product it is immune from discovery, except in "very rare and exceptional circumstances." *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997).

### 3.    Analysis of Allegedly Privileged Documents

AT&T has provided sufficient evidence to show that the documents on its privilege log are immune from discovery. It has submitted declarations establishing that each documents was prepared at the direction of legal counsel in connection with anticipated litigation and to provide advice to AT&T about its obligations under state and federal law. Beck Decl. ¶¶ 3 &4; Stagg Decl. ¶¶ 3 & 4. Although Williams challenges whether the first two documents were created in anticipation of litigation, they reflect[3] that his claim to AT&T employees that he lost a good deal of money as a result of a SIM swap scheme was the catalyst for their creation. In that circumstance, it would be reasonable for AT&T to expect that Williams may sue them to recover his losses. So the court finds that they were created in anticipation of litigation. *See Burroughs Wellcome*, 143 F.R.D. at 617–18 (noting that a is prepared in anticipation of litigation "if, at the time a document is prepared, litigation is a strong likelihood or contingency.").

Williams relies on the deposition testimony of Robert Arno to try to rebut these statements. His argument is that since the documents were created by non-lawyers, they cannot be privileged. But this is incorrect. *See* Fed. R. Civ. P. 26(b)(3)(A) ("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent."); *In re Grand Jury Proc.*, 102 F.3d 748, 752 (4th Cir. 1996) (work product doctrine did not apply to documents created by non-attorney consultant who conducted investigation before any attorney was involved and was neither hired by an attorney nor worked on behalf of any attorney).

Alternatively, Williams notes that Arno says that he never created a privacy incident document at the direction of an attorney, so the documents cannot be privileged. Arno Dep. Tr. at

---

[3] The court has reviewed all three documents on AT&T's privilege log *in camera*.

98:9–11, D.E. 137–15. But Arno is only the author of one of the documents on the privilege log, so his testimony has no impact on the other two documents.

Nor does his testimony impact the third document, which is described as an executive summary document. His deposition testimony on "privacy incident reports" has to do with initial reporting of privacy incidents. He noted that he created such documents because "[i]t's part of our obligation to report privacy incidents to [another business unit] so they can determine if, in fact, a privacy incident occurred." Arno Dep. Tr. at 98:9–17. The executive summary is a different type of document. It was created at the request of counsel after Williams sued AT&T to provide the company's attorneys with an overview of the case. Stagg Decl. ¶ 4. The executive summary was not the type of document Arno was referring to in his testimony. So Williams's attempt to establish that the documents are not privileged is unpersuasive.

Williams argues that even if the documents are work product, he is still entitled to obtain any fact work product under Rule 26's "undue hardship" exception. That rule provides that a party may discover fact work product if it "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

But what exactly constitutes a need substantial enough that it justifies disclosing an attorney's fact work product? The Advisory Committee Notes to Rule 26 provide three factors courts should consider when assessing whether special needs justify disclosure of fact work product. First, the "importance of the materials to the party seeking them for case preparation[.]" Fed. R. Civ. P. 26 advisory committee 's notes to 1970 amendments subdivision (b)(3). Second, "the difficulty the party will have obtaining them by other means[.]" *Id.* And third, "the likelihood

that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." *Id.*

Williams claims there are three pieces of information that he cannot obtain short of reviewing AT&T's work product. First, he says that "there is no information in the notes or elsewhere in AT&T's production about whether, for example, when and how any of those employees and agents escalated or reported the relevant events beyond entering them into the notes." Mem. in Supp. at 8–9. Second, he says that there is "no information in the notes or elsewhere what repercussions (e.g., firing, referral to criminal authorities) faced by the employees that improperly SIM swapped Mr. Williams." *Id.* at 9. And third he says that "to the extent the AT&T employees and agents provided statements regarding the changes to Plaintiff's account, those statements are not in the account notes, or anywhere in AT&T's productions to date." *Id.*

While Williams may not have access to this information, he has not shown that he could not obtain this information by other means without undue hardship. These items all appear to be easily requestable through other discovery devices. For example, Williams could have asked in an interrogatory or at a deposition for the identity of all individuals who learned of Williams's allegations. Or he could have used similar tools to find out what steps AT&T took to discipline or report those involved in the SIM swap. And with respect to written statements from employees, he has not shown that any such statements exist or that AT&T has refused to produce them in response to a request for production. So Williams has failed to show that he can take advantage of the undue hardship exception to the work-product doctrine.

## III.  Conclusion

For all these reasons, the court denies Williams's motion to compel. D.E. 134. Each party will bear their own costs.

Dated:  July 19, 2022

Robert T. Numbers, II
United States Magistrate Judge