# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

------------------------------------------------------- X
JASON WILLIAMS,

      Plaintiff,

vs.

AT&T MOBILITY LLC,

      Defendant.
------------------------------------------------------- X

Case No. 5:19-cv-00475-BO

**PLAINTIFF JASON WILLIAMS'
FIRST SUPPLEMENTAL
RESPONSES AND OBJECTIONS
TO DEFENDANT'S SECOND SET
OF INTERROGATORIES**

  Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the Eastern District of North Carolina 26.1 and 33.1, Plaintiff Jason Williams ("Plaintiff" or "Williams"), by his attorneys, Withers Bergman LLP, for his first supplemental responses and objections to Defendant AT&T Mobility LLC's ("Defendant" or "AT&T") Second Set of Interrogatories (the "Second Interrogatories" and each an "Interrogatory"), dated July 14, 2021, states as follows:

## ENUMERATED OBJECTIONS

  Plaintiff objects to the individual interrogatories (each an "Interrogatory") as follows:

  1.  Plaintiff objects to the Interrogatory on the grounds that it is overly broad, calls for disclosure of information not relevant to the claims or defenses of any party, seeks documents and information not relevant to the subject matter of this action, and in that it is not reasonably calculated to lead to the discovery of admissible evidence.

  2.  Plaintiff objects to the Interrogatory on the ground that it is unduly burdensome.

  3.  Plaintiff objects to the Interrogatory on the grounds that it is redundant and duplicative of other requests.

  4.  Plaintiff objects to the Interrogatory on the grounds that it is argumentative,

factually unfounded, and/or based on factual premises that are false, inaccurate, or not conceded, or based on recitations of events that did not occur, or the occurrence of which is, or may be, disputed. Plaintiff has no obligation to correct all the factual errors, inaccuracies, and false premises stated or embedded in the Interrogatory. In responding to the Interrogatory, Plaintiff does not concede the validity or accuracy of any factual assertion or premise stated, or embedded, in any instruction, definition, or individual interrogatory.

5. Plaintiff objects to the Interrogatory on the grounds that it seeks information not in Plaintiff's possession, custody or control, or to the extent that it seeks to impose discovery obligations on non-parties.

6. Plaintiff objects to the Interrogatory on the grounds that it calls for the disclosure of information that represents or contains confidential, proprietary, and/or personal information.

7. Plaintiff objects to the Interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Plaintiff hereby claims all such privileges, immunities, and protections to the extent implicated by each interrogatory. Any disclosure of information subject to any claim of privilege, immunity, or protection is inadvertent, and without waiver of Plaintiff's rights to recall and retrieve such inadvertently disclosed information.

8. Plaintiff objects to the Interrogatory and the Second Interrogatories' Instruction and Definitions to the extent they purport to impose obligations contrary to, different from, or in addition to those set forth in the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Eastern District of North Carolina, or the Individual Practice Rules of Judge Terrence W. Boyle, and other applicable rules and laws.

## **TERMS AND CONDITIONS**

Plaintiff provides supplemental responses to the Second Interrogatories subject to the foregoing Enumerated Objections, the specific objections stated below, and the following terms and conditions:

1. Inadvertent production of any information that is confidential, privileged, was prepared in anticipation of litigation or for trial or is otherwise protected from discovery, shall not constitute a waiver of any privilege or of any ground for objection to discovery with respect to such information, document or any other document or information, or the subject matter thereof or the information contained therein, or of the right of Plaintiff to object to the use of any such document or information.

2. That Plaintiff has responded or objected to the Second Interrogatories, or to any part thereof, is not intended to be, nor should it be deemed, an admission that he accepts or admits the existence of any alleged fact or documents described or assumed, or any allegations or statements set forth, assumed or implied, by any individual interrogatory, or that such response or objection constitutes admissible evidence. In responding to the Second Interrogatories, Plaintiff neither waives nor intends to waive, but expressly reserves, every part of every objection to the Second Interrogatories and reserves any and all objections as to authenticity, relevance, competency, materiality and/or admissibility at trial or any hearing of any information produced, set forth, identified, or referred to herein.

3. The following responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, privilege, materiality, admissibility, and any and all other objections and grounds that would require the exclusion of any statement or document made available herewith as if any request were asked of, or if any statements contained herein were made by, or if any documents made available herewith were

3

offered by, a witness present and testifying in court, all of which objections are reserved and may be interposed at the time of any hearing or trial in this action.

4. The following responses and any documents made available pursuant thereto are based on facts known to Plaintiff at the time of responding to the Second Interrogatories and a review of files reasonably expected to contain responsive documents or information. Plaintiff reserves the right to amend and/or supplement these responses and any documents made available in the event new or different information or documents are discovered.

5. Unless otherwise defined herein, all capitalized terms in the specific responses below as defined in the same way as in Plaintiff's First Interrogatories to Defendant.

## **SPECIFIC RESPONSES AND OBJECTIONS**

The foregoing Enumerated Objections and the foregoing Terms and Conditions apply to the specific interrogatories and are incorporated in the specific responses and objections set forth below. In response to certain individual interrogatories, Williams may restate one or more of its objections for clarity or emphasis. The lack of such specific references and/or the provision of specific responses and objections stated below, however, are not intended as, and shall not be deemed to be, a waiver, either in whole or in part, of any of the foregoing Enumerated Objections or Terms and Conditions, and subject to and without waiving them, Williams further responds and objects to each specific interrogatory as follows:

**Interrogatory No. 1:**
Regarding the Gemini wallet address 1A8DnCGBTWBD8DTSdHKMkLcdoaoMXUZRBw ("Wallet 1A8D"), Identify the owner(s) of Wallet 1A8D and each person who to your knowledge during March 2018 to November 2018 (inclusive) accessed Wallet 1A8D or the Gemini exchange account associated with Wallet 1A8D; state whether Wallet 1A8D is where Slush Pool payouts from Plaintiff's mining operation referenced in the Complaint [Doc 2] were deposited, and the date range(s) those deposits took place (e.g., March 17, 2018 to November 4, 2018, or some other period(s)); and state when and why Plaintiff ceased using Wallet 1A8D to receive Slush Pool payouts.

**Response to Interrogatory No. 1:**

Plaintiff objects to Interrogatory No. 1 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to Interrogatory No. 1 on the grounds it is improperly compound. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows:

Mr. Williams was the only rightful owner of Wallet 1A8D during this time period. After Mr. Williams was the victim of the First SIM Swap Attack (as defined in his Complaint), it possible that some other individual or entity used Wallet 1A8D without his permission. Mr. Williams did receive deposits in connection with his cryptocurrency mining operation into Wallet 1A8D. Mr. Williams does not recall the exact date range during which he used Wallet 1A8D to receive deposits in connection with his cryptocurrency mining operation, but he believes that it was the first wallet he used receive deposits in connection with his cryptocurrency mining operation. Mr. Williams also recalls that he stopped using Wallet 1A8D to receive deposits in connection with his cryptocurrency mining operation shortly after the First SIM Swap Attack (on or about November 5, 2018), because he wanted to attempt to resume his cryptocurrency mining operation after the First SIM Swap Attack, but he was concerned about the security of Wallet 1A8D after the First SIM Swap Attack.

**Supplemental Response to Interrogatory No. 1:**

Plaintiff incorporates herein his previous response and objections. Mr. Williams was the only rightful owner of Wallet 1A8D during this time period. After Mr. Williams was the victim of the First SIM Swap Attack (as defined in his Complaint), it possible that some other individual or entity used Wallet 1A8D without his permission. Mr. Williams does not have specific knowledge of any such instance of unauthorized use.

Mr. Williams did receive deposits in connection with his cryptocurrency mining operation into Wallet 1A8D. Mr. Williams has reviewed records from his Gemini account, which he is producing to Defendant on the same date as these supplemental responses. Those records reflect that Mr. Williams received Slush Pool payouts from his mining operation into Wallet 1A8D from March 17, 2018 to November 5, 2018. Those records also reflect Mr. Williams stopped using Wallet 1A8D to receive Slush Pool payouts from his mining operation after November 5, 2018. Mr. Williams stopped using Wallet 1A8D to receive Slush Pool payouts from his mining operation because he wanted to attempt to resume his cryptocurrency mining operation after the First SIM Swap Attack, but he was concerned about the security of Wallet 1A8D after the First SIM Swap Attack.

**Interrogatory No. 2:**
Provide the following information regarding the Gemini wallet address 1F1UMqM7ngeosQNtmwcoXCFxfmArUmGwcL identified on JW_0021 & JW_0040 ("Wallet 1F1U"):

a. Identify the owner(s) of Wallet 1F1U and each person who to your knowledge during November 2018 to May 2019 (inclusive) accessed Wallet 1F1U or the Gemini exchange account associated with Wallet 1F1U, and state the most recent date You or anyone on Your behalf accessed Wallet 1F1U or its associated Gemini account and Identify the person who did so;

b. State the date range(s) that Wallet 1F1U received payouts from Plaintiff's mining operation referenced in the Complaint, and whether Wallet 1F1U is where the Slush Pool payouts from Plaintiff's mining operation referenced in the Complaint were deposited after Plaintiff "reconfigure[d] all his mining rigs" (Compl. ¶ 43) following the November 5, 2018 unauthorized SIM swap; and provide an explanation of the reasons, and state any facts or circumstances supporting those reasons, why Wallet 1F1U received 76 deposits from Slush Pool during February 6, 2019 to May 14, 2019 – including whether any of those deposits resulted from or have any connection to Plaintiff's mining operation or any of Plaintiff's mining rigs referenced in the Complaint;

c. State the reasons for the March 7th, 11th, 12th, and 14th 2019 deposits into Wallet 1F1U from Binance and Poloniex, the identity of the person(s) who initiated those deposits, and the identity of the owner(s) of those Binance and Poloniex accounts;

d. Explain the disposition of the 46.067 bitcoin that was deposited into Wallet 1F1U during November 9, 2018 through May 14, 2019, including the persons or entities to whom those bitcoin were transferred from Wallet 1F1U and the reasons for the transfers.

**Response to Interrogatory No. 2:**

Plaintiff objects to Interrogatory No. 2 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects Interrogatory No. 2 on the grounds that it seeks sensitive financial information about himself and third parties that has no relevance to any of the claims or defenses in this lawsuit, and on the grounds it is improperly compound. Subject to, limited by and without waiving his Enumerated Objections, further objections, and the Terms and Conditions, Plaintiff states as follows:

Mr. Williams was the only rightful owner of Wallet 1F1U during this time period and is not aware of anyone else using Wallet 1F1U. Mr. Williams did receive deposits in connection with his cryptocurrency mining operation into Wallet 1F1U after the First SIM Swap Attack. Mr. Williams does not recall the exact date range during which he used Wallet 1F1U to receive deposits in connection with his cryptocurrency mining operation, but he believes that he began using it to receive deposits in connection with his cryptocurrency mining operation after the First SIM Swap Attack (on or about November 5, 2018), because he wanted to attempt to resume his cryptocurrency mining operation after the First SIM Swap Attack, but he was concerned about the security of Wallet 1A8D after the First SIM Swap Attack. Mr. Williams objects to parts c. and d. of this Interrogatory on the grounds that they seek sensitive financial information that has no relevance to any of the claims or defenses in this lawsuit. Notwithstanding his objections, Mr. Williams believes that he is the owner of the Binance and Poloniex accounts referred to in part c. of this Interrogatory, and that the transactions referred to in part c. of this Interrogatory have no connection to his cryptocurrency mining operation. Notwithstanding his objections, Mr. Williams believes that he is still in possession of the Bitcoin referred to part d. of this Interrogatory, and that such Bitcoin is not currently being stored in Wallet 1F1U.

**Supplemental Response to Interrogatory No. 2:**

Plaintiff incorporates herein his previous response and objections. Mr. Williams was the only rightful owner of Wallet 1F1U during this time period. Mr. Williams was the only rightful owner of Wallet 1F1U during this time period and is not aware of anyone else using Wallet 1F1U. Mr. Williams still uses and has access to the Gemini account associated with Wallet 1F1U, and last accessed that Gemini account on November 5, 2021.

Mr. Williams did receive deposits in connection with his cryptocurrency mining operation into Wallet 1F1U. Mr. Williams has reviewed records from his Gemini account, which he is producing to Defendant on the same date as these supplemental responses. Those records reflect that Mr. Williams received Slush Pool payouts from his mining operation into Wallet 1F1U from November 9, 2018 to May 14, 2019. Mr. Williams continued his mining operation after the last of the seven SIM Swaps in the Complaint and used this wallet to receive Slush Pool payouts from his mining operation until May 14, 2019, but eventually shut down his mining operation because he believed he could no longer operate it securely.

Mr. Williams objects to parts c. and d. of this Interrogatory on the grounds that they seek sensitive financial information that has no relevance to any of the claims or defenses in this lawsuit. Notwithstanding his objections, Mr. Williams does not recall the circumstances of the deposits referred to in part c. of this Interrogatory. At the times of those deposits, Mr. Williams did possess both Binance and Poloniex accounts, although he no longer has access to the Poloniex account. Mr. Williams thinks it is possible that those deposits came from his Binance and Poloniex accounts, but he is unable to confirm that at this time. Mr. Williams can confirm that neither his Binance nor Poloniex accounts had anything to do with his mining operation, and that therefore the deposits are not proceeds from his mining operation.

Notwithstanding his objections, Mr. Williams is still in possession of the Bitcoin referred to part d. of this Interrogatory, and such Bitcoin is not currently being stored in Wallet 1F1U. Mr. Williams stores the Bitcoin he earned from his mining operation in a cold wallet.

**Interrogatory No. 3:**
Excluding Wallet 1A8D and Wallet 1F1U, provide the address of any wallet which at any time during March 2018 to the present received any payout or deposit from a Slush Pool account owned by Plaintiff or that resulted from any use or operation of Plaintiff's mining rigs referenced in the Complaint, and the dates of such payouts or deposits.

**Response to Interrogatory No. 3:**

Plaintiff objects to Interrogatory No. 3 on the grounds set forth in Enumerated Objections 1, 3, 4, 6, and 8. Plaintiff further objects to Interrogatory No. 3 on the grounds it is improperly compound. Subject to, limited by and without waiving his Enumerated Objections and the Terms and Conditions, Plaintiff states as follows:

Mr. Williams believes he did not receive deposits in connection with his cryptocurrency mining operation into any wallet besides Wallet 1A8D and Wallet 1F1U.

**Interrogatory No. 4:**
Regarding the handwritten note and screenshot depicted in JW_0021, Identify the author of the note and the person who took the screenshot; separately state for the note and screenshot the date and reason(s) why each was created; Identify each person to whom the note or screenshot was sent and state when and why it was sent; and identify the owner of the ApolloKidsMining "account" referenced in the note, the platform or service where the account was maintained, the date range(s) the account was used, and the purpose(s) of the account.

**Response to Interrogatory No. 4:**

Plaintiff objects to Interrogatory No. 4 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, 7, and 8. Plaintiff further objects to Interrogatory No. 4 on the grounds it is improperly compound. Subject to, limited by and without waiving his Enumerated Objections, further objections, and the Terms and Conditions, Plaintiff states as follows:

Mr. Williams was the author of the note captured in the screenshot with Bates number JW_0021, and that he took that screenshot. Mr. Williams does not recall exactly why he wrote

9

the note or took the screenshot, and to whom the screenshot was sent (other than to his attorneys in connection with this lawsuit). Mr. Williams believes that he may have written this note in connection with an attempt to recover access to the wallet identified in the screenshot. The wallet identified in the screenshot was used to receive deposits in connection with his cryptocurrency mining operation. Mr. Williams is the sole owner of ApolloKidsMining.

**Supplemental Response to Interrogatory No. 4:**

Plaintiff incorporates herein his previous response and objections. Mr. Williams was the author of the note captured in the screenshot with Bates number JW_0021, and that he took that screenshot. Mr. Williams and his counsel have not located any version of this screenshot in Mr. Williams' jwilliams@prtitech.com email account ("PRTI Email Account"). The note appears to be dated January 5, 2019, and the screenshot appears to be dated February 5. Mr. Williams believes "February 5" means February 5, 2019. Mr. Williams has no reason to believe the apparent dates of the note and screenshot are inaccurate.

To the best of Mr. Williams' recollection, he wrote this note and took this screenshot in response to a request from Slush Pool in connection with an attempt to regain access to his account. Mr. Williams recalls that Slush Pool asked for his signature as part of the account recovery process, and he took this screenshot and sent it to Slush Pool in response to that request. After sending the screenshot to Slush Pool, Mr. Williams recalls that Slush Pool actually wanted a digital signature, as opposed to a picture of a handwritten signature.

Mr. Williams previously created a Slush Pool account named ApolloKidsMining10. Mr. Williams believes that the "ApolloKidsMining 10" in the note and screenshot is that Slush Pool account. As set forth in Chris LaVigne's September 25, 2021 letter to Michael Breslin, Mr. Williams believes that he used the ApolloKidsMining10 Slush Pool account from approximately June 2017 to February 2019, but is unable to confirm that because he cannot access this Slush

Pool account or his Gmail associated with this account, and has not received any records from Slush Pool that would verify this information. The purpose of the ApolloKidsMining10 Slush Pool account was to receive rewards from Mr. Williams' cryptocurrency mining operation.

**Interrogatory No. 5:**
Identify each contract or agreement you entered into with Anexio, including without limitation any contract related to the proposal shown on JW_0066-70 (collectively, the "Anexio Agreements") and, for each, identify by date and amount each payment made pursuant to that Anexio Agreement and state the dates it commenced and was terminated, who terminated it, and the reason(s) for the termination.

**Response to Interrogatory No. 5:**

Plaintiff objects to Interrogatory No. 5 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to Interrogatory No. 5 on the grounds it is improperly compound. Subject to, limited by and without waiving his Enumerated Objections, further objections, and the Terms and Conditions, Plaintiff states as follows:

Mr. Williams is not aware of any agreement between himself and Anexio beyond the one reflected in the documents referred to in this Interrogatory. Mr. Williams does not recall any specific dates or amounts of any payments he made to Anexio, but does recall that he made payments to Anexio, and believes that those payments would have been consistent with the terms of the agreement reflected in the documents referred to in this Interrogatory. Mr. Williams terminated the agreement with Anexio because he decided that he could no longer securely mine Bitcoin. Mr. Williams does not recall when he terminated his agreement with Anexio, but believes it would have been in or around the time he wound down his mining operation in May 2019.

**Supplemental Response to Interrogatory No. 5:**

Plaintiff incorporates herein his previous response and objections. Mr. Williams has only entered into one agreement with Anexio in his individual capacity: the one reflected in the

documents referred to in this Interrogatory, regarding Anexio's provision of electricity for Mr. Williams' cryptocurrency mining operation (the "Anexio Agreement").

Entities that Mr. Williams is affiliated with may have entered into agreements with Anexio that were entirely unrelated to Anexio's provision of electricity for Mr. Williams' cryptocurrency mining operation.

In connection with the Anexio Agreement, Mr. Williams made payments to Anexio pursuant to invoices he received from Anexio. Mr. Williams and his counsel have searched Mr. Williams's PRTI Email Account, and have located invoices, communications, and other documents related to Mr. Williams, which he is producing to Defendant on the same date as these supplemental responses. Based on those records, including the spreadsheet that can be found at Bates number JW_2752, Mr. Williams appears to have made the following payments to Anexio:

| Payment Date | Inv No. | Amount (USD) |
|---|---|---|
| 04/02/2018 | 4203 | 3,340.80 |
| 04/17/2018 | 4203 | 12,258.41 |
| 05/01/2018 | 4203 | 76,392.96 |
| 05/ 9778101/2018 | 4203 | 64,282.00 |
| 06/14/2018 | 4340 | 80,871.67 |
| 07/09/2018 | 4320 | 81,538.71 |
| 08/16/2018 | 4493 | 45,500.00 |
| 09/14/2018 | 4493-A | 45,500.00 |
| 10/12/2018 | 4563 | 45,500.00 |
| 11/16/2018 | 4789 | 45,500.00 |
| 12/18/2018 | 4892 | 45,500.00 |
| 01/29/2019 | 5151 | 45,500.00 |
| 03/07/2019 | 5152 | 34,000.00 |
| 05/06/2019 | 5248 | 34,000.00 |

In addition, the records in Mr. Williams's PRTI Email Account, including the email chain that can be found at Bates number JW_2864-75, indicate that he made additional payments to

Anexio in the amounts of 10,967.70 USD and 34,000.00 USD on or about July 26, 2019 and August 19, 2019, respectively.

  Mr. Williams is also attempting to obtain records from First Citizens bank regarding his payments to Anexio, and will supplement his production (and this response if necessary) if and when he obtains those records.

  The records in Mr. Williams's PRTI Email Account indicate that Mr. Williams commenced the Anexio Agreement on March 1, 2018. A version of the Anexio Agreement with Mr. Williams' signature can be found at Bates number JW_0194-96. The records in Mr. Williams's PRTI Email Account, including the email chain that can be found at Bates number JW_2771-81, indicate that Mr. Williams terminated the Anexio Agreement on or about May 10, 2019, which is the last date Anexio charged Mr. Williams for providing electricity for Mr. Williams' cryptocurrency mining operation.

  After review of his PRTI Email Account records, Mr. Williams recalls he terminated the Anexio Agreement because Anexio shut down the particular facility in Virginia that housed and powered his mining rigs. Mr. Williams could have decided to relocate his mining rigs to another data center. Additionally, at the time, Mr. Williams was the CEO and Chairman of Product Recovery Technologies International, Inc. ("PRTI"), which runs a first-of-its-kind cryptocurrency mining operation powered by the decomposition of old tires. Mr. Williams could have, at minimal personal cost, immediately transferred his mining rigs from the Anexio Virginia data center to the PRTI facility, where PRTI employees could have reestablished his mining rigs with minimal downtime. Mr. Williams chose not to because, in light of the repeated SIM swaps he suffered and the repeated hacks of his BTC mining rigs enabled by those SIM swaps, he was concerned that associating these rigs with the PRTI facility would compromise the security of PRTI's operations, which, to this day, remain secure and have not been hacked.

13

Case 5:19-cv-00475-BO   Document 172-14   Filed 11/20/23   Page 14 of 18

Instead, Mr. Williams directed a business associate to retrieve the mining rigs from Anexio. Mr. Williams provided at least $100,000.00 to that business associate in funding for an experimental shipping container mining rig facility project. Mr. Williams provided the funding for this project, which he expected to be paid back, with the hopes that he could replicate this type of facility for use in connection with PRTI's business. The records in Mr. Williams's PRTI Email Account indicate that the business associate commingled Mr. Williams's rigs with other ASIC Antminer S9 rigs in configuring the experimental facility. Mr. Williams eventually recovered his $100,000.00 investment, but ultimately this project was shut down. To Mr. Williams' knowledge, his rigs remain unused, commingled, in disrepair, and in possession of the business associate.

**Interrogatory No. 6:**
Regarding the tax returns Plaintiff produced (JW_0071-75), explain the basis for and method of calculating the 2018 reported mining income of $902,760 (JW_0072), 2019 reported mining income of $49,110 (JW_0075), $36,500 claimed mortgage interest (JW_0072), and $999 hardware and $275 tech support expenses (JW_0073). Further, if the 2018 income figure was not based upon all of the approximately 80.25 total bitcoin deposits from Slush Pool during 2018 (66.9 BTC into Wallet 1A8D and 13.35 BTC into Wallet 1F1U), or the 2019 income figure was not based upon all of the approximately 32.72 bitcoin deposited into Wallet 1F1U from Slush Pool during 2019, state the reasons why.

**Response to Interrogatory No. 6:**

Plaintiff objects to Interrogatory No. 6 on the grounds set forth in Enumerated Objections 1, 2, 3, 4, 5, 6, and 8. Plaintiff further objects to Interrogatory No. 6 on the grounds it is improperly compound. Subject to, limited by and without waiving his Enumerated Objections, further objections, and the Terms and Conditions Plaintiff states as follows:

The tax returns referred to in this Interrogatory were prepared by Mr. Williams' accountants. Mr. Williams is not an accountant or tax professional. Mr. Williams does not recall how the items from his tax returns referred to in this Interrogatory were calculated. Mr. Williams believes that the income items referred to in this Interrogatory were entirely based on

the amount of Bitcoin he mined during the relevant tax periods. Mr. Williams does not recall the basis for the mortgage interest, hardware, and tech support items from his tax returns referred to in this Interrogatory.

**Supplemental Response to Interrogatory No. 6:**

Plaintiff incorporates herein his previous response and objections. The tax returns referred to in this Interrogatory were prepared by Mr. Williams' accountants. Mr. Williams is not an accountant or tax professional. Mr. Williams does not recall how the items from his tax returns referred to in this Interrogatory were calculated. Mr. Williams and his counsel have searched Mr. Williams's PRTI Email Account, and have located communications and other documents related to the portions of the tax returns at issue in this interrogatory, which he is producing to Defendant on the same date as these supplemental responses. Mr. Williams has also obtained from his accountants their records related to the portions of the tax returns at issue in this interrogatory, and has previously produced those records.

Dated: November 12, 2021
       New York, New York

                                              WITHERS BERGMAN LLP

By: _____
Christopher LaVigne
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com

*Attorneys for Plaintiff Jason Williams*

TO:    Joseph S. Dowdy (N.C. State Bar No. 31941)
         Kilpatrick Townsend & Stockton LLP
         4208 Six Forks Road, Suite 1400
         Raleigh, NC 27609

Telephone: (919) 420-1700
Facsimile: (919) 510-6120
jdowdy@kilpatricktownsend.com

Michael Breslin
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile (404) 815-6555
mbreslin@kilpatricktownsend.com

*Attorneys for Defendant AT&T Mobility LLC*

# VERIFICATION

I, Jason Williams, have read the foregoing Supplemental Responses and Objections to Defendant's Second Set of Interrogatories. I verify under penalty of perjury that the foregoing responses are true and correct to the best of my knowledge, information, and belief.



Jason Williams

Dated: November 12, 2021